WILLIAM S. O'HARE (SBN 82562)
wohare@swlaw.com
SNELL & WILMER L.L.P.
600 Anton Blvd., Suite 1400
Costa Mesa, CA 92626
Telephone: (714) 427-7000
Facsimile: (714) 427-7799

ROBERT P. PARKER (*pro hac vice*)
rparker@rfem.com
MARTIN ZOLTICK (*pro hac vice*)
mzoltick@rfem.com
JENNY COLGATE (*pro hac vice*)
jcolgate@rfem.com
MICHAEL JONES (*pro hac vice*)
mjones@rfem.com
DANIEL R. MCCALLUM (*pro hac vice*)
dmccallum@rfem.com
MARK RAWLS (*pro hac vice*)
mrawls@rfem.com
D. LAWSON ALLEN (*pro hac vice*)
lallen@rfem.com
ROTHWELL, FIGG, ERNST & MANBECK P.C.
607 14th Street N.W., Suite 800
Washington, DC 20005
Telephone: (202) 783-6040
Facsimile: (202) 783-6031

Attorneys for Plaintiff Nichia Corporation

Salil Bali (SBN 263001)
sbali@sycr.com
Matthew R. Stephens (SBN 288223)
mstephens@sycr.com
STRADLING YOCCA CARLSON &
RAUTH, P.C.
660 Newport Center Drive, Ste. 1600
Newport Beach, CA 92660
Tel. 949-725-4000

Kal Shah (*pro hac vice*)
kshah@beneschlaw.com
Katherine A. Smith (*pro hac vice*)
ksmith@beneschlaw.com
BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP
71 S. Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: 312-212-4949
Facsimile: 312-767-9192

Attorneys for Defendant
Feit Electric Company, Inc.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHIA CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>FEIT ELECTRIC COMPANY, INC.<br><br>Defendant. | Case No. 2:20-cv-00359-GW-E<br>Hon. George H. Wu, Ctrm. 9D<br>Magistrate Judge: Charles F. Eick<br><br>JOINT STIPULATION RE NICHIA'S MOTION FOR SANCTIONS FOR FEIT'S FAILURE TO COMPLY WITH THE COURT'S MAY 17, 2021 ORDER WITH RESPECT TO INTERROGATORY NO. 6<br><br>Hearing Date: December 3, 2021<br>Time: 9:30 a.m.<br>Ctrm: 750<br><br>Fact Disc. Cut-off: Nov. 9, 2021<br>Expert Disc. Cut-off: Feb. 17, 2022<br>Pretrial Conference: April 21, 2022 |

Bench Trial: May 3, 2022
Jury Trial: TBD

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................ II

I.     INTRODUCTORY STATEMENTS ................................................ 1

       A.     Nichia's Introduction ................................................ 1

       B.     Feit Electric's Introduction ........................................ 3

II.    STATEMENT OF FACTS ............................................................ 6

       A.     Nichia's Statement of Facts ...................................... 6

       B.     Feit's Statement of Facts ........................................ 14

III.   ISSUE IN DISPUTE .................................................................... 26

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3  *Accord. tagTrends, Inc. v. Nordstrom, Inc.*,

4   2014 WL 12587045 (C.D. Cal. Aug. 29, 2014)...................................40

5  *Adriana Int'l Corp. v. Thoeren*,

6   913 F.2d 1406 (9th Cir. 1990)................................................32

7  *Alexsam, Inc. v. IDT Corp.*,

8   715 F.3d 1336 (Fed. Cir. 2013)..............................................30

9  *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*,

10   69 F.3d 337 (9th Cir. 1995)................................................31

11  *Carson Cheng v. AIM Sports, Inc.*,

12   No. CV103814PSGPLAX, 2011 WL 13175663 (C.D. Cal. Aug. 23, 2011) passim

13  *Choudhuri v. Wells Fargo Bank, N.A.*,

14   No. 15-CV-03608-VC (KAW), 2017 WL 5598685 (N.D. Cal. Nov. 21, 2017)..30

15  *Davis v. Elec. Arts Inc.*,

16   No. 10-CV-03328-RS (DMR), 2018 WL 1609289 (N.D. Cal. Apr. 3, 2018)......30

17  *Davis v. Schneider*,

18   218CV01910VBFMAA, 2020 WL 9074713 (C.D. Cal. Dec. 18, 2020) .............37

19  *Jang v. Sagicor Life Ins. Co.*,

20   No. EDCV171563JGBKKX, 2019 WL 699791 (C.D. Cal. Feb. 20, 2019)..30, 31,

21   32

22  *Rambus Inc. v. NVIDIA Corp.*,

23   C-08-03343 SI, 2011 WL 11746749 (N.D. Cal. Aug. 24, 2011) ........................26

24  *Star Envirotech, Inc. v. Redline Detection, LLC*,

25   No. SACV1201861JGBDFMX, 2015 WL 9093561 (C.D. Cal. Dec. 16, 2015)..30

26  *Wyle v. R.J. Reynolds Indus., Inc.*,

27   709 F.2d 585 (9th Cir. 1983)................................................43

28  **Rules**

1

Fed. R. Civ. P. 37....................................................................................................passim

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.    INTRODUCTORY STATEMENTS

## A. Nichia's Introduction

This dispute concerns Feit's non-compliance with the Court's multiple orders directing Feit Electric Co., Inc. ("Feit") to comply with its discovery obligations. Specifically, Nichia Corporation ("Nichia") seeks issue, evidentiary, and monetary sanctions pursuant to Fed. R. Civ. P. 37(b)(2) and (c) with respect to Feit's persistent failure to comply with this Court's orders to respond to Nichia's Interrogatory No. 6. *See* Declaration of D. Lawson Allen ("Allen Dec."), Ex. 2 (Dkt. 115); Ex. 3 (Dkt. 185), and Ex. 4 (Dkt. 216).

The Accused Products in this case are filament-style LED bulbs. A major component of the bulbs is a light-emitting filament ("LED filament"). Nichia's Interrogatory No. 6 requests that Feit identify, for each of the Accused Products, the manufacturer(s) and manufacturer's part number(s) for the LED Filament used in that model. The Court ordered Feit to respond this interrogatory three times. *See id.* Most recently, the Court concluded that Feit had the legal right and discovery obligation to seek from its suppliers information that Feit did not already possess. The Court, however, gave Feit an "out"—instead of complying with the Court's order to request the LED filament information from its suppliers, Feit could accept Nichia's compromise offer. *See id.*, Ex. 10 at 10:17-22. Nichia's compromise offer was that Feit did not have to ask its suppliers, so long as Feit agreed that it would not use information relating to Interrogatory 6 in order to limit its liability. *See* Fed. R. Civ. P. 37(c)(1) (if a party does not respond to a discovery request, "the party is not allowed to use the information on a motion, at a hearing, or at trial[.]").

That was seven weeks ago. It is undisputed that Feit has not (1) asked its suppliers for the information; (2) sought or obtained an extension of time to comply with the Court's orders; or (3) agreed to Nichia's compromise offer. Feit has also made clear that it has no intention of doing so. In fact, in October 2021, Feit *did agree* to stipulation language to address Nichia's concerns, but Feit later reneged.

Weeks later, Feit filed a unilateral stipulation in an effort to avoid the consequences of its acknowledged failure to comply with this Court's prior orders compelling Feit to respond to Interrogatory No. 6.  *See id.*, Ex. 5 (Dkt. 226); *id.*, Ex. 6 (Dkt. 227).  Feit's unilateral stipulation forced Nichia to respond on the record, pointing out the inadequacies of Feit's proposal.  *See id.*, Ex. 6 (Dkt. 227).

The response to Interrogatory No. 6 is of central importance to Nichia's efficient proof of infringement in this case.  In cases like this, where there are a large number of Accused Products, plaintiffs typically rely on a subset of those products – "representative" products – to prove infringement of the larger set.  While the Court has already ruled that Nichia made a *prima facie* case of "representativeness" in its infringement contentions, and Feit has thus far not rebutted that showing, there remains the issue of proof of infringement at trial in the event the Court or the jury concludes that Feit has overcome Nichia's *prima facie* case. *See* Allen Dec., Ex. 7 (Dkt. 59) at 7 (order denying Feit's motion to strike Nichia's infringement contentions); *see also id.*, Ex. 4 (Dkt. 216) at 8.  Feit's discovery games have prevented Nichia from obtaining valuable discovery that would have aided Nichia its efficient proof of infringement at trial.[1]  Also, because Feit did not provide the manufacturers and models of the LED filaments it used in its products, Nichia could not obtain useful discovery from those filament manufacturers. [2]  Moreover, Feit's statements and actions with respect to Interrogatory No. 6 indicate that Feit has every intention of using the information (or the lack of information) it was ordered to provide to contest Nichia's showings of "representativeness" at trial.

In view of Feit's serial violations of three Court orders directed to

---

[1] If Feit provided information saying that model X can contain any of three different filaments, filament A1, A2, or A3, for example, Nichia would have sought samples of all three variations of model X and tested each.

[2] As is, Nichia knows who some of the suppliers are, but does not know which filaments from those suppliers Feit uses, nor does Nichia know which filaments Feit uses as "substitutes" for others in the same products.

Interrogatory No. 6, including its complete failure to *even ask* its suppliers for the information at issue (as the Court ordered it to do) and its reneging after agreeing to Nichia's proposed stipulation, Nichia asks the Court to issue a sanction order. The requested sanction is that Feit should be precluded from contesting "representativeness" in this lawsuit. Nichia tried for many weeks reach a narrower agreement with Feit directed to precluding only the use of information related to Interrogatory No. 6 for contesting "representativeness"—but those efforts failed. Feit continually said it did not understand certain things. Thus, a broader preclusion order – precluding any challenge to representativeness and that it be established that any Accused Straight-Filament Product or Accused Curved-Filament Product is representative of each other Accused Straight-Filament Product or Accused Curved-Filament Product, respectively (*see, e.g.*, Allen Dec., Ex. 7 (Dkt. 59) at 4-5) – would be cleaner and simpler, but still tied to the call of Interrogatory No. 6.[3] Nichia also asks the Court to require Feit to compensate Nichia for its time and expense related to this discovery dispute pursuant to Fed. R. Civ. P. 37(b) in an amount to be determined following the Court's ruling on this motion.

## B. Feit Electric's Introduction

This is now the third time Nichia has sought to use the filament issue as a Trojan horse to paint Feit Electric as a bad actor and seek unwarranted and inappropriate sanctions. Moreover, the issue raised here is moot, as Feit Electric has agreed to provide the assurances represented by Nichia to be at the heart of this dispute. Feit Electric remains willing to work with Nichia on this score, and does not intend to rely on undisclosed filament supplier sources as a defense; yet Nichia

---

[3] Alternatively, Nichia requests that the Court impose as a sanction an order precluding Feit from using information related to Interrogatory No. 6—specifically, information regarding the suppliers or model numbers of filaments used in the Accused Products in this case—or the lack of such information, to avoid or limit its liability and such other issue or evidentiary sanctions the Court may determine are necessary to remedy Feit's failure to comply with the Court's orders.

1    brings this motion seeking sanctions ostensibly because Feit Electric has complied

2    with the Court's ruling but not agreed to Nichia's onerous additions.

3         As background, despite knowing the identity of Feit Electric's suppliers by

4    March 2021, without even attempting third party discovery, Nichia moved to

5    compel filament model number and manufacturer information from Feit Electric.

6    *See* Declaration of Simeon G. Papacostas ("Papacostas Decl."),[4] Dkt. No. 112-1.[5]

7    After Feit Electric confirmed it had provided the information it had in its

8    possession, Nichia again moved for the same information and sought the same

9    sanctions it seeks here. *See* Dkt. No. 144-1.  This Court ***denied*** that motion but

10   ordered Feit Electric to affirmatively poll its suppliers about the filament source.

11   *See* Dkt. No. 185. Because Feit Electric does not make these products, because it is

12   not in possession, custody, or control of this information, and because the suppliers

13   are overseas such that questioning their sources would potentially harm an

14   incredibly competitive market already facing supply-chain issues, Feit Electric

15   sought limited review by Judge Wu. *See* Dkt. Nos. 193 & 206.

16        At the parties' September 16, 2021 hearing regarding Feit Electric's motion

17   for partial consideration, counsel for Nichia offered—for the first time—a

18   compromise to resolve the parties' dispute over Nichia Interrogatory No. 6.

19   Specifically, counsel for Nichia told this Court that "if Feit [Electric] wouldn't use

20   information on LED filaments, as a sword later, for purposes of showing

21   noninfringement or non-representativeness, then we didn't necessarily need the

---

[4] Dkt. Nos. 115, 185, 216, 226, 227, 59, 144, 144-1, and 193 all have been attached to the Allen Declaration. All other pleadings referenced herein, including Dkt. No. 112-1, are attached to the Papacostas Declaration.

[5] Nichia misstates the importance or relevancy of "filaments" to the patent-in-suit. Tellingly, Nichia fails to even cite the patent let alone recite claim limitations that somehow make the filament the cornerstone of the dispute. It is not. The patent relates to a light bulb with certain structural properties in totality, and the term "filament" is not even used in the patent. *See generally* Dkt. No. 1-1 (the '734 Patent). Not surprisingly, Nichia failed to take even the minimal effort to obtain this information from the third-party suppliers even though it had this information for over a year; instead, relying on this motion practice to avoid its discovery deficiencies.

information to have it as a shield." Dkt. No. 219 at 8:20-23. With this, the Court left the issue to Feit Electric to provide corresponding assurances or ask its suppliers for LED filament model information. *See id*. at 10:19-22.   Feit Electric worked exhaustively with Nichia, but each time it provided a corresponding stipulation, Nichia sought to broaden it further. Accordingly, after weeks of back and forth, Feit Electric filed a stipulation consistent with the Court on October 29, 2021, voluntarily waiving its right to challenge representativeness or non-infringement solely on the identity of an LED filament model number or manufacturer. *See* Dkt. No. 226. That is, Feit Electric agreed and continues to agree as Nichia's seeks that Feit Electric will not use the source of an LED filament as a "sword" and a "shield." Accordingly, there is no longer an issue to litigate, and certainly no basis to sanction Feit Electric. Feit Electric has made the necessary representations and Nichia has adequate means, through the stipulation and now this submission, to enforce this *quid pro quo* should it be an issue, in the same way that Feit Electric has support in the record to contest any overreach on Nichia's part. In short, this is yet another issue that this Court should not have to deal with and to the extent there are any remaining details to resolve, they are, at best, premature.

In fact, Feit Electric has repeatedly made clear to Nichia that it remains willing to address this issue as needed, including further revisions, within fair metes and bounds, to the stipulation. While the parties appeared close to agreement several times throughout their negotiations, two things became clear about Nichia's position—especially over the past two weeks—regarding its motive for continuing to press this issue even after the Court questioned the utility of doing so: (1) Nichia had always sought to expand the scope of its "compromise," from the admittedly narrow stipulation it initially proposed to the Court, to an entirely different and overbroad waiver of rights that would in essence ask Feit Electric to accede to the twice-rejected evidentiary sanctions Nichia unsuccessfully sought before; and (2) Nichia's casting (and apparently lack of its own review) of the voluminous, relevant

evidence already produced as to filament model numbers and manufacturers as "incomplete" confirms that it was always going to seek these sanctions regardless of whether or not Feit Electric obtained additional LED filament information from its suppliers, rendering this entire exercise unnecessarily burdensome, and a colossal waste of party and judicial resources. Feit Electric has since suggested the parties specifically revisit this issue after Nichia provide its opening expert report, because Feit Electric fails to see how the provided stipulation currently is insufficient, and in any event, should not be placed in the position of blindly waiving away its rights. Nichia has refused all such options, solidifying that this entire exercise was a pretext to renew its efforts to paint Feit Electric in a bad light.

Despite the above, Nichia asks this Court of granting it the extraordinary remedy, a motion-in-limine before expert discovery even begins and corresponding sanctions. Nichia's motion should be denied as it has available to it a stipulation, Feit Electric's concessions in this briefing and numerous litigation tools to preclude the "sword" and "shield" conduct it claimed was the concern (and that Feit Electric again confirms it does not intend to engage in). For these reasons Nichia's motion should be denied, again.

## II.   STATEMENT OF FACTS

### A.   Nichia's Statement of Facts

Nichia served Interrogatory No. 6 eight months ago.  Interrogatory No. 6 requests "[s]eparately for each of the Accused products, identify the manufacturers and manufacturers' part numbers for the LED filaments used."

Feit has still not provided a more-than-cursory response to Nichia's interrogatory, notwithstanding that it was ordered to do so *three times* by this Court. Nichia initially filed a motion to compel Feit to provide the information, which Magistrate Judge Eick granted.  *See* Allen Dec., Ex. 2 (Dkt. 115) (original order granting Nichia's motion to compel).  When Feit took the position that it did not have the information, Nichia filed a second motion pointing out that Feit had the

legal right to get that information from its suppliers, and that Feit had done so in other lawsuits when it was to Feit's advantage.  Judge Eick ordered Feit to retrieve the information from its suppliers, and provide it to Nichia, by September 2, 2021. *See id.*, Ex. 3 (Dkt. 185) (Magistrate Judge Eick's decision on motion to enforce/sanctions).

Feit did not comply with Judge Eick's second order or ask for a stay. Instead, Feit asked Judge Wu to review Judge Eick's order in part.  Judge Wu denied that request on September 16, 2021.  *See id.*, Ex. 4 (Dkt. 216) (Judge Wu's decision on motion for partial review of Magistrate Order).   That was seven weeks ago, and Feit still has not complied with the Court's orders. Fact discovery closes on November 9, 2021, opening expert reports are due on December 7, 2021, and the damage of Feit's discovery abuse has already been done.[6]

Feit should be sanctioned for its obstructive behavior, discovery misconduct, and serial violations of this Court's orders.

\*\*\*

Feit has *admitted* that it has a legal right to request the information at issue from its suppliers (Allen Dec., Ex. 4 (Dkt. 216) at 7), and Feit has obtained this information from its suppliers in the past (in litigations where the information benefitted Feit).  Nonetheless Feit has now *three times* failed to comply with the Court's orders to get the information and answer Nichia's Interrogatory No. 6. Indeed, every argument that Feit has raised has been rejected.

**First**, Feit argued that it did not think the Court's original order on Nichia's motion to compel required it to ask its suppliers for the information.  *See id.*, Ex. 8

---

[6] For example, Nichia has had to engage in extraordinary testing efforts to try to overcome Feit's "hide the ball" game where Feit says not all units of an Accused Product are the same, but we aren't going to disclose which ones are different or how they are different.  Meanwhile, Feit wants to reserve the right at trial to point out some of these differences, to try to convince a jury that Nichia hasn't met its burden of proof.

(Dkt. 144-1) at 38-39.  So Judge Eick issued an order clearly directing Feit to ask its suppliers for the information by September 2, 2021.  *Id.*, Ex. __ (Dkt. 185).

**Then**, Feit again did not comply.  Instead, it sought review of Judge Eick's Order by Judge Wu, and in the process missed the deadline for compliance without requesting a stay.  *See id.*, Ex. 9 (Dkt. 193).  Judge Wu denied Feit's motion (thereby "affirming" Judge Eick's Order), but gave Feit an option to agree to the compromise that Nichia offered.  *See id.*, Ex. 4 (Dkt. 216) at 1, 7; *id.*, Ex. 10 (Transcript of Sept. 16, 2021 Hearing) at 10:15-22.  Since then, for nearly eight weeks, the parties met and conferred to reach agreement.  In October, the parties reached agreement on stipulation language.  Feit requested that some additional language be added in a separate paragraph or whereas clause, to clarify a point, and Nichia agreed.  Then Feit reneged.  *See, infra*.

**And then**, Feit again made clear it has no intention of complying with the Court's orders.  Nichia sent Feit a L.R. 37 letter seeking compliance with the Court's Order by the November 9, 2021 close of fact discovery.  Instead, Feit unilaterally and without notice to Nichia filed a "stipulation" that was entirely inadequate.  Nichia was forced to respond by filing an objection to the stipulation.  There matters stand.

***

A brief background on the parties' negotiations regarding a proposed "stipulation" is in order.  At the September 16, 2021 hearing before Judge Wu on Feit's motion to review Judge Eick's *second* discovery order, counsel for Nichia explained:

> Our position is that the parties have already briefed this issue multiple
> times now, and during multiple meet and confers, Nichia has offered
> Feit different compromise positions where we said that if Feit
> wouldn't use the information on LED filaments, as a sword later, for

purposes of showing noninfringement or non-representativeness, then we didn't necessarily need the information to have it as a shield.

Allen Dec., Ex. 10 at 8:17-23.

Shortly thereafter the Court ruled from the bench, adopting its tentative ruling (denying Feit's motion), but explaining that "the defense can get around this problem [of asking its suppliers for information] because the plaintiff has given an offer to resolve the matter, ***and you guys can either accept that or not***, however the case may be." *Id.* at 10:19-22 (emphasis added).

In response, Feit's counsel stated: "I'm hopeful that we can reach an agreement here.  I think what we heard from Ms. Colgate is something that we should be able to do." *Id.* at 12:14-15.

But Feit has not agreed to it.  Instead, the parties have engaged in multiple rounds of discussions and emails regarding a possible stipulation.  Finally, on October 14, 2021, the parties had a call and Feit agreed to the following language, which Nichia had proposed:

As discussed at the parties' September 16, 2021 hearing before the Court, Feit Electric agrees that it will not contest Nichia's showings of representativeness or argue non-infringement as it relates to an Accused Product based on the identity of a filament manufacturer or filament model number as used in the product. However, to the extent Nichia asserts infringement based on information regarding a specific filament manufacturer or model, Feit Electric may challenge that showing of infringement based on that information, but it may not challenge that the specific product is not representative of all versions of that model.

Allen Dec., ¶ 13.  However, Feit requested the addition of a second paragraph or a "whereas clause," to explain that the stipulation did not prejudice Feit's right to challenge infringement based on light emitting properties of the bulbs.  *Id.*; *see*

*also id.*, Ex. 11 (Papacostas 10-14-21 email to Colgate).  Nichia considered the request, and responded the next day, agreeing to Feit's request and adding a second paragraph to address by proposing the following additional paragraph:

> This stipulation is without prejudice to Feit's right to challenge infringement based on light emitting properties of the bulbs (but without identifying that certain light emitting properties are connected with certain LED filament models or manufacturers).  Nichia reserves all rights to challenge Feit's arguments, including the right to move to strike any information that forms the basis of such arguments that was not timely disclosed during fact discovery.

*Id.*, Ex. 11 (Colgate 10-15-21 email to Papacostas).

After that, Feit backtracked entirely from its prior agreement.  Feit sent an email proposing entirely different (and unacceptable) language.  Feit did not even explain why it changed its position.  *Id.*, Ex. 11 (Papacostas 10-19-21 email to Colgate).  Feit also said nothing about the additional language that Nichia proposed (later stating that while it did not have problems with it, it was unnecessary).

Bearing in mind the Court's admonition in connection with a previous motion to make the most of the meet-and-confer process, Nichia continued to negotiate with Feit for two more weeks and try to come back to an agreement.  In a meet and confer on October 21, the parties again seemed to make headway on the original agreed-upon language (without the second paragraph, which Feit now admitted was unnecessary).  Allen Dec., ¶ 14.  Feit agreed to follow-up with its client for sign-off on the proposed stipulation language.  *Id.*  On October 25, 2021, Feit emailed to say that the parties are "close" but Feit does not understand what Nichia is referring to by the language "all versions of that model."  *Id.* (Papacostas 10-25-21 email to Colgate).  <u>To be clear, Feit's question was asking for the meaning of language that Feit had already previously agreed to on October 14, 2021.</u>

Nichia answered Feit's question, but said that it could no longer afford to continue negotiating because the fact discovery deadline was approaching.  Nichia asked Feit to let it know by October 28 whether Feit intended to enter into the stipulation Nichia had proposed (and the parties previously agreed on) or Feit had to start complying with the Court's order on Interrogatory No. 6.  *Id.* (Colgate 10-26-21 email to Papacostas).

October 28, 2021 came and went, and Feit never responded to Nichia's email.  That evening, Nichia sent a letter pursuant to L.R. 37 and requested a meet and confer on the issue.  *Id.*, Ex. 12 at 8-9 (Colgate 10-28-21 Letter to Papacostas).  The following day, without first responding to Nichia's letter or providing any other notice, Feit filed a unilateral stipulation as to Interrogatory No. 6.   The stipulation states, in relevant part:

> The parties were unable to reach agreement; however, to address the specific concerns stated by Nichia to the Court, Feit Electric hereby stipulates as follows:
>
> **Unless the corresponding filament information was produced by Feit Electric (or any other party) in discovery, Feit Electric will not contest Nichia's showing of representativeness or allege non-infringement as it relates to an Accused Product model based only on the identity of the filament manufacturer or filament model number used in that Accused Product model**.
>
> This stipulation is made without prejudice to any other argument regarding representativeness or infringement, or the lack thereof as to either, by Feit Electric, and Feit Electric further reserves all rights. *Specifically, through this stipulation, Feit Electric does not take on the burden where the burden otherwise rests with Nichia including the burden to establish that two filaments of the same model have the*

11

1        *same properties as it relates to the asserted claims, or any other legal*

2        *burden that rests with Nichia.*

3   *Id.*, Ex. 5 (Dkt. 226) at 2 (italicized emphasis added).

4        Only after filing their unilateral stipulation did counsel for Feit respond to

5   Nichia's letter. *Id.*, Ex. 11 (Papacostas 10-29-21 email to Colgate). The parties

6   met and conferred on November 1, 2021. Allen Dec., ¶ 16. During the meet and

7   confer, counsel for Nichia stated that Feit had not agreed to Nichia's compromise

8   per the Court's suggestion, or responded to Interrogatory No. 6 as required by the

9   Court's orders, so Nichia was going to seek relief from the Court. *Id.* Counsel for

10   Feit stated that they thought that the stipulation they filed addressed the concerns

11   Nichia raised during the hearing, that it addressed what they believed the parties

12   had agreed to during the negotiations, and that the stipulation will put any concerns

13   to rest. *Id.* Counsel for Nichia reiterated that the parties had agreed to language,

14   but that Feit withdrew its agreement. Counsel for Nichia stated that it was Nichia's

15   position that Feit should be precluded from using the identity of the LED filament

16   model numbers or suppliers to limit their liability or argue non-infringement/non-

17   representativeness. *Id.*

18        Counsel for Nichia concluded the meet and confer by pointing out that, per

19   the Court's instruction during the hearing, Feit had two choices: (1) comply with

20   the Court's order; or (2) accept Nichia's alternative compromise. *Id.* Unless Feit

21   agreed to do either, Nichia intended to proceed with filing a motion for sanctions.

22   *Id.*

23                               ***

24        The following day, Feit sent an email stating, "[i]n reviewing files pursuant

25   to certain requests following the recent depositions, we located a corrupted file that

26   we were since able to recover. The file includes responsive Smartsheet documents,

27   which we are working quickly to prepare for production." Allen Dec., Ex. 13

28

(Smith 11-1-21 email to Nichia).  The next day, Feit produced *1,415 documents totaling 11,114 pages*. Allen Dec., ¶ 18.

Feit then requested an additional call, which was scheduled for November 3, 2021.  *Id.*, Ex. 11 (Papacostas 11-2-21 12:48PM email to Parker).  Counsel for Feit (1) argued that they did not understand how Nichia intended to use the proposed stipulation; (2) suggested that the parties put off agreeing a stipulation until expert reports were exchanged; (3) said they would be sending over additional edits to the parties' previously-agreed upon stipulation; and (4) encouraged Nichia to look at the "smart sheet" document in the new production before filing any motion for sanctions, suggesting that it contained some LED filament model information.  *Id.*, ¶ 19.  Counsel for Nichia stated that Nichia's position has not changed (*i.e.*, that Feit could agree to either of the stipulations Nichia offered or Feit could comply with the Court's order by, *inter alia*, asking it suppliers for the information at issue) and unless Feit did either of those, Nichia intended to proceed with its motion.  Nichia also said it would consider the modified stipulation language and "smart sheet" document.  *Id.*

Following the call, it became apparent to Nichia that there was no "smart sheet" file name in the 1,415 document production.  Counsel for Nichia followed up by email asking if Feit could please identify the document it was referring to, *i.e.*, "the corrupted file that you were since able to recover."  *Id.*, Ex. 14 (Allen 11-3-21 email to Smith).  Counsel for Feit responded that they "were referring generally to what was produced this week, rather than a specific document within that production."  *Id.* (Smith 11-3-21 email to Allen).  So in sum, (1) Feit belatedly produced 1,415 documents—documents which Feit had never previously mentioned during the entirety of this dispute—after stating they found a "corrupted file" that they were producing for an upcoming deposition, and (2) Feit suggested that there may be some relevant LED filament information somewhere in the 11,114-page production (without identifying what or where it was).  In any event,

regardless of what is in this voluminous and belated production (which Nichia is still reviewing), Feit has still not complied with the Court's order which required Feit to either: (1) ask it suppliers for the information and answer Interrogatory No. 6, or (2) agree to Nichia's compromise. **This entire dispute started because Feit took the position that it did not have this information and could not get it**.

After the meeting, Feit also sent an email with its new proposed stipulation. *Id.*, Ex. 11 (Papacostas 11-3-21 email to Colgate and Allen). Nichia has considered this proposed stipulation, but it is again a non-starter, as it only provides that Feit will not challenge representativeness with respect to products with *the same filament* as those used by Nichia to prove infringement. This was never the point. The point is that Feit should not be allowed to challenge representativeness of products of the same model *having different filaments* from those Nichia uses to prove infringement. *See id.* (Colgate 10-26-21 11:01AM email to Papacostas). Accordingly, Nichia is proceeding with this motion.

**B. Feit's Statement of Facts**

Feit Electric disputes Nichia's characterization in its Statement of Facts ("SOF"), and the record is clear that despite Nichia's repeated and unsubstantiated accusations to the contrary, Feit Electric has been operating at all times in good faith with the singular goal of resolving this dispute with minimal Court intervention in a way that is consistent with its obligations under the Federal Rules, and indeed has gone beyond its obligations several times in order to placate Nichia. Moreover, Nichia's SOF (as well as the accompanying Allen Declaration) contains many assumptions regarding Feit Electric's thinking as to any particular proposal at a given time, or whether and to what extent Feit Electric agreed to parts of proposed language, and incorrectly presents them as fact. Nichia further makes many misrepresentations that Feit Electric believes are contradicted by a fair reading of

the record.[7] For example, Nichia's claimed that Feit Electric "propos[ed] entirely different (and unacceptable) language [and] did not even explain why it changed its position," but the interaction Nichia cites shows that Feit Electric's counsel both noted that the proposed language was nearly identical to Nichia's previous proposal and explained the reasons why Feit Electric found that language to be more conducive to a potential agreement. *See* Allen Dec., Ex. 11 (10/19/21 email from S. Papacostas (explaining that "we've tried to take a step back and simplify the language.")). Nichia's SOF is replete with these types of mischaracterizations[8] and embellishments, rendering its entire motion suspect. As the facts leading up to and through the briefing for Feit Electric's motion for partial reconsideration have already been briefed several times to correct Nichia's past mischaracterizations, *see, e.g.*, Dkt. Nos. 112-1 at 11-13 (Statement of Facts), 144-1 at 14-20, and 193 at 2-5, Feit Electric begins with the parties' September 16, 2021 hearing.

As stated in its briefing, and again at the parties' September 16 hearing, Feit Electric sought review of Magistrate Judge Eick's August 5, 2021 order (Dkt. No. 185) because complying with it as written would have greatly prejudiced Feit Electric by interfering with critical third-party supplier relationships necessary to sustain Feit Electric's business. *See, e.g.*, Dkt. No. 193-2 at ¶¶ 24, 27 & 29; Dkt. No. 219 at 4:13-19 & 12:21-23. For example, Feit Electric believed (and still believes) that seeking the information from its suppliers that Nichia requested would cause suspicion that, for example, Feit Electric was attempting to obtain the

---

[7] For instance, Nichia asserts here that "This entire dispute started because Feit took the position that it did not have this information and could not get it." This is demonstrably false. This disputed started because Nichia failed to timely engage in third-party discovery and thus sought to backdoor this information through Feit Electric, at the cost of Feit Electric's relationships at one of the most trying times in supply chain history.

[8] As another example, Nichia continues to assert that "Feit [Electric] has *admitted* that it has a legal right to request the information at issue from its suppliers . . . and Feit [Electric] has obtained this information from its suppliers in the past." But Nichia has already been told that the documents it relied on for such an assertion had to do with SMD packages, and not LED filaments. *See, e.g.*, Dkt. No. 193 n.1.

information to allow it to move production to other factories; Feit Electric was drawing them into a U.S. legal battle; Feit Electric was going to demand defense and indemnification; and/or the price the suppliers charged did not include amounts for such administrative support. Moreover, fulfilling the order would require Feit Electric to expend a significant amount of time and resources making inquiries for the hundreds of Accused Products, which would first require identifying (if possible) which contract factories are associated with which products, and second, making the intensive effort to request the information. *See, e.g.*, Dkt. No. 193-2 at ¶ 30. The Court recognized the validity these concerns at the parties' hearing for the motion for partial review:

> MR. PAPACOSTAS: . . . So to the extent we don't reach an agreement, is there a way, Your Honor, that perhaps rather than asking us to go to every single one of our suppliers, we can try with a handful, like, two or three of the suppliers first and report back . . . so that we don't risk alienating all of our suppliers --
>
> THE COURT: Let me stop you. That is something you can talk amongst yourselves about. If you can agree on something like that, I have no problem. If you can't agree, ***then you can come back to me***, okay?

Dkt. No. 219 at 12:16-13:13 (emphasis added).

At the same hearing, Nichia, for the first time, proposed the following compromise:

> Our position is that the parties have already briefed this issue multiple times now, and during multiple meet and confers, Nichia has offered Feit different compromise positions where we said that if Feit wouldn't use information on LED filaments, as a sword later, for purposes of showing noninfringement or non-representativeness, then we didn't necessarily need the information to have it as a shield.

16

*Id*. at 8:17-23.   As an initial matter, contrary to its representation to the Court, Nichia had never proposed such a compromise in any briefing, correspondence, or meet and confer.  Despite the misrepresentation, Feit Electric indicated its willingness to work on such a compromise.  *See id*. at 12:12-15.   While the Court issued its ruling denying Feit Electric's motion later that day, *see* Dkt. No. 216, as an alternative to compelling Feit Electric to seek information from its suppliers, the Court invited the parties to work together to resolve the issue themselves by stipulation as to such a compromise. *See* Dkt. No. 219 at 10:17-22. The Court also recognized, both during the hearing and in its Order, that discovery deadlines may need to be extended while the parties' tried to resolve the issue. *See* Dkt. No. 216 ("The parties may stipulate to any extension of upcoming deadlines and dates."); Dkt. No. 219 ("If you guys can agree on extensions of dates, I will, you know, based upon the additional time it's going to take to do this discovery -- respond to the discovery, ***I have no problems as long as you guys can agree on dates***.") (emphasis added).

Soon after, on September 23, 2021, Feit Electric sent Nichia an email following up from a September 22, 2021 meet and confer during which the parties discussed a potential compromise to Interrogatory No. 6. Allen Dec., Ex. 11 (9/23/21 email from S. Papacostas to J. Colgate). Feit Electric proposed language, to which Nichia's responded "we are close" and countered with its own suggested revisions. *Id.* (9/24/21 email from J. Colgate to S. Papacostas).

From there, the parties each proposed several more iterations of the stipulation and conferred two more times on October 14 and October 21.  *See id.* Nichia ultimately proposed the following two options for Feit Electric to choose from, presenting them as non-negotiable:

Option 1:

As discussed at the parties' September 16, 2021 hearing before the Court, Feit Electric agrees that it will not contest Nichia's showings of

representativeness or argue non-infringement as it relates to an Accused Product based on the identity of a filament manufacturer or filament model number as used in the product. However, to the extent Nichia asserts infringement based on information regarding a specific filament manufacturer or model, Feit Electric may challenge that showing of infringement based on that information, but it may not challenge that the specific product is not representative of all versions of that model.

This stipulation is without prejudice to Feit's right to challenge infringement based on light emitting properties of the bulbs (but without identifying that certain light emitting properties are connected with certain LED filament models or manufacturers). Nichia reserves all rights to challenge Feit's arguments, including the right to move to strike any information that forms the basis of such arguments that was not timely disclosed during fact discovery.

Option 2:

As discussed at the parties' September 16, 2021 hearing before the Court, Feit Electric agrees that it will not contest representativeness or allege non-infringement as it relates to an Accused Product model based on the identity of the filament manufacturer(s) or filament model number(s) for that model.

*Id.* (10/20/21 email from J. Colgate to S. Papacostas) (annotations in original).

Throughout that time, Feit Electric had remained willing to compromise and negotiate in good faith. *See, e.g., id.* (10/19/21 email from S. Papacostas to J. Colgate ("[I]t appears that we're in agreement as to the scope of what the parties are trying to agree to in practice … we've tried to take a step back and simplify the language, and propose the language below, which more closely resembles your September 24 proposal."); *id.* (10/20/21 email from S. Papacostas to J. Colgate ("It

18

appears that the parties have been very close to agreement, and that the issue here is more a matter of finding the exact language that captures what I believe both sides already understand the stipulation to be."). In particular, in an effort to finally resolve the issue, Feit Electric asked for clarification on Option 1, namely, "what you are referring to or meaning to capture with the terms 'all versions' and 'model.'" *Id.* (10/25/21 email from S. Papacostas to J. Colgate).

Nichia responded on October 26, stating that it was not willing to negotiate further, giving Feit Electric a one-day ultimatum, claiming that time was of the essence, and answering Feit Electric's question:

> Please let us know by close of business tomorrow, October 27, if Feit will agree to the draft stipulation language or not. If not, please confirm that Feit will comply with the Court's order on Interrogatory No. 6 by no later than November 9, 2021. . . . Nichia is responding to Feit's latest question below but is not willing to further negotiate the stipulation language. There is no further time to do so. If Nichia does not respond by close of business tomorrow by either agreeing to the stipulation or agreeing to proceed with the ordered discovery by November 9, Nichia intends to seek relief from the Court.
>
> Our response to your question is as follows: "Model" refers to a model of a Feit lighting product, for example a light bulb model or a string light model. "All versions" refers to all products of a specific model number, regardless of the LED filament component(s) contained therein. For example, if model X is sold with 5 different possible filaments, Nichia can show infringement using a single sample of model X regardless of the LED filament inside. So in this example, let's suppose there are filaments A1, A2, A3, A4, and A5. Nichia may show infringement by testing a model X with filament A1 inside. Feit can challenge Nichia's infringement showing and argue

that model X does not infringe and/or that filament A1 does not meet certain claim elements, but Feit cannot argue that model X is sometimes sold with any of 4 other possible filament variations, and those "versions" of model X do not infringe because (i) Nichia's infringement showing was limited to only a single "version" (i.e., those having filament A1) and/or (ii) the "version" Nichia used for its infringement showing is not representative of all model X products (i.e., model X with filament A1 is not representative of model X with filament A2, model X with filament A3, model X with filament A4, or model X with filament A5). ***In other words, the jury cannot be informed that other filaments are sometimes used in model X. As far as the jury is concerned, the only filament that is ever used in model X is A1, the one Nichia tested and used to show infringement, and the one Feit can argue does not infringe***.

*Id.* (10/26/21 email from J. Colgate to S. Papacostas) (underlining in original, bold and italic emphasis added).

While Feit Electric was still considering Nichia's position, Nichia served a nine-page letter on Feit Electric on the afternoon of October 28, 2021 largely rehashing its view of the history of the parties' negotiations (which Feit Electric disagrees with) and requesting a meet and confer, again highlighting its exigency, citing to its past remarks and repeating that sentiment throughout:

> Nichia is responding to Feit's latest question below but is not willing to further negotiate the stipulation language.  There is no further time to do so.

*Id.*, Ex. 12 at 1 (10/28/2021 letter from J. Colgate to S. Papacostas) (citing 10/26/2021 email from J. Colgate to S. Papacostas) (emphasis in original)). Nichia responded by reiterating the same point that it had made numerous times before—that time was of the essence, and the parties either had to enter into a stipulation or

Feit had to make requests of its suppliers.  *Id.* at 8-9 ("Again, time is the essence, and Nichia does not want to further delay resolution of this issue . . ."). Nichia also acknowledged that the parties were "so close":

> …and the ***numerous weeks*** of Nichia and Feit being ***so close***  to reaching a final agreement on a stipulation, only to have Feit raise more questions and further delay, Nichia intends to file a LR 37 discovery motion with the Court.

*Id.* at 8 (emphases in original).

Because of Nichia's repeated insistence on its need for urgency while it continued to refuse to negotiate or even consider minor revisions to its proposed language, and in an attempt to capture Nichia's concerns and resolve the issue, on October 29, 2021, Feit Electric filed a stipulation regarding Nichia's Interrogatory No. 6 (Dkt. No. 226). Feit Electric subsequently reached out to Nichia to schedule the meet and confer, which the parties held on November 1, 2021. *See* Simeon G. Papacostas Declaration ("Decl."), at ¶ 4. On that call, counsel for Nichia opened by noting that Nichia was willing to entertain further discussion, but then presented its own proposal as an ultimatum on which it would not budge.  *Id*.  The parties were unable to reach agreement.  *Id*.  That same day, in a further effort to reach an agreement, Feit Electric followed up with Nichia, stating that "we are addressing the concerns you raised on this morning's meet and confer with our client in the hopes that we may have more information tomorrow that will help resolve the current dispute." Allen Dec., Ex. 11 (11/1/21 email from S. Papacostas to R. Parker). Nichia's counsel, responded that "I can hold off on our next steps until tomorrow at noon."  *Id.* (11/1/21 email from R. Parker to S. Papacostas).

On the morning of November 2, 2021, Feit Electric's counsel informed Nichia that it was still discussing the issue with its client and would get back to Nichia's counsel shortly.  *Id.* (11/2/21 emails from S. Papacostas to R. Parker). Two hours later, and before noon central time, Feit Electric's counsel contacted Nichia's

counsel to find a compromise. Nichia then filed an objection to Feit Electric's stipulation, indicating that it planned to file a motion for sanctions. *See* Dkt. No. 227. Nichia's counsel did not respond until later that evening: "I was out of pocket this afternoon which is why I needed to hear from you by noon." *Id.* (11/2/21 email from R. Parker to S. Papacostas).

That same evening, Feit Electric responded to Nichia's email to describe its position further, including its reasons for filing its stipulation. As Feit Electric explained:

> Feit Electric proceeded with the stipulation we filed on Friday, which Nichia objected to today, in response to Nichia's repeated statements of urgency, *e.g.*, that "time is of the essence." To move expeditiously and comply with the Court's instructions, Feit Electric provided a stipulation in good faith voluntarily giving up certain rights, expressly addressing the "sword/shield" concerns that Nichia stated to the Court. After having read Nichia's objection, our disagreement with Nichia's characterization of the intent and effect of Feit Electric's stipulation stated in the objection filed today indicates that we may be talking past each other here on execution, given that the parties were so close on substance. ***To that end, we remain willing to continue a dialogue on this issue.*** Please indicate whether Nichia is willing as well, and if so, please let us know what times tomorrow work for a call, to hopefully resolve this issue.

*Id.*, Ex. 11 (11/2/21 email from S. Papacostas to R. Parker) (emphasis added).

The parties met and conferred again on November 3, 2021. On that call, counsel for Feit Electric opened with an offer to provide a slightly revised version of Nichia's "Option 1" language in its most recent proposal. Papacostas Decl. at ¶ 5. Feit Electric also encouraged Nichia to review the recently identified and

produced documents,[9] which included additional Feit Electric filament supplier information.[10]  *Id.*  However, later during that same call, Nichia stated that it was not open to further negotiation, and in fact, planned to move forward with its motion (despite not even seeing the revised stipulation).  *Id.*  Later that same day, Nichia sent Feit Electric a puzzling email:

> Could you please identify the referenced "smart sheet" document (production number or filename) that was referenced during today's meet and confer (the corrupted file that you were since able to recover) so that we can evaluate it in light of today's discussion? We did keyword searches of text and filenames of the latest productions but were unable to locate a "smartsheet"/"smart sheet" document as you all described during the meet and confer.

*Id.*, Ex. 14 (11/3/21 email from L. Allen to K. Smith). Feit Electric responded that "[w]e were referring generally to what was produced this week, rather than a specific document within that production."  *Id.* (11/3/21 email from K. Smith to L. Allen). Feit Electric remains perplexed by Mr. Allen's email and Nichia's apparent inability to locate information, as keyword searches for "smartsheet" or "smart sheet" in that production actually yielded 239 hits across 1,415 documents. *See, e.g.,* FE 459064 & FE 464551; *see also* FE 000069-FE 000077. Papacostas Decl. at ¶ 7.

---

[9] Concurrent with the parties' discussions, Feit Electric was reviewing files pursuant to Nichia document requests made with respect to recent depositions. During that review, Feit Electric discovered a corrupted file, the contents of which it was able to successfully recover. That database included some additional information relating to Feit Electric's filament manufacturers. Feit Electric communicated this to Nichia on November 1, 2021, id., Ex. 13 (11/1/21 email from K. Smith to Nichia Counsel), and promptly produced it on November 2, 2021.

[10] Nichia has already had Feit Electric filament supplier information at its disposal for months, including from its earliest production made on September 29, 2020. For example, that production included a series of purchase orders for Accused Products providing the corresponding LED manufacturers.

The next day, instead of responding to Feit Electric's revised stipulation proposal, Nichia served a motion seeking sanctions with respect to Nichia's Interrogatory No. 6. Feit Electric responded, in part, that:

> [I]t appears that Nichia's issue with the last proposed stipulation was the language added to the end of the second part. To that end, if this would resolve the issue, we would be willing to drop that language entirely, and proceed with a stipulation as follows:
>
>> Feit Electric agrees that it will not contest Nichia's showings of representativeness or argue noninfringement ~~as it relates to an Accused Product~~ based solely or merely on the identity of a filament manufacturer(s) or filament model number(s) ~~as used in the product.~~ used in an Accused Product model.
>
> If this is amenable to Nichia, we will take this back to our Client, and the parties can avoid the unnecessary burdens of briefing and a potential hearing. Please let us know.

Papacostas Decl., Ex. B (11/8/21 email from S. Papacostas to L. Allen). In that same email, Feit Electric indicated its willingness to revisit the issue after opening expert reports are served:

> We reviewed the joint stipulation Nichia served late last night, and frankly, we are perplexed by the positions taken. We believe the stipulation we provided addresses the "sword" and "shield" issues Nichia represented to the Court as its concerns, and find the sanctions Nichia seeks to be both overbroad and not commensurate with the alleged underlying alleged "acts." And as we have explained, we do not see this as an issue that is ripe for resolution at this stage, as it is more properly dealt with after Nichia serves its opening expert report, and accordingly we oppose expedited hearing as well.

1  *Id.* (11/8/21 email from S. Papacostas to L. Allen).

2        As shown below, Feit Electric's most recent proposed language for the

3  stipulation tracks nearly identically to language in Nichia's most recent

4  iterations of its Options 1 and 2:

5

| Feit Electric's 11/8/21 Proposal | Nichia's 10/20/21 Proposal (Option 2) |
|---|---|
| Feit Electric agrees that it will not contest Nichia's showings of representativeness or argue noninfringement based solely or merely on the identity of a filament manufacturer(s) or filament model number(s) used in an Accused Product model. | Option 2: Feit Electric agrees that it will not contest representativeness or allege non-infringement as it relates to an Accused Product model based on the identity of the filament manufacturer(s) or filament model number(s) for that model. |

13        Nichia ignored Feit Electric's proposal, and instead responded with another

14  ultimatum, forcing Feit Electric to brief the issue for the Court:

15        We disagree on the merits, and we cannot afford to delay filing our

16        motion, as opening expert reports are due in less than a month. Please

17        plan to provide Feit's portion of the joint stipulation by no later than

18        COB Thursday, or agree to one of the  proposed stipulations we have

19        already offered.

20  *Id.* (11/8/21 email from L. Allen to S. Papacostas).

21        The relief Nichia seeks here mirrors the exact evidentiary sanctions it twice

22  sought previously. In Nichia's proposed order for its earlier motion for sanctions

23  (Dkt. No. 144-1), Nichia sought the following:

24        Feit is precluded from challenging the representativeness of the

25        "Representative Products" Nichia identified in its infringement

26        contentions and the representativeness of these products is taken as

27        established for purposes of this action (or, put differently, Feit has

28        waived   its    opportunity    to    overcome    Nichia's    prima    facie

demonstration of "Representative Products" for purposes of establishing infringement).

Dkt. No. 144-4.  Additionally, in its opposition to Feit Electric's Motion for Partial Review, Nichia asked again for that relief:

> Because Feit is refusing to produce this information (which is in Feit's control, even if not currently in its possession), Feit should be precluded from relying on this information later to challenge Nichia's proof of representativeness and infringement.

Dkt. No. 199 at 16.

The Court denied Nichia's requests for such a sanction each time. *See* Dkt Nos. 185 and 216.

## III.    ISSUE IN DISPUTE

The issues in dispute are Feit's responses to Interrogatory No. 6.

**Interrogatory No. 6:**

Separately for each of the Accused Products, identify the manufacturers and manufacturer's part numbers for the LED filaments used.

**FEIT'S RESPONSE:**

In addition to its General Objections, Feit Electric specifically objects to this Interrogatory as such requests violate the law in this jurisdiction as it constitutes multiple subparts that ultimately would bring this Interrogatory beyond the limits provided in the applicable Federal Rules and orders. Federal Rule 33(a)(1) ("Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts."); *Rambus Inc. v. NVIDIA Corp.*, C-08-03343 SI, 2011 WL 11746749, at *14 (N.D. Cal. Aug. 24, 2011) ("An interrogatory that seeks information (even a single piece of information) about 300 separate products is asking 300 separate questions."). Feit Electric's objections are based on the presumption that "Accused Products" will be the same or similar in scope in Nichia's Final Infringement Contentions to those identified in its Initial Infringement Contentions.1 *See* Nichia's Initial Infringement Contentions at Appendices 1 and 2. Additionally, based on this scope, Feit Electric objects pursuant to Federal Rule of Civil Procedure 26 as the limited importance and burden of the proposed discovery outweigh its likely benefit.

Subject to its General and Specific Objections, Feit Electric identifies the following suppliers as those that have provided one or more of the products at issue:

- [**REDACTED**]

**FIRST SUPPLEMENTAL RESPONSE (June 14, 2021):**

Pursuant to this Court's Order (Dkt. No. 115), and reserving all rights, Feit Electric provides the following response.

As provided in this Court's Order (Dkt. No. 115), Feit Electric accepts the compromise described on page 39, lines 5-7 of the Joint Stipulation, filed May 5, 2021 (Dkt. No. 112). Specifically, Feit Electric attaches hereto Exhibit B, which includes a list of the correct model numbers for all of the Feit Filament-Style LED lighting products Feit Electric has sold since September 5, 2017.

**SECOND SUPPLEMENTAL RESPONSE (June 14, 2021):**

Reserving all rights, Feit Electric provides the following supplemental response.

For several reasons, Feit Electric is not able to reasonably identify the manufacturers and manufacturer's part numbers for the LED filaments used in the Feit Electric products Nichia accuses. Until recently, Feit Electric did not require its contract factories to specify the LED package supplier and LED package model number used in Feit Electric light devices. (Dkt. No. 112-45). Even so, contract factories for filament packages are typically non-compliant. In the event a part number is provided, it is usually in an abbreviated form and not kept in a consistent manner or stored in a readily searchable database. Further complicating the issue, a single type of Feit Electric product may include different LED filament packages as a supplier may change which LED filament is used. *Id.*

To the extent any of that information is incidentally contained other records or documents in Feit Electric's possession, custody, or control, Feit Electric responds that such information would be found in documents already produced. Pursuant to Federal Rule of Civil Procedure 33(d), such documents can be found at the following Bates Nos.:

[Redacted list of Bates numbers]

Allen Dec., Ex. 1 at No. 6.

1    ***Nichia's Contentions and Proposed Resolution for Interrogatory No. 6***

2         The Court has ordered Feit to serve a complete answer to Interrogatory No. 6

3    three times.  *See* Allen Dec., Ex. 2-4 (Dkts. 115, 185, 216).  But Feit still has not

4    complied.  Feit has refused to make the ordered inquiries of its suppliers and has

5    not served a complete response to Interrogatory No. 6.  There is no additional time

6    to delay resolution of this issue.  Fact discovery closes on November 9, 2021, and

7    opening expert reports are due on December 7, 2021.

8         The Court's most recent order on Interrogatory No. 6 provided two options—

9    Feit could either agree to Nichia's compromise or comply with the Court's Order.

10   Feit has done neither.

11        Feit made it clear from the beginning that it had no intention of asking its

12   suppliers for the information.   Instead, Feit purported to negotiate over a

13   compromise.  Notwithstanding that this was not *exactly* what the Court ordered,

14   Nichia engaged in good faith discussions, trying to address concerns raised by Feit.

15   The parties met and conferred and exchanged emails over the course of six weeks

16   trying to reach an agreement with respect to the language of the stipulation.  In mid-

17   October, the parties reached an agreement.  But the next day, Feit reneged.  Nichia

18   tried for two more weeks to continue to negotiate, and bring the parties back to their

19   agreement.  In late October, it seemed the parties were there again.  Feit's counsel

20   said it would get sign-off on the originally agreed-upon language.  But again, Feit

21   balked.  Finally, Nichia said it could not delay any further and intended to file a

22   motion with the Court since Feit had neither agreed to Nichia's compromise nor

23   complied with the Court's Order.

24        When Nichia announced its intention to file a motion pursuant to Fed. R. Civ.

25   P. 37 asking for *a fourth order on this issue*, Feit unilaterally and without notice

26   filed its proposed stipulation—a stipulation that did not reflect the parties'

27   agreement.  This is a "stipulation" that Nichia never saw or approved, and the

28

28

stipulation does not address the issues raised by Feit's failure to comply with its discovery obligations and the Court's previous orders.

Moreover, Feit's stipulation undermines Nichia's position and flouts the Court's authority.  As explained above, the Court provided Feit with two options—comply and ask suppliers for the information, or agree to *Nichia's* compromise.  Feit did neither.  Indeed, Feit even admitted in a follow-up meet and confer that its stipulation was neither.  To be perfectly clear, what Feit filed is ***not*** what Nichia offered in terms of a compromise and Nichia ***does not*** agree to it.  *See also* Allen Dec., Ex. 6 (Dkt. 227).  Feit's stipulation is entirely self-serving, seeking to excuse Feit from its failure to provide complete information and at the same time allow Feit to rely on its incomplete interrogatory response or any information "produced by Feit Electric (or any other party) in discovery."  *Id.*, Ex. 5 (Dkt. 226).  Because Feit has repeatedly refused to comply with the Court's orders on Nichia's Interrogatory No. 6, and because it has backed out on agreed-upon stipulation language with Nichia on at least one occasion, and further in view of Feit's filing of its self-serving unilateral stipulation, Nichia requests that the Court impose sanctions on Feit in two ways.  First, Nichia requests that the Court issue an order precluding Feit from using its production of selective information in response to Interrogatory No. 6 as a sword and that it be deemed established that any Accused Straight-Filament Product or Accused Curved-Filament Product is representative of each other Accused Straight-Filament Product or Accused Curved-Filament Product, respectively (*see, e.g.*, Allen Dec., Ex. 7 (Dkt. 59) at 4-5); and second, Nichia requests monetary sanctions pursuant to Fed. R. Civ. P. 37(b)(2)(C).

**First**, Nichia requests as a sanction that the Court preclude Feit from contesting "representativeness" in this lawsuit.[11]  The information Nichia seeks is

---

[11] Nichia is aware of the concern Judge Wu raised regarding the fact that he has already ruled on representativeness and that the burden has shifted. *See* Allen Dec., Ex. 4__ (Dkt. 216) at 8 ("[I]t is unclear to the Court what Plaintiff hopes to gain by extensively litigating the further minutia requested by Interrogatory No. 6.") (citing

1    directly relevant to the scope of Feit's liability for infringement.  Nichia needs to

2    rely on showings of representativeness to prove its infringement case (i.e., Nichia

3    must rely on a subset of products – "representative" products – to prove

4    infringement of the larger set), and yet Feit has been playing games with Nichia's

5    discovery requests related to this information, and has acted in blatant disregard of

6    **three Court Orders.**  As an alternative, Nichia is entitled *at the very least* to an

7    order as follows:

8         Feit is precluded from using information related to Interrogatory No.

9         6—specifically, information regarding the suppliers or model numbers

10        of filaments used in the Accused Products in this case—or the lack of

11        such information, to avoid or limit its liability and such other issue or

12        evidentiary sanctions the Court may determine are necessary to

13        remedy Feit's failure to comply with the Court's orders.

14   *See, e.g.*, Fed. R. Civ. P. 37(b)(2)(A)(ii); *Carson Cheng v. AIM Sports, Inc.*, No.

15   CV103814PSGPLAX, 2011 WL 13175663, at *10-13 (C.D. Cal. Aug. 23, 2011);

16   *Star Envirotech, Inc. v. Redline Detection, LLC*, No. SACV1201861JGBDFMX,

17   2015 WL 9093561, at *6, *8-9 (C.D. Cal. Dec. 16, 2015); *Jang v. Sagicor Life Ins.*

18   *Co.*, No. EDCV171563JGBKKX, 2019 WL 699791, at *5 (C.D. Cal. Feb. 20,

19   2019); *Choudhuri v. Wells Fargo Bank, N.A.*, No. 15-CV-03608-VC (KAW), 2017

20   WL 5598685, at *9 (N.D. Cal. Nov. 21, 2017); *Davis v. Elec. Arts Inc.*, No. 10-CV-

21   03328-RS (DMR), 2018 WL 1609289, at *4-5 (N.D. Cal. Apr. 3, 2018); *Alexsam,*

22   *Inc. v. IDT Corp.*, 715 F.3d 1336, 1342-45 (Fed. Cir. 2013).

23        "The Ninth Circuit has articulated a five-part test for evaluating whether a

24   party's requested evidentiary sanctions are appropriate. The factors of that test are

25

26   Dkt. 59 at 6).  However, it is not clear that the burden has shift for all purposes,
     including throughout trial.  Moreover, if the Court or jury conclude that Feit has meet
27   the shifted burden, Nichia has no access to necessary information.  It is clear though
     from Feit's actions that it intends to contest representativeness using the selective
28   information it has produced.  In view of Feit's conduct regarding this dispute, the issue
     should be closed.

as follows: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Carson Cheng.*, 2011 WL 13175663, at *11 (citing *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)).

The first two factors—public interest in expeditious resolution of litigation and the court's need to manage its dockets—weigh in favor of evidentiary sanctions. Feit has needlessly delayed this action by refusing to comply with the Court's Order and by dragging out the negotiations regarding a proposed stipulation, only to neither comply with the Court's Order nor accept Nichia's compromise. Such actions weigh in favor of evidentiary sanctions under the first two factors, particularly in view of the fact that fact discovery closes on November 9 and opening expert reports are due on December 7, 2021. *See, e.g.*, *Carson Cheng*, 2011 WL 13175663, at *11; *Jang*, 2019 WL 699791, at *5.

The third factor— the risk of prejudice to Nichia—also weighs in favor an evidentiary sanction. As previously stated, Interrogatory No. 6 had at least two purposes: (1) to aid Nichia in the efficient proof of representativeness, and (2) as a defensive measure, to allow Nichia to determine whether Feit has any basis to challenge whether a given product of an Accused Model is representative of other Feit products of the same Accused Model. Since Feit did not provide the requested discovery, Nichia expended significant time and resources conducting testing of more than a hundred products covering not only different bulb types, but also potentially different filaments. Allen Dec., ¶ 21. Nichia did so because it had to proceed without the information Feit was ordered to provide. Nichia also had to do so because Feit was playing "hide the ball," and Nichia did not know what information Feit may rely on down the road to contest its showings of representativeness (and thus, infringement).

1    In short, Feit's serial violations of this Court's orders has inhibited Nichia's

2    ability to efficiently develop its case.  Also, allowing Feit to make arguments later

3    based on its selective production of information responsive to Interrogatory No. 6

4    would undoubtedly harm Nichia; this is a classic situation of a party using its

5    selective production of discovery as a sword.  Thus, the third factor weighs in favor

6    an evidentiary sanction.  *See, e.g.*, *Carson Cheng*, 2011 WL 13175663, at *11;

7    *Jang*, 2019 WL 699791, at *5.

8        The fourth factor— resolution of cases on their merits—also weighs in favor

9    of issuing an evidentiary sanction.  Nichia has not asked for an order barring Feit's

10   affirmative defense of non-infringement.  The sanction sought is that Feit cannot

11   contest a certain issue (representativeness) because Feit has "been less than

12   forthcoming with their production of [information] in this case, to the detriment of

13   Plaintiff[], and at the risk of 'interfer[ing] with the rightful decision of the case.'"

14   *Carson Cheng*, 2011 WL 13175663, at *11 (quoting *Adriana Int'l Corp. v. Thoeren*,

15   913 F.2d 1406, 1412 (9th Cir. 1990)); *Jang*, 2019 WL 699791, at *5 (same).

16       The fifth factor— the availability of less drastic sanctions—also favors an

17   evidentiary sanction.  Feit's actions have indicated that it has no intention of

18   complying with the Court's Order and seeking additional information from its

19   suppliers because of the effect it could have on Feit's business relationships.  *See*

20   *Jang*, 2019 WL 699791, at *5 ("[T]here is no reason to believe that the imposition

21   of lesser sanctions will be any more successful than in the past.").  There is no less

22   drastic sanction than precluding Feit from contesting representativeness by utilizing

23   selective information it has produced, where it has not made available for Nichia's

24   use the full set of information responsive to the interrogatory and inhibited Nichia's

25   ability to efficiently develop its case.  There are a number of more drastic

26   sanctions—including precluding Feit from contesting infringement—but Nichia is

27   not asking for those at this time.

28

Accordingly, all of the factors weigh in favor of granting an evidentiary sanction for Feit's non-compliance with the Court's Order.

**Second**, pursuant to Fed. R. Civ. P. 37(b)(2)(C), Nichia asks the Court to impose monetary sanctions on Feit to compensate Nichia for its time related to this discovery dispute.

"Under Federal Rule of Civil Procedure 37(b)(2)(C), where a party has engaged in discovery abuse and failed to comply with a court order, the Court 'must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure unless the failure was substantially justified or other circumstances make an award of expenses unjust.'" *Carson Cheng*, 2011 WL 13175663, at *10 (quoting Fed. R. Civ. P. 37(b)(2)(C)). Here, Feit has neither complied with the Court's Order nor agreed to Nichia's compromise. The parties have extensively litigated this issue and Nichia now has to request a *fourth order* on this issue. Nichia requests that the Court issue an order requiring Feit to compensate Nichia for its time and expense related to this motion pursuant to Fed. R. Civ. P. 37(b)(2)(C) (in an amount to be determined following the Court's ruling on this motion).

### *Feit's Position and Proposed Resolution for Interrogatory No. 6*

#### *The Issue Presented has been Resolved by Feit Electric's Assurances*

This issue is no longer ripe, or even real. Feit Electric has provided a stipulation waiving certain rights, and further has made clear that it does not seek to rely on filament source information as a sword or a shield. However, to be clear, this does not mean Nichia now has *carte blanche* to abuse this stipulation, by for instance, making demonstrably false statements regarding the filaments, as it has signaled it wants to do.[12] Feit Electric believes that its current stipulation on file is

---

[12] For instance, if Nichia tests only one filament to show that light comes out at a certain wavelength, Feit Electric should be able to argue that this is statistically inadequate given the number of units at issue; however, Feit Electric will not argue that the wavelength is different solely due to the filament manufacturer or filament

adequate to address the concerns Nichia stated to the Court, and accordingly believes this issue to be resolved at this time. Moreover, Feit Electric has repeatedly emphasized that it is willing to revisit this issue upon receipt of Nichia's expert disclosures. Currently, Feit Electric has no idea how Nichia seeks to use this information yet has done its best to allay Nichia's vague concerns. Feit Electric remains open to revisiting once the specifics have been disclosed; nevertheless, Nichia insists on burdening this Court with this issue now.

Nichia complains that Feit Electric has not "agreed to Nichia's compromise," but this is entirely because Nichia cannot seem to take "yes" for an answer. Each time that Feit Electric attempted to meet Nichia's demands or asked it to clarify its positions, Nichia moved the goalposts and sought progressively broader concessions, either via revision or by providing an explanation of its language that deviated from Feit Electric's previous understanding based on Nichia's representations on the parties' meet and confers. While Nichia expressly admits in its motion that it believes the Court required Feit Electric to accept ***any terms*** Nichia wanted, including and up to seeking a *de facto* recapturing of its twice-rejected bid for a blanket order on representativeness, Feit Electric respectfully submits that the Court did not intend to give Nichia a stick to demand more than what it indicated to the Court. Feit Electric believes that its stipulation currently on file with the Court (Dkt. No. 226) sufficiently addresses Nichia's concerns as it relayed them to this Court. That is, Nichia's stated concern before the Court was that Feit Electric would somehow rely on the absence of (or incomplete) filament model number and manufacturer information to raise questions regarding representativeness or non-infringement. Feit Electric has repeatedly indicated it would not do so. And even after filing its stipulation waiving those rights, when

---

model type, or even that the wavelength differs from unit to unit based on the manufacturer or supplier. That is, Feit Electric should be able to challenge improper methodology or conclusions that ***do not*** rest on filament supplier or model information. The sanctions Nichia seeks would improperly bar such arguments.

Feit Electric proposed even more concessions, Nichia failed to even consider them and instead served its motion. *See* Allen Decl., Ex. A. Feit Electric again, hoping to avoid burdening the Court with briefing on what Feit Electric believes to be a premature (and inappropriate) motion *in limine* on Nichia's part, went back again and proposed an additional stipulation that is nearly identical to Nichia's previous proposals:

> Feit Electric agrees that it will not contest Nichia's showings of representativeness or argue non-infringement as it relates to an Accused Product based solely or merely on the identity of a filament manufacturer(s) or filament model number(s) as used in the product.
> used in an Accused Product model.

*See* Papacostas Decl., Ex. B; *compare with* Allen Decl., Ex. 11 ("Feit Electric agrees that it will not contest representativeness or allege non-infringement as it relates to an Accused Product model based on the identity of the filament manufacturer(s) or filament model number(s) for that model."). Again, Nichia rejected this proposal.

Feit Electric has already agreed to not contest Nichia's showings of representativeness or allege non-infringement as it relates to an Accused Product model based only on the identity of the filament manufacturer or model number used in that model where that information has not previously been produced in discovery. See Dkt. No. 226. This should fully address the "sword and shield" concerns Nichia claimed before this Court, and is both a just outcome and specifically relates to Nichia's ostensible concern that Feit Electric might attempt to rely on the absence of, or otherwise "incomplete," information to contest representativeness.

### *Nichia's Failure to Conduct its own Discovery*

To the extent this Court wades into the history of this dispute again, it is important to note that Nichia at all times had the ability to get this information

directly from the source, *yet failed to even try to do so*. Nichia spends a great deal of its motion accusing Feit Electric of bad acts such as "hiding the ball," "reneging on agreements," "backtracking," and other pejoratives. But omits the context regarding why the parties are back here again. After Feit Electric explained that much of the information sought by Interrogatory No. 6 was in the possession of third parties, Nichia requested that Feit Electric provide its supplier information, *expressly because* such information "will be useful to help start the ball rolling on [third party] subpoenas and letters rogatory processes which are time-consuming." Dkt. No. 193-3; *see also* Dkt. No. 193 at 2-5. Feit Electric identified its suppliers to Nichia on March 29, 2021. *See* Dkt. No. 144-2, Ex. 1.

During all this time, Nichia never served discovery requests on any of the foreign suppliers, even though Nichia previously had no problem suggesting that Feit Electric utilize the letters rogatory process and arguing that Feit Electric "knew (or should have known)" that third party discovery "required separate judicial process." *See* Dkt. No. 206 at 11. Nichia steadfastly refused to take its own advice, instead choosing to seek this information through Feit Electric even after being informed that Feit Electric does not have this information, as the Court has also recognized twice. *See* Dkt. Nos. 185 and 216. Nichia cannot now cry foul and blame Feit Electric for its failed litigation strategy to continue seek information through Feit Electric rather than traditional channels of third party discovery.

### *Nichia's Proposed Sanctions are Overbroad and Unwarranted*

At this point, Nichia has been provided assurances and a stipulation that Feit Electric will no rely on the source of the filament as a defense. There is simply no further issue to be addressed, and certainly no conduct to be sanctioned. But to the extent this Court considers such extreme relief, the sanctions that Nichia now seeks are simply not commensurate with the underlying acts of which it complains, and are accordingly unwarranted. Indeed, while Nichia complains that it has had to go to the Court more than once on this issue, the Court rejected those same evidentiary

sanctions twice before. See Dkt. Nos. 185 & 216. Nichia's requested sanctions, **by its own admission**, go well beyond "sword and shield" concerns that purportedly were at the heart of the compromise it proposed before the Court, and furthermore are not commensurate with the conduct of which Nichia complains. Indeed, Nichia overreaches when it asks this Court to issue a blanket order "that Feit should be precluded from contesting 'representativeness' in this lawsuit." *See* Nichia's Introduction. Nichia does not provide any justification for such a broad order beyond its own self-serving desire to have a "cleaner and simpler" time trying to prove its case. *Id.* Feit Electric respectfully submits that the Court, in providing for alternative resolution via negotiation of a reasonable stipulation to address Nichia's stated and specific "sword and shield" concerns, did not intend to give Nichia *carte blanche* to issue a far broader ultimatum under the guise of a "compromise," that Nichia could then use as a cudgel to keep moving the goalposts and manufacture a dispute as a means to relitigate its twice-rejected bid for sanctions. Accordingly Nichia's motion should be denied. *See, e.g., Davis v. Schneider*, 218CV01910VBFMAA, 2020 WL 9074713, at *4 (C.D. Cal. Dec. 18, 2020) ("Due process considerations, however, counsel that the Court's use of sanctions is not unlimited. The Court's discretion is limited in two ways: (1) any sanction must be 'just'; and (2) the sanction must specifically relate to the specific claim or defense that was at issue in the order to provide discovery.") (internal citations omitted). To that end, Nichia's recitation and application of the five-part test from *Carson Cheng v. AIM Sports, Inc.*, No. CV103814PSGPLAX, 2011 WL 13175663, at *10-13 (C.D. Cal. Aug. 23, 2011), favors Nichia only under the most strained reading of the facts.

> *Nichia's Proposed Sanctions do not Expedite the Resolution of Litigation*

For example, Nichia claims that the public's interest in expeditious resolution of litigation and the Court's need to manage its dockets weighs in favor of Nichia. In support, Nichia baselessly lambasts Feit Electric "for refusing to comply with the

Court's Order and by dragging out the negotiations regarding a proposed stipulation." But as discussed above, the record reflects that while Feit Electric has been negotiating in good faith and with an eye toward reaching agreement, Nichia has repeatedly played hardball, issuing unilateral, take-it-or-leave-it ultimatums with exploding deadlines, apparently under the impression that the Court authorized it to expand the scope of its purported proposal. As just one example, while purportedly claiming extreme urgency, Nichia has flat-out refused to even consider Feit Electrics most recent two proposals. Nichia's view that the Court ordered Feit Electric to take ***any terms*** proposed by Nichia, even those that go well beyond its stated concerns to the Court, incentivizes its hardline stance, especially where Nichia's ultimate goal may be to relitigate its failed sanctions motions. Against this backdrop, Nichia's accusations that Feit Electric had any incentive other than to come to some level of agreement rings hollow. There is simply no reason for Feit Electric to have "dragged out" the parties' negotiations, as Nichia asserts. Nichia, on the other hand, appears to believe that a failure of the parties' to agree on exact language should result in Nichia being awarded a windfall in discovery sanctions that are far removed from the issue here. This factor does not favor Nichia.

*This Issue does not Affect the Court's Need to Manage its Docket*

Nor has this dispute affected any case deadlines; while the parties have stipulated to several scheduling changes no dates on the Court's calendar have been moved in relation to the current dispute. And the Court even contemplated allowing the parties additional time to comply. *See, e.g.*, Dkt. No. 216 ("The parties may stipulate to any extension of upcoming deadlines and dates."); Dkt. No. 219 at 14 ("THE COURT:  Sure. If you guys can agree on extensions of dates, I will, you know, based upon the additional time its' going to take to do this discovery -- respond to the discovery, ***I have no problems as long as you guys can agree on dates***. If you can't agree on dates, then come back to me and I will set dates based upon the situation.") (emphasis added). And as discussed above, the notion that

Nichia can complain of any urgency is illusory at best, as any purported "urgency" here rings hollow in the face of Nichia's refusal to seek this information directly months ago via third party discovery. Moreover, Feit Electric remains willing to revisit this issue during expert discovery should it even be relevant. Accordingly, this factor, too, favors Feit Electric.

*Nichia Has Failed to Demonstrate Prejudice*

Notably, Nichia has not demonstrated any actual prejudice it would face should it not receive the evidentiary sanction it requested, especially in view of Feit Electric's existing stipulation and its willingness to revisit the issue as necessary later on in the case. Indeed, Feit Electric will be in the dark as to how Nichia plans to use such LED filament information, if it uses it at all, until after receiving Nichia's expert report. Nichia's attempt to preclude arguments Feit Electric may make before it even knows what it is rebutting has things exactly backwards, and in fact would result in prejudice to Feit Electric, not Nichia.

On the other hand, Nichia remarkably asserts that it "did not know what information Feit [Electric] may rely on down the road to contest its showings of representativeness (and thus, infringement)." But the only way Nichia's statement could be true is if it has failed to read the detailed responses Feit Electric provided to its interrogatories on this exact topic. *See* Allen Decl., Ex. 1 (Interrogatory No. 5); Papacostas Decl., Ex. D (Interrogatory No. 19). For example, by way of non-limiting examples, Feit Electric has listed at least the following characteristics on which it may contest representativeness, in addition to the make and model number (to the extent that information has been produced in discovery): the type, shape, nature, number, and size of the board or boards being used; the location, size, or number of purported center portions within any boards; the shape of the board or boards as it relates to the purported center portions relative to the purported end portions; the type, composition, structure, light qualities, light pathways, size, number, arrangement, electric connection, mounting, structure, and details as to the

light emitting element chips present; the nature, composition, components, impact, light alteration, size, structure, and other features of the resin used; the method for manufacture and application of the resin; the nature, size, thickness, shape, color, and other properties of the bulb; the composition and functionality of the leads; the support mechanisms for the light emitting element chips; the size and compatibility of the base; the plan view of each product; and/or the nature, impact, and output of light including the alterations to the light emanating from each LED. *See* Papacostas Decl., Ex. D. Nichia has yet to undertake any effort nor explain whether it believes any of these characteristics are shared, and moreover, has not shown that the LED filament model number or manufacturer information has any bearing on differences based on any of these other categories. For Nichia to seek a Court order that precludes Feit Electric from challenging representativeness *at all*, in particular precluding challenges based on any of the many other categories of differences identified here, illustrates the inappropriate overreach of Nichia's sanctions request. Far from prejudicing Nichia, this would be highly prejudicial to Feit Electric.

Moreover, Nichia's alleged prejudice is self-inflicted, as it is undisputed that Nichia refused to utilize third party discovery channels despite having had months to do so. Accordingly, Nichia's refusal to abide by demands it made of Feit Electric earlier in this case regarding going through the proper channels of third party discover *must* be considered when evaluating any prejudice it now claims to have suffered. *Accord. tagTrends, Inc. v. Nordstrom, Inc.*, 2014 WL 12587045, at *2 (C.D. Cal. Aug. 29, 2014) (denying plaintiff's motion to compel where Plaintiffs "'made absolutely no effort … to obtain records directly from' [third-party suppliers]. Indeed, Plaintiffs apparently never served any subpoenas upon the third-party … They cannot expect Defendant to conduct their discovery for them."). Nichia also claims to require this information for "efficient proof of representativeness," but as even this Court has observed, Nichia has yet to explain *how* such information would make its arguments more efficient. *See, e.g.*, Dkt. No.

216 at 8 ("[I]t is unclear to the Court what Plaintiff hopes to gain by extensively litigating the further minutia requested by Interrogatory No. 6."). Nichia has simply not established any prejudice here.

Finally, Nichia's framing of Feit Electric's efforts to provide all the relevant information in its possession, custody, or control—literally routine discovery efforts—as somehow "inhibit[ing] Nichia's ability to efficiently develop its case" by "allowing Feit [Electric] to make arguments later based on its *selective production* of information responsive to Interrogatory No. 6" (emphasis added) suffers from the flawed premise that Feit Electric is withholding relevant information in its possession, custody, or control. Nichia vaguely asserts that Feit's production of all the information available to it, and its potential reliance on that information, i.e., information available to both parties here that is routinely relied upon in discovery, "would undoubtedly harm Nichia." But once again, Nichia fails to explain *how*. Moreover, Nichia's position that so-called "incomplete" information entitles it to broad discovery sanctions, *would not change even if Feit Electric were to ask its suppliers for the requested information*, since it is almost certain that truly "complete" information does not exist or is not obtainable by Feit Electric. Even the Court recognized that it was only ordering Feit Electric to make inquiries regarding only a subset of Accused Products, all but ensuring that Nichia would still be making the same arguments based on the flawed premise that it only had "incomplete" information at its disposal. *See, e.g.*, Dkt. No. 216 at 7. Nichia's requests for monetary sanctions connected to this briefing should be rejected for this reason, too, as Nichia would have nevertheless brought this motion in any event.

Crucially, Nichia has admitted it simply has not attempted to review the documents Feit Electric has produced in this case before trying to preclude Feit Electric from potentially relying on them. As just one example (out of many), Nichia complains that it "knows who some of the suppliers are, but does not know

which filaments from those suppliers Feit uses, nor does Nichia know which filaments Feit uses as 'substitutes' for others in the same products." *See* Nichia's Introduction at n.2. Nichia further claims that "[i]f Feit provided information saying that model X can contain any of three different filaments, filament A1, A2, or A3, for example, Nichia would have sought samples of all three variations of model X and tested each." Nichia's Introduction at n.1. But Feit Electric ***provided this exact type of information*** where available, even in its first production. *See, e.g.*, Papacostas Decl., Ex. C (documents produced on September 29, 2020 showing that an Accused Product model uses filaments supplied by two different manufacturers, identifying both the manufacturers and filament model numbers). Just like its reaction to Feit Electric's most recent production, in which it refused to even take a cursory review, Nichia simply has not bothered to review the documents produced to it. But Nichia cannot bury its head in the sand and then claim that it cannot see. For all these reasons, not only is Nichia not prejudiced here, but granting its overbroad sanctions request would prejudice Feit Electric, by depriving it of potential arguments made based on information that has been produced in this case. Stripped of its vague attorney argument, Nichia's motion fails to demonstrate any prejudice. On the other hand, the sanctions Nichia seeks are admittedly punitive and meant to waive rights that are not even related to the LED filament information, which would be highly prejudicial to Feit Electric. This factor therefore supports Feit Electric.

*Nichia's Proposed Sanctions are Contrary to Public Policy*

Nichia's assertions that public policy favoring disposition of case on their merits and the availability of less drastic sanctions also somehow favor Nichia are similarly without merit. As an initial matter, public policy should be that litigants first employ the available tools and follow the Federal Rules. Here, Nichia made absolutely no effort to seek this information from the third-party suppliers, despite being provided that information by Feit Electric at the outset of the case.

Nevertheless, without even taking this simple step, Nichia is asking that Feit Electric not be able to contest representativeness ***at all***, which on its own is far broader than the issue being litigated here, i.e., whether Feit Electric should be able to contest representativeness based on the LED filament model number or manufacturer information. Moreover, Nichia continues to assert that Feit Electric has "been less than forthcoming with their production of information in this case," implying that Feit Electric is sitting on information in its possession, custody, or control that it has not handed over. Despite Nichia attempting to relitigate this specific factual issue *ad nauseum*, as Feit Electric has repeatedly explained, this is simply false. Accordingly, as with the others, the fourth *Carson Cheng* factor fails to support Nichia.

### Less Drastic Sanctions are Available

Regarding the availability of less drastic sanctions, Nichia has already admitted that the compromise it claims to have sought is far narrower than the sanctions it seeks now. That is, less drastic sanctions are not only available, but Feit Electric has already stipulated to a waiver of its rights commensurate with those. In light of its own admissions, Nichia cannot seriously dispute that less drastic sanctions are available here, and that its attempt to impose far more punitive damages is really meant to interfere with Feit Electric's other claims and defenses, which is improper. *See Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 591 (9th Cir. 1983) ("Sanctions interfering with a litigant's claims or defenses violate due process when imposed merely for punishment of an infraction that did not threaten the rightful decision of the case.").

### Nichia Should Not be Awarded Fees

Finally, Nichia also asks the Court to compensate it for the time spent briefing an issue that it never should have brought in the first place, and on which it lost twice already. Especially in light of its position that confirms it based its motion based on purportedly "incomplete" information, and further indicating it

would have brought this motion even had Feit Electric asked its suppliers for the requested information, Nichia should not be awarded fees for seeking inappropriate evidentiary sanctions.

DATED:  November 12, 2021     By:     */s/ Elizabeth M. Weldon*

SNELL & WILMER L.L.P

WILLIAM S. O'HARE (SBN 82562)
wohare@swlaw.com
ELIZABETH M. WELDON (SBN 223452)
eweldon@swlaw.com
600 Anton Blvd., Suite 1400
Costa Mesa, CA 92626
Telephone: (714) 427-7000
Facsimile: (714) 427-7799

ROTHWELL, FIGG, ERNST & MANBECK P.C.

ROBERT P. PARKER (*pro hac vice*)
rparker@rfem.com
MARTIN M. ZOLTICK (*pro hac vice*)
mzoltick@rfem.com
JENNY COLGATE (*pro hac vice*)
jcolgate@rfem.com
MICHAEL JONES (*pro hac vice*)
mjones@rfem.com
DANIEL R. MCCALLUM (*pro hac vice*)
dmccallum@rfem.com
MARK RAWLS (*pro hac vice*)
mrawls@rfem.com
D. LAWSON ALLEN (*pro hac vice*)
lallen@rfem.com
ROTHWELL, FIGG, ERNST &MANBECK P.C.
607 14th Street N.W., Suite 800
Washington, DC 20005
Telephone: (202) 783-6040
Facsimile: (202) 783-6031

*Attorneys for Plaintiff Nichia Corporation*

1

2            By: */s/ Simeon Papacostas*

3            STRADLING YOCCA CARLSON & RAUTH,

4            P.C.

5            SALIL BALI (SBN 263001)

            sbali@sycr.com

6            MATTHEW R. STEPHENS (SBN 288223)

            mstephens@sycr.com

7            STRADLING YOCCA CARLSON & RAUTH, P.C.

8            660 Newport Center Drive, Ste. 1600

            Newport Beach, CA 92660

9            Telephone: (949) 725-4000

10           BENESCH, FRIEDLANDER, COPLAN &

11           ARONOFF LLP

12           KAL SHAH (admitted *pro hac vice*)

            kshah@beneschlaw.com

13           SIMEON PAPACOSTAS (admitted *pro hac vice*)

            spapacostas@beneschlaw.com

14           KATHERINE A. SMITH

            ksmith@beneschlaw.com

15           BENESCH, FRIEDLANDER, COPLAN &

16           ARONOFF LLP

            71 S. Wacker Drive, Suite 1600

17           Chicago, IL 60606

18           Telephone: (312) 212-4949

            Facsimile: (312) 767-9192

19 4871-7046-7075.1

20

21

22

23

24

25

26

27

28

45