DAVID GURNICK (SBN 115723)
dgurnick@lewitthackman.com
JEFFREY A. KOBULNICK (SBN 228299)
jkobulnick@lewitthackman.com
JESSICA W. ROSEN (SBN 294923)
jrosen@lewitthackman.com
LEWITT, HACKMAN, SHAPIRO,
MARSHALL & HARLAN
16633 Ventura Boulevard Eleventh Floor
Encino, CA 91436
Telephone: (818) 990-2120
Facsimile: (818) 981-4764

ROBERT P. PARKER (*pro hac vice*)
rparker@rfem.com
MARTIN ZOLTICK (*pro hac vice*)
mzoltick@rfem.com
JENNY COLGATE (*pro hac vice*)
jcolgate@rfem.com
MICHAEL JONES (*pro hac vice*)
mjones@rfem.com
MARK RAWLS (*pro hac vice*)
mrawls@rfem.com
D. LAWSON ALLEN (*pro hac vice*)
lallen@rfem.com
NICOLE DEABRANTES (*pro hac vice*)
ndeabrantes@rfem.com
ROTHWELL, FIGG, ERNST & MANBECK P.C.
901 New York Avenue N.W.
Suite 900 East
Washington, DC 20001
Telephone:  (202) 783-6040
Facsimile:   (202) 783-6031

Attorneys for Plaintiff Nichia Corporation

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHIA CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>FEIT ELECTRIC COMPANY, INC.<br><br>Defendant. | Case No.  2:20-cv-00359-GW-E<br><br>***REDACTED***<br><br>**PLAINTIFF NICHIA CORPORATION'S MOTION TO PRECLUDE THE EXPERT TESTIMONY OF  DAWN HALL**<br><br>Hearing Date: September 15, 2022<br>Time:      8:30 a.m.<br>Ctrm:     9D |

# **<u>TABLE OF CONTENTS</u>**

I.      BACKGROUND ...................................................................................1

II.     LEGAL STANDARD ...........................................................................3

III.    ARGUMENT ........................................................................................5

     A.    Ms. Hall Should be Precluded From Presenting Her Reasonable
Royalty Opinion at Trial Because Her Conclusions Regarding the
Availability of the "Non-Infringing" Alternatives are Beyond Her
Expertise and Lack Foundation ...........................................................5

     B.    Ms. Hall Should be Precluded From Testifying on Reasonable Royalty
Damages Because Her Methodology for Determining a Reasonable
Royalty is Unreliable .........................................................................9

     C.    Ms. Hall's Treatment of Accused Products as Non-Infringing
Alternatives is Legally Erred, and Any Testimony Based on This
Flawed Premise Should be Precluded..................................................11

     D.    Ms. Hall Should Be Precluded From Opining on the Technical
Comparability of the ▮▮▮ Patents and the Patent-in-Suit Because It
is Outside of Her Area of Expertise ....................................................13

     E.    Ms. Hall Should be Precluded from Testifying on the Nichia-GVL
Agreement Because Her Opinion is Speculative and Outside of Her
Expertise..........................................................................................15

IV.     CONCLUSION ..................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Archie v. Pop Warner Little Scholars, Inc.*,
  No. 16-6603, 2019 WL 8230854 (C.D. Cal. Dec. 27, 2019) ................................. 5

*Cooper v. Brown*,
  510 F.3d 870 (9th Cir. 2007) ................................................................................. 4

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) .............................................................................................. 1

*Elosu v. Middlefork Ranch Inc.*,
  26 F.4th 1017 (9th Cir. 2022) ............................................................................... 4

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997) ............................................................................................ 17

*Grain Processing Corp. v. Am. Maize Prods. Co.*,
  185 F.3d 1341 (Fed. Cir. 1999) ...................................................................... 8, 11

*In re Wholesale Grocery Prods. Antitrust Litig.*,
  946 F.3d 995 (8th Cir. 2019) ................................................................................ 4

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) .............................................................................................. 4

*Richman v. Sheahan*,
  415 F.Supp.2d 929 (N.D. Ill. Feb. 23, 2006) ..................................................... 17

*Turner v. ThyssenKrupp Materials, N.A.*,
  492 F.Supp.3d 1045 (C.D. Cal. Oct. 1, 2020) ..................................................... 4

*Venture Corp. v. Wherify Wireless, Inc.*
  No. 04-8583, 2005 WL 5960919 (C.D. Cal. Sept. 23, 2005) ............................... 5

*Webasto Thermo & Comfort N. Am., Inc. v. Bestop, Inc.*,
  No. 16-13456, 2019 WL 3334563 (E.D. Mich. July 25, 2019) ........................... 12

**Other Authorities**

John W. Schlicher, Patent Law: Legal and Economic Principles § 9.05[2][l](1997)

...........................................................................................................................11

**Rules**

Fed. R. Civ. P. 702...........................................................................................2, 6, 8

Fed. R. Evid. 702 .............................................................................................1, 3, 17

Plaintiff Nichia Corporation ("Nichia") submits this memorandum in support of its motion to preclude the testimony of Dawn Hall. Ms. Hall submitted an expert report on damages, and testified at a deposition, on behalf of Defendant, Feit Electric Company, Inc. ("Feit"). As explained below, pursuant to Fed. R. Evid. 702 and the Court's "gatekeeping function," *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993), the Court should preclude portions of Ms. Hall's testimony as to damages.

## I.    BACKGROUND

Feit's damages expert, Dawn Hall, has a B.S. in Business Administration (Finance). *See* Declaration of Jenny Colgate ("Colgate Dec."), Ex. A, ¶ 1. Ms. Hall purports to be an expert in damages calculations, including the calculation of reasonable royalty damages in patent cases. *Id.*, ¶ 2. During her deposition, Ms. Hall confirmed that she has no technical, engineering, or lighting-industry experience. Colgate Dec., Ex. B at 17 ("I am not a technical expert by any means"); 59 (no training in engineering, has never designed a lightbulb, and has never worked in the field of light bulbs); 163 ("I can't make a determination of anything related to the technical aspects of one patent versus the next. I don't have the capabilities or the knowledge to do that. It's beyond my expertise.").

On March 10, 2022, Ms. Hall issued a rebuttal report responding to the report of Nichia's damages expert. *See* Colgate Dec., Ex. A. As set forth in her rebuttal report, Ms. Hall's damages testimony rests on two main points. First, she offers an affirmative opinion on the reasonable royalty that the parties would have agreed to as a result of the hypothetical negotiation, which she bases on the fact that Feit allegedly could have "designed around" the patent-in-suit, and transitioned to "non-infringing alternatives" for the Accused Products. *Id.* at ¶¶ 140-147. Second, she states that, *inter alia*, the analysis of Nichia's damages expert regarding the third-party license agreements (*id.* at ¶¶ 98-102) and an agreement between Nichia and a Feit competitor (GVL) (*id.* at ¶¶ 103-110) are incorrect.

Under Fed. R. 702, Ms. Hall's testimony on these points is flawed and unreliable. Accordingly, the Court should preclude Ms. Hall from testifying on these matters, and Feit should be precluded from relying on this testimony for purposes of summary judgment and at trial.

With respect to Ms. Hall's affirmative opinion on a reasonable royalty rate, Ms. Hall says that the rate should be low because, at the time of the hypothetical negotiation, Feit would have had access to a "non-infringing alternative" within ███████. *Id*. at ¶¶ 19, 145. Ms. Hall cites no evidence to support the proposition that any non-infringing alternative could have been implemented in only ███████, and there is none. *See id*. This justifies the preclusion of Ms. Hall's entire affirmative opinion.

Moreover, Ms. Hall's analysis of "non-infringing alternatives" also fails to account for differences in the market value of the Accused Products and the alleged "next best" non-infringing alternatives. *See id*. at ¶¶ 16-19, 140-147. Instead, Ms. Hall's assumes that Feit would be in the same position commercially after implementing the alleged alternatives as it was selling the Accused Products. *See id.* at ¶¶ 140-147. Ms. Hall neither supports her implicit assumption that the transition from Accused Products to non-infringing alternatives would have been ███████, nor accounts for any changes in Feit's economic position following the transition. *See id.* This also justifies the preclusion of Ms. Hall's entire affirmative opinion.

Ms. Hall's analysis of the "non-infringing alternatives is flawed for another reason. Although she correctly begins her analysis with the assumption that Feit has infringed the patent-in-suit (*id*. at ¶ 15), she then treats some of the Accused Products as non-infringing alternatives. *See id*. at ¶ 142 (alternatives with an LED in the center of the top surface of the board, including gaps in the wavelength conversion member formed unitarily with the transparent member, and multiple resin structures or multiple resin structures that do not surround the board). This testimony is contrary

to law. Any opinions based on the treatment of Accused Products as non-infringing alternatives should be precluded.

Ms. Hall's testimony regarding license agreements is also flawed. In her discussion of two license agreements covering patents owned by ████████████ ███████████████████████████████████████, Ms. Hall opines that the technologies disclosed in the patent-in-suit and the ██████ Patents are not comparable. *Id.* at page 37 ("The ██████ Agreements Do Not Cover Comparable Technology"); Colgate Dec., Ex. B at 162. Ms. Hall lacks the technical expertise to opine on this issue, and her opinion is not based on information she received from anyone who is qualified to address that issue. Thus, Hall's opinions on technical comparability should be precluded.

Additionally, in her discussion of an agreement between Nichia and another distributor of filament-style LED lightbulbs, GVL, Ms. Hall improperly relies on her "assumptions" regarding the value of the patent-in-suit vis-à-vis other Nichia patents covered by the Nichia-GVL agreement. Colgate Dec., Ex. A at ¶¶ 103-112, and specifically ¶ 110. Moreover, the assessment comparison of the technologies covered by the Nichia-GVL agreement is outside of Ms. Hall's expertise. *See* Colgate Dec., Ex. B at 17, 163. Thus, Ms. Hall should be precluded from addressing the technologies covered by this agreement.

Because Ms. Hall's opinions regarding a reasonable royalty rests largely on her unsupported assumptions regarding "non-infringing alternatives" and regarding the technologies involved in three license agreements, the Court should preclude Ms. Hall's testimony on damages issues.

## II.    LEGAL STANDARD

Expert testimony is admissible pursuant to Fed. R. Evid. 702 only if:

>  (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine

a fact in issue,

(b) the testimony is based on sufficient facts or data,

(c) the testimony is the product of reliable principles and methods, and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Feit bears the burden of showing that the proposed expert testimony meets these requirements. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).

According to Rule 702(a), expert testimony is inadmissible unless it will assist the trier of fact. "The evidence must logically advance a material aspect of the party's case. . . . Encompassed in the determination of whether expert testimony is relevant is whether it is helpful to the jury, which is the central concern of Rule 702. . . . *Daubert* [also] adds that the gatekeeping inquiry must be 'tied to the facts' of a particular case." *Cooper v. Brown,* 510 F.3d 870, 942 (9th Cir. 2007) (citations and internal quotation marks omitted). In short, expert testimony must address an issue in the case, and it must assist the jury in deciding that issue.

Rule 702(b), "instructs a district court judge to determine whether an expert had sufficient factual grounds on which to draw conclusions." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1025-26 (9th Cir. 2022) (citation and internal quotation marks omitted). "Expert testimony is inadmissible if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case." *In re Wholesale Grocery Prods. Antitrust Litig.*, 946 F.3d 995, 1001 (8th Cir. 2019).

When determining reliability of proffered expert testimony, the district court's task "is to analyze not what the experts say, but what basis they have for saying it." *Turner v. ThyssenKrupp Materials, N.A.*, 492 F.Supp.3d 1045, 1049 (C.D. Cal. Oct. 1, 2020). An expert's opinion "based on … unsubstantiated and undocumented

information is the antithesis of the scientifically reliable expert opinion admissible under *Daubert* and Rule 702." *Id.* (internal citations omitted).

This Court has applied Rule 702(b) to bar testimony based on an expert's subjective beliefs or unsupported speculation, noting that "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Id.* (internal citation omitted). *See also Venture Corp. v. Wherify Wireless, Inc.* No. 04-8583, 2005 WL 5960919, *1 (C.D. Cal. Sept. 23, 2005) (granting motion to exclude expert testimony because the proffered testimony was not based on sufficient facts or data); *Archie v. Pop Warner Little Scholars, Inc.*, No. 16-6603, 2019 WL 8230854, *11 (C.D. Cal. Dec. 27, 2019) (same).

## III.    ARGUMENT

### A. Ms. Hall Should be Precluded From Presenting Her Reasonable Royalty Opinion at Trial Because Her Conclusions Regarding the Availability of the "Non-Infringing" Alternatives are Beyond Her Expertise and Lack Foundation

As the Court is aware, a reasonable royalty for patent damages is based on the outcome of a "hypothetical negotiation" between the patent owner and the accused infringer at the time of the first infringement. Ms. Hall begins her affirmative analysis of the appropriate royalty in this case with the proposition that Feit would not have paid a significant royalty because, at the time of the hypothetical negotiation, Feit could have "designed around" the patent-in-suit. Colgate Dec., Ex. A at ¶ 19.

Indeed, the centerpiece of Ms. Hall's analysis is that it would have taken Feit "no more than ███████████ to implement any of the multiple design-around alternatives available to Feit." *Id.* As Ms. Hall states in her written report:

> Though I disagree with Ms. Kindler's [Nichia's expert's] reasonable royalty determination, if faced with paying a royalty of ██% as proffered by Ms. Kindler *for the* ████████████ *to implement any of the design-around alternatives results in a reasonable royalty of no more than* ████████████.  If faced with paying a royalty of ██% as initially offered by Nichia, though ultimately rejected by Feit Electric, Feit Electric would be faced with a reasonable royalty of no more than ████████████.  Feit Electric would not be willing to pay more for access to the technology at issue than the cost of implementing one (or a combination of) the non-infringing alternatives.

*Id*. at ¶ 145.

Although Ms. Hall purports to "understand" that Feit could have switched from Accused Products to non-infringing alternatives in ████████████, this "understanding" does not have a competent or reliable source.  *See id*.  Also, Ms. Hall claims no background or experience relating to LED lighting technology or the LED industry generally.  Colgate Dec., Ex B at 59.  An evaluation of the time it would take for Feit to transition from Accused Products to a non-infringing alternative is thus outside of Ms. Hall's expertise.  Because Ms. Hall's opinion on a reasonable royalty is based on her assessment of this "design-around" period, Ms. Hall should be precluded from presenting her reasonable royalty opinion at trial.  Fed. R. Civ. P. 702(a) (expert testimony is permitted from a person with "knowledge, skill, experience training or other specialized knowledge" will help the trier of fact understand an issue).

Moreover, there is no indication that Ms. Hall received assistance from anyone who has the expertise in the LED lighting industry to evaluate a transition from Accused Products to non-infringing alternatives.  Ms. Hall's report does not refer to

any document or testimony to support her position.  *See* Colgate Dec., Ex. A at ¶¶ 19, 145.  In fact, Feit itself ducked this issue during discovery.  Nichia asked Feit in an interrogatory how long it would take to design around the patent-in-suit, but Feit did not provide *any* response.  *See* Colgate Dec., Ex. C at 9-11.  Also, Feit's technical expert, Dr. Lebby, does not address the issue, much less support Ms. Hall's "█████ ████████" position.  *See* Colgate Dec., Ex. D at pages 89-108.  *See also* Colgate Dec., Ex. E at 12 (Dr. Lebby testified at his deposition, "Unless I've submitted a supplemental declaration, my opinions are contained in both the opening and rebuttal reports.").

Moreover, Ms. Hall testified at her deposition that she is not aware of any source of information that she failed to cite in her report.  Colgate Dec., Ex. B at 15.  Ms. Hall testified that she had one phone call with Dr. Lebby, but there is no indication that Ms. Hall and Dr. Lebby discussed how long it would have taken Feit to transition from the Accused Products to any non-infringing alternatives. As noted, she does not cite a conversation with Dr. Lebby or anyone else for information regarding the time it would take to transition to the manufacture of non-infringing alternatives, and she did not mention that subject as a topic of her conversations with Dr. Lebby.  Colgate Dec., Ex. B at 76-78 (explaining that the phone call lasted over an hour, and Dr. Lebby explained the technology at issue in the case generally and explained each of the non-infringing alternatives to Ms. Hall so she "understood generally what [they] were talking about").  *See also* Colgate Dec., Ex. A at ¶¶ 19, 145.  For his part, Dr. Lebby did not even recall speaking with Ms. Hall prior to his deposition.  Colgate Dec., Ex. E at 72 ("Up until you mentioned it, I didn't even realize I had a conversation with her.  But I do recall I did have a conversation with her, but I have no idea what it was about.").  *See also id*. at 12 (stating that all of his opinions are contained in his reports).

Finally, even if Ms. Hall had the relevant expertise (she does not), or even if the "███████████████" opinion came from Dr. Lebby (it did not), the record *still* does not provide support to allow an expert to opine on the time it would take Feit's contract manufacturers to implement *any* of the alleged alternatives. Fed. R. Civ. P. 702(b). Importantly, there is *no evidence* in the record to show that any of Feit's manufacturers had ready access to the supplies, equipment, know-how, or experience necessary to implement the proposed alternative designs within a particular time frame. *See, e.g.,* Colgate Dec., Ex. F at 3-4 (Feit did not communicate with suppliers after the Complaint was filed); Ex. G at 37-41 (██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████). Thus, Ms. Hall's testimony should be precluded on this ground as well. *See Grain Processing Corp. v. Am. Maize Prods. Co.*, 185 F.3d 1341, 1354 (Fed. Cir. 1999) (in assessing proof of non-infringing alternatives, courts consider whether accused infringers have shown they (or their suppliers) have all of the necessary equipment, know-how, and experience to make an acceptable (in terms of cost, performance, etc.) alternative product).

Because Ms. Hall's testimony on the availability of non-infringing alternatives is baseless (Ms. Hall lacks the relevant expertise, and there are insufficient facts in the record to support it), and because the purported availability of non-infringing alternatives is the centerpiece of Ms. Hall's damages analysis, the Court should preclude Ms. Hall from offering her reasonable royalty damages opinion at trial.

1

2

3

### B.    Ms. Hall Should be Precluded From Testifying on Reasonable Royalty Damages Because Her Methodology for Determining a Reasonable Royalty is Unreliable

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

Ms. Hall's testimony regarding reasonable royalty damages should be precluded for the separate and independent reason that her methodology for determining a reasonable royalty is flawed.  In her discussion of Feit's proposed "non-infringing alternatives," Ms. Hall stated that Feit would transition from the Accused Products to the "next-best alternatives."  Colgate Dec., Ex. B at 88-89.  Ms. Hall acknowledges in her written report and in her deposition testimony that a "next-best" alternative is "not necessarily an '*acceptable*' alternative that precludes the recovery of lost profits."  *See* Colgate Dec., Ex. A at ¶ 71; Ex. B at 97 (explaining that "acceptable" means to give the same benefits as the patented technology and not infringe, whereas "next-best" means that the alternative "may not have each and every element of the accused technology, but what's the next-best alternative that you can look to"); 97-98 (explaining that "an [acceptable] alternative is a one-for-one relationship … an exact one for one," whereas "next-best alternative may not have each and every thing on the checklist, but it's something that, you know, is acceptable and available that they would be okay with").

19

20

21

22

23

24

25

26

Dr. Lebby – who conducted the technical assessment of the alleged "next best" alternatives – made a similar point from a technical perspective.  He confirmed that these alternative products would potentially incorporate older technologies.  *See* Colgate Dec., Ex. D at ¶ 34 ("I further understand that in the context of a hypothetical negotiation that determines a damages royalty rate, a non-infringing alternative is the next-best available alternative and can include old modes or devices that had been used for working out similar results").  In short, if the Accused Product is "best," the alternative is at most a "next best" adaptation.

27

28

Because a "next-best" product is not the same as the Accused Product, any damages analysis based on a transition from an Accused Product to the next-best product would have to account for those differences. That is, the analysis would have to consider whether the accused infringer would be willing to lower the price for the next-best product to maintain sales volume, or maintain the same price at the cost of lost sales, and if so, what the difference in market value would be of the Accused Product and the "next-best" product. Even if a third alternative were possible, the point is that Ms. Hall does not address this issue at all, and there is no indication that she factored it into her analysis. *See* Colgate Dec., Ex. A at ¶¶ 140-147.

On the contrary, it appears that Ms. Hall's analysis rests on the unsupported assumption that that the alleged "next-best" alternatives have exactly the same market value as the Accused Products, and that once Feit implemented the alleged alternatives, Feit would be no worse off than if it had continued selling the Accused Products. *Id*. at ¶¶ 140, 145, 147 (9th bullet) (showing calculation based on introduction of design-around product, with no assessment of price or sales revenue implications). Notably, Ms. Hall undermines her own point when she says that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *Id*. at ¶ 36. Given these market conditions, any analysis of a hypothetical scenario involving a "next best" alternative would have to consider the impact of the "next best" features on price and sales.

As Ms. Hall testified, she did no such analysis. *See, e.g.,* Colgate Dec., Ex. B at 99 (Q. "[W]hat if only a handful of people buy [the alleged alternative] … where is the line drawn on being a next-best alternative versus not being an acceptable alternative"? A. "Yeah, I mean, it really depends on what a company is willing to bear. Right? If it's worth it to the company to put out a product because they are making sales on it, you know, it impacts the supply and demand. Right? They're going to put out enough supply to meet the – meet the demand"). Yet Ms. Hall cites

no evidence on what the market would "bear" with respect to the proposed "next best" alternatives, what the impact would be on Feit, and how it would affect Ms. Hall's damages analysis.

This point is not just sound economics, it has a legal basis as well. As the Federal Circuit explained in *Grain Processing*: "[O]nly by comparing the patented invention to its next-best available alternative(s) … can the court discern the market value of the patent owner's exclusive right, and therefore his expected profit or reward, had the infringer's activities not prevented him from taking full economic advantage of this right." *Grain Processing Corp.*, 185 F.3d at 1351. The Court referred to John W. Schlicher, Patent Law: Legal and Economic Principles § 9.05[2][l](1997), for the proposition that "unless the law wishes to systematically overreward patented inventions, it is necessary to inquire about the nature *and value* of the product that the infringer could have made had he not infringed" [emphasis added]. Ms. Hall never does the necessary inquiry – she simply assumes that the Accused Products and the alternative products would sell in the same volume and for the same prices.

In summary, Ms. Hall should be precluded from testifying about her reasonable royalty opinion at trial because her methodology is flawed and, accordingly, her opinion is unreliable.

### C.    Ms. Hall's Treatment of Accused Products as Non-Infringing Alternatives is Legally Erred, and Any Testimony Based on This Flawed Premise Should be Precluded

As discussed above, determination of a reasonable royalty for patent damages turns on the outcome of a hypothetical negotiation between the patent owner and the accused infringer at the time of first infringement. Because the negotiation takes place before the outcome of the lawsuit is known, the hypothetical negotiators must assume that the patent-in-suit is valid, enforceable, and infringed. *See Webasto*

*Thermo & Comfort N. Am., Inc. v. Bestop, Inc.*, No. 16-13456, 2019 WL 3334563, *4 (E.D. Mich. July 25, 2019). *See also, e.g., Lucent Techs., Inc. v Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009) (the calculation of a reasonable royalty must be premised on the assumption that the patents are valid and infringed).

   Ms. Hall pays lip-service to this principle, but then abandons it. At the outset of her written report, she states, "In rendering my opinions . . . I assume that Feit Electric has been found liable for the claims asserted by Nichia[.]" Colgate Dec., Ex. A at ¶ 6. She then identifies several Accused Products, which she should assume to be infringing, as alleged "non-infringing alternatives." Specifically, she identifies: (1) products having an LED in the center of the top surface of the board; (2) products including gaps in the wavelength conversion member formed unitarily with the transparent member; and (3) products with multiple resin structures or multiple resin structures that do not surround the board as "non-infringing alternatives" (*see id.* at ¶ 142), even though each of these features are included amongst the Accused Products.[1]

   To take one example, Ms. Hall treats products that have "gaps in the wavelength conversion member" as "non-infringing alternatives." Colgate Ex. A, ¶ 142 (third bullet). However, Nichia has asserted that Feit's products with this feature infringe the patent, literally and under the doctrine of equivalents. Colgate Dec., Ex. I at A8, A24, A37 and B17; Ex. K at ¶¶ 147-151. As this example shows, Ms. Hall's analysis improperly uses Accused Products as "non-infringing alternatives" for each other.

---

[1] Paragraph 142 of Ms. Hall's report says the included list of alleged alternative products is non-limiting. At least one other alleged alternative that has been identified in this case, which is not on Ms. Hall's list in paragraph 142 but is among the Accused Product designs—products having "non-traditionally shaped bulbs." *See* Colgate Dec., Ex. H at 11.

PLAINTIFF'S MOTION TO PRECLUDE EXPERT TESTIMONY OF DAWN HALL

The law is clear that Accused Products (or subsets of Accused Products) cannot also be relied on as alleged non-infringing alternatives.  As the Court explained in *Webasto Thermo*:

> Of course infringement and validity are presumed in a patent damages analysis and it *should be* axiomatic that an infringing product by definition cannot be a non-infringing alternative. The law clearly states and presumes that this is so. But BesTop appears to indirectly challenge this premise by continuing to assert through Mr. Robinson's Report its non-infringement and invalidity positions that it "invented and publicly disclosed" the Surnider before Webasto filed for the '342 Patent. Thus, BesTop argues, the Sunrider was "on the market and available" throughout the period of infringement and thus was an available non-infringing alternative. But of course when discussing the issue of damages, BesTop cannot argue non-infringement or invalidity because both must be assumed for purposes of the damage calculations.

*Webasto*, 2019 WL 3334563 at *4 (emphasis in original).

In view of the above, the Court should preclude Ms. Hall from testifying that Accused Products are non-infringing alternatives or from offering any opinions based on the treatment of Accused Products as non-infringing alternatives.

### D.    Ms. Hall Should Be Precluded From Opining on the Technical Comparability of the ███████ and the Patent-in-Suit Because It is Outside of Her Area of Expertise

As discussed above, Ms. Hall's expertise is in accounting and finance, and she disclaims expertise in LED lighting matters.  Colgate Dec., Ex. B at 17, 59, 163. Nonetheless, in Ms. Hall's critique of Ms. Kindler's damages analysis, Ms. Hall purports to have assessed the technology covered by the patent-in-suit in this case, and the technologies disclosed in the patents covered by a licenses granted by the

1    ███████████████████████████████████████████, and she

2    opined that they are not comparable.  Colgate Dec., Ex. A at ¶¶ 98-102.  This

3    testimony should be precluded because Ms. Hall does not have the expertise to assess

4    the different technologies.

5         As background, Nichia's damages expert, Ms. Kindler, used two patent license

6    agreements relating to the ███████████ as support for her opinion on a reasonable

7    royalty (███████████████).  *See* Colgate Dec., Ex. J at ¶¶ 84-91, 105-108.  In

8    her discussion of the technology covered by these licenses, Ms. Kindler expressly

9    relied on a conversation she had with Nichia's technical expert, Mr. Gershowitz, who

10   also addressed the technical issues relating to the ██████ license agreements in his

11   expert report.  *See* Colgate Dec., Ex. J at ¶ 89; Ex. K at ¶¶ 298-323.  In short, Ms.

12   Kindler addressed the economic aspects of the ██████ licenses, but she relied on

13   Nichia's technical expert for her understanding of the patents involved.

14        Ms. Hall states in her report that "The ██████ Agreements Do Not Cover

15   Comparable Technology."  Colgate Dec, Ex. A, at page 37 (heading).  As support,

16   she states that she "understand[s] that Dr. Lebby [Feit's technical expert] disagrees

17   with Mr. Gershowitz's [Nichia's technical expert] assessment."  *Id.* at ¶ 100.

18   However, Dr. Lebby does not address the issue in either his opening report or his

19   rebuttal report.  Ms. Hall cites Dr. Lebby's expert report from another case before the

20   International Trade Commission (ITC), but that case did not involve Nichia's patent-

21   in-suit, so it cannot be the basis for a comparison of the Nichia and ██████ Patents.

22   *See id.* ¶ 100.  Ms. Hall does not refer to any conversations she had with Dr. Lebby,

23   or to Dr. Lebby's expert reports in this case.  *See id.* at ¶¶ 98-102.  Ms. Hall's

24   technical analysis thus rests on her own assessment, for which she is unqualified.

25        If more were necessary, the experts' deposition testimony confirms that Ms.

26   Hall did not rely on Feit's technical expert for her opinion that the ██████ patents do

27   not cover comparable technology to the patent-in-suit.  Ms. Hall testified that

28

"anything technology-related would have been in conversations with [Feit's technical expert] Dr. Lebby, in addition to reviewing sections of his report that relate to things that I was interested in." *See* Colgate Dec., Ex. B at 161. As to the ███ Patents, she said that her understanding of the relevant technologies was "based on [her] understanding with Dr. Lebby that the technology is different." *Id.* at 162. She does not explain what these differences are, or how they relate to her analysis – and neither does Dr. Lebby. In fact, the experts' reports and their testimony confirm that Ms. Hall *did not* learn about differences in the Nichia and ███ technologies from Dr. Lebby. Dr. Lebby's written reports *do not address the subject at all*. And in his deposition testimony, Dr. Lebby said that, prior to the deposition, he had "no recollection of the [one] conversation" he had with Ms. Hall, but at the deposition he testified that the conversation covered the LED technology generally. Colgate Dec., Ex. E at 72. Neither Dr. Lebby nor Ms. Hall testified that they had discussed the differences between the Nichia and ███ technologies during their one conversation. *See id.* at 71-72; Ex. B at 76-77. Indeed, Dr. Lebby went so far as to state: "I seem to recall one of the opposing [Nichia] experts did opine on it [comparability of the ███ Patents to the '734 Patent], but I did not." Colgate Dec., Ex. E at 115.

In sum, given Ms. Hall's lack of technical knowledge, skills, or experience, and Dr. Lebby's denial of any opinion on the comparability of the ███ patents are and the patent-in-suit, the Court should preclude Ms. Hall (and Dr. Lebby) from presenting testimony at trial on this topic.

### E.    Ms. Hall Should be Precluded from Testifying on the Nichia-GVL Agreement Because Her Opinion is Speculative and Outside of Her Expertise

Paragraph 110 of Ms. Hall's expert report responds to Ms. Kindler's discussion of a settlement agreement between Nichia and GVL, a distributor of LED lighting

(among other things).  The agreement settled a litigation between Nichia and GVL where numerous patents were asserted, including the patent-in-suit in this case.  Ms. Hall critiques Ms. Kindler's analysis for failing to apportion the royalty rate between the patent-in-suit and the other patents that were asserted in that case[2], and she testifies as to various apportionments that could have been done.   Ms. Hall's testimony on this issue should be excluded because it is based on unsupported assumptions, and rests on matters outside her area of expertise.

Ms. Hall's discussion of the Nichia-GVL agreement reads as follows:

Ms. Kindler [Nichia's expert] doesn't even attempt to apportion the value among the various patents or patent families asserted in the Nichia-GVL Litigation nor explain how the relative value of a number of patents in different families is equivalent to the value of only the '734 Patent.  Conservatively *assuming* the '734 Patent was *half the total value* of the 6 different patents, encompassing 5 separate patent families, involved in the Nichia-GVL Litigation, Ms. Kindler's damages figures would be reduced to ███████████████████ █████████████████████████ from Ms. Kindler's damages figures, demonstrating the lack of reasonableness of her analysis. *Assuming* the '734 Patent was *20% of the total value* of the 6 different patents, encompassing 5 separate patent families, involved in the Nichia-GVL Litigation, Ms. Kindler's damages figures would be reduced to ████████████████████████████████ ████████████████ from Ms. Kindler's damages figures, demonstrating the lack of reasonableness of her analysis.

---

[2] ████████████████████████████████████████████████████

Colgate Dec., Ex. A at ¶ 110 (emphasis added).  As shown by the highlighted phrases, Ms. Hall's testimony on this issue is based on her assumptions as to the relative value of the patents covered by the Nichia-GVL agreement.  Put another way, she picked two random values (50% and 20%), does the necessary arithmetic, and then offers the result as a possible reduction in Nichia's damages award.

In her deposition, Ms. Hall admitted that the calculations she offered in her report were based on unsupported assumptions, not on facts.  Colgate Dec., Ex. B at 227-229.  Ms. Hall also confirmed that it is *not* her opinion that the '734 Patent is 50% of the value of the patents that were at issue in the GVL case, or 20% the value of the patents that were at issue in that case.  *Id.*  She confirmed that she offered those calculations "for illustrative purposes" and that the assumed values were "not tied to any facts in the case." *Id.* at 227-228.

Fed. R. Evid. 702 precludes the introduction of testimony based on speculative assumptions that lack any support in the record.  *See, e.g., Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[n]othing either in *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to the existing data only by the *ipse dixit* of the expert"); *Richman v. Sheahan*, 415 F.Supp.2d 929, 942 (N.D. Ill. Feb. 23, 2006) ("The question is not whether the opinion is based on assumptions, but whether there is some factual support for them. If there is not, they are by hypothesis unreliable and inadmissible.").

Moreover, any assessment of the relative value of the patents covered by the Nichia-GVL agreement is beyond Ms. Hall's area of expertise.  Colgate Dec., Ex. B at 17, 59, 163.  As noted above, she acknowledged during her deposition that she has no background or experience in LED lighting technology or the lighting industry, and that she relied on Dr. Lebby for any assessments in these areas.  *Id.* at 59, 161.  However, Dr. Lebby did not address the Nichia-GVL agreement in his reports, and there is no evidence that Dr. Lebby and Ms. Hall discussed the agreement during

their one conversation relating to general LED lighting technology. *See id*. at 76-77; Ex. E at 71-72.

In summary, this Court should preclude Ms. Hall from presenting testimony at trial based on unsupported assumptions concerning the value of the patent-in-suit vis-à-vis the other patents or patent families asserted in the Nichia-GVL Litigation.

## IV.    CONCLUSION

For the foregoing reasons, Nichia hereby requests that this Court grant its Motion and issue an order precluding Ms. Hall from presenting testimony at trial regarding reasonable royalty damages.

Respectfully submitted,


DATED: July 27, 2022          ROTHWELL, FIGG, ERNST &MANBECK P.C.
                             By: */s/ Jenny L. Colgate*

                             ROBERT P. PARKER (*pro hac vice*)

                             MARTIN M. ZOLTICK (*pro hac vice*)
                             JENNY COLGATE (*pro hac vice*)
                             MICHAEL JONES (*pro hac vice*)
                             MARK RAWLS (*pro hac vice*)
                             D. LAWSON ALLEN (*pro hac vice*)
                             NICOLE DEABRANTES (*pro hac vice*)

                             LEWITT, HACKMAN, SHAPIRO, MARSHALL
                             & HARLAN

                             By: */s/ Jeffrey A. Kobulnick*

                             DAVID GURNICK (SBN 115723)
                             JEFFREY A. KOBULNICK (SBN 228299)
                             JESSICA W. ROSEN (SBN 294923)

                             *Attorneys for Plaintiff Nichia Corporation*

1

## **<u>CERTIFICATE OF SERVICE</u>**

2

3    I hereby certify that on this 27th day of July, 2022, a true and correct copy of the foregoing **PLAINTIFF NICHIA CORPORATION'S MOTION TO PRECLUDE THE EXPERT TESTIMONY OF DAWN HALL** was served, via electronic mail, upon the following counsel of record for Feit Electric Company, Inc.:

4

5

6                Salil Bali
                 sbali@sycr.com
7          Matthew R. Stephens, SBN 288223
                mstephens@sycr.com
8      **STRADLING YOCCA CARLSON & RAUTH, P.C.**
9          660 Newport Center Drive, Ste. 1600
10            Newport Beach, CA 92660
                 Tel. 949-725-4000
11

12                 Kal Shah
              kshah@beneschlaw.com
13                Mircea Tipescu
             mtipescu@beneschlaw.com
14            Simeon G. Papacostas
           spapacostas@beneschlaw.com
15            Louis Constantinou
16          lconstantinou@beneschlaw.com
     **BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
17          71 S. Wacker Drive, Suite 1600
18                Chicago, IL 60606
              Telephone: 312-212-4949
19             Facsimile: 312-767-9192
20

21

22

23                 */s/ Jeffrey A. Kobulnick*
                Lewitt, Hackman, Shapiro, Marshall &
24              Harlan

25

26

27

28