DAVID GURNICK (SBN 115723)
dgurnick@lewitthackman.com
JEFFREY A. KOBULNICK (SBN 228299)
jkobulnick@lewitthackman.com
JESSICA W. ROSEN (SBN 294923)
jrosen@lewitthackman.com
LEWITT, HACKMAN, SHAPIRO,
MARSHALL & HARLAN
16633 Ventura Boulevard Eleventh Floor
Encino, CA 91436
Telephone: (818) 990-2120
Facsimile: (818) 981-4764

ROBERT P. PARKER (*pro hac vice*)
rparker@rfem.com
MARTIN ZOLTICK (*pro hac vice*)
mzoltick@rfem.com
JENNY COLGATE (*pro hac vice*)
jcolgate@rfem.com
MICHAEL JONES (*pro hac vice*)
mjones@rfem.com
MARK RAWLS (*pro hac vice*)
mrawls@rfem.com
D. LAWSON ALLEN (*pro hac vice*)
lallen@rfem.com
NICOLE M. DEABRANTES (*pro hac vice*)
ndeabrantes@rfem.com
ROTHWELL, FIGG, ERNST & MANBECK P.C.
901 New York Avenue N.W.
Suite 900 East
Washington, DC 20001
Telephone:  (202) 783-6040
Facsimile:   (202) 783-6031

Attorneys for Plaintiff Nichia Corporation

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHIA CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>FEIT ELECTRIC COMPANY, INC.<br><br>Defendant. | Case No.  2:20-cv-00359-GW-E<br><br>***REDACTED***<br><br>**PLAINTIFF NICHIA CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF INFRINGEMENT AND ON DEFENDANT'S AFFIRMATIVE DEFENSES OF INVALIDITY AND NON-INFRINGING ALTERNATIVES**<br><br>Hearing Date: September 15, 2022<br>Time:       8:30 a.m.<br>Ctrm:      9D |

1

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ii

I.      BACKGROUND...................................................................................1

    A.      The '734 Patent ............................................................................1

    B.      The Accused Product at Issue .....................................................2

    C.      Feit's Defenses ............................................................................3

II.     LEGAL STANDARD ..........................................................................4

III.    ARGUMENT .......................................................................................4

    A.      Feit's Model 72007 Infringes the '734 Patent ............................4

        Ex. 16 at Ex. IAL-TAR-001, 16 (annotations added)..................6

        1.      Undisputed elements of claim 1 (claim elements 1.0, 1.1, 1.2, 1.4, 1.6, 1.7, and 1.11) ....................................................6

        2.      Disputed Elements of Claim 1 ...........................................7

        3.      Model 72007 infringes claim 19.......................................11

        4.      Model 72007 infringes claim 23.......................................11

    B.      Feit's Invalidity Defenses Have No Basis as a Matter of Law............12

        1.      Claim 1 is Not Anticipated ..........................................13

        2.      Claim 19 Would Not Have Been Obvious ................................15

        3.      The Claims Are Not Indefinite ........................................16

        4.      The Claims are Enabled by the '734 Patent ............................20

        5.      The Claims have Written Description Support ........................21

    C.      Feit's Alleged Non-Infringing Alternatives.......................................22

        1.      Background and Legal Standard.................................................22

        2.      Feit has Shown No Acceptable, Non-Infringing Alternatives ..24

IV.     CONCLUSION ..................................................................................29

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242 (1996)..................................................................................4

*Card-Monroe Corp. v. Tuftco Corp.*,

270 F. Supp. 3d 967 (E.D. Tenn. Sept 1, 2017) ...................................19

*Celotex Corp. v. Catrett*,

477 U.S. 317 (1986);................................................................................4

*Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*,

291 F.3d 1317 (Fed. Cir. 2002) .............................................................22

*DatCard Sys., Inc. v. PacsGear, Inc.*,

No. 10C-01288, 2013 WL 12134056 (C.D. Cal. Mar. 12, 2013) ........15

*Dexcowin Glob., Inc. v. Aribex, Inc.*,

No. 16-143, 2017 WL 3477748 (C.D. Cal. June 7, 2017).....................4

*Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*,

909 F.3d 398 (Fed. Cir. 2018) ...............................................................15

*Exergen Corp. v. Wal–Mart Stores, Inc.*,

575 F.3d 1312 (Fed. Cir. 2009) .............................................................18

*FullView, Inc. v. Polycom, Inc.*,

No. 18- 00510, 2022 WL 836302 (N.D. Cal. Mar. 21, 2022).............16

*Grain Processing Corp. v. Am. Maize-Prods. Co.*,

185 F.3d 1341 (Fed. Cir. 1999) .......................................................passim

*Homeland Housewares, LLC v. Research*,

No. 11-3720, 2013 WL 12134266 (C.D. Cal. Feb. 28, 2013).............18

*Koito Mfg. Co. v. Turn-Key-Tech, LLC*,

381 F.3d 1142 (Fed. Cir. 2004) .............................................................22

*Laser Dynamics, Inc. v. Quanta Computer, Inc.*,

No. 06- 348, 2011 WL 197869 (E.D. Tex. Jan. 20, 2011) ...................26

*Limestone Memory Sys. LLC v. Micron Tech. Inc.*,

    Case No. 15- 0278, Dkt. 385 (C.D. Cal. Dec. 26, 2019) ...................................... 13

*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*,

    475 U.S. 574 (1986) .......................................................................................... 4

*Micro Chem. v. Lextron, Inc.*,

    318 F.3d 1119 (Fed. Cir. 2003) ................................................................ 23, 27

*Microsoft Corp. v. i4i Ltd. P'ship*,

    564 U.S. 91 (2011) .......................................................................................... 12

*Nautilus, Inc. v. Biosig Instruments, Inc.*,

    572 U.S. 898 (2014) ........................................................................................ 16

*Sherwin-Williams Co. v. PPG Indus., Inc.*,

    No. 17-1023, 2020 WL 1283465 (W.D. Pa. Mar. 18, 2020) ............................... 24

*Takeda Pharm. Co. v. Zydus Pharms. USA, Inc.*,

    743 F.3d 1359 (Fed. Cir. 2014) ...................................................................... 20

*Therasense, Inc. v. Becton, Dickinson & Co.*,

    593 F.3d 1325 (Fed. Cir. 2010 ....................................................................... 13

*TQ Delta LLC v. 2Wire, Inc.*,

    No. 13-1835, 2021 WL 3145655 (D. Del. July 26, 2021) .................................. 19

*Trintec Indus., Inc. v. Top-U.S.A. Corp.*,

    295 F.3d 1292 (Fed. Cir. 2002) (" ............................................................. 13, 15

*Velocity Patent LLC v. FCA US LLC*,

    319 F.Supp.3d 950 (N.D. Ill. Aug. 7, 2018) ...................................................... 27

*Webasto Thermo & Comfort N.A., Inc. v. Bestop, Inc.*,

    No. 16-cv-13456, 2019 WL 3334563 (E.D. Mich. July 25, 2019) ...................... 24

**Statutes**

35 U.S.C. § 102 ....................................................................................... 3, 13

35 U.S.C. § 103 ............................................................................................ 3

35 U.S.C. § 112 ................................................................................... 13, 20

**Rules**

Fed. Prac. & Proc. Civ. § 2180 ..................................................................27

Fed. R. Civ. P. 30 .....................................................................................25

Fed. R. Civ. P. 33 .....................................................................................27

Fed. R. Civ. P. 56 ..................................................................................1, 4

Pursuant to Fed. R. Civ. P. 56(a) and Local Rule 56-1, Plaintiff Nichia Corporation ("Nichia") respectfully moves for partial summary judgment (i) on infringement of U.S. Patent No. 9,752,734 ("the '734 Patent"), (ii) on certain invalidity defenses raised by Defendant Feit Electric Company, Inc. ("Feit"), and (iii) on non-infringing alternatives.

## I. BACKGROUND

### A. The '734 Patent

The '734 Patent, entitled "Light Emitting Device," issued on September 5, 2017. SF 1.[1] Claim 1 of the patent recites (numbering added):

*[1.0] A light emitting device comprising:*

*[1.1] a board having end portions and a center portion therebetween in a longitudinal direction, the board having a first surface on a first surface side thereof and a second surface on a second surface side thereof, the second surface being an opposite side to the first surface, the first surface including a first region and a second region, the first region extending from the center portion of the board to one of the end portions, the second region extending from the center portion of the board to the other of the end portions;*

*[1.2] a plurality of light emitting element chips mounted on the first surface side of the board;*

*[1.3] a wavelength conversion member formed unitarily with a transparent member that seals the plurality of light emitting element chips;*

*[1.4] a transparent bulb that encloses the board and the plurality of light emitting element chips;*

*[1.5] support leads that secure the plurality of light emitting element chips inside the transparent bulb;*

*[1.6] a support base that can be threadedly engaged with a conventional light*

---

[1] "SF XX" refers to the referenced paragraph(s) in the accompanying Statement of Uncontroverted Material Facts and Conclusions of Law.

*bulb socket along a socket axis; and*

*[1.7] a pair of metal plates protruding at both ends of the wavelength conversion member,*

*[1.8] wherein the wavelength conversion member is provided on the first surface side and the second surface side, the wavelength conversion member is elongated in the longitudinal direction when viewed in plan view of the first surface side of the board, wherein a first set of the light emitting element chips are mounted on the first region and arranged from the center portion of the board to the one of the end portions,*

*[1.9] wherein a first set of the light emitting element chips are mounted on the first region and arranged from the center portion of the board to one of the end portions,*

*[1.10] wherein a second set of the light emitting element chips are mounted on the second region and arranged from the center portion of the board to the other one of the end portions, and*

*[1.11] wherein the pair of metal plates are electrically connected with the support base via the support leads.*

Claim 19 depends from claim 1, and provides "*wherein all the lighting elements mounted on the first surface side of the board are aligned along a line.*" Claim 23 also depends from claim 1, and provides "*wherein the support leads extend from the base towards the pair of metal plates.*"

### B. The Accused Product at Issue

Feit is one of the country's leading distributors of household lighting products. SF 2. According to Feit's website, it maintains an inventory of 100 million lighting products at locations around the world. SF 3. Feit's lighting products include hundreds of models of lightbulbs and related products that Feit characterizes as "LED filament bulbs." SF 4. The Accused Products include bulbs with different sizes, shapes, tints, and filament shapes and configurations. SF 5.

As part of this motion, Nichia asks the Court to grant summary judgment that Feit's Model No. 72007 ("Model 72007") infringes claims 1, 19, and 23 of the '734 Patent. Model 72007 is a string of filament-style LED lightbulbs. SF 10.



Declaration of Robert P. Parker ("Parker Decl."), Ex. 15 at NichiaSJ001015.[2] As explained in Section III below, this product infringes claims 1, 19, and 23 of the '734 Patent. Moreover, Model 72007 is one of Feit's ███████████, and its configuration is representative of other Accused Products. SF 6-9; Ex. 15, Section X(A)(4), X(C)(4). Summary judgment on this issue will either enhance the prospects for settlement, or ease the course of the trial for the Court, the jury, and the parties.

### C. Feit's Defenses

In its Amended Answer, Feit asserts a number of defenses to Nichia's claims, including non-infringement and invalidity under 35 U.S.C. §§ 102 (anticipation), 103 (obviousness), and 112 (indefiniteness, written, description, and enablement). Feit also asserts that Nichia's damages should be minimal because Feit could have "designed around" the '734 Patent claims, and distributed non-infringing alternatives to the Accused Products. Feit has elaborated on these purported defenses in its invalidity contentions and in expert testimony. As explained in Section III, none of these defenses can withstand summary judgment.[3]

---

[2] Citations to exhibits herein refer to exhibits attached to the Parker Declaration.

[3] Concurrently with this motion, Nichia has filed motions to exclude Feit's improper claim constructions and improper expert testimony. While Feit's defenses are addressed in this motion on the merits, in some cases those defenses, or aspects of them, should be precluded in light of matters raised in the co-pending motions.

## II.    LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a).    A genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1996).  Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and evidence that is "merely colorable," *Anderson*, 477 U.S. at 249-50, is not enough to overcome a motion for summary judgment.

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323–24.  The moving party may also meet its burden by showing "that the nonmoving party will be unable to make a sufficient showing on an essential element of its case for which it has the burden of proof." *Dexcowin Glob., Inc. v. Aribex, Inc.*, No. 16-143, 2017 WL 3477748, at *2 (C.D. Cal. June 7, 2017).  If the moving party meets its burden, the non-moving party must present evidence to establish a genuine issue of material fact. *Anderson*, 477 U.S. at 257.

## III.    ARGUMENT

### A. Feit's Model 72007 Infringes the '734 Patent

Feit imports, sells, and offers to sell, in the United States its Model 72007, a filament-style LED lighting product.  Feit has imported and distributed Model 72007 since at least September 5, 2017, the date on which the '734 Patent issued.  SF 1, 6.  This is one of Feit's ███████████, having generated ███████████ in sales

between the patent's issue date and June 30, 2021 (the date of Feit's latest financial update). SF 7, 9. Model 72007 infringes at least claims 1, 19, and 23 of the '734 Patent.

Model 72007 includes several lightbulbs, and is referred to as a "string light" product. SF 10. In addressing the claim elements below, one of these lightbulbs (the "Model 72007 lightbulb") is taken as exemplary. For purposes of infringement, there are no differences between the lightbulbs in Model 72007. SF 53-54. As shown in the annotated photos below, the Model 72007 lightbulb has a base that screws into a socket, LED filaments, and support structures. SF 11. The LED filament is secured in the bulb by leads attached to metal plates. SF 32-35. As shown below, the metal plates protrude from the yellowish encapsulant. SF 31.



Ex. 16 at NichiaSJ001692-93 (annotations added). The photos below show that the LED filament has LED chips mounted on a board, and sealed by a resin-phosphor mixture, often referred to as an "encapsulant." *Id.*; *see also* Ex. 22 at 56:13-21.



Ex. 16 at NichiaSJ001695 (annotations added).

Phosphor in the encapsulant converts some of the blue light from the LED chips to yellow light, which mixes with the remaining blue light to form white light. SF 12.  Cross sections of the encapsulant are shown below:



Ex. 16 at NichiaSJ001702 (annotations added).

### 1. Undisputed elements of claim 1

Feit admits that the lightbulbs of Model 72007 are light emitting devices (claim element 1.0), and include an LED filament that has LED chips mounted on a board (claim elements 1.1 and 1.2).  SF 14, 16, 17, 20.  Feit also admits that the board includes a first surface on a first surface side thereof and a second surface on a second surface side thereof, the second surface being an opposite side to the first surface.  SF 19.  Feit does not dispute that the board can be divided into a first region running lengthwise from one end of the board to the center of the board, and a second region running lengthwise from the other end of the board to the center of the board (claim element 1.1).  SF 18, 21; *see also* Ex. 16 at NichiaSJ001695 (showing 24 chips).[4]

Feit also admits that Model 72007 has "a bulb that encloses the board and the plurality of light emitting element chips," and that the bulb is transparent (claim

---

[4] Feit disputes claim element 1.1 only for products with an *odd* number of chips, but not for products with an *even* number of chips.  Ex. 24 at NichiaSJ002449.  Because Model 72007 has an even number of chips, this element is not in dispute.

element 1.4).  SF 28-30. Model 72007 also includes a support base that can be threadedly engaged with a conventional light bulb socket along a socket axis (claim element 1.6); and a pair of metal plates protruding at both ends of the wavelength conversion member (claim element 1.7).  The pair of metal plates are electrically connected with the support base via the support leads (claim element 1.11).  SF 31-32, 36-38, 47.  Feit does not contest these elements.

Thus, claim elements 1.0, 1.1, 1.2, 1.4, 1.6, 1.7, and 1.11 are undisputed.  Feit disputes claim elements 1.3, 1.5, 1.8, 1.9, and 1.10 – but as explained below, there is no genuine dispute of material fact that these elements are present in Model 72007.

### 2. Disputed Elements of Claim 1

#### a. Claim element 1.3

This element recites "a wavelength conversion member formed unitarily with a transparent member that seals the plurality of light emitting element chips."  The Court's *Markman* ruling defined this term to mean "a single component that both converts wavelength and allows light to pass through."  Ex. 28 (Dkt. 90) at 18.

There is no genuine issue of material fact that the encapsulant of Model 72007 meets element 1.3.  SF 23-27.  Feit admits that the encapsulant is a resin–phosphor mixture, and Feit's expert, Dr. Lebby, admits this mixture is a single component that both converts wavelength and allows light to pass through.  *See, e.g.*, SF 23; Ex. 22 at 145:17-20 ("And the claim construction is, a single component that both converts wavelength and allows light to pass through.  And the [encapsulant] at the top does that, and the [encapsulant] at the bottom does that."), 355:5-15.  Specifically, Dr. Lebby agreed that some blue light from the LED chips passes through the encapsulant (*i.e.*, "allows light to pass through"), while the phosphor in the encapsulant performs wavelength conversion (*i.e.*, "converts wavelength") to generate yellow light that mixes with the remaining blue light to make white light.  Ex. 22, 376:7-12, 378:12-14.  This can be illustrated, for instance, by observing the light output color with the encapsulant (white light) and without the encapsulant (blue light):



Ex. 16 at NichiaSJ001695.  There also is no dispute that the encapsulant seals the LED chips.  SF 23-24.  The evidence on the record, including Dr. Lebby's testimony, confirms that element 1.3 is present in Model 72007.

### b. Claim element 1.5

This element recites "support leads that secure the plurality of light emitting element chips inside the transparent bulb."  Feit admits that leads are attached to metal plates on the board the LED chips are mounted on.  SF 32.  This is also apparent from the photos:




Ex. 16 at NichiaSJ001692-93 (annotations added).  The leads of Model 72007 (as the photos below show) serve to suspend the LED filament in the bulb – that is, the leads support the filament structure, including the chips that are part of the filament.  SF 33-34.  Without the support leads, the filament (and the chips mounted thereon) would be entirely unsecured.  SF 35.




Ex. 16 at NichiaSJ001693 (showing filament secured in left image, and unsecured in right image where the support leads have been cut).  This is the very same structure used in the '734 Patent, where support leads 62, 62B secure the LED chips within the

bulb 60 *via the board and metal plates 30*. *See* '734 Patent, FIGs. 8 and 10, 3:30-32, 4:22-39, 8:28-32, 9:28-29.

Feit's expert, Dr. Lebby, acknowledged that the leads in the Model 72007 indirectly support the LED chips, but Feit has taken the position that, to meet this claim element, the leads must support the chips directly and exclusively.  Ex. 22 at 253:19-24; Ex. 24 at NichiaSJ002441 (arguing that "any alleged support provided is solely to the filament itself, and not to the LEDs themselves, as the plain language of the claims requires").  In this respect, Feit is trying to narrow the scope of the claim by improperly adding requirements (that the support be both "direct" and "exclusive") that do not appear in the claim language, and that are contrary to the teachings of the patent.  As Nichia explains in a co-pending motion *in limine* to preclude Feit from relying on improper claim constructions, this claim includes indirect and non-exclusive support as a matter of law.  Accordingly, there is no genuine dispute that Model 72007 includes "support leads" as claimed.

### c.  Claim element 1.8

This element recites that "the wavelength conversion member is provided on the first surface side and the second surface side, the wavelength conversion member is elongated in the longitudinal direction when viewed in plan view of the first surface side of the board."

There is no dispute, and it is also apparent in the photos reproduced below, that the encapsulant in Model 72007 is present on the first surface side and the second surface side of the board, and is elongated in the lengthwise direction when viewed in plan view of the first surface side of the board.  SF 23, 39-42.

 

1  Ex. 16 at NichiaSJ001696, NichiaSJ001702 (left photo showing cross-section
2  showing both sides of board, upper right photo showing plan view of first surface
3  side, lower right photo showing plan view of second surface side).

4       Feit's expert took the position that the product does not meet the "single
5  component" requirement[5] because, during manufacture, the encapsulant on the top
6  side of the board is allegedly extruded onto the board separately from the encapsulant
7  on the bottom side of the board.  Ex. 24 at NichiaSJ002421 (arguing that "based on
8  this manufacturing process… the two alleged members cannot ever be considered 'a
9  single component'").  As an initial matter, claim 1 of the '734 Patent is a product
10 claim, and is not limited to any manufacturing process.[6]  Moreover, Dr. Lebby
11 acknowledged that he has no information as to how any of the Accused Products
12 (including Model 72007) are made.  SF 13.  Even if his speculation regarding the
13 manufacturing process were correct, Dr. Lebby also admitted there is no demarcation
14 between the two sides of the encapsulant and that the two sides had mixed – so there
15 can be no genuine dispute that the encapsulant that surrounds the board is a single
16 component.  Ex. 22, 143:4-8.  Accordingly, there is no genuine dispute of material
17 fact that Model 72007 satisfies this element.

### d.  Claim elements 1.9 and 1.10

19      These elements provide that "a first [second] set of the light emitting element
20 chips are mounted on the first [second] region and arranged from the center portion
21 of the board to the one [the other one] of the end portions."  In its *Markman* order,
22 the Court construed this to mean "a first/second set of the light emitting element chips
23 are mounted on the first/second region and arranged from the center of the board to
24 one/the other end of the board."  Ex. 28 at 18.

25 ───────────────────

26 [5] The phrase "single component" is from the Court's construction of claim element
   1.3, which provides antecedent basis for "the wavelength conversion member" in
27 claim element 1.8.

28 [6] This is also addressed in Nichia's co-pending motion regarding Feit's improper
   constructions of the '734 Patent claims.

The configuration of the LED chips in Model 72007 meets this limitation:



Ex. 16 at NichiaSJ001695.  As is clear in the photo above, there are at least two chips (*i.e.*, a first set) arranged lengthwise from the center to one end, and at least two chips (*i.e.*, a second set) arranged lengthwise from the center to the other end.  Thus, there cannot be any genuine dispute that first and second sets of LED chips are positioned on either side of the board's center, and arranged from the center to the respective ends of the board, as required by these claim elements.  SF 44-46.

Feit's expert took the position that Model 72007 does not meet the claim's "mounting" requirement because it has "suspended" wiring portions.  Ex. 24 at NichiaSJ002469 (arguing "the wiring portions are suspended from the first surface of the board such that the wiring portions of the light emitting element chips are not mounted to the board").  Nothing in the claim is directed to the position or configuration of the chips' wiring – on its face the claim refers only to the "light emitting element chips."  Feit's attempt to limit the scope of the claim by injecting a requirement relating to the wiring has no basis.[7]  Accordingly, there are no material facts in dispute that Model 72007 satisfies these elements.

### 3.  Model 72007 infringes claim 19

Claim 19 depends from claim 1, and further requires "all light-emitting chips mounted on the first surface side of the board are aligned along a line."  The LED chips mounted on the board in Model 72007 (e.g., as shown in the photos above) are in a straight row – that is, they are "aligned along a line."  SF 48-50.  Feit also has not challenged Nichia's this claim (separately from claim 1) for Model 72007.

### 4.  Model 72007 infringes claim 23

Claim 23 depends from claim 1, with the additional limitation that "the support

---

[7] This is also addressed in Nichia's co-pending motion regarding Feit's improper constructions of the '734 Patent claims.

leads extend from the support base to towards the pair of metal plates." Feit admits that the leads are attached to metal plates that are on the board where the LED chips are mounted. SF 32. Feit's only argument on this point is that the leads do not extend *towards* the pair of metal plates because one of the leads extends past the metal plate in one dimension before bending across to attach to it. Ex. 24 at NichiaSJ002447 (arguing that "as shown … at least one alleged lead does not extend 'towards' a metal plate, but rather it extends 'past' the metal plate"). As noted in Nichia's co-pending motion regarding Feit's improper claim constructions, the claim term does not require (as Feit argues) that "the support leads extend from the support base towards, *but not past*, the pair of metal plates." Feit has improperly added this requirement.

In Model 72007, both leads extend from the support base. One lead extends towards (and also attaches to) one of the metal plates. The other lead extends towards (and also attaches to) the other metal plate. SF 51-52. This is shown below:



support leads extending from the base to towards the pair of metal plates



Ex. 16 at NichiaSJ001692-93 (annotated to indicate blown-up region). The fact that the second support lead extends past the metal plate is irrelevant – the claim requires extending towards, but does not preclude going past. Accordingly, there is no genuine dispute that Model 72007 infringes this claim.

### B. Feit's Invalidity Defenses Have No Basis as a Matter of Law

Invalidity defenses must be proved by "clear and convincing evidence." *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011). Feit cannot meet this high burden. Feit's own admissions and the testimony of its expert – for example, regarding the absence of features in the references that are required by the claims –

show that there are no genuine issues of material fact that preclude summary judgment on the issues of anticipation and obviousness.  With respect to invalidity under 35 U.S.C. § 112 (definiteness, enablement, and written description), Feit re-hashes arguments that the Court has already rejected.  Summary judgment on all of these issues is appropriate.

### 1. Claim 1 is Not Anticipated

Anticipation under 35 U.S.C. § 102 requires that "each claim element must be disclosed, either expressly or inherently, in a single prior art reference." *Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325, 1332-33 (Fed. Cir. 2010); *Limestone Memory Sys. LLC v. Micron Tech. Inc.*, Case No. 15- 0278, Dkt. 385 at 3-6, 23-24, 26 (C.D. Cal. Dec. 26, 2019) (granting summary judgment of no anticipation).  As explained below, Feit admits that limitations of claim 1 are not expressly disclosed by the references, and Feit has not argued that they are inherently disclosed.  Thus, there are no material disputes.

#### a. Claim 1 is not anticipated by Mano

Mano does not anticipate claim 1 for two independent reasons.

<u>First</u>, Feit admits that the claimed "support leads" (claim element 1.5) are not "explicitly disclosed" by Mano.  Ex. 27 at NichiaSJ002719 ("Mano does not explicitly disclose support leads."); SF 128.  Feit's expert, Dr. Lebby, has not argued that this missing disclosure would have been inherent, let alone shown that the claimed support leads were "necessarily" present. *Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1295 (Fed. Cir. 2002) ("Inherent anticipation requires that the missing descriptive material is 'necessarily present,' not merely probably or possibly present, in the prior art.") (citations omitted); SF 129, 133.

<u>Second</u>, Feit and its expert Dr. Lebby have made clear that a board that extends into a support base does not meet the requirements of "a transparent bulb that encloses the board and the plurality of light emitting element chips" (claim element 1.4). *See* Ex. 24 at NichiaSJ002480; SF 130; Ex. 13 at NichiaSJ000664-66.  In

particular, Feit has taken the position that "a board extending into a support base" is a non-infringing design, because it is "a board that is not enclosed by the bulb, as the claims require." Ex. 24 at NichiaSJ002480. Nichia agrees. *See, e.g.*, Ex. 34 at NichiaSJ003445-46. But this is precisely the arrangement of Mano. Ex. 37 (Mano), ¶ [0084] and FIG. 13 (showing substrate 10 extending into the support base 82); SF 131-132.

For either of these reasons, Mano cannot anticipate claim 1 and summary judgment as to anticipation based on Mano is appropriate.

### b. Claim 1 is not anticipated by Maxik or Ishibashi

Claim 1 also requires that "the wavelength conversion member is provided on the first surface side and the second surface side" of the board (claim element 1.8). This feature is absent in both Maxik and Ishibashi, which have *nothing* on the backside of their respective boards. SF 134-139.

Feit admits that Maxik and Ishibashi "do[] not explicitly disclose this limitation." Ex. 27 at NichiaSJ002755, NichiaSJ002788. Likewise, Feit's expert makes no showing that this limitation is inherently present.[8] *See id.* Thus, there is no genuine dispute to preclude summary judgment.

Indeed, the references teach that there is nothing on the backside (*i.e.*, "second surface side") of the board. In Maxik, the light emitting elements 108 are provided only on the first side of substrate 106 (*see* Ex. 39 (Maxik), 6:23, FIGs. 1, 5, 6A, 6B, and 7) – and "[t]here's nothing on the back side of the board…." Ex. 22, 233:13-14; SF 134. The same is true with Ishibashi. *See* Ex. 38 (Ishibashi), ¶ [0020], FIGs. 1 and 2; Ex. 22, 238:2-3; SF 135. When pressed on this deficiency during his deposition, Dr. Lebby admitted that the devices of Maxik and Ishibashi did not require a wavelength conversion member on the backside (*i.e.*, the claimed feature is not necessary and thus cannot be inherent as a matter of law). Ex. 22, 235:14-25,

---

[8] Instead, Feit argues that this deficiency is remedied by another reference – Suehiro – in its *obviousness* grounds. Ex. 27, Sections V.B-C.

242:17-243:14; SF 140-141.  He further opined that, even though the claimed feature is not disclosed, it would have been a "simple" design change that would have been "motivated."  *See, e.g.*, Ex. 22, 231:15-232:2, 235:14-25, 240:1-22, 243:5-244:6.  But this is not how anticipation works.  *Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, 909 F.3d 398, 405 (Fed. Cir. 2018) ("Prior art that must be modified to meet the disputed claim limitation does not anticipate the claim.") (citations omitted); *DatCard Sys., Inc. v. PacsGear, Inc.*, No. 10C-01288, 2013 WL 12134056, at *3 (C.D. Cal. Mar. 12, 2013) ("[I]nherency is an exacting requirement."); *Trintec Indus., Inc.*, 295 F.3d at 1296 (explaining that "obviousness is not inherent anticipation").  Accordingly, summary judgment that claim 1 is not anticipated by either Maxik or Ishibashi is warranted.

### 2.  Claim 19 Would Not Have Been Obvious

Feit's only obviousness challenges to claim 19 are based on Maxik and Ishibashi.  But there is no dispute that the bulb structures in Maxik and Ishibashi have an arrangement that is fundamentally different than the requirements of claim 19.

Specifically, claim 19 requires that "*all* light emitting element chips mounted on the first surface side of the board *are aligned along a line*." '734 Patent, 16, 41-43 (emphasis added).  Feit has taken the position, however, that claim 19 does not apply to products in which the board is curved, or when light emitting element chips are arranged radially.  Ex. 24 at NichiaSJ002459; Ex. 22, 335:13-337:14.  Feit's expert agrees that, to meet claim 19, "all" of the light emitting chips on the board must be in a "straight line."  *See, e.g.*, Ex. 22, 337:11-12 ("[M]y understanding of claim 19 is a straight line[.]").  In this respect, the parties agree – Nichia does not assert that curved products infringe this claim.  *See* Ex. 15 at NichiaSJ000892-93.  Accordingly, there is no dispute regarding the scope of claim 19.

However, the art on which Feit relies (Maxik and Ishibashi) *both* have curvilinear or radially arranged LEDs or curved boards.  SF 142-145.  There can be no dispute about this fact:

1
2
3
4
5
6
7
8




9
10
11
12
13
14

*See, e.g.*, Ex. 39 (Maxik), FIG. 1 (left); Ex. 38 (Ishibashi), FIG. 1 (right). Thus, by Feit's own admissions, neither Maxik nor Ishibashi disclose the features of claim 19. And Feit does not allege that this deficiency is remedied by another reference, or that this feature would have been obvious nonetheless. *See* Ex. 27 at NichiaSJ002752 (relying only on the express disclosure of Maxik alone), NichiaSJ002806 (relying only on the express disclosure of Ishibashi alone).

15
16
17
18
19

Obviousness must be proved by clear and convincing evidence, and Feit cannot meet that high burden. *See FullView, Inc. v. Polycom, Inc.*, No. 18- 00510, 2022 WL 836302, at *4, *12 (N.D. Cal. Mar. 21, 2022). Neither Feit nor its expert has provided any evidence showing a disputed issue of material fact to support an obviousness defense as to claim 19. For the same reasons, claim 19 is not anticipated.

20

### 3.  The Claims Are Not Indefinite

21
22
23
24
25
26
27
28

To establish indefiniteness, an accused infringer must show by clear and convincing evidence that the claims "fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). Feit cannot do so in this case – in fact, it has done the opposite. Its expert understood and applied the claims with respect to both the Accused Products and the prior art. SF 104, 119, 124. Moreover, the Court rejected Feit's indefiniteness positions during the claim construction phase of this case (*see* Ex. 28), and Feit has not developed any new evidence or presented new

arguments.  The Court should reach the same conclusions as it did before.

### a.  The "wavelength conversion member formed unitarily with a transparent member" term does not render the claims indefinite

During *Markman*, the Court rejected Feit's indefiniteness argument and construed this term to mean "a single component that both converts wavelength and allows light to pass through."  Ex. 28 at 10.  Later, during expert discovery, Dr. Lebby made clear that he agrees with the construction, understands the construction, and was able ascertain the scope of the claim as construed with sufficient certainty to analyze both the prior art and the Accused Products.  *See, e.g.*, Ex. 22, 180:2-181:22 ("[I]n the [patent], there is a mixture of epoxy resin and phosphor to create the unitary wavelength conversion member, and that aligns really nicely with the Court's construction[.]"), 210:7-216:8, 344:7-347:9; SF 102-105.  Nonetheless, Feit re-raises the same arguments it has already lost.

For instance, in his Opening Report, Dr. Lebby reiterates Feit's earlier argument that "the specification does not make … a distinction" between the different members but "instead uses several terms [i.e., wavelength conversion member, transparent member, and a wavelength conversion member formed unitarily with a transparent member] interchangeably."  Ex. 27 at NichiaSJ002842-43.  Dr. Lebby's arguments are copied *verbatim* from Feit's claim construction brief.  *Compare id.* ("The '734 Patent provides that the covering member, transparent member, second transparent member -- query what the difference between the first and second may be ….") *with* Dkt. 67 at 11 (same).

The Court rejected this argument, and explained that its construction was "consistent with the specification."  Ex. 28 at 10.  Nothing has changed, and the scope of the claims remains clear.  *See* Ex. 34 at NichiaSJ003565-66.  Moreover, Dr. Lebby himself has contradicted this argument – he has repeatedly explained that FIG. 6 and the corresponding description are the only identification of this claim feature – *i.e.*,

the patent *does* distinguish between the different members. *See, e.g.*, Ex. 22, 176:14-19; *see also* Ex. 24 at NichiaSJ002416-17 ("The *only* identification of a 'wavelength conversion member formed unitarily with a transparent member' throughout the entire '734 Patent is Figure 6….") (emphasis added); SF 106.   These are the very same portions of the '734 Patent the Court cited when rejecting this argument the first time. *See* Ex. 28 at 10 (citing '734 Patent, 7:48-59).

### b. The "end portion," "center portion," "first/second region," and "first/second set" terms do not render the claims indefinite

The Court correctly construed theses terms and recognized that the "location-arrangement language" in these terms "describes relative placement" of the claim elements, and must be read together "in the context of the claims as a whole." Ex. 28 at 9, 15.   The Court also concluded that a POSITA would have no trouble understanding the scope with reasonable certainty given the relative locations identified in the claims. *See* Ex. 28 at 15.  In other words, consistent with the Court's constructions, a POSITA would be able to identify the center of the board, the ends of the board, the first and second regions therebetween, and the first and second sets of light emitting element in those regions.   Dr. Lebby confirmed the Court's conclusion – he had no trouble understanding and applying these terms when pressed. *See, e.g.*, Ex. 22, 202:5-204:17; SF 119-120.

Feit (through Dr. Lebby) improperly ignores the Court's prior analysis and constructions for the relevant terms.  *See* Ex. 27 at NichiaSJ002844-53; *Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009) ("Once a district court has construed the relevant claim terms, and unless altered by the district court, then that legal determination governs for purposes of trial.")*; Homeland Housewares, LLC v. Research*, No. 11-3720, 2013 WL 12134266, at *6 (C.D. Cal. Feb. 28, 2013) ("The claim as properly construed by the Court to include empirical testing does not suffer from this defect. … Circularity is no longer an issue in the

case due to the Court's claim construction, and Homeland's continued argument along these lines ignores the Court's claim construction…."); *see also id.* at *12 ("Argument and testimony that ignores the Court's claim construction is useless …."). Two examples are discussed below.

First, Dr. Lebby's opinion relies on a purported lack of clarity regarding the meaning of "longitudinal," "therebetween," and the "portion" terms, such that they in turn, allegedly render the "region" and "set" terms indefinite. *See* Ex. 27 at NichiaSJ002845, NichiaSJ002849. But the Court has already rejected this argument, and explained that "the disputed limitations are not indefinite." Ex. 28 at 9 ("Having considered and rejected Defendant's indefiniteness construction, the Court finds that plain and ordinary meaning applies, with 'longitudinal' meaning 'lengthwise,' 'end portions' meaning 'ends' and 'center portions' meaning 'center.'"). Indeed, the supposedly unclear terms (*longitudinal*, *therebetween*, and *portion*) are not part of the Court's construction. Dr. Lebby does not even *argue* that he cannot apply the terms *as construed*, or that a POSITA would have any lack of certainty as to their scope. *Cf. TQ Delta LLC v. 2Wire, Inc.*, No. 13-1835, 2021 WL 3145655, at *7 (D. Del. July 26, 2021) (agreeing with plaintiff that the claim term at issue was not indefinite in view of the court's construction); *Card-Monroe Corp. v. Tuftco Corp.,* 270 F. Supp. 3d 967, 991 (E.D. Tenn. Sept 1, 2017) (same).

Because Dr. Lebby ignores the Court's constructions, he repeats Feit's earlier argument that a chip in the center of the board raises indefiniteness issues. *See* Ex. 27 at NichiaSJ002848-49; Ex. 22, 201:3-8. The Court specifically considered this argument before issuing its *Markman* Order – and in fact, requested supplemental briefing on the following question: "May an LED chip lie within or at the 'center portion'…?" Dkt. 86 at 2. Nichia answered yes, and explained why it raised no indefiniteness concerns. Dkt. 87 at 8-9. Feit disagreed. Dkt. 88 at 16. The Court rejected Feit's arguments, and construed the relevant terms. Dkt. 90 at 7-9 and 14-15. Feit ignores the fact that the Court addressed this issue based on the parties'

supplemental briefing, and instead Feit focuses only on comments made during oral argument. Ex. 24 at NichiaSJ002449 (*citing* Dkt. 82 at 49). Moreover, Feit is wrong – there is no confusion. The Court construed "center portion" to mean "center," and there is no dispute that a board – as a physical object – has a center, even if there is an odd number of chips mounted on it. SF 121-123. Even Dr. Lebby acknowledges that there is a "geometric center of the board" when there is an odd number of chips. *See* Ex. 24 at NichiaSJ002448-49. In view of all this, Feit cannot meet its high burden to show that the claim's scope is not reasonably clear.

Second, with respect to the "first/second set" terms, Dr. Lebby looks to wiring connections (e.g., series vs. parallel) to argue that the claims are indefinite. *See* Ex. 27 at NichiaSJ002850-52 (alleging the specification "defines the sets as separate series of LEDs distinguished by parallel connections"). Feit previously argued that wiring connections were relevant, but the Court *rejected* that position stating that "[t]he balance of the limitation describes relative placement, *not wiring requirements*." Ex. 28 at 15 (emphasis added). Again, Dr. Lebby ignores the Court's prior analysis. In fact, during his deposition, Dr. Lebby appeared to be unaware of the Court's decision on this point. *See* Ex. 22, 440:6-441:13.

Accordingly, there are no genuine issues of material fact and Nichia is entitled to summary judgment that the claims of the '734 Patent are not indefinite.

### 4. The Claims are Enabled by the '734 Patent

"Under the enablement requirement of 35 U.S.C. § 112, 'the specification must enable one of ordinary skill in the art to practice the claimed invention without undue experimentation.'" *Takeda Pharm. Co. v. Zydus Pharms. USA, Inc.*, 743 F.3d 1359, 1368–69 (Fed. Cir. 2014) (citation omitted). Feit asserts that "a wavelength conversion member formed unitarily with a transparent member" is not enabled by the '734 Patent. *See, e.g.*, Ex. 27 at NichiaSJ002840-41.

Feit's expert has been unequivocal that a POSITA who wants to understand this claim feature need only to look at FIG. 6 of the '734 Patent – and the description

of FIG. 6 explains that the claimed member can be made by mixing resin and phosphor. Ex. 24 at NichiaSJ002416-17; Ex. 22, 180:2-181:2 ("there is a mixture of epoxy resin and phosphor to create the unitary wavelength conversion member"); '734 Patent, 7:49-53 ("a phosphor 48 can be mixed into an epoxy resin"); SF 106. As already noted by the Court, this portion of the '734 Patent "explains how these two components can be formed unitarily as claimed." Ex. 28 at 10. Nothing in the record could support a conclusion that mixing resin and phosphor would require undue experimentation. *See* Ex. 34 at NichiaSJ003552-57; SF 106-118.

Indeed, Dr. Lebby does not even argue that undue experimentation would be required. Nor could he. In his Opening Report, Dr. Lebby admits that the concept of mixing phosphor into a resin in order to convert wavelength was well known. Ex. 27 at NichiaSJ002622-24, NichiaSJ002748 (calling it "routine engineering"); *see also* SF 111. At most, Dr. Lebby complains that the "specification does not provide any specific combinations of resin/phosphor mixture." Ex. 27 at NichiaSJ002840-41.[9] But even if required, this is simply untrue – the patent suggests the use of "silicone resin" (7:56-57), identifies specific phosphors (11:65-12:2), and discusses aspects of the mixing process, such as viscosity and curing (12:59-13:1). SF 114-118. In view of Dr. Lebby's admissions and the clear teachings of the patent, summary judgement is appropriate.

### 5. The Claims have Written Description Support

Feit asserts that the "center/end portions" and "first/second regions" terms of claim element 1.1 lack written description support. Ex. 27 at NichiaSJ002838-39. In particular, Dr. Lebby argues that the specification "is completely silent as to these terms and does not include any language, explanatory description, or detail as to the structure of these terms." *Id.* Feit's position has no basis.

---

[9] Dr. Lebby's remaining arguments appear to address indefiniteness, which is a separate inquiry addressed in Section III(B)(3)(a) above. *See* Ex. 27 at NichiaSJ002841.

The specification describes in detail an exemplary transparent board 20 and related components, as well as the characteristics of the board and related components. *See* '734 Patent, 3:25-5:67, 14:9-32, FIGs.1-8, 10, 12-16; SF 126. A rectangular board, as a physical object, necessarily has ends and a center, and regions between the ends and center, as required by the Court's construction. Ex. 28 at 9; SF 127. Moreover, Feit's argument improperly ignores the figures of the patent, which also provide written description support. *Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*, 291 F.3d 1317, 1322 (Fed. Cir. 2002) ("[D]rawings alone may provide a 'written description' of an invention as required by § 112'[.]") (citation omitted). An example is shown in FIG. 15, annotated below:



At base, Feit's argument rests on the premise that the exact claim language is not found in the text of the '734 Patent. But this is not required. *Koito Mfg. Co. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1154 (Fed. Cir. 2004) ("Terms need not be used *in haec verba*, however.… Instead, we have explained that the written description requirement can be satisfied by 'words, structures, figures, diagrams, formulas, etc.'") (citations omitted). There are no genuine issues of material fact regarding Feit's lack of written description defense, and summary judgment is appropriate.

### C. Feit's Alleged Non-Infringing Alternatives

#### 1. Background and Legal Standard

In this case, Nichia seeks a reasonable royalty for Feit's infringement of the '734 Patent. To determine a reasonable royalty, the finder of fact will consider a

hypothetical negotiation between the patentee and the accused infringer at the time of first infringement. That reasonable royalty would include a royalty rate that is applied to all sales during the period of alleged infringement (the "accounting period"). The fact finder may consider whether, at the time of the negotiation, the accused infringer could have designed around the patented technology and (as Feit asserts in this case) distributed non-infringing alternatives that would have been acceptable to customers.

The Federal Circuit addressed this topic in *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1348 (Fed. Cir. 1999), and held that, "to qualify as an acceptable non-infringing alternative," the alternative must be "available or on the market at the time of infringement." *Id.* (citation and quotation marks omitted). "When an alleged alternative is not on the market during the accounting period, a trial court may reasonably infer that it was not available as a noninfringing substitute at that time." *Id.* at 1353. In that case, "[t]he accused infringer then has the burden to overcome this inference by showing that the substitute was available during the accounting period." *Id.* "Acceptable substitutes that the infringer proves were available during the accounting period" are relevant to the assessment of damages, but "substitutes only theoretically possible will not." *Id.* (citation omitted). Finally, "the trial court must proceed with caution in assessing proof of the availability of substitutes not actually sold during the period of infringement." *Id.*

To determine whether a non-infringing alternative was available during the accounting period, courts consider whether the accused infringer can show that it had all of the "necessary equipment, know-how, and experience" to make the alternative product. *Id.* at 1354. In *Grain Processing*, the infringer made that showing, *i.e.,* that it was able to convert to a non-infringing alternative manufacturing process in only two weeks. *Id.* at 1346. In the absence of similar evidence, the non-infringing alternative argument fails. *Micro Chem. v. Lextron, Inc.*, 318 F.3d 1119 (Fed. Cir. 2003) (accused infringer did not have the equipment, know-how, and experience to

make the alternative at the time of infringement because it  would have taken four months to convert infringing units into non-infringing units).

In addition to showing that a non-infringing alternative was *available* at the time of infringement, the accused infringer must also show that the alternative product would have been an *acceptable* substitute for the accused product.  *Grain Processing Corp.*, 185 F.3d at 1355.  Some facts courts consider on this issue include the relative price of the accused and alternative products, similarity of appearance and operation of the two products, and ultimately, whether customers would have switched from the infringing product to the alternative.  *Id.*

If the accused infringer cannot meet its burden to show the availability *and* acceptability of an alternative product at the time of infringement, summary judgment on this issue is appropriate.  *See Sherwin-Williams Co. v. PPG Indus., Inc.*, No. 17-1023, 2020 WL 1283465, *9 (W.D. Pa. Mar. 18, 2020).

### 2.  Feit has Shown No Acceptable, Non-Infringing Alternatives

In its discovery responses and expert submissions, Feit purports to identify 20 "design-arounds" to the Accused Products, and asserts that these are acceptable, non-infringing alternatives.  SF 55.  For present purposes, these alleged alternatives can be addressed in two groups.  SF 56-57.

### a.  Non-Infringing Alternatives that are also Accused Products

Several of Feit's purported design-arounds are also Accused Products.  SF 56.  But by definition an Accused Product cannot also be a non-infringing alternative.  "[I]nfringement and validity are presumed in a patent damages analysis and it *should be* axiomatic that an infringing product by definition cannot be a non-infringing alternative."  *Webasto Thermo & Comfort N.A., Inc. v. Bestop, Inc.*, No. 16-cv-13456, 2019 WL 3334563, *4 (E.D. Mich. July 25, 2019) (emphasis in original).

More specifically, Feit alleges that the following are non-infringing designs: (1) products in which the filament has "one or more lighting element chips in the

center of the board"; (2) products in which the encapsulant has "[m]ultiple resin

structures," "a break or gap in the resin structure," or a "resin structure that does not

surround the whole board"; and (3) products with "non-traditionally shaped bulbs."

SF 55.  But products having each of these features are among the Accused Products

in this case.  SF 56.  Thus, none of these designs is a *non-infringing* alternative.

### b. Non-Infringing Alternatives That Are Not Accused Products

None of the remaining alleged "non-infringing alternative" designs was on the

market in September 2017, at the time of the hypothetical negotiation.  SF 57-59.  As

discussed above, Feit's burden is to show that these alleged designs would have been

available to Feit and acceptable to Feit's customers at that time.  *Grain Processing

Corp.*, 185 F.3d at 1353.  Feit cannot meet that burden.

### (i)    Feit Cannot Show that the Alternatives Were "Available"

As an initial matter, Feit had ample opportunity to present evidence on the

availability of the purported non-infringing alternatives, but it offered none.  SF 60-

64.  In an interrogatory, Nichia asked Feit to identify the dates any alleged non-

infringing alternatives became available to Feit, and to provide supporting

documents.  Ex. 13 at No. 16.  Feit did not provide this information in its response,

and it identified no documents.  *Id*.  In addition, Nichia asked Feit to designate a

witness under Fed. R. Civ. P. 30(b)(6) to testify on "any efforts by Feit or its

supplier(s) to design-around the Patents-in-Suit."  Feit refused.  Ex. 43 at No. 25, 32.

The testimony of Feit's founder and CEO, Mr. Aaron Feit, confirms that Feit

has no basis for its position that any of its proposed non-infringing alternatives were

available to Feit during the accounting period.  Mr. Feit explained that Feit could not

(or would not) even ask its suppliers for information regarding their ability to provide

non-infringing alternatives, as any such request for technical information could

"irreparably harm" Feit's business relationship with those companies.  SF 65-67, 69;

Ex. 21 at NichiaSJ002022-23.  He testified that Feit's suppliers view information

1    regarding the design and manufacture of their filament-style LED bulbs as a ████

2    ████  and that ████████████████████████████████████████

3    ████████████ because suppliers keep that information ████████████

4    and ██████████████████████████████  SF 67-68; Ex. 23 at 37:2-

5    41:21, 73:3-22.  Mr. Feit also testified that Feit has never told its suppliers how a

6    filament-style LED lamp should be assembled, and he does not know whether Feit's

7    suppliers have considered alternative designs.  SF 68; Ex. 23 at 65:9-14, 157:25-

8    170:6.

9        Feit's technical expert, Dr. Lebby, also did not have, and did not consider,

10    evidence from Feit's suppliers.  SF 69-71.  In fact, Dr. Lebby testified that, while he

11    had seen a list of Feit's suppliers in a report submitted by *Nichia's* expert, he has "no

12    idea" who Feit's suppliers for the accused products were.  SF 71; Ex. 22 at 75:9-

13    76:13.  Thus, like Mr. Feit, Dr. Lebby has no information as to whether Feit's

14    suppliers had the materials, equipment, experience, and know-how to make non-

15    infringing alternatives as Feit proposes.

16        Indeed, there is no indication that Dr. Lebby even considered the issue.

17    Instead, he says that, based on his general knowledge of the industry (not based on

18    facts relating to Feit or its suppliers), many of the alleged non-infringing alternatives

19    would have been "simple" or "easy to implement."  Ex. 24 at NichiaSJ002480-85.

20    This is insufficient to show "availability" under the law.  As noted above, "[m]ere

21    speculation and conclusory assertions will not suffice" to overcome the presumption

22    of non-availability. *See Grain Processing Corp.,* 185 F.3d at 1353;  *Laser Dynamics,*

23    *Inc. v. Quanta Computer, Inc.*, No. 06- 348, 2011 WL 197869 (E.D. Tex. Jan. 20,

24    2011) (*Grain Processing* does not instruct the court to inquire into whether defendant

25    believed it was possible to produce the non-infringing alternatives, it requires the

26    court to consider whether defendant had the necessary equipment, know-how, and

27    experience to implement them).

28        Finally, Feit has offered no evidence that any design-around (if one were

possible) would have been available *during the accounting period*.  Mr. Aaron Feit testified that Feit spends a lot of time when it brings new products to market, because ██████████████████████████████████████████████████████████ ████████████████████████████████████████ SF 72-74; Ex. 23 at 185.  Mr. Feit also testified that ██████████████████████████████████████████. SF 74; Ex. 23 at 185, 188.  Because Feit has no evidence that the alleged alternatives would have been available at the appropriate time, its "design-around" argument fails on this ground as well.  *See Micro Chem, Inc.*, 318 F.3d at 1123 (a non-infringing alternative was "unavailable" because it would have four months to convert to non-infringing units).  Because the record contains no evidence to support a finding that Feit's proposed "design-arounds" were available, and includes evidence from Feit's witnesses that undercuts Feit's position, Feit cannot meet its burden of proof on this issue.

**(ii)   Feit Cannot Show They Were "Acceptable"**

Feit has the burden of proof to show that these alleged non-infringing alternatives would have been acceptable substitutes for the Accused Products.  *See Grain Processing Corp.*, 185 F.3d at 1353; *Velocity Patent LLC v. FCA US LLC*, 319 F.Supp.3d 950, 972 (N.D. Ill. Aug. 7, 2018).  Acceptability turns on the features and operation of the proposed alternative, and its price. *Grain Processing Corp.,* 185 F.3d at 1355.  Feit alleges that it could have offered acceptable non-infringing alternatives to the Accused Products at no cost, but there is no evidence properly on the record to support Feit's position.[10]

---

[10]    In a response to one of Nichia's interrogatories, Feit says that it could have obtained a non-infringing alternative for no additional cost.  Ex. 12 at No. 11.  Feit did not submit the response under oath, so it is not available to Feit as evidence in opposition to a motion for summary judgment.  *See also* Fed. R. Civ. P. 33(b); 8B Fed. Prac. & Proc. Civ. § 2180 (3d ed.) ("For hearsay purposes, interrogatories are no different from any other out-of-court statement.").  Given that the response also flies in the face of Mr. Aaron Feit's testimony discussed above, the response should be ignored.

Moreover, as with the issue of availability, the testimony of Feit's founder and CEO is contrary to Feit's position on acceptability. On price, Mr. Aaron Feit testified that ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████ SF 75; Ex. 23 at 42-43. ███████████████████████████████████████ ██████████████████████████████████ SF 76; Ex. 23 at 96-97. The best Mr. Feit could offer is that the costing process (what Feit will pay its suppliers, and what Feit can charge its customers) involves ████████████ ██████████ SF 77; Ex. 23 at 188. In sum, the record shows that any non-infringing alternative Feit might have been able to get from its suppliers ███████████████████. SF 72-78.

The same is true with respect to the acceptability of the purported alternatives' appearance and light output. Feit's expert, Dr. Lebby, offered some testimony on these subjects, but it is not directly on point. For example, he offers no explanation as to how any particular product would compare to an accused product in terms of appearance, light output, and cost, and why that would be acceptable to a customer. SF 79-95. In fact, Dr. Lebby never opined that any of Feit's proposed alternatives would have been acceptable to customers – nor could he have, because neither he nor Feit conducted any systematic analysis or research into this issue. SF 79-95; 99-101. Further, Dr. Lebby's testimony confirmed that he was continuing to modify the alleged alternatives on-the-spot in an effort to make them acceptable (because they were not). SF 79-96. For example, when asked whether the light output of the alternatives would be sufficient in certain designs, Dr. Lebby testified that more boards could be added to alternative designs to overcome lighting problems. SF 96; Ex. 24 at NichiaSJ002482, NichiaSJ002487. In the process, Dr. Lebby entirely disregarded any impacts this would have on costs or aesthetics. SF 79-97. As Mr. Aaron Feit confirmed, moreover, the filament design is the main reason consumers

buy the products: "[T]he main benefit of filament is, when the product is off, the way the filament looks through clear glass … and also, in some types of lamps, even when it's on, the way it looks when you can see the filament." SF 97; Ex. 23 at 89-90. There is no evidence that Dr. Lebby's redesigns would be acceptable alternatives.

In the end, the only evidence Feit can offer is Dr. Lebby's speculation. Dr. Lebby did not see or test any of the alleged alternative designs (SF 98); he did not talk to Feit or Feit's suppliers about any of the alleged alternative designs (SF 99); and he did not conduct any consumer surveys or market studies regarding the alternative designs (SF 100); and there are no sales revenues for any of the alternative designs (SF 101). Indeed, there is no evidence that Feit nor anyone on its behalf communicated with any of its suppliers about any of the alleged alternative designs. SF 69, 100. Because the record contains no evidence to support a finding that Feit's proposed "design-arounds" would have been acceptable, and includes evidence from Feit's witnesses that undercuts Feit's position, Feit cannot meet its burden of proof to show the acceptability of these alleged alternatives.

## IV.  CONCLUSION

Nichia respectfully requests that the Court grant its Motion, as set forth in the accompanying proposed order.


Respectfully submitted,


DATED: July 27, 2022          ROTHWELL, FIGG, ERNST &MANBECK P.C.

By: */s/ Robert P. Parker*

ROBERT P. PARKER (*pro hac vice*)

LEWITT, HACKMAN, SHAPIRO, MARSHALL & HARLAN

By: */s/ Jeffrey A. Kobulnick*

JEFFREY A. KOBULNICK (SBN 228299)
*Attorneys for Plaintiff Nichia Corporation*