DAVID GURNICK (SBN 115723)
dgurnick@lewitthackman.com
JEFFREY A. KOBULNICK (SBN
228299) jkobulnick@lewitthackman.com
JESSICA W. ROSEN (SBN 294923)
jrosen@lewitthackman.com
LEWITT, HACKMAN, SHAPIRO,
MARSHALL & HARLAN
16633 Ventura Boulevard, Eleventh Floor
Encino, CA 91436
Telephone: (818) 990-2120
Facsimile: (818) 981-4764

ROBERT P. PARKER (*pro hac vice*)
rparker@rfem.com
MARTIN ZOLTICK (*pro hac vice*)
mzoltick@rfem.com
JENNY COLGATE (*pro hac vice*)
jcolgate@rfem.com
MICHAEL JONES (*pro hac vice*)
mjones@rfem.com
MARK RAWLS (*pro hac vice*)
mrawls@rfem.com
D. LAWSON ALLEN (*pro hac vice*)
lallen@rfem.com
NICOLE M. DEABRANTES (*pro hac vice*)
ndebrantes@rfem.com
ROTHWELL, FIGG, ERNST & MANBECK P.C.
901 New York Avenue N.W.
Suite 900 East
Washington, DC 20001
Telephone:  (202) 783-6040
Facsimile:   (202) 783-6031

Attorneys for Plaintiff Nichia Corporation

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHIA CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>FEIT ELECTRIC COMPANY, INC.<br><br>Defendant. | Case No.  2:20-cv-00359-GW-E<br><br>***REDACTED***<br><br>**MOTION TO PRECLUDE IMPROPER CLAIM CONSTRUCTIONS** [Proposed order filed concurrently herewith]<br><br>Hearing Date: August 25, 2022<br><br>Time:     8:30 a.m.<br>Ctrm:    9D |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................... iii

I.    INTRODUCTION ..................................................................................... 1

II.   BACKGROUND ....................................................................................... 3

III.  LEGAL PRINCIPLES ............................................................................. 4

IV.   ARGUMENT ............................................................................................ 5

    A.    The Court should preclude Feit's construction of "*a first/second set of the light emitting element chips are mounted on the first/second region*" to require wiring portions to be mounted to the board ..................................................................................... 6

        1.    Feit advances a narrow construction that is inconsistent with the Court's prior construction of this term ....................... 6

        2.    Feit's proposed narrow construction is improper ...................... 7

    B.    The Court should preclude Feit's construction of "*support leads that secure the plurality of light emitting element chips inside the transparent bulb*" to require direct and exclusive support ............. 8

        1.    Feit advances a narrow construction that is inconsistent with the plain and ordinary meaning of this term ..................... 8

        2.    Feit's proposed narrow construction is improper ...................... 9

    C.    The Court should preclude Feit's construction of "*the wavelength conversion member is provided on the first surface side and the second surface side*" that is based on a manufacturing process ..................................................................... 11

        1.    Feit advances a narrow construction that is inconsistent with the plain and ordinary meaning of this term ................... 11

        2.    Feit's proposed narrow construction is improper ................... 12

D.   The Court should preclude Feit's construction of the term "*a wavelength conversion member formed unitarily with a transparent member*" that requires a uniform distribution of phosphor ........................................................................................ 15

   1.   Feit advances a narrow construction that is inconsistent with the Court's construction of this term ................................ 15

   2.   Feit's proposed narrow construction is improper .................... 15

E.   The Court should preclude Feit's construction of "*the wavelength conversion member is provided on the first surface side and the second surface side*" that requires a physical connection between the wavelength conversion member provided on each of the sides ................................................ 17

   1.   Feit advances a narrow construction that is inconsistent with the plain and ordinary meaning of this term ................... 17

   2.   Feit's proposed narrow construction is improper .................... 17

F.   The Court should preclude Feit's construction of "*longitudinal*" that requires straight (or linear) boards ............................................... 21

   1.   Feit advances a narrow construction that is inconsistent with the Court's construction of this term ................................ 21

   2.   Feit's proposed narrow construction is improper .................... 21

G.   The Court should preclude Feit's construction of "*the support leads extend[ing] from the support base towards the pair of metal plates*" that excludes a product in which one of the support leads goes past a metal plate ................................................. 23

   1.   Feit advances a narrow construction that is inconsistent with the plain and ordinary meaning of this term ................... 23

   2.   Feit's proposed narrow construction is improper .................... 24

V.   CONCLUSION ........................................................................................ 25

ii

1

# <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*A. G. Design & Assocs. LLC v. Trainman Lantern Co.*,

4

    271 F. App'x 995 (Fed. Cir. 2008) .......................................................................14

5

*Accent Packaging, Inc. v. Leggett & Platt, Inc.*,

6

    707 F.3d 1318 (Fed. Cir. 2013).......................................................................8, 11

7

*Broadcom Corp. v. Emulex Corp.*,

8

    No. 10- 03963, 2011 WL 13130705 (C.D. Cal. Aug. 10, 2011) .................5, 8, 23

9

*GE Lighting Sols, LLC. v. AgiLight, Inc.*,

10

    750 F.3d 1304 (Fed. Cir. 2014).......................................................................19, 23

11

*Hill-Rom Servs., Inc. v. Stryker Corp.*,

12

    755 F.3d 1367 (Fed. Cir. 2014).......................................................................19, 23

13

*Liebel–Flarsheim Co. v. Medrad, Inc.*,

14

    358 F.3d 898 (Fed. Cir. 2004).......................................................................20

15

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,

16

    521 F.3d 1351 (Fed. Cir. 2008).......................................................................5

17

*Phillips v. AWH Corp.*,

18

    415 F.3d 1303 (Fed. Cir. 2005).......................................................................5, 19

19

*Summit 6, LLC v. Samsung Elecs. Co.*,

20

    802 F.3d 1283 (Fed. Cir. 2015).......................................................................5

21

*Wi-LAN USA, Inc. v. Apple Inc.*,

22

    830 F.3d 1374 (Fed. Cir. 2016).......................................................................3, 4

23

**Rules**

24

Federal Rule of Civil Procedure 16 ...........................................................................2

25

Federal Rule of Evidence 402 ...................................................................................3

26

Federal Rule of Evidence 403 ...................................................................................3

27

28

MOTION TO PRECLUDE IMPROPER CLAIM CONSTRUCTIONS

Plaintiff Nichia Corporation ("Nichia") submits this motion to preclude defendant Feit Electric Co., Inc. ("Feit") and Feit's technical expert Dr. Michael Lebby from advancing belated and improper claim constructions at trial or in pretrial motions. Feit should not be allowed to argue – either at summary judgment or at trial – that the claims require new, narrowing limitations that are not included in the text of the claims or the Court's *Markman* ruling. *See* Dkt. 90.

## I.    Introduction

The claim construction process started nearly two years ago. The Court required the initial exchange of proposed constructions by September 28, 2020, with briefing to conclude by December 21, 2020. Dkt. 47. The Court later ordered supplemental briefing following the *Markman* hearing. Dkt. 86. The Court then issued its claim construction order on February 19, 2021. Dkt. 90.

Feit had every opportunity to address the meaning of the claims, and it did so. Feit argued that five terms were indefinite, and that four terms should be construed narrowly according to preferred embodiments in the specification. Dkt. 61 at 1. Feit lost on all points; the Court did not adopt a single one of Feit's arguments. *See generally* Dkt. 90. Feit did not ask the Court to reconsider its ruling on any point.

Now, Feit belatedly offers new claim construction arguments and evidence under the guise of an expert report on non-infringement. Specifically, more than a year after the *Markman* order, Feit offers the opinion of its technical expert, Dr. Michael Lebby, who relies on improper claim constructions and asserts new positions regarding the scope of the asserted claims. Feit has also indicated that it intends to advance these arguments, either to the Court at summary judgment, or before a jury. Feit should not be allowed to do so.

In addition to being untimely, the new claim construction positions Feit and Dr. Lebby offer are also inconsistent with the Court's prior constructions and the plain and ordinary meaning of the other terms. For each term at issue, Feit relies on re-interpretations of the term that unduly narrow either the Court's construction of

the term or its plain and ordinary meaning.  Feit has not explained what is wrong with the Court's constructions, or why it now advances claim construction of terms it did not propose previously.  Moreover, Feit's new interpretations are wrong on the merits, and it could not have received the constructions it now advances had Feit proposed them during the *Markman* process.  Feit's constructions exclude preferred embodiments, misread the specification, and improperly narrow the plain meaning of the claims as construed.

As one example, the Court construed the claim terms involving a "set" of light emitting element chips as having their plain and ordinary meaning, and rejected Feit's attempt to narrow the claims to a particular wiring pattern: "The balance of the limitation describes relative placement, not wiring requirements."  Dkt. 90 at 15.  Feit's expert now offers a different wiring requirement, simply replacing the one the Court already rejected with a new one found nowhere in the claims or specification.  Declaration of Mark T. Rawls ("Rawls Decl."), Ex. A, p. 83, ¶142.[1]

In this and similar instances, Feit offers new, improper claim constructions.  In fact, Dr. Lebby's deposition testimony confirmed that his interpretations do not follow the Court's claim constructions.  Rather, he relies on strained readings of the claims and, for some terms, improperly limits the claims' scope to what he observed in the figures. *See, e.g.,* Ex. B, 250:10-25, 408:2-14, 440:20-441:3.

Under Fed. R. Civ. P. 16, this Court has the discretion to hold Feit to the schedule the Court previously adopted, and to reject its new claim construction arguments out of hand.  As the Federal Circuit has held,

> We generally support a district court's case-management authority to set a schedule for claim construction that requires parties to take positions on various dates and holds the parties to these positions. For example, we found no abuse of discretion in

---

[1] Citations to exhibits herein refer to the exhibits attached to the Rawls Declaration.

> a district court's denial of a party's motion to amend its
> infringement contentions based on its finding that the party had
> not been diligent in advancing this new theory.

*Wi-LAN USA, Inc. v. Apple Inc.*, 830 F.3d 1374, 1385 (Fed. Cir. 2016). Also, because the new constructions are inconsistent with the prior *Markman* ruling, they are irrelevant, and any arguments based on them would be confusing to a jury. *See* Fed. R. Evid. 402, 403.

The Court should therefore preclude Feit or its expert from relying on new claim constructions. Nothing has changed in the nature of the Accused Products, Nichia's allegations of infringement, or in discovery since the Court's *Markman* order that justifies Feit's effort to inject new claim constructions into the case. Indeed, Feit has had nearly a year-and-a-half to ask the Court to reconsider its *Markman* ruling, but instead decided to advance new claim constructions *sub silentio* through written discovery and its expert's non-infringement report. In these circumstances, the Court should preclude Feit from relying on inconsistent claim constructions on summary judgment or at trial.

## II.    Background

Independent claim 1 and dependent claim 23 are at issue in this motion. The terms of claim 1 at issue also appear identically in independent claims 26 and 27, which are also asserted. Claims 1 and 23 read as follows:

| Claim 1 | Claim Language |
|---------|----------------|
| **[1.0]** | A light emitting device comprising: |
| **[1.1]** | a board having end portions and a center portion therebetween in a longitudinal direction, the board having a first surface on a first surface side thereof and a second surface on a second surface side thereof, the second surface being an opposite side to the first surface, the first surface including a first region and a second region, the first region extending from the center portion of the board to one of the end portions, the second region extending from the center portion of the board to the other of the end portions; |

| **[1.2]** | a plurality of light emitting element chips mounted on the first surface side of the board; |
| **[1.3]** | a wavelength conversion member formed unitarily with a transparent member that seals the plurality of light emitting element chips; |
| **[1.4]** | a transparent bulb that encloses the board and the plurality of light emitting element chips; |
| **[1.5]** | support leads that secure the plurality of light emitting element chips inside the transparent bulb; |
| **[1.6]** | a support base that can be threadedly engaged with a conventional lightbulb socket along a socket axis; and |
| **[1.7]** | a pair of metal plates protruding at both ends of the wavelength conversion member, |
| **[1.8]** | wherein the wavelength conversion member is provided on the first surface side and the second surface side, the wavelength conversion member is elongated in the longitudinal direction when viewed in plan view of the first surface side of the board, |
| **[1.9]** | wherein a first set of the light emitting element chips are mounted on the first region and arranged from the center portion of the board to the one of the end portions, |
| **[1.10]** | wherein a second set of the light emitting element chips are mounted on the second region and arranged from the center portion of the board to the other one of the end portions, and |
| **[1.11]** | wherein the pair of metal plates are electrically connected with the support base via the support leads. |

| **Claim 23** | **Claim Language** |
|---|---|
| **[23.1]** | The light emitting device according to claim 1, wherein the support leads extend from the support base towards the pair of metal plates. |

The Court has already construed the claims. *See* Dkt. 90. Nichia's technical experts relied on the Court's constructions in preparing their opinions on infringement and validity. *See generally* Exs. C, D.

## III. Legal Principles

This Court is familiar with the basic principles of claim construction. *See generally* Dkt. 90 at 2-4 (legal section of the Court's *Markman* order in this case).

As noted above, this Court is not required to revisit the claim construction issues a second time. *Wi-LAN USA, Inc.*, 830 F.3d at 1385.

If the Court decides to revisit its *Markman* ruling, then the Court – and not Feit or a jury – must construe the claims. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it."). But this does not mean that the Court is required to change any of the existing constructions, or modify the "plain meaning" interpretations the parties accepted in the *Markman* process. The Court can fully resolve the dispute – consistent with *O2 Micro* – by rejecting Feit's efforts to narrow the claims, without leaving questions of interpretation to the jury. *See Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015) ("The district court rejected [Defendant's] argument …. and declined to further construe the term because it was a 'straightforward term' that required no construction.... Because the plain and ordinary meaning of the disputed claim language is clear, the district court did not err by declining to construe the term."); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) ("In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."); *Broadcom Corp. v. Emulex Corp.*, No. 10- 03963, 2011 WL 13130705, at *4 (C.D. Cal. Aug. 10, 2011) ("Given that the time for claim construction has passed, all unconstrued claims shall have their plain and ordinary meanings.") (citation omitted).

## IV. Argument

The Court's prior constructions are correct, and where the Court did not construe a term, the plain and ordinary meaning controls. Nonetheless, Feit's non-infringement arguments rest on claim constructions that are *inconsistent* with the Court's prior constructions and the plain and ordinary meaning of the other terms.

1  The parties therefore have a dispute (as explained further below, for each term) as to

2  the correct legal scope of the claims.  Nichia does not ask the Court to revisit its prior

3  constructions, or to construe new terms not previously raised.  On the contrary,

4  Nichia simply asks the Court to affirm its prior *Markman* ruling, and preclude Feit

5  and its expert from advancing new and unduly narrow constructions that depart from

6  that prior ruling.

7      Alternatively, if the Court entertains Feit's belated arguments, the Court

8  should find that Feit's narrowing claim constructions contradict the plain language

9  of the claims, the '734 Patent's specification, and in some cases fail to include the

10  disclosed embodiments.  Feit's proposed constructions are, therefore, improper, and

11  both Feit and Dr. Lebby should be precluded from advancing them.

12  **A.    The Court should preclude Feit's construction of "*a first/second set***

13  ***of the light emitting element chips are mounted on the first/second***

14  ***region*" to require wiring portions to be mounted to the board**

15      1.    *Feit advances a narrow construction that is inconsistent with the*

16      *Court's prior construction of this term*

17      The Court construed this term (from claim elements 1.9 and 1.10) as having

18  its plain and ordinary meaning.[2]  Dkt. 90 at 15.  During *Markman*, Feit proposed to

19  construe the claim as including a wiring requirement, arguing that the chips of each

20  set had to be wired in series and the sets themselves had to be wired in parallel,

21  referring to Figure 15 of the '734 Patent.  *Id.* at 14.  The Court rejected this approach,

22  and instead construed the term according to its plain and ordinary meaning.  Dkt. 90

23  at 15.  The Court expressly declined to read a wiring limitation into the claim: "The

24  balance of the limitation describes relative [chip] placement, not wiring

25  requirements."  *Id.*

26  _____

27  [2] The complete claim element also describes how the chips are arranged, and includes the terms "center portion" and "end portions" that the Court construed

28  separately.  Dkt. 90 at 15.  The dispute here concerns the "mounted on" part of this claim element.

1    Nonetheless, in Dr. Lebby's expert report, Feit again proposes a wiring

2    requirement, arguing that the *wiring portions* that connect the chips to each other

3    must be mounted to the board, and not suspended above the board.  Ex. A, p. 83,

4    ¶142 ███████████████████████████████████████████████████████

5    ███████████████████████████████████████████████████████

6    ███████████████████

7    Feit's position that *wiring portions* must be mounted on the board has no

8    support in the plain and ordinary meaning of the claims.  The claims do not refer to

9    wiring portions, and the Court already determined that "wiring requirements" are not

10   part of the claim.  Dkt. 90 at 15.  Moreover, there is no evidence that the customary

11   meaning of chips being "mounted on" a board includes *wiring portions* being

12   mounted.  Feit's position is therefore inconsistent with the Court's "plain and

13   ordinary meaning" construction, and the Court's express conclusion that the claim

14   term does not limit the wiring configuration.

> ## 2.    *Feit's proposed narrow construction is improper*

16   The plain language of the claim refers to the *light emitting element chips* as

17   being mounted.  These *chips* are introduced in claim element 1.2, which requires "a

18   plurality of light emitting element chips mounted on … the board."  In claim elements

19   1.9 and 1.10, the claim addresses *the location* on the board where the chips are

20   mounted, *i.e.*, on the board's first or second region.  The claim says nothing about

21   the *wiring portions* being mounted on the board, and does not even mention *wiring*

22   *portions* as an element of the claim.  *Cf.* Dkt. 90 at 15 (holding that "'set' refers to

23   the required 'plurality of light emitting elements,' *i.e.*, a set must be at least two chips,

24   but can be more").

25   Moreover, the '734 Patent shows wiring that is similar to what Dr. Lebby calls

26   *suspended*, and which he says does not meet the limitation.  *Compare* Ex. A, p. 83,

27   ¶142 (█████████████████████████████████████████) *with* Ex B,

28   447:20-22 ████████████████████████████████████████████████

7

MOTION TO PRECLUDE IMPROPER CLAIM CONSTRUCTIONS

1  ██████████        Dr. Lebby admitted that in Figure 10 the ████████████

2  ██████████ – and the other figures show similar wiring arrangements as in Figure

3  10.  *See* '734 Patent, FIGS. 1-8, 10, 12-16; *see also id.*, 14:26-29 (███████

4  ██████████████████████).  In fact, the '734 Patent teaches an embodiment

5  where two wire lines 44 are connected to each light emitting element chip (one on

6  each of the chip's electrodes) by wire bonding.  *Id.*, 3:40-45, 10:59-67.  Thus, in

7  addition to lacking support in the plain and ordinary meaning of the claims, Feit's

8  position would exclude the disclosed embodiments.  It must therefore be wrong.

9  *Accent Packaging, Inc. v. Leggett & Platt, Inc.*, 707 F.3d 1318, 1326 (Fed. Cir. 2013)

10  ("[A] claim interpretation that excludes a preferred embodiment from the scope of

11  the claim is rarely, if ever, correct.").

12        Accordingly, the claim does not require wiring portions of the light emitting

13  element chips to be mounted to the board, and both Feit and Dr. Lebby should be

14  precluded from advancing this claim construction.

15      **B.    The Court should preclude Feit's construction of "*support leads**

16             *that secure the plurality of light emitting element chips inside the**

17             *transparent bulb*" to require direct and exclusive support**

18             1.    *Feit advances a narrow construction that is inconsistent with the*

19                   *plain and ordinary meaning of this term*

20        Feit did not ask the Court to construe this term (claim element 1.5) during the

21  *Markman* process, and the Court did not construe it.  *See* Dkt. 90 at 18.  But now Feit

22  is attempting to add two limitations to the plain meaning, contending that the term

23  requires leads that both *directly* and *exclusively* support the light emitting element

24  chips.  Ex. A, Section X(B)(1). The term should be construed according to its plain

25  and ordinary meaning, without the narrowing limitations Feit now proposes.

26  *Broadcom Corp.*, 2011 WL 13130705, at *4.

27        The claims do not require that the support leads directly and exclusively secure

28  the light emitting element chips – indeed, that construction would not make sense

because the claims recite that those chips are "mounted on" the board.  Accordingly, Feit's construction is inconsistent with the plain meaning of the claim.  When presented with this point, Dr. Lebby confessed bewilderment when attempting to explain Feit's new interpretation:



Ex. B, 250:10-25 (emphasis added).

The claim is written correctly.  Only Feit's reading of the claim is incorrect.

2.    *Feit's proposed narrow construction is improper*

The '734 Patent discloses embodiments where support leads indirectly and non-exclusively secure light emitting element chips on a board in conjunction with other elements that also secure the chips.  There is no embodiment disclosed where support leads directly and exclusively secure the chips.  The patent explains that support leads 62, 62B (circled in red below) extend from the base 64 and are attached to metal plates 30, such as shown in Figures 8 and 10 below.

 

'734 Patent, FIGS. 8, 10 (annotated), 8:28-32, 9:28-29.  The metal plates 30 are at the ends of the board on which the chips are mounted (figures 8 and 10 above show one such chip).  *Id.*, 3:30-32, 4:22-39.  Thus, the support leads 62, 62B *indirectly* support the board and the chips mounted on the board.  Further, the chips are mounted on the board by a die-bonding member 52 (such as epoxy), and are surrounded by an encapsulant that seals the chips to protect them from the outside environment.  *Id.*, FIG. 6, 3:22-24, 4:29-32.  Thus, the support leads 62, 62B *do not exclusively or directly* support the chips.

Feit now contends that this arrangement – the *disclosed* support leads 62, 62B – cannot be the *claimed* support leads.  Feit's expert has acknowledged that the patent's disclosed embodiments do not show *direct* support in any embodiment.  Ex. B, 248:14-15 ███████████████████████████████████ *see also id.*, 248:19-21, 250:13-25.  And he admits that *indirect* support is a good description of what the patent teaches.  Asked if the support leads 62B (of FIG. 10) indirectly support the chip, he said ████████████████████████ *Id.*, 247:7-17 (noting that ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ███████████████████████████).

Feit's expert also asserts that the claimed support leads can never directly and

1  exclusively secure the light emitting element chips because the claim separately
2  requires that the chips be mounted on the board. Ex. B, 250:10-25. As noted above,
3  Dr. Lebby testified that the ███████████████████████████████████████████
4  ████████████ *Id.*, 250:24-25. It is plainly incorrect to adopt a construction (here,
5  that the leads must provide *direct and exclusive* support to the light emitting element
6  chips) that excludes the disclosed embodiments and further that is (per Dr. Lebby)
7  impossible to satisfy. *Accent Packaging*, 707 F.3d at 1326. This is particularly so
8  when a "reasonable" interpretation (here, that support may be indirect and non-
9  exclusive) includes the disclosed embodiments. Ex. B, 251:6-14.

10  Dr. Lebby's admissions confirm that Feit could not have obtained its narrow
11  construction during *Markman*. In particular, Dr. Lebby admits that ██████████
12  ███████████████████ because that is what the claims and the patent describe.
13  *Id.* That is, ███████████████████████████████████████████████████
14  ███████████████████████████████████████████ *Id.* He goes on
15  to explain that ██████████████████████████████████████████████████
16  ███████████████████████████████████████ *Id.*

17  Accordingly, the claim does not require the support leads to directly and
18  exclusively secure the light emitting element chips, and both Feit and Dr. Lebby
19  should be precluded from advancing this claim construction.

20  **C.    The Court should preclude Feit's construction of "*the wavelength**
21  **conversion member is provided on the first surface side and the**
22  **second surface side*" that is based on a manufacturing process**

23  1.    *Feit advances a narrow construction that is inconsistent with the*
24  *plain and ordinary meaning of this term*

25  Feit argues that claim 1 – a device claim – includes process limitations. Feit's
26  argument is premised on the Court's construction of the term "a wavelength
27  conversion member formed unitarily with a transparent member," from claim
28  element 1.3. The Court construed that term to mean "a single component that both

1    converts wavelength and allows light to pass through." Dkt. 90 at 10.  Feit now

2    applies this construction to the requirement in claim element 1.8 – that "the

3    wavelength conversion member is provided on the first surface side and the second

4    surface side" of the board – to import a process limitation into the claim.

5         Specifically, in its interrogatory responses and in the testimony of its expert,

6    Feit contends that the claim excludes products manufactured by a process where the

7    resin mixture is separately extruded on each side of the board.  Ex. A, p. 35, ¶ 96

8    ████████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████████

10   █████████████████████████████████████████████████████████) (citing Feit

11   Electric's First Supplemental Response to Nichia Interrogatory No. 9 at 5).

12   According to Dr. Lebby, ████████████████████████████████████████

13   ████████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████████

15   ██████████████████████████████████ *Id.* (emphasis added).

16        Nothing in the claim term at issue requires a particular manufacturing process.

17   Feit's position that the claims dictate (or foreclose) specific manufacturing processes

18   improperly narrows the plain and ordinary meaning of the claims.  The claims do not

19   limit the process by which the claimed device is made – indeed, Dr. Lebby admits

20   that the claim does not include a ████████████████████  *See* Ex. B, 140:21-24.

21   Accordingly, Feit's construction is unduly narrow.

22              2.    *Feit's proposed narrow construction is improper*

23        The boldness of Feit's position is apparent from one of the products Feit asserts

24   cannot meet the requirement of having a wavelength conversion member on both the

25   first surface side and the second surface side of the board.  The photographs below

26   show the filament component encased in a yellowish encapsulant.  The photo in the

27   right is a cross-section of the filament, showing the yellowish encapsulant

28   surrounding the board (white) and the LED chip (brown square on top of the board).

Ex. E, Ex. IAL-TAR-001 at 7, 16 (showing plan, side, and cross-section views of an LED filament having a board (white) surrounded by a wavelength conversion member (yellowish)).

According to Feit, the encapulant shown in the photos above is not a "single component" if the manufacturing process involved the separate deposition of the encapsulant from the top and the bottom of the board.[3] In fact, according to Dr. Lebby, no matter what the product looks like, or what characteristics it has, the wavelength conversion member ███████████████ to meet the claim element ████████████████ Ex. A, p. 35, ¶96 (emphasis added). This approach does not follow from the Court's construction that the wavelength conversion member is "a single component that both converts wavelength and allows light to pass through," as the parties did not raise the manufacturing issue during *Markman*, and the Court did not expressly address a proposed construction based on a manufacturing process in its claim construction order. Dkt. 90.

Moreover, because the claims at issue are device claims, not process claims, the particular process used to manufacture the products is not relevant. At his deposition, Dr. Lebby agreed with this. *See* Ex. B, 140:21-24 ████████████ ████████████████████████████████████████.

The claims require only that the wavelength conversion member and the transparent

---

[3] There is no evidence on the record as to how the filaments were made. In fact, b███████████████████████████████████████0 (████████████████████████████); Ex. B, 1███████████████████████████████████any event, the issue he██████████████████ruction, it is whether Feit's claim construction is timely and correct.

1    member in the Accused Products be "formed unitarily," but do not limit the process

2    by which they are formed.  And the Court already construed this aspect of the claim

3    to require "a single component that both converts wavelength and allows light to pass

4    through."  Dkt. 90 at 10.  The Court did not require that the single component be

5    formed in a single extrusion step.

6        Moreover, the patent does not limit the wavelength conversion member to

7    being formed in only one way.  The second transparent member 40 (which can serve

8    as the wavelength conversion member in the embodiment of FIG. 6), for example,

9    may be formed by "transfer molding or the like."  '734 Patent, 7:10-12.  The patent

10   also describes other manufacturing details, without limiting the manufacturing to any

11   particular process.  *Id.*, 7:48-53, 12:59-13:10.  Dr. Lebby does not explain how the

12   description in the patent precludes separately extruding resin on both sides of the

13   board.  In fact, despite the disclosure just mentioned, he fails to find any

14   manufacturing process in the '734 Patent at all.  Ex. B, 140:21-24 ▓▓▓▓▓▓▓

15   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓).

16       Furthermore Dr. Lebby elsewhere agrees that the claim does not require the

17   wavelength conversion member on both sides to be extruded at the same time.  In his

18   discussion of a prior art reference, U.S. Patent Pub. No. 2004/0239242 A1 ("Mano"),

19   Dr. Lebby relies on lens 30, 130 of Mano as being the wavelength conversion

20   member.  Ex. G, ¶¶89-90 and 98-99.  Mano describes that the lens 30, 130 is

21   separately extruded – by pouring out resin on one side, hardening the resin, and

22   applying the same process on the other side of the board.  Ex. H, ¶¶[0069], [0094].

23   Dr. Lebby cannot have it one way for infringement and another way for validity.  *See*

24   *A. G. Design & Assocs. LLC v. Trainman Lantern Co.*, 271 F. App'x 995, 998 n.4

25   (Fed. Cir. 2008) ("[O]ne cannot interpret a patent one way for the validity analysis

26   and a different way for the infringement analysis.") (citations omitted).

27       Dr. Lebby's attempt to limit the claims to a particular one-step extrusion

28   process is inconsistent with the Court's prior construction, the plain language of the

1   claims, and his own invalidity analysis. Both Feit and Dr. Lebby should be precluded

2   from advancing this improper construction.

3       **D.   The Court should preclude Feit's construction of the term "*a***

4       ***wavelength conversion member formed unitarily with a transparent***

5       ***member*" that requires a uniform distribution of phosphor**

6           1.   *Feit advances a narrow construction that is inconsistent with the*

7                *Court's construction of this term*

8       The Court previously construed this term (from claim element 1.3) as "a single

9   component that both converts wavelength and allows light to pass through." Dkt. 90

10  at 10. In doing so, the Court rejected Feit's argument that the term is indefinite. *Id.*

11  at 10-11.

12      Dr. Lebby acknowledges the Court's construction. He goes further, however,

13  and asserts that the claim requires phosphor to be *uniformly mixed* into the resin. Ex.

14  A, pp. 28-29, ¶84 (

15

16              ). Neither the original claim, the claim as construed, nor the specification

17  precludes non-uniform distribution of phosphor. In fact, claim 1 does not refer to

18  phosphor at all, none of the claims refers to the distribution of phosphor, and claim

19  11 contemplates phosphor with uneven particle sizes.

20          2.   *Feit's proposed narrow construction is improper*

21      Given what the patent actually describes, Dr. Lebby's view that the phosphor

22  distribution must be uniform is contrary to the patent's disclosure. In sections of the

23  specification captioned "Phosphor," and "Wavelength Conversion Member 50," the

24  '734 patent describes the phosphor element, without linking the description

25  exclusively to any embodiment. *See generally* '734 Patent, 11:38-13:54. In the

26  "Wavelength Conversion Member 50" section, the specification states that "a

27  phosphor material may be unevenly mixed so as to partially exist." *Id.*, 12:42-43.

28      The description of embodiments is consistent with allowing (but not requiring)

1   "unevenly mixed" phosphor.  In the description of FIGS. 4-5, the specification

2   discusses a "wavelength conversion member 50B containing a phosphor" in a film

3   shape, and notes that the phosphor in the wavelength conversion member 50 may be

4   unevenly distributed "depending on the number and arrangement of lighting elements

5   to be used." *Id.,* 7:33-34 and 7:40-42.  In the discussion of FIG. 6 that follows, the

6   specification explains that "[i]n addition, the second transparent member 40 can

7   additionally serve as the wavelength conversion member 50." *Id.*, 7:48-49.  That is,

8   "a phosphor 48 can be mixed into an epoxy resin as the transparent member 40C so

9   that the transparent member 40C serves as a wavelength conversion member." *Id.*,

10  7:49-53.  In sum, the embodiment of FIG. 6 builds on the description of the

11  wavelength conversion member 50 that came before it, including the point that the

12  phosphor need not be distributed uniformly.  *Id.,* 7:40-42.

13      The Court addressed this point in its *Markman* order, at least indirectly, when

14  it construed claim 18, which depends from claim 1: "This is consistent with the

15  specification, which provides an example of the wavelength conversion member

16  providing targeted wavelength conversion."  Dkt. 90 at 17.  The Court cited the

17  portion of the patent that confirms "it is *not necessary* to provide the wavelength

18  conversion member around the whole periphery of the light emitting element. The

19  wavelength conversion member may be distributed so that a phosphor is highly

20  weighted in regions where a light amount is high such as upper and lower surfaces."

21  '734 Patent, 7:42-47 (emphasis added).  That is, as the Court noted, the specification

22  calls for different configurations of phosphor depending on the intended light output.

23      In his report, Dr. Lebby tries to support Feit's position by arguing that FIGS.

24  4-5 show a mixture having ███████████████ in resin, in contrast to FIG. 6,

25  which (he says) shows ██████████████████ Ex. A, pp. 30-31,

26  ¶86.  Dr. Lebby argues that ████████████████████████████

27  ████████████████████████████████████████████ Ex. A, p.

28  28, ¶84.  Yet, in his deposition, he disavowed this theory, admitting that FIG. 6

showed phosphor suspended in resin, which he says (contrary to his report) does meet the claim limitation.  Ex. B, 173:16-25 ███████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████

Accordingly, both Feit and Dr. Lebby should be precluded from advancing a construction that requires the phosphor to be *uniformly mixed* into a resin.

**E.    The Court should preclude Feit's construction of "*the wavelength conversion member is provided on the first surface side and the second surface side*" that requires a physical connection between the wavelength conversion member provided on each of the sides**

1.    *Feit advances a narrow construction that is inconsistent with the plain and ordinary meaning of this term*

The Court construed the "wavelength conversion member [formed unitarily with a transparent member]" aspect of this claim element already.  The Court said it must be "a single component that both converts wavelength and allows light to pass through."  Dkt. 90 at 10.  Feit now says that the wavelength conversion member on the first surface side must be physically connected to the wavelength conversion member on the second surface side.  Ex. A, Section X(A)(3).  This addition of a "connected" requirement improperly narrows the claims.  The claims do not refer to a connection.  Moreover, claim 15, which depends from claim 1, requires only that the wavelength conversion member "substantially" surround the board, indicating that claim 1 includes products in which the wavelength conversion member does not surround or only insubstantially surrounds the board.

2.    *Feit's proposed narrow construction is improper*

The plain language of the claim does not require a physical connection, only that the wavelength conversion member be "provided" on two sides of the board.  Feit relies on Dr. Lebby, who cites the Court's construction of claim element 1.3, but reads too much into what the Court meant by "a single component."  Indeed, Dr.

1    Lebby would construce the term as requiring ███████████████

2    ████████████████████████████████████████████████

3    ████████████████████████████████████████████████

4    ████████████████████████    Ex. A, pp. 38-39, ¶102

5    (emphasis added).    That is a remarkable addition – one that has no support

6    whatsoever in the patent.

7        Feit's argument is an attempt to fashion a non-infringement argument for a

8    subset of Accused Products in which the wavelength conversion member has a gap

9    between the two sides of the board, as shown in the photos below:




14    Ex. E, Ex. IAL-TAR-002 at 7, 16 (showing plan, side, and cross-section views of an

15    LED filament having a board (white) substantially surrounded by a wavelength

16    conversion member (yellowish)).

17        As shown in the photos, and as Dr. Lebby admits, the top and bottom of the

18    board (the white rectangle) each has "a single component that both converts

19    wavelength and allows light to pass through." *E.g.*, Ex. B, 136:3-21.  Dr. Lebby

20    argues, however, that the wavelength conversion member is not provided on both

21    sides because there are *two* wavelength conversion members, based on the gap, or

22    apparent lack of connection, between each side.

23        When the Court construed the term "a wavelength conversion member formed

24    unitarily with a transparent member" as requiring a single component, the point was

25    that the single component "serves two *purposes*, allowing light to pass through and

26    converting wavelength."  Dkt. 90 at 10 (emphasis added).  This was based on the

27    specification's teaching of an embodiment where resin and phosphor are mixed

28    together to create a component that serves as both a transparent member and a

1    wavelength conversion member.  *Id.*  That is, a component with two *functions*.  The

2    reference to "a single component" does not refer to a ███████████████████

3    ██████████████████████████████████████████████████████████

4    ██████████████████████████████████████████████████████████

5    ████████████████████████    as Dr. Lebby argues.  Ex. A, pp. 38-39, ¶102.

6        Dr. Lebby relies on the patent's discussion of FIG. 6:  ███ █████████

7    ██████████████████████████████████████████████████████████

8    ██████████████████████████████████████████████████████████

9    ████████████████████    Ex. A, p. 41, ¶105 (emphasis added).  Dr. Lebby's position is



10   wrong for at least two reasons.  First, it is improper to import limitations from a figure

11   into the claims.  *GE Lighting Sols, LLC. v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed.

12   Cir. 2014); *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1373-74 (Fed. Cir.

13   2014).  Second, Figure 6 is a longitudinal cross-section view of the light emitting

14   device along a length of the board.  It shows only that the transparent member 40C

15   is provided on a first surface side and a second surface side of the board.  By its

16   nature, Figure 6 *cannot* show whether or not the board is "surrounded completely by

17   'the transparent member 40C'" in a transverse or cross-wise direction.[4]

18        Moreover,  claim  differentiation  undercuts  Feit's  argument,  which  is

19   essentially that the wavelength conversion member must cover the entirety of the

20   board on all sides.  Claim 15 depends from claim 1, and requires that the wavelength

21   conversion member "substantially surrounds the board."  The strong implication is

22   that claim 1 encompasses products in which the wavelength conversion member does

23   not substantially surround (let alone fully surround) the board, and even substantially

24   exposed sides are permissible.  *See, e.g.*, *Phillips*, 415 F.3d at 1314–15 ("[T]he

25   presence of a dependent claim that adds a particular limitation gives rise to a

26   presumption that the limitation in question is not present in the independent claim."

27   ────────────────

28   [4] This is in contrast to the photographs provided in this brief showing cross-wise
     cross-sectional views, i.e., *along the width* of the board of some accused products.

19

MOTION TO PRECLUDE IMPROPER CLAIM CONSTRUCTIONS

1   (*citing Liebel–Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004))).

2   A straightforward reading of the claims – claim 1 alone, and especially claim 1 in

3   light of claim 15 – shows that claim 1 does not require the wavelength conversion

4   member on the first surface side to be connected to the wavelength conversion

5   member on the second surface side.

6       Furthermore, Dr. Lebby (in the context of his validity opinion) further

7   undercuts Feit's position that the claim does not require the wavelength conversion

8   member on first and second surface sides to be connected.  He relies on lens 30, 130

9   of the Mano reference as being the wavelength conversion member.  Ex. G, ¶¶89-90

10  and 98-99.  As shown in FIGS. 2 and 15 of Mano, however, the lens 30, 130 on each

11  side is separated:



19  See Ex. H, FIGS. 2 and 15 (annotated).  Mano teaches that there is a gap of a specific

20  length ΔL separating the lens 30, 130 on each side of the board from the edge of the

21  board.  Ex. H, ¶¶[0070], [0095].  Dr. Lebby noted in his deposition that he thought

22  Mano anticipated claim 1, and therefore discloses each element of claim 1, ██████

23  ████████████████████████████████████████████  Ex. B,

24  226:20-24.   Thus, he correctly testified that this claim term does not require

25  connection of the wavelength conversion member on each side of the board.

26      Dr. Lebby's limitation of the patent claims to require a connection between the

27  member on the sides of the board is inconsistent with the Court's prior construction,

28  the plain language of the claims, and Dr. Lebby's own analysis in his validity opinion.

1  Feit and Dr. Lebby should be precluded from advancing this improper claim

2  construction.

3     **F.    The Court should preclude Feit's construction of "*longitudinal*"**

4          **that requires straight (or linear) boards**

5          1.    *Feit advances a narrow construction that is inconsistent with the*

6                *Court's construction of this term*

7     The Court construed "longitudinal" (from claim element 1.1) to mean

8  "lengthwise." Dkt. 90 at 9. Taken together with the Court's construction of "end

9  portions" as meaning "ends," and "center portion" as meaning "center" (both also

10 from claim element 1.1), the Court construed claim element 1.1 as requiring "a board

11 with a first region running *lengthwise* from one end of the board to the center of the

12 board, and a second region running *lengthwise* from the other end of the board to the

13 center of the board." *Id.* (emphasis added).

14    Feit, again relying on Dr. Lebby, now construes "longitudinal" to mean

15 "linearly." Ex. A, p. 64, ¶139 █████████████████████████████████████

16 ████████████████████████████████████████████████████████████████████████

17 ██████████) (emphasis added). From this, Dr. Lebby asserts that curved, non-straight

18 boards are excluded from claim 1. *Id.*, pp. 64-65, ¶140.

19    Feit's position that the claims require straight (or linear) boards contradicts the

20 Court's construction of this term. The Court's use of the term "lengthwise" referred

21 to the long direction of the board "from one end of the board to the center of the

22 board, and ... from the other end of the board to the center of the board." It does not

23 limit the shape of the board, or require the lengthwise direction to be "linear."

24          2.    *Feit's proposed narrow construction is improper*

25    At the *Markman* hearing, counsel for both Nichia and Feit agreed that

26 "longitudinal" means "lengthwise." Dkt. 82 at 31:3-32:24; *see also id.*, 33:17-19.

27 Feit's counsel stated: "I believe longitudinal was referring to a lengthwise direction,

28 but I don't believe a board has to be any specific shape." *Id.*, 33:17-19. Dr. Lebby

now takes a different view. Ex. A, p. 79, ¶132 (█████████████████████

████████████████████████████████████████████████████████████████████

███████████). Given Feit's agreement with the Court's construction ("longitudinal"

means "lengthwise") and Feit's statement that it "do[es]n't believe a board has to be

any specific shape," it is improper for Feit to adopt a contrary approach now.

Particularly in these circumstances, Feit should be precluded from offering opinions

based on a claim construction that construes "longitudinal" to require a particular

shape, and excludes curved shapes.

Moreover, the fact that Nichia included curved-filament lightbulbs in the

Accused Products was well-known to the parties at the time of the *Markman* hearing.

*E.g.*, Dkt. 59 at 2. Indeed, the Court requested supplemental briefing after the

*Markman* hearing on how the claim terms mapped to a curved-filament product. Dkt.

86 at 2-3; Dkt. 87 at 9-15. Yet Feit never asked the Court to consider the claim

construction on which it and Dr. Lebby now rely.

Most importantly, Dr. Lebby's narrow interpretation of the claim to require

linear shapes is unsupported by the '734 Patent. Nothing in the specification limits

the plain meaning of this term. There is no disclaimer or redefinition, and therefore,

no reason to read in a limitation from a particular embodiment.

Furthermore, Dr. Lebby admitted that a curved LED filament has a length. Ex

B, 410:2-3 ████████████████████████████████████████████████████████

████████). If it has a length, it follows that it has a lengthwise direction. When

pressed about why the claim must be limited as Feit proposes, Dr. Lebby could only

support his interpretation by advancing an even narrower construction based on what

he referred to as the *preferred embodiments*: █████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████ Ex B, 394:11-14 (emphasis added). Then, in

response to questions about why a direction along an object's length is not a

lengthwise direction, Dr. Lebby doubled down on importing limitations from figures

22

1    of the patent:

2    

3    

4    

5    

6    

7    *Id.*, 413:4-10.

8        Dr. Lebby's approach is plainly contrary to sound claim construction doctrine.

9    *GE Lighting Sols.*, 750 F.3d at 1309 (holding that claims were not limited to

10   embodiment in figure where the specification did "not disavow or disclaim the plain

11   meaning of [the term at issue] or otherwise limit it to that embodiment"); *Hill-Rom

12   Servs.*, 755 F.3d at 1373-74 (refusing to limit term "datalink" to wired configuration

13   shown in figures even though patent did not disclose a wireless datalink because there

14   was "no basis to narrow the plain and ordinary meaning of the term to one type of

15   datalink").

16       For these reasons, Feit and Dr. Lebby should be precluded from advancing a

17   claim construction that requires straight or "linear" boards.

18   **G.   The Court should preclude Feit's construction of "*the support**

19   ***leads extend[ing] from the support base towards the pair of metal***

20   ***plates*" that excludes a product in which one of the support leads**

21   **goes past a metal plate**

22       1.   *Feit advances a narrow construction that is inconsistent with the*

23            *plain and ordinary meaning of this term*

24       Feit did not previously pursue a construction of this term (claim 23), and the

25   Court did not construe it, so the plain and ordinary meaning controls. *Broadcom

26   Corp.*, 2011 WL 13130705, at *4. But now Dr. Lebby offers opinions based on a

27   construction in which the term "extending towards the pair of metal plates" excludes

28   going past the pair of metal plates. Ex. A, Section X(B)(2). In other words, Dr.

23

Lebby construes the phrase "extends towards" to mean "extends towards, *but not past.*" The claims do not limit how far the support leads can go. Feit did not ask for this narrow construction during *Markman,* and there is no basis for narrowing the scope of the claim in this way.

2.    *Feit's proposed narrow construction is improper*

The plain meaning of *towards* is *in the direction of.* Thus, claim 23 requires that the supports leads extend from the support base *in the direction of* the pair of metal plates. Feit agrees with this much. Ex. B, 187:9-11 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). The specification discloses embodiments where the support leads 62, 62B extend past the metal plates 30. This is shown in FIGS. 8 and 10 below, which show the support leads 62, 62B extending from the base 64 to the metal plate 30 and then beyond the metal plate:



'734 Patent, FIGS. 8 and 10 (cropped and annotated); *see also id.*, FIGS. 9 and 11.

However, under Feit's new construction of the claim, the disclosed embodiments are not covered. Per Dr. Lebby: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Ex. A, p. 60, ¶126. In other words, the construction not only limits the plain meaning of the claim – it improperly excludes the disclosed embodiments.

Dr. Lebby has it backwards – rather than viewing the claims in light of the claim language as informed by the specification, he construed the claim narrowly, adding an element that is not there, and then arguing that the patent offers no "clarity." Viewed properly, the claims and the specification confirm that the support

leads can extend beyond the metal plates. Feit and Dr. Lebby should be precluded from advancing his flawed construction.

## V.    Conclusion

For all these reasons, Nichia submits that the Court should preclude Feit and Dr. Lebby from advancing at trial or in any pretrial motions the improper claim constructions discussed above.

*Respectfully submitted,*

DATED: July 27, 2022          ROTHWELL, FIGG, ERNST &MANBECK P.C.

By: */s/ Mark T. Rawls*
ROBERT P. PARKER (*pro hac vice*)
MARTIN M. ZOLTICK (*pro hac vice*)
JENNY COLGATE (*pro hac vice*)
MICHAEL JONES (*pro hac vice*)
MARK RAWLS (*pro hac vice*)
D. LAWSON ALLEN (*pro hac vice*)
NICOLE M. DEABRANTES (*pro hac vice*)

LEWITT, HACKMAN, SHAPIRO, MARSHALL & HARLAN

By: */s/ Jeffrey A. Kobulnick*

DAVID GURNICK (SBN 115723)
JEFFREY A. KOBULNICK (SBN 228299)
JESSICA W. ROSEN (SBN 294923)

*Attorneys for Plaintiff Nichia Corporation*

# CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of July, 2022, a true and correct copy of the foregoing **PLAINTIFF NICHIA CORPORATION'S MOTION TO PRECLUDE IMPROPER CLAIM CONSTRUCTIONS** was served, via electronic mail, upon the following counsel of record for Feit Electric Company, Inc.:

Salil Bali
sbali@sycr.com
Matthew R. Stephens, SBN 288223
mstephens@sycr.com
**STRADLING YOCCA CARLSON & RAUTH, P.C.**
660 Newport Center Drive, Ste. 1600
Newport Beach, CA 92660
Tel. 949-725-4000

Kal Shah
kshah@beneschlaw.com
Mircea Tipescu
mtipescu@beneschlaw.com
Simeon G. Papacostas
spapacostas@beneschlaw.com
Louis Constantinou
lconstantinou@beneschlaw.com
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
71 S. Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: 312-212-4949
Facsimile: 312-767-9192

*/s/ Jeffrey A. Kobulnick*
Lewitt, Hackman, Shapiro, Marshall & Harlan