SALIL BALI, SBN 263001
 sbali@stradlinglaw.com
MATTHEW STEPHENS, SBN 288223
 mstephens@stradlinglaw.com
STRADLING YOCCA CARLSON & RAUTH
A PROFESSIONAL CORPORATION
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660-6422
Telephone:  949 725 4000
Facsimile:  949 725 4100

KAL SHAH (admitted *pro hac vice*)
 kshah@beneschlaw.com
MIRCEA TIPESCU (admitted *pro hac vice*)
 mtipescu@beneschlaw.com
SIMEON PAPACOSTAS (admitted *pro hac vice*)
 spapacostas@beneschlaw.com
LOUIS CONSTANTINOU (admitted *pro hac vice*)
 lconstantinou@beneschlaw.com
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
71 S. Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: 312-212-4949
Facsimile: 312-767-9192

Attorneys for Defendant
Feit Electric Co., Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

NICHIA CORPORATION,

            Plaintiff,

     vs.

FEIT ELECTRIC COMPANY, INC.,

            Defendant.

CASE NO. 2:20-CV-00359-GW-E

Honorable George H Wu
Magistrate Charles F. Eick

**DEFENDANT FEIT ELECTRIC COMPANY, INC.'S *DAUBERT* MOTION TO EXCLUDE CERTAIN PORTIONS OF THE EXPERT OPINIONS OF MR. MICHAEL GERSHOWITZ**

Complaint filed January 13, 2020

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

# **TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................ 1

II.   APPLICABLE LEGAL STANDARDS ........................................................ 2

III.  ARGUMENT ................................................................................................. 3

    A.   Gershowitz Cannot Opine On "Support Leads" Because He Failed To Distinguish Between Leads And Support .................................. 3

    B.   Gershowitz's Testing Protocols Did Not Account For Light Escaping Through The Encapsulant And Therefore Is Not Reliable  6

    C.   Gershowitz's Analysis of Non-Infringing Alternatives Is Incomplete ................................................................................................. 12

    D.   Gershowitz's Opinion Should Be Excluded Because He Did Not Utilize Recognized Or Reliable Testing Methodologies ................. 14

IV.   CONCLUSION ............................................................................................ 16

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-i-
TABLE OF CONTENTS

20-CV-00359

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Carnegie Mellon Univ. v. Hoffman-LaRoche, Inc.*,
   55 F. Supp. 2d 1024 (N.D. Cal. 1999)............................................................ 18

*Claar v. Burlington N.R. Co.*,
   29 F.3d 499 (9th Cir.1994) ............................................................................ 17

*Daubert v. Merrell Dow Pharm., Inc.*,
   43 F.3d 1311 (9th Cir. 1995)......................................................... 4, 16, 17, 18

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) ............................................................................. *passim*

*Fontem Ventures, B.V. v. NJOY, Inc.*,
   No. CV 14-1645-GW, 2015 WL 12743861 (C.D. Cal. 2015, Wu, J.)............ 16

*In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*,
   No. ML 18-02814 AB, 2019 WL 7177984 (C.D. Cal. Dec. 2, 2019) ............. 5

*Lauzon v. Senco Prod., Inc.*,
   270 F.3d 681 (8th Cir. 2001) ..................................................................... 5, 10

*MarcTec, LLC v. Johnson & Johnson*,
   638 F. Supp. 2d 987 (S.D. Ill. 2009) ............................................................. 13

*Medtronic, Inc. v. Bos. Sci. Corp.*, No. CIV 99-1035 RHK/FLN, 2002 WL
   34447587, at *6 (D. Minn. Aug. 8, 2002).................................................. 8, 13

*Panavision Imaging, LLC v. OmniVision Techs., Inc.*,
   No. 209CV01577MRPCTX, 2012 WL 12952006 (C.D. Cal. May 25, 2012)  5,
   8, 13

*U.S. v. Rincon*,
   28 F.3d 921 (9th Cir. 1994) ........................................................................... 18

*Young v. Cree Inc.*,
   No. 4:17-cv-06252-YGR, 2021 WL 292549 (N.D. Cal. Jan. 28, 2021)........... 4

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-ii-
TABLE OF AUTHORITIES

20-CV-00359

1

**Other Authorities**

2

Fed. R. Evid. 702 ............................................................................... 4, 8

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-iii-
TABLE OF AUTHORITIES

## I.   INTRODUCTION

Feit Electric Company, Inc. ("Feit Electric") respectfully requests that the Court exclude the opinions of Nichia Corporation's ("Nichia's") technical expert, Michael Gershowitz ("Gershowitz"). Gershowitz opines on the alleged infringement of the Accused Products. His opinion also rests on the opinion of Michael Livingston ("Livingston"), who provides various photographs and graphs of some of the Accused Products. Gershowitz's opinion, however, does not pass scrutiny under *Daubert* on the individual grounds identified below.

*First,* although Gershowitz contends the Accused Products infringe, he admittedly ***did not*** test or otherwise assess whether the Accused Products incorporate "support leads that secure the plurality of light emitting element chips inside the transparent bulb." Nichia has relied on this very limitation to distinguish numerous pieces of prior art. Yet, Gershowitz made no effort to determine whether the Accused Products have leads, as Nichia argued are present in the prior art, or "support leads" as is required under the claim. Instead, Gershowitz takes the position that there is no difference between a lead and a support lead. He further acknowledges that the Accused Products have alternate support structures, but did not examine the impact of that support in relation to the leads.

*Second,* Gershowitz did not assess the impact of uncovered board in determining whether the Accused Products include a "wavelength conversion member formed unitarily with a transparent member." Gershowitz's analysis here is limited to photographs, taken without requisite controls, and testing methodologies that *do not* account for light direction. Gershowitz admits his review did not account for the exposed band of board such that he cannot determine if light is passing through the band or the member.

*Third,* Gershowitz's attempts to distinguish Feit Electric's proposed non-infringing alternatives are, at best, incomplete. Gershowitz provides only

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-1-

DEF'S MOTION TO EXCLUDE OPINIONS OF EXPERT GERSHOWITZ
20-CV-00359

1  conclusory statements and inexplicably excludes the specific and agreed upon
2  alternatives disclosed in the patent.

3  Ultimately, Gershowitz opinion is founded on layers of unreliable and
4  impermissible conjecture. He does not employ reasonable engineering, scientific
5  or other expert standards, nor does his assessment have the necessary indicia of
6  repeatability and reliability. Therefore, his opinions should be excluded in their
7  entirety.

8  ## II.     APPLICABLE LEGAL STANDARDS

9  Expert testimony is not admissible unless it "both rests on a reliable
10 foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm.,*
11 *Inc.*, 509 U.S. 579, 597 (1993) ("*Daubert I*"). In determining admissibility, the
12 Court must make a "preliminary assessment of whether the reasoning or
13 methodology underlying the testimony is scientifically valid and of whether that
14 reasoning or methodology properly can be applied to the facts in issue." *Id.* at
15 592–93. That is, to be admissible, expert testimony must be (i) based upon
16 sufficient facts or data; (ii) the product of reliable principles and methods, and (iii)
17 applied reliably to the facts of the case. FED. R. EVID. 702. For scientific opinions
18 like those by Gershowitz, the opinion must be based upon scientifically valid
19 principles. *Daubert I*, 509 U.S. at 597. Moreover, courts must "analyze not what
20 the expert[] say[s], but what basis they have for saying it." *Daubert v.*
21 *Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995) ("*Daubert II*").
22 Importantly, "[e]xperience and engineering practices alone do not convert a made-
23 up methodology into one that meets the threshold requirements of
24 admissibility." *Young v. Cree Inc.*, No. 4:17-cv-06252-YGR, 2021 WL 292549,
25 at *10 (N.D. Cal. Jan. 28, 2021) (citing *Grodzitsky v. Am. Honda Motor Co.,Inc.*,
26 957 F.3d 979, 986-87 (9th Cir. 2020)). That is, "[s]omething doesn't become
27 'scientific knowledge' just because it's uttered by a scientist; nor can an expert's
28 self-serving assertion that his conclusions were 'derived by the scientific method'

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-2-

DEF'S MOTION TO EXCLUDE OPINIONS OF EXPERT GERSHOWITZ
20-CV-00359

be deemed conclusive." *In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*, No. ML 18-02814 AB, 2019 WL 7177984, at *1 (C.D. Cal. Dec. 2, 2019) (citing *Daubert II*, at 1318). Nichia bears the burden of proving the admissibility of its proffered experts' opinions. *Daubert I*, 509 U.S. at 593 n.10.

## III.   ARGUMENT

### A.   Gershowitz Cannot Opine On "Support Leads" Because He Failed To Distinguish Between Leads And Support.

As Nichia's expert on infringement, Gershowitz opines that all Accused Products include the necessary limitation of "support leads that secure the plurality of light emitting element chips inside the transparent bulb." But Gershowitz admitted that he did not undertake any testing of the leads to come to this conclusion. And, alarmingly, Gershowitz ignored other support structures in the Accused Products. Gershowitz's analysis is fundamentally deficient as a matter of law because he failed to examine and rule out alternative explanations. *See Lauzon v. Senco Prod., Inc.*, 270 F.3d 681, 687 (8th Cir. 2001) (*citing Claar v. Burlington N.R. Co.*, 29 F.3d 499 (9th Cir.1994) (holding that inquiry must take into account "whether the proposed expert ruled out other alternative explanations"); *Panavision Imaging, LLC v. OmniVision Techs., Inc.*, No. 209CV01577MRPCTX, 2012 WL 12952006, at *4-5 (C.D. Cal. May 25, 2012).

The '734 patent discloses an LED based light bulb that has the appearance and structure of the traditional incandescent light bulb. *See generally*, Dkt. No. 1-1 ("the '734 patent"). A key structure in the bulb is a "support lead." *See, e.g.*, *id.* at claims 1, 26, 26. Nichia, in fact, relies on this very limitation to argue around various prior art references cited by Feit Electric, admitting that the references incorporate leads but not support leads. *See, e.g.* Ex. 5 at 7 ("The conductive pattern 50 as disclosed in Mano ***does not*** offer support and in particular does not "secure the plurality of light emitting element chips inside the transparent bulb.") (emphasis added); *id.* at 11 (distinguishing the Shibata '525 reference because

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DEF'S MOTION TO EXCLUDE OPINIONS OF EXPERT GERSHOWITZ
20-CV-00359

"anchors 1f  (which are described as providing support) do not provide electrical connection and wires 1d (which are described as providing electrical connection) do not provide support . . . and both embodiments of Shibata '525 [i.e., Figs. 1 & 3] describe the stem 1c as providing support, not the wires 1d."). It was therefore incumbent on Gershowitz to apply this same metric to the Accused Products. He did not do so.

To the contrary, Gershowitz takes the position that there is no difference between a lead and a support lead. *See* Ex. 2 at 168:16-169:1 ("Any lead, flexible or rigid, would secure the plurality of light-emitting chips inside the transparent bulb."). Accordingly, "[t]here was no testing of rigidity." *Id*. at 178:15-25. But Nichia cannot have it both ways. It clearly was able to characterize some leads as not support leads when differentiating the prior art. When confronted with this deficiency, Gershowitz responded that no claim limitation exists that deals with rigidity of a lead. *See id*.

Gershowitz's overlooking such a distinction is critically deficient because the Accused Products include alternate, unique structures such as stems and hubs, non-lead metal structures, and rigid hollow tubes to support the filaments:



DEF'S MOTION TO EXCLUDE OPINIONS OF EXPERT GERSHOWITZ
20-CV-00359

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH



BPA1560C/5850/LED/2    G25/S/CL/FILED    T6/S/CL/FILED

Exemplary Accused Products

Gershowitz admits these structures provide rigidity and support to the filaments. *See* Ex. 2 at 187:11-188:21 (agreeing that there is some level of rigidity to support wires in Gershowitz Ex. 10 and that those support wires provide a level of support to hold the filaments in place). But he did not determine the structural properties of the leads in the Accused Products. *See e.g., id*. at 161:2-25 (failing to test for, let alone consider, whether rigid tubular structures provide the support function, and stating "I don't know what it is because I have not been asked to opine on it and I've not investigated it"),  176:18-177:6 (failing to test for, let alone consider, whether glass stem structures provide the support function while also admitting that removing the glass stem would make it "possible" for the filaments to tilt and touch the sides of the bulb), 188:3-21 (failing to test for, let alone consider, whether other metal support structures provide the support function), 189:5-12 (admitting that he "didn't ask Mr. Livingston to depict what the filaments would look like if [he] clipped the support wires"), 195:19-196:16 (stating his belief that analysis of such additional structures "was not required for the opinions that I need to formulate for infringement or non-infringement of these products.").

Gershowitz merely started and ended with his identification of leads, without further analysis.  *See id*. at 190:17-191:17 ("As the support leads as I've identified them were sufficient to demonstrate meeting the limitations of the claim and prove infringement, the additional structure you're pointing to here was not a

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-5-

DEF'S MOTION TO EXCLUDE OPINIONS OF EXPERT GERSHOWITZ
20-CV-00359

part of my analysis because it would not do the infringement that already had occurred by the support leads as I've identified them."). Because Gershowitz failed to properly test for this claim limitation, his opinion that the Accused Products meet the "support lead limitation" is wholly unsupported and should be excluded. *See Medtronic, Inc. v. Bos. Sci. Corp.*, No. CIV 99-1035 RHK/FLN, 2002 WL 34447587, at *6 (D. Minn. Aug. 8, 2002) (precluding expert under FRE 702 because there was no evidence that the expert "considered and excluded an alternative explanation for the phenomenon he observed with respect to the 31mm stent system"); *see also Panavision Imaging, LLC*, 2012 WL 12952006 at *4-5 (as it related to "impedance" limitations, it "require[d] that the infringement analysis determine the effects of those factors or determine that those factors have no effect on impedance.").

**B.   Gershowitz's Testing Protocols Did Not Account For Light Escaping Through The Encapsulant And Therefore Is Not Reliable.**

Each asserted claim requires a "wavelength member formed unitarily with a transparent member." '734 patent at claims 1, 26, 27. This Court construed that limitation to require "a single component that both converts wavelength and allows light to pass through." Dkt. No. 90 at 18. Gershowitz's analysis is both inadequate and incomplete.

By way of background, LED chips typically produce blue light. The ultimate desired bulb light color, *e.g.,* soft white,  is based on light conversion typically using a phosphor. Based on this Court's claim construction, the "wavelength conversion member formed unitarily with a transparent member" is a component that allows both light to pass through and converts light. Gershowitz's assessment of this limitation is fundamentally flawed in three key respects.

*First,* rather than considering the actual light output of the light bulbs in operation, Gershowitz relied on a visual inspection of photographs "where an

1    LED filament is being energized with electric current flowing through it." Ex. 2
2    at 134:3-135:12; *see also id.* at 139:19-24. This is the equivalent of using a
3    photograph to determine whether a display is high definition. Indeed, when
4    presented with one such photograph from his report, Gershowitz conceded that
5    "[b]y observation of this photograph alone, I would not be able to know" whether
6    any blue light from the LED itself passes through an encapsulant "without
7    additional measurements for this fourth photograph of this filament." *Id*. at
8    141:15-25.[1]

9        Troublingly, Gershowitz did not take the photographs himself. Rather,
10   those were created by Livingston. But even Livingston did not directly or
11   uniformly create the photographs. Livingston relied on numerous technicians,
12   each with the independent discretion to select between various cameras and lenses
13   in photographing the Accused Products. *See* Ex. 3 at 71:7-18. No effort was made
14   to ensure the technicians were consistent in the methodology. *See id*. at 74:9-14;
15   75:9-24. The technicians also exercised their own discretion when determining
16   the voltage and current used in the sample electrical analysis, often time removing
17   the filaments from their commercial embodiments. *Id*. at 75:25-76:6. And, despite
18   introducing a buffet of variables, no records of photograph parameters were
19   recorded. *See, e.g., id*. at 46:22-24 ("Do we record that? So I don't – we don't
20   write down what the f-stop was for a picture or what the shutter speed was for an
21   image…"). Nevertheless, Gershowitz uses these photographs to assess the
22   properties of the filament.

23       *Second*, Gershowitz relied on "spectral power distribution" or "SPD"
24   testing Livingston's International Analytics Laboratories ("IAL") conducted. *See,*

---

[1] In his report, Gershowitz also points to statements on the product packaging
regarding color temperature and brightness. *See, e.g.*, Ex. 1 at ¶122. But this, too,
is insufficient to determine the source of any detected blue light. Nichia itself
explained to this Court that "[t]here are other ways of getting white light" than
that described in its claims. *See, e.g.*, Dkt. No. 76 at 39:12-40:9.

DEF'S MOTION TO EXCLUDE OPINIONS OF EXPERT GERSHOWITZ
20-CV-00359

1    *e.g.*, Ex. 8 at 12. But Gershowitz did not account for light escaping from large

2    bands of exposed board in each filament. This alone is fatal. *See Lauzon*, 270 F.3d

3    at 687.

4         The exposed band is not a minor gap or anomaly. Rather, as Nichia's own

5    image below illustrate, the exposed portion can be prominent and significant:





15   Ex. 9 at 6 (showing the entire edge of the board exposed between two separate

16   encapsulants); *Id.* at 15 (showing both edges of the board exposed between two

17   separate encapsulants). Yet, Gershowitz did not assess whether, if there was light

18   passing through, it was passing through from the exposed band (which would be

19   non-infringing).

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-8-
DEF'S MOTION TO EXCLUDE OPINIONS OF EXPERT GERSHOWITZ
20-CV-00359

For example, for his claim chart evaluating whether or not Feit Electric's Model No. BPG2560/F/850/LED both converts light and allows light to pass through, Gershowitz relies on the following SPD plot:



Ex. 8 at 14. This plot superimposed normalized SPD for light from the LED filament having the encapsulant (yellow curve) and the LED filament with the encapsulant removed (blue). *Id*. According to Gershowitz, "[o]n this superimposed plot, the wavelength conversion is readily apparent to a person of ordinary skill in the art." *Id*. He also concludes that this shows "some of the blue light emerges from the yellowish member without being converted," which then "mix to create the appearance of white light." *Id*. at 15.

But in his deposition, Gershowitz admitted "the light that is passing through the board . . . may ultimately be directed out the sides of the board, the uncovered sides of the board," and he confirmed that such light emanating directly from the board "could be blue light." Ex. 2 at 147:18-149:13. Indeed, Gershowitz explained that "[i]f the phosphor particles [of the encapsulant] were densely packed, if they were allowed to come into very close contact with each other to be sufficiently thick, we could wind up with a structure where the light, which is indicated both blue and yellow light indicated bouncing around in this diagram, would have no path to pass through. . . . But with enough phosphor particles stacked on each other and in tight enough packing, then you would have a situation where you

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-9-

DEF'S MOTION TO EXCLUDE OPINIONS OF EXPERT GERSHOWITZ
20-CV-00359

1    would not be able to have light passing through and effectively you would still

2    have wavelength conversion." *Id*. at 136:24-138:15.

3         Gershowitz also did not dispute that such blue light emanating directly

4    through the board without passing through any encapsulant material would be

5    detected in the SPD plots upon which he relies. *Id*. at 149:5-150:14. Livingston,

6    and therefore Gershowitz, did not test for the density of the phosphor in any

7    Accused Product. Ex. 3 at 132:13-18. Nor did they test for the particle size of

8    phosphor in any Accused Product. *Id*. at 132:19-133:5. Despite recognizing that

9    this density was central and alternate pathways of light passing through was

10   readily possible, neither Gershowitz nor Livingston performed any testing to

11   determine the source of the alleged blue light they claim constitutes "light passing

12   through" for purposes of infringement.

13        In fact, the tool used could not identify the source of the light because it

14   does not measure directionality. The USB4000 light spectrometry tool simply

15   does not address the directionality of light collected at all, let alone whether any

16   blue light detected in an SPD plot passed through an encapsulant or not:

17        **Q.** Does the tool give you any information as to the path of light for any
18        wavelength that it observes?

19        **A.** ***I don't believe the tool understands the direction of light***.

20   *Id*. at 151:6-152:18.

21        When confronted with the indisputable fact that Mr. Gershowitz's testing

22   protocol did not measure the amount of light exiting through the sides of the board

23   relative to the total light emitted by the LED chips, he dropped his reliance on the

24   SPD4000 spectroscopy tool entirely, first expressing a belief that "[t]he patent

25   limitations do not require that the amount of light, at least for the purpose of this

26   discussion that is passing through the sides, be quantified or measured," in order

27   to claim that "making such measurements was unnecessary to determine that light

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DEF'S MOTION TO EXCLUDE OPINIONS OF EXPERT GERSHOWITZ
20-CV-00359

1   is passing through this particular encapsulant." Ex. 2 at 151:8-22. But Gershowitz
2   has it backwards—as construed, the independent claims require that some blue
3   light passes through an encapsulant,[2] and to confirm that any detected blue light
4   does so, one must rule out other sources of unconverted blue light. *See Medtronic,*
5   2002 WL 34447587, at *6; *Panavision Imaging, LLC*, 2012 WL 12952006 at *4-
6   5. Indeed, Gershowitz's testimony conceding that he did not find it necessary to
7   "quantif[y] or measure[]" the blue light detected in the SPD data makes clear that
8   his testing protocol was based on a fundamental legal error as to what the claims
9   require, and it should be excluded for this reason as well.  *See MarcTec, LLC v.*
10  *Johnson & Johnson*, 638 F. Supp. 2d 987, 1003-4 (S.D. Ill. 2009) ("MarcTec's
11  expert, Dr. Batich, relies on an untested prediction by another MarcTec expert,
12  Dr. Sojka … MarcTec's experts did not test Dr. Sojka's theory and could not
13  identify any tests or publications supporting his untested predictions.").

14       In a last-ditch effort to salvage his opinion on wavelength conversion,
15  Gershowitz references "measurements that were showing the distribution of light
16  through the various orientations of the filament including the side of the filament,"
17  *i.e.*, the LED direction lux value measurements Livingston took with a Mavospec
18  handheld spectrometer. Ex. 151:8-152:4. But here, too, Gershowitz relies on the
19  use of not just the wrong tool for his measurements, but a potentially faulty one
20  as well. Livingston testified that, with respect to the Mavospec tool he used for
21  every lux measurement in this case, "there's no recommended recalibration dates
22  from the manufacturer, so we continue to use it as calibrated from the
23  manufacturer." *Id*. at 169:1-6. He then admitted that there was no record of the
24  Mavospec tool being calibrated since IAL acquired the tool, adding again that

---

[2] With respect to the encapsulant that allows blue light to pass through without
being converted or blocked, the asserted claims also require that such an
encapsulant be a single component that is provided on both sides of the board. *See*
Dkt. No. 90 at 18.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-11-

DEF'S MOTION TO EXCLUDE OPINIONS OF EXPERT GERSHOWITZ
20-CV-00359

"[t]he manufacturer doesn't recommend a given recalibration time frame." *Id*. at 169:19-21. But the very first page of the manufacturer's website for this tool expressly recommends regular calibration:

> Safety due to calibration is very important to GOSSEN. As proof, a factory calibration certificate / factory calibration certificate can optionally be ordered. ***We recommend a calibration interval of 12 to 24 months***, depending on the operating conditions of the measuring device.

Ex. 10. IAL acquired the Mavospec tool more than twenty-four (24) months ago—the tool is long overdue for a calibration.

Moreover, the lux measurements via the Mavospec tool, even if properly calibrated, did not measure the amount or quantity of blue light specifically. Ex. 2 at 152:7-18 ("The lux measurement provides a measure of the quantity of light impinging on a surface, not of the spectral characteristics of that light."). That is, the lux measurements Gershowitz relied on came from an uncalibrated tool that does not measure or otherwise account for the wavelength of the light it measures, to provide an opinion on whether or not any blue light actually "passed through" any particular encapsulant.

In short, Gershowitz's opinion regarding the wavelength conversion member formed unitarily with a transparent member is founded on layer after layer of unreliability and cannot pass muster under the *Daubert* standard.

## C.  Gershowitz's Analysis of Non-Infringing Alternatives Is Incomplete.

Gershowitz also opines that certain of Feit Electric's proposed non-infringing alternatives nevertheless infringe the '734 patent. Gershowitz's opinions here are subjective, not scientific, and therefore should be excluded.

Gershowitz inexplicably opines that non-infringing alternatives disclosed in the patent are still infringing. For instance, Feit Electric proposes as possible

-12-

design arounds alternatives to a wavelength conversion member formed unitarily with a transparent member such as "providing a separate wavelength conversion layer and transparent layer" or "a wavelength conversion member that is non-unitarily formed with a transparent member." These alternatives stem from the patent itself. *See, e.g.*, '734 patent at Figs. 4, 5; *see also id.* at 9:60-67 ("In addition, a phosphor layer may be applied as a wavelength conversion member on the interior surface of this cylindrical-shaped transparent bulb. In this lighting apparatus, the packaged light emitting device that is deposed therein *does not* include a wavelength conversion member, but a coating that is mixed with a phosphor is applied on the interior surface of the transparent bulb as a wavelength conversion member.") (emphasis added); *see id.* at 10:1-3 ("Alternatively, both the packaged light emitting device and the transparent bulb can have wavelength conversion member."). Gershowitz does not address these alternatives, but instead posits that "[p]rovided there is at least one wavelength conversion member formed unitarily with a transparent member, the presence of additional members as described in Feit's proposed design-arounds does not undo infringement." *See* Ex. 1 at ¶ 291. But that is not the alternative proposed by Feit Electric. To be clear, Feit Electric proposed, among other alternatives, the use of alternate wavelength conversion members disclosed in the '734 patent but not claimed. Gershowitz intentional ignorance of the alternative does not pass for an "analysis." Allowing Gershowitz to testify that such designs infringe would confuse the jury and improperly give the weight of expert testimony to a wholly unsupported opinion.

Similarly, for several other designs, *i.e.*, "conductors or terminals substituted for metal plates," "multiple resin structures or a break in the resin structure or multiple resin structures that do not surround the board," "leads" as opposed to "support leads," "a yellow board and a resin used on only one side of the board," Gershowitz claims he does not understand the proposed alternative. Ex 1 at ¶¶ 278, 288-289, 274, 290.  His lack of understanding, however, did not

DEF'S MOTION TO EXCLUDE OPINIONS OF EXPERT GERSHOWITZ
20-CV-00359

stop him from opining that such design-arounds purportedly are not non-infringing alternatives. Clearly, Gershowitz's opinions in this section do not actually provide any analysis, but reflect his refusal to concede non-infringement for any design. The *Daubert* standard requires more. *Fontem Ventures, B.V. v. NJOY, Inc.*, No. CV 14-1645-GW (MTWX), 2015 WL 12743861, *7-9 (C.D. Cal. 2015, Wu, J.) (striking the accused infringer's rebuttal technical expert's noninfringement opinions for being unreliable as the expert had admitted he did not know many of the details of the accused product as his study was limited to rebutting the information presented in the patentee's technical expert's report).

**D.     Gershowitz's Opinion Should Be Excluded Because He Did Not Utilize Recognized Or Reliable Testing Methodologies.**

A prerequisite to any expert testimony is that the underlying methodology utilized by the expert must be reliable. Not only should this Court exclude each of the above overreaches by Gershowitz, it is clear that his opinion in its entirety is unreliable. To determine whether a scientific opinion is sufficiently reliable to be admissible, the Court must "analyze not what the expert[] say[]s, but what basis they have for saying it." *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1216 (9th Cir. 1995)("*Daubert II*"). Scientific methodology can be reliable if: (i) the methodology can and has been tested; (ii) the methodology has been subjected to peer review; (iii) the known or potential rate of error for the technique has been addressed; or (iv) the methodology has a general degree of acceptance in the relevant scientific community. *Daubert I*, 509 U.S. at 593-94.   Gershowitz's testing protocol does not demonstrate any of the above indicia of reliability.

In addition to the above faults, Gershowitz generally employed methodologies and testing protocols that are not based in science or engineering and or otherwise accepted in the lighting community. More pointedly, the method devised by Livingston and adopted by Gershowitz are not based on recognized scientific methods. *See, e.g.,* Ex. 3 Tr. at 80:2-82:11 ("I'm not aware of any

-14-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

1   documents that exist that says you must use this procedure to test an LED filament
2   except for the protocol that we developed…We developed the protocol and the
3   testing of the components based on the request from the – Nichia and Mr.
4   Gershowitz that they wanted to collect data on products. And Mr. Gershowitz
5   wanted to collect certain characteristics that that product has."). In fact, in his
6   report disclosing the protocols devised for Gershowitz, Livingston does not cite
7   to a single source, publication, or industry standard supporting his methodology.
8   Livingston further conceded he was wholly unfamiliar with LED industry
9   standards. *See, e.g.*, *id*. at 84:1-5 (Q: So are you familiar with any of the LM
10  standards approved by the Illuminating Engineer Society of North America? A:
11  I'm aware that there's documents that suggest certain things.); *see also id.* at
12  84:14-18 ("Q: Did you consult any of the LM standards approved by the
13  Illuminating Engineering Society of North America when designing your
14  protocol? A: I don't believe I based anything on – on any of those documents,
15  no."). Gershowitz nevertheless adopts Livingston's testing without question,
16  rendering the entirety of his opinion unreliable. *See, e.g., Claar v. Burlington N.*
17  *R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994); *Daubert II*, at 1315-16 ("[T]he expert's
18  bald assurance of validity is not enough. Rather, the party presenting the expert
19  must show that the expert's findings are based on sound science, and this will
20  require some objective, independent validation of the expert's methodology.").

21      Gershowitz attempts to overcome these failures by asserting that he had
22  "[a] significant amount of input" and "approved the testing procedures that were
23  used." Ex. 2 at 122:21-25; Ex. 1 at ⁋ 104. This is blind leading the blind.
24  Gershowitz's protocol was not based on "pre-litigation" research, and not
25  accepted or published scientific analyses in the industry, he must therefore
26  "explain precisely how he went about designing his testing procedures and
27  reaching his conclusions and point to some objective source—a learned treatise,
28  the policy statement of a professional association, a published article in a

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

reputable scientific journal, or the like—to show that he has followed the scientific method, as it is practiced by (at least) a minority of scientists in his field." *Daubert II*, at 1318-19; *U.S. v. Rincon*, 28 F.3d 921, 924 (9th Cir. 1994) (research must be described "in sufficient detail that the district court [can] determine if the research was scientifically valid."). Gershowitz's methodology was developed for the purpose of this litigation, and not based on approved scientific methods; therefore, it is not sufficiently reliable to meet *Daubert* standards. *See, e.g., Daubert II*, at 1319; *Carnegie Mellon Univ. v. Hoffman-LaRoche, Inc.*, 55 F. Supp. 2d 1024, 1032 (N.D. Cal. 1999) (finding an expert's methodology unreliable and thus his opinions inadmissible because his methodology was not generally accepted by the scientific community).

## IV. CONCLUSION

Mr. Gershowitz failed to employ testing protocols that would evaluate whether certain claim limitations actually exist in the accused products, and in fact failed to conduct any testing at all for the "support lead" limitation. Nor did he provide any infringement analysis to Feit Electric's proposed alternative designs. His opinions are therefore unreliable for the purpose of proving the existence of the claimed support leads and the claimed wavelength conversion member formed unitarily with a transparent member. Moreover, his entire opinion on infringement should be excluded because it is not based on pre-litigation research or research subject to peer review, but rather was inspired by litigation and not based on any generally-accepted methods.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-16-
DEF'S MOTION TO EXCLUDE OPINIONS OF EXPERT GERSHOWITZ
20-CV-00359

1

2

DATED:   July 27, 2022              STRADLING YOCCA CARLSON & RAUTH
                                    A PROFESSIONAL CORPORATION

3

4                                   By:   */s/ Salil Bali*_____
                                          Salil Bali
5                                         Matthew Stephens
                                          Attorneys for Defendant
6

7

DATED:   July 27, 2022              BENESCH, FRIEDLANDER, COPLAN &
                                    ARONOFF LLP

8

9                                   By:   */s/ Kal Shah*_____
                                          Kal Shah
10                                        Mircea Tipescu
                                          Simeon Papacostas
11

12                                  ***Attorneys for Defendant***
                                    ***Feit Electric Company, Inc.***
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-17-
DEF'S MOTION TO EXCLUDE OPINIONS OF EXPERT GERSHOWITZ
20-CV-00359