DAVID GURNICK (SBN 115723)
dgurnick@lewitthackman.com
JEFFREY A. KOBULNICK (SBN 228299)
jkobulnick@lewitthackman.com
JESSICA W. ROSEN (SBN 294923)
jrosen@lewitthackman.com
LEWITT, HACKMAN, SHAPIRO,
MARSHALL & HARLAN
16633 Ventura Boulevard Eleventh Floor
Encino, CA 91436
Telephone: (818) 990-2120
Facsimile: (818) 981-4764

ROBERT P. PARKER (*pro hac vice*)
rparker@rfem.com
MARTIN ZOLTICK (*pro hac vice*)
mzoltick@rfem.com
JENNY COLGATE (*pro hac vice*)
jcolgate@rfem.com
MICHAEL JONES (*pro hac vice*)
mjones@rfem.com
MARK RAWLS (*pro hac vice*)
mrawls@rfem.com
D. LAWSON ALLEN (*pro hac vice*)
lallen@rfem.com
NICOLE DEABRANTES (*pro hac vice*)
ndeabrantes@rfem.com
ROTHWELL, FIGG, ERNST & MANBECK P.C.
901 New York Avenue N.W.
Suite 900 East
Washington, DC 20001
Telephone: (202) 783-6040
Facsimile: (202) 783-6031

Attorneys for Plaintiff Nichia Corporation

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHIA CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>FEIT ELECTRIC COMPANY, INC.<br><br>Defendant. | Case No.  2:20-cv-00359-GW-E<br><br>***REDACTED***<br><br>**PLAINTIFF NICHIA CORPORATION'S OPPOSITION TO FEIT ELECTRIC COMPANY, INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date: September 29, 2022<br>Time:      8:30 a.m.<br>Ctrm:      9D |

# **TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................... 1

II.     BACKGROUND ..................................................................................................... 1

III.    LEGAL STANDARDS .......................................................................................... 3

IV.     ARGUMENT .......................................................................................................... 5

    A.      Feit is not entitled to summary judgment that the Accused Products do
        not infringe because they lack "support leads." .................................... 5

        1.      The evidence shows that the Accused Products have support
                leads. ........................................................................................ 5

        2.      Nichia's position on "support leads" has been consistent .......... 6

        3.      Nichia's analysis confirms that the Accused Products have
                "support leads." ....................................................................... 9

        4.      Additional structures that may also provide support do not
                defeat infringement. ............................................................... 12

    B.      Feit is not entitled to summary judgment that the Accused Products do
        not infringe based on the "plan view" limitations. ............................. 15

        1.      The evidence shows that the Accused Products have a
                wavelength conversion member that is elongated in a
                longitudinal direction when viewed in plan view of the first
                surface side of the board. ....................................................... 15

        2.      Accused Straight-Filament Products ....................................... 17

        3.      Accused Curved-Filament Products ......................................... 19

    C.      Feit is not entitled to summary judgment that the subset of Accused
        Products having an LED chip in the center of the board do not infringe
        because they lack either "board" or "set" elements. ........................... 21

    D.      Feit is not entitled to summary judgment on non-infringing

alternatives. ........................................................................................24

    E.    Feit is not entitled to summary judgment on indefiniteness of the

        "board" limitation. ..............................................................26

V.    Conclusion........................................................................................29

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson v. Liberty Lobby, Inc.*,

    477 U.S. 242 (1986)....................................................................3, 4, 15

*Devereaux v. Abbey*,

    263 F.3d 1070 (9th Cir. 2001) ..............................................................16

*Gillette Co. v. Energizer Holdings, Inc.*,

    405 F.3d 1367 (Fed. Cir. 2005) ....................................................13, 23

*Grain Processing Corp. v. Am. Maize-Prods. Co.*,

    185 F.3d 1341 (Fed. Cir. 1999) ..............................................4, 24, 25

*Halliburton Energy Servs., Inc. v. M-I LLC*,

    514 F. 3d 1244 (Fed. Cir. 2008) ....................................................4, 27

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,

    809 F.2d 626 (9th Cir. 1987) ............................................................4, 21

*Webasto Thermo & Comfort N.A.,Inc. v. Bestop, Inc.*,

    No. 16-cv-13456, 2019 WL 3334563 (E.D. Mich. July 25, 2019) .....................24

Plaintiff Nichia Corporation ("Nichia") submits this memorandum in opposition to Feit Electric Company, Inc.'s ("Feit's") motion for summary judgment.

## I.    INTRODUCTION

Feit's motion should be denied in its entirety for the following reasons.

*First*, as to the three non-infringement grounds, Feit errs by applying constructions inconsistent with the Court's *Markman* order and the plain and ordinary meaning of the relevant claim terms.  Feit's arguments also are contrary to the rule that, if all of the claim elements are present in the accused product, the presence of additional elements in that product does not defeat infringement.  Feit also glosses over extensive testimony and other evidence that establish infringement, or at least preclude summary judgment in favor of Feit.

*Second*, as to the alleged non-infringing alternatives, Feit refers to alternatives it never disclosed to Nichia.  Further, Feit offers only an insufficient, one-sentence statement that the alternatives were "available," and says nothing about whether they were "acceptable."  Because Feit has the burden to show that alternatives not on the market would have been available and acceptable, Feit's motion should be denied (and, in fact, Nichia's motion on the same subject should be granted).  At the very least, the evidence on which Nichia relies in this opposition precludes summary judgment in Feit's favor.

*Third*, on the indefiniteness ground, this Court has already concluded (correctly) that the claims are not indefinite.  Feit repeats the same arguments the Court rejected before.  The same outcome is warranted.  Nichia has filed its own summary judgment motion on this point.

For all of these reasons, and as explained below, Feit is not entitled to summary judgment on any of the issues it has raised.

## II.    BACKGROUND

In order to place the following arguments in context, Nichia provides a brief background on the relevant terminology.  *See also* Shah Decl., Ex. 21 at §IV.

1    Throughout this memorandum, Nichia cites test reports and claim charts for

2  three exemplary products.  These include (1) a product having a single straight

3  filament, (2) a product having multiple straight filaments, and (3) a product having

4  two curved filaments.  Exemplary photographs of the products unlit (left), lit (right),

5  and with the bulb removed (bottom) are shown below:

  

Model 72007          Model CEOM60/50/6          Model ST19/S/CL/FILED

Ex. A at NichiaOPP0000008, NichiaOPP0000032, NichiaOPP0000079.[1]

15    The "filaments" at issue are the yellowish-orange components that light up

16  (because they contain LED chips).  The filaments include a "wavelength conversion

17  member" (the yellowish-orange component, which is a resin–phosphor mixture) that

18  covers LED chips mounted on a "board."  The board and mounted LED chips can be

19  seen when the "wavelength conversion member" is removed, as shown below:



(Model 72007.)

(Model CEOM60/50/6.)

---

[1] Exhibits A-L refer to exhibits attached to the Declaration of Mark T. Rawls ("Rawls Decl."); exhibits 1-26 refer to exhibits attached to the Shah Declaration (Dkt. 433-1).



(Model ST19/S/CL/FILED.)

Ex. A at NichiaOPP0000011, NichiaOPP0000035, NichiaOPP0000082.

As shown in the photos of Model ST19/S/CL/FILED above, the curved filament is flexible, and loses its shape when removed from the bulb.

The filaments are supported within the products with "support leads," wires that both electrically connect the filaments to the product's screw base and secure the filament inside the bulb. These "support leads" are indicated by arrows below:

(Model 72007.)          (Model CEOM/60/50/6.)

(Model ST19/S/CL/FILED.)

Ex. A at NichiaOPP0000009, NichiaOPP0000033, NichiaOPP0000082.

## III.  LEGAL STANDARDS

Nichia generally agrees with Feit's statement of the law on summary judgment, and Nichia outlines other relevant principles in its own motion for partial summary judgment. Dkt. 443 at 4. Importantly for present purposes, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Courts do not weigh conflicting evidence or make credibility determinations. *See T.W. Elec.*

*Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Anderson*, 477 U.S. at 255).  Feit ignores these principles in each of its arguments.

As to infringement, extensive product testing and expert analysis applying the asserted claims to each of the Accused Products supports Nichia's view that the products infringe.  This evidence precludes a finding in favor of Feit on summary judgment.[2]

As to non-infringing alternatives, the alternatives Feit cites to in its motion were not previously disclosed to Nichia during discovery.  Moreover, Feit again asks the Court to put its thumbs on the scale in Feit's favor to find that the proposed alternatives were both available and acceptable.  Because in this case the proposed alternatives were not available on the market at the relevant time (that is, the date of first infringement), Feit has the burden to show both "availability" and "acceptability."  *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999).  Feit's failure to provide sufficient evidence dooms its motion (and, along with abundant evidence favoring Nichia, supports Nichia's motion for summary judgment on this same issue).

As to indefiniteness, Feit says that the evidence requires the Court to brush aside its prior ruling that Feit failed to establish indefiniteness by clear and convincing evidence.  Dkt. 90 at 8 (quoting *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F. 3d 1244, 1249-50 (Fed. Cir. 2008) ("To establish indefiniteness, 'an accused infringer [must] show[] by clear and convincing evidence that a skilled artisan could not discern the boundaries of the claim….'")).  In this respect, Feit has a double burden – it has to meet the high standard, and it has to show that the Court's previous decision was wrong.

---

[2] By contrast, Nichia's motion for summary judgment of infringement addresses only one product and it raises no genuine issues of material fact.

IV. **ARGUMENT**

   A. **Feit is not entitled to summary judgment that the Accused Products do not infringe because they lack "support leads."**

      *1. The evidence shows that the Accused Products have support leads.*

The asserted claims require "support leads that secure the plurality of light emitting element chips inside the transparent bulb." Feit agrees that the alleged "support leads" in the Accused Products are leads, but argues they do not provide support. Dkt. 433 at 4-5. The evidence on the record, including product testing and expert analysis, shows that the Accused Products include "support leads" which (i) provide electrical connection and (ii) "secure the plurality of light emitting element chips inside the transparent bulb." *See* NSF 35[3]; *see also* Dkt. 443 at §III(A)(2)(b) (demonstrating that Nichia is entitled to partial summary judgment because Feit's Model No. 72007 includes support leads). For example, Nichia's infringement expert (Mr. Gershowitz) explained that "[w]ithout the support leads, the one or more LED filaments would be left to float about in the bulb without any connection." Shah Decl., Ex. 21, ¶ 211; *see also* Ex. A at NichiaOPP0000009 (showing LED filament secured, with support leads attached; and LED filament unsecured, after support leads have been cut); NichiaOPP0000033 (same); NichiaOPP0000080 (same). Mr. Gershowitz concluded that "[t]he support leads support the one or more LED filaments within the bulb," and "therefore support the LED chips that are mounted on a board within the LED filaments." Shah Decl., Ex. 21, ¶ 211.

Feit's expert (Dr. Lebby), substantially agrees with Mr. Gershowitz – that is, he admits that the leads in the Accused Products "support[] the board" on which the LED chips are mounted. Ex. B, 184:3-4 ("I see the electrical leads supporting the board and not the LEDs."). Feit and Dr. Lebby disagree with the conclusion Mr. Gershowitz draws because they both read the claim to require *direct* support between

---

[3] References to "NSF" refer to Nichia's Statement of Genuine Disputes of Material Facts submitted with this opposition.

the support leads and the LED chips.[4]  However, Dr. Lebby confirms that the support leads support the LED chips indirectly.  *Id.*; *see also id.*, 253:19-24 ("So indirectly - - one answer to this question is, indirectly, the leads would support the LEDs as per the claim element of supporting leads for securing the plurality of lighting in the chips inside the transparent bulb.  But not directly."), 247:7-17, 248:14-21, 250:13-25.

Importantly, Dr. Lebby also agrees with Nichia's expert that, without the support leads, the one or more LED filaments would be left to float about in the bulb without any connection.  *Id.*, 263:19-25, 269:5-19, 271:13-15 ("But I would agree with you, if you cut the wires, clearly you can remove the LED packages.").  Accordingly, the support leads provide sufficient support to "secure the plurality of light emitting element chips inside the transparent bulb" as the asserted claims require.  *See* '734 Patent, claims 1, 26, 27.

### 2. Nichia's position on "support leads" has been consistent

Feit asks the Court to disregard this evidence because it contends Nichia's interrogatory response distinguishing two prior art references (Mano and Shibata) is inconsistent with its infringement position.  Dkt. 433 at 6-7.  That is not true.  Nichia has consistently explained that the claimed "support leads" must provide an electrical connection and sufficient support to secure the plurality of light emitting element chips.  *E.g.*, Shah Decl., Ex. 25 at 67-69.  The two references are discussed below.

Mano:  Feit initially relied on conductive pattern 50 of Mano to be the claimed "support leads."  Mano discloses that conductive pattern 50 is a thin layer of plating on part of a substrate, with LED chips mounted on a different part of the substrate.  Shah Decl., Ex. 26 at FIGS. 1-9 and 11-13, ¶ [0075].  Figures 2 and 13 of Mano illustrate the point:

---

[4] The claims do not require *direct* support.  *See* Dkt. 444, §IV(B).




Nichia explained in its interrogatory response that this element "as disclosed in Mano does not offer support and in particular does not 'secure the plurality of light emitting element chips inside the transparent bulb.'" Shah Decl., Ex. 24 at 7. In fact, the thin layer of plating (i.e., conductive pattern 50) on the surface of substrate 10 does not provide structural support to the substrate 10, and, in any case, does not secure the LED chips. *See also* Ex. C, ¶ 92 (NichiaOPP0000391-392) (explaining that the substrate provides support in Mano, and that "there are no support leads in Mano's design"), ¶ 135 (NichiaOPP0000415) (the substrate itself provides the support).

Feit's expert, Dr. Lebby, apparently agrees that conductive pattern 50 is not a support lead, as he mapped the claimed support leads to a different element of Mano (the wiring pattern 40) in his opening report.[5] *See* Ex. D, ¶ 93 (NichiaOPP0000614). That is, Dr. Lebby does not argue that conductive pattern 50 are "support leads."

Feit concludes that "a lead is distinct from a support lead," Dkt. 433 at 6, and Nichia agrees. As Nichia has consistently explained, a support lead must provide both electrical connection and sufficient support to secure the chips inside the bulb. There is no similarity between Mano and the Accused Products, and Nichia's explanation of the deficiencies in Mano is consistent with Nichia's position.

<u>Shibata</u>: Feit initially appeared to rely on both wires 1d and anchors 1f in Shibata as being the claimed "support leads," though its contentions were unclear.

---

[5] This is also wrong. *See* Ex. C, ¶ 135 (NichiaOPP0000415) ("In my opinion, wiring pattern 40 does not provide any support function … rather, support for the substrate, and any chips mounted thereon, is provided by the substrate itself.").

1  Shibata itself is a very terse reference (the text spans just over a page, including the
2  "detailed" description of embodiments).  In view of Shibata's limited disclosure, and
3  Feit's unclear contentions, Nichia responded to Feit's interrogatory that neither wires
4  1d nor anchors 1f could be "support leads" (though for different reasons).
5  Specifically, "anchors 1f (which are described as providing support) do not provide
6  electrical connection, and wires 1d (which are described as providing electrical
7  connection) do not provide support."  Shah Decl., Ex. 24 at 11.

8      To the extent Feit is characterizing Nichia's response as suggesting that wires
9  1d cannot be support leads because anchors 1f (and stem 1c) provide support, that is
10 wrong.  Nichia's point about these other elements was that none of the elements
11 provides both electrical connection and support: anchors 1f and stem 1c provide
12 support, but not electrical connection (and so cannot be leads), and wires 1d are not
13 described as providing support (and so cannot be support leads).  Again, Dr. Lebby
14 apparently agrees.  In his opening report, he relied on Shibata for the "support leads"
15 element, but never said that leads 1d provide support.   Ex. D, ¶¶ 240-241
16 (NichiaOPP0000687).[6]  Later, he submitted a rebuttal report acknowledging that the
17 leads in Shibata "do not provide … support."  Ex. E, ¶ 171 (NichiaOPP0001010).

18     Thus, Nichia's interrogatory responses regarding Mano and Shibata are
19 consistent with Nichia's current position.  More importantly for present purposes,
20 substantial evidence establishes the support function in the Accused Products.
21 Without the support leads, the LED filament and corresponding LED chips would be
22 unsecured, i.e., not supported.  Shah Decl., Ex. 21, ¶ 211; Ex. B, 263:19-25, 269:5-
23 19, 271:13-15 ("But I would agree with you, if you cut the wires, clearly you can
24 remove the LED packages."); Ex. F, 116:9-120:6 (explaining that filaments were
25 removed by clipping two support leads).  To the extent Feit disagrees with Nichia's

26

27 [6] The Court struck this portion of Dr. Lebby's report because it was a newly disclosed
28 combination.  Dkt. 272 at 6-8.  Still, the fact Dr. Lebby agrees with Nichia is
   noteworthy.

characterization of the support lead elements in the prior art, that may create a factual dispute about what the prior art contains, but does not change the scope of "support leads," or otherwise affect infringement.  Nichia's position on "support leads" is the same; support leads must provide both electrical connection and support.

### 3. *Nichia's analysis confirms that the Accused Products have "support leads."*

Feit contends that Nichia has not provided sufficient evidence to show that the support leads provide support.  According to Feit, Nichia "did not conduct any testing" and does not "have any admissible evidence establishing that the leads in the Accused Products are support leads."  Dkt. 433 at 4.  That is not correct.

Nichia's expert, Mr. Gershowitz, concluded that the Accused Products have "support leads."  His testimony is based on extensive testing of the Accused Products. Shah Decl., Ex. 21, ¶¶ 210-213; Ex. G at NichiaOPP0001078-79, NichiaOPP0001100-11, NichiaOPP0001148, NichiaOPP0001170-71, NichiaOPP0002368, NichiaOPP0002389-90; Ex. A at NichiaOPP0000009, NichiaOPP0000033, NichiaOPP0000080; *see also* Dkt. 443 at §III(A)(2)(b) (arguing that Nichia is entitled to partial summary judgment because Feit's Model No. 72007 includes support leads).  And, as noted above, in addition to Mr. Gershowitz's testimony, and the evidence he relied on, Dr. Lebby (Feit's expert) also testified as to these components' supporting functions.  Ex. B, 184:3-4, 253:19-24, 263:19-25, 269:5-19, 271:13-15.

The testing includes detailed photographs of the support leads of the Accused Products, including close-up views.  These views show different orientations of the Accused Products, showing that the support leads secure the LED filaments and corresponding LED chips inside the bulb even when the bulb is rotated or moved about.  The testing also includes photographs before and after the support leads were cut, and these photos show that, after the LED filaments are cut, they are unsecured and can be removed from the bulb.  Mr. Gershowitz considered and explained this

1    testing, and the evidence supports his conclusion that the Accused Products have

2    support leads.  Shah Decl., Ex. 21 at ¶¶ 210-213; Ex. G at NichiaOPP0001078-79,

3    NichiaOPP0001100-11,        NichiaOPP0001148,        NichiaOPP0001170-71,

4    NichiaOPP0002368,    NichiaOPP0002389-90;    Ex.    A,    NichiaOPP0000009,

5    NichiaOPP0000033, NichiaOPP0000080; *see also* Dkt. 443 at §III(A)(2)(b).

6        Feit says that Nichia did not conduct a specific test of the support leads'

7    rigidity.  Dkt. 433 at 7.  But the claims do not require a particular rigidity value.  Nor

8    does Feit ever assert they do.  At most, Feit vaguely asserts that "support leads"

9    require "specific structural properties," but other than trying to compare the Accused

10    Products to prior art Nichia distinguished, Feit never once says what those structural

11    properties are. *Id.* at 6-7. As Nichia has maintained, the claimed "support leads" must

12    provide electrical connection and sufficient support to "secure the plurality of light

13    emitting element chips inside the transparent bulb."  The testing establishes that the

14    support lead structures in the Accused Product meet this claim element.

15        Moreover, Feit is in no position to attack Nichia's proof that the Accused

16    Products have the claimed "support leads."  Although Feit faults Nichia for not

17    measuring a rigidity value, Feit asserts, without testing for rigidity itself, that other

18    wires on the Accused Curved-Filament Products "are rigid and provide support to

19    hold the filaments in place."  FSF 41.[7]  An example of these wires, which loop around

20    the filament, is shown below, with the annotated red circles showing what Feit calls

21    the "support wires":



22

23

24

25

26

27    _____

28    [7] References to "FSF" refer to Feit's Statement of Facts submitted with its motion for
     summary judgment. *See* Dkt. 433-28.

NICHIA'S OPPOSITION TO FEIT'S MOTION FOR SUMMARY JUDGMENT

(Ex. A at NichiaOPP0000080 (cropped and annotated).)

Feit's expert, Dr. Lebby, testified that these wires are thinner than the support leads.  Ex. B, 316:8-10.  Yet he concluded that these wires provide support, but the thicker "support leads" do not provide support.  He did so despite testifying that he did not know the "material composition" of the other wires, "their level of flexibility or elasticity," or their "strength."  *Id.*, 316:10-23.

Feit also supports its own factual assertion that these wires provide support based on Mr. Gershowitz's testimony about the photographs.  FSF 41.  If Mr. Gershowitz could (correctly, per Feit) determine these other wires provide some support based on photographs, what basis does Feit have to dispute the same determination as to the support leads from the same photographs?  Or to argue that there is no evidence?  Likewise, if Dr. Lebby could determine the other wires provide some support without testing for rigidity, or knowing material composition, level of flexibility or elasticity, or strength – on what basis does Feit fault Mr. Gershowitz for not measuring a rigidity value?  The answer is that there is no basis to fault Mr. Gershowitz, because the leads plainly provide support.  As discussed above, Dr. Lebby admitted there is *indirect* support.  Ex. B, 184:3-4, 253:19-24.

Feit also bases its arguments on a misunderstanding of Mr. Gershowitz's deposition testimony. *See* NSF 38. Mr. Gershowitz was asked his understanding of the term "support leads" as used in claim 1 of the 734 Patent. After reading the relevant claim language, he responded: "So the support leads are doing both [the] function of securing the plurality of LED-emitting chips inside the transparent bulb, as well as electrically connecting the metal plates to … the base via these same support leads." Ex. H, 165:18-166:6.  He was then asked what distinction he makes between "lead" and "support lead," and he responded by saying, "I did not mean to make any distinction.  If I said lead and not support lead, [then] I apologize for not more carefully referring to the language of the patent." *Id.*, 166:7-13. In other words,

1  Mr. Gershowitz's testimony confirmed that, if he had previously referred to a "lead,"
2  he meant "support lead."  He consistently explained his position (which aligns with
3  Nichia's) that support leads provide both electrical connection and support.  *Id.*,
4  167:2-9, 250:5-251:18; *see also* NSF 38.

5      Feit also relies on case law for the proposition that Nichia's analysis is
6  incomplete.  Dkt. 433 at 8-9 (citing the *Panavision* case).  In that case, the patent
7  owner failed to present a sufficient analysis of impedance because impedance was
8  affected by additional factors (primarily voltage), which it did not measure.  *Id.*  But
9  there are no additional factors here.  The support leads visibly bear the weight of the
10  filament (a fact the jury can determine even without expert analysis), and the testing
11  further shows that if the support leads are cut, the LED filaments and corresponding
12  chips are untethered.  Thus, these structures – the support leads – secure the LED
13  chips inside the bulb.  Given the fact that both parties' experts agree with this position
14  (Dr. Lebby just argues the support is indirect), the case Feit relies on has no bearing
15  here.

16          *4.  Additional structures that may also provide support do not defeat*
17              *infringement.*

18      Feit complains that "Nichia simply fails to account for the alternate support
19  structures" in the Accused Products.  Dkt. 433 at 9.  This is not true.  Mr. Gershowitz
20  recognized and addressed these structures.   Shah Decl., Ex. 21 at ¶ 118, n.10
21  (explaining difference in support lead found in one model); ¶ 211 (explaining that
22  support leads in Accused Products provide support even where "additional members
23  … help to shape the spiral-like configuration of the LED filaments"); Ex. G at
24  NichiaOPP0001148 ("The filament assembly annotated above includes four LED
25  filaments that are connected to a stem (or a cylindrical post extending from the base)
26  via support leads.  See claim element 1.5 (explaining how support leads secure the
27  LED filaments within the bulb)."); NichiaOPP0002367 (same).

28      Moreover, Feit's arguments based on alternate support structures are

misplaced.  Not only did Mr. Gershowitz recognize and account for them, but the presence of other structures that may provide support does not defeat infringement.  *Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1371-72 (Fed. Cir. 2005) ("The addition of elements not recited in the claim cannot defeat infringement").  In other words, because the Accused Products each include "support leads" that provide support to secure the LED chips inside the bulb, the presence of other structures is irrelevant.  To the extent Feit contends that a support lead must provide *exclusive* support, that is not a requirement of the claims.  *See* Dkt. 444, §IV(B).  Indeed, the '734 Patent teaches that other elements (such as a die-bonding member and encapsulant) also help to secure the LED chips in place.  Dkt. 1-1, FIG. 1, 6, 4:22-38, 7:47-53.  Feit acknowledges that the Accused Products also have this structure.  *See* FSF 28 ("The LED chips in the Accused Products are secured to the board via epoxy and on [sic] the encapsulant further covers the chips and holds them in place.").

Photographs of exemplary Accused Products are provided below to further show that the support leads secure the filament and corresponding LED chips, regardless of whether other structures may also provide support:



(1)

(Ex. A at NichiaOPP0000009 (annotated).)   support leads

(2)

(Ex. A at NichiaOPP0000033 (cropped, annotated).)



(3)

(Ex. A at NichiaOPP0000080 (cropped, annotated).)

In the first case (1), Feit does not even allege there are additional support structures.[8]  In the second case (2), Feit alleges that the cylindrical stem is an additional support structure.  As is evident in the photographs above, there are "four LED filaments that are connected to a stem (or a cylindrical post extending from the base) via support leads."  Ex. G at NichiaOPP0001148.  Cutting the support leads causes the LED filaments to become unsecured, thereby demonstrating the support leads have a support function.  Shah Decl., Ex. 21 at ¶ 211.  In the third case (3), in addition to the cylindrical stem, Feit also alleges that "support wires" (wire loops that provide shape to the flexible filament) are additional support structures.  Mr. Gershowitz considered these "additional members that help to shape the spiral-like configuration of the LED filaments," and concluded that the support leads still provide a support function.  *Id.*  Nichia's testing expert, Mr. Livingston, also confirmed that in Curved-Filament Products like this, when the support leads are cut, the filaments lose their shape ("when we clip the ends of the filaments, it doesn't maintain that curved structure around the glass") and can be removed ("the ends of each of those two filaments was cut with a set of wire cutters and then the filaments were separated from that base structure").  Ex. F, 116:9-120:6.

Indeed, regarding the "support wires" that allegedly provide additional support in the Accused Curved-Filament Products, Feit's expert concludes they provide

---

[8] Feit initially explained its position on "support leads" did not apply to straight-filament bulbs with a single filament, such as Feit's Model No. 72007.  Rawls Decl., ¶¶ 2-3; Ex. L.  To the extent Feit's motion includes this model, that is inconsistent with Feit's prior positions.

support because they help the filaments to "maintain their curved configurations." Ex. E, ¶ 172 (NichiaOPP0001011); Ex. B, 290:15-17 ("Well, if you cut those wires, the filament won't keep that spiral shape. So I believe that is support."). But Mr. Livingston confirmed that the support leads also help to maintain the curved configuration: "when we clip the ends of the filaments, it doesn't maintain that curved structure around the glass." Ex. F, 119:22-23.

***

In sum, extensive evidence – product testing, expert analysis, and admissions by Feit's own expert – shows that the Accused Products have the claimed "support leads." While Feit disputes what is shown by Nichia's testing and the testimony of the experts, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Feit is not entitled to summary judgment on this issue.

> **B.    Feit is not entitled to summary judgment that the Accused Products do not infringe based on the "plan view" limitations.**

> *1. The evidence shows that the Accused Products have a wavelength conversion member that is elongated in a longitudinal direction when viewed in plan view of the first surface side of the board.*

The Accused Products include a wavelength conversion member that is elongated in a longitudinal (i.e., lengthwise) direction when viewed in plan view of the first surface side of the board.

Nichia showed through product testing and expert analysis that the Accused Products contain this element. Ex. G at NichiaOPP0001107-08, NichiaOPP0001176-81, NichiaOPP0002395-96. Moreover, Feit admits that "phosphor in a carrier material" (the wavelength conversion member) covers a "strip of material" (the board) where the chips are mounted. Ex. I, ¶ 4 (NichiaOPP0002994) (adopted by Feit at Ex. J, Response to RFA No. 2 (NichiaOPP0003004)). That is, Feit admits the board, and the wavelength conversion member that covers the board, are elongated

("strip" implies a long, narrow piece of material).  On this ground alone, summary judgment in Feit's favor would be improper.  Feit cannot show an "absence of evidence" supporting Nichia's positions, as is required under the law.  *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

Nonetheless, Feit makes two primary arguments as to why this element is allegedly not present.  Neither argument holds water.

*First*, Feit argues that "longitudinal" implies a linear, horizontal direction. Dkt. 433 at 18 (contrasting "oriented substantially vertically" with "longitudinally"). But, as explained below, Feit never sought this claim construction, and never raised this issue in response to Nichia's interrogatories seeking Feit's non-infringement defenses and any disagreement with Nichia's application of the claim language. Further, the patent does not define "longitudinal" so narrowly, and Feit agreed with the Court that "longitudinal" means "lengthwise."  *See* Dkt. 90 at 10; Dkt. 444 at 21-23; Dkt. 82 at 33:17-19.  A lengthwise direction runs along an object's length, and is not restricted (as Feit argues) to only horizontal directions.

*Second*, Feit argues that Nichia impermissibly reconfigures the products in order to assert infringement.  That is not true.  *See* NSF 23-24, 29.  Mr. Gershowitz applied the claim limitation to the Accused Products in their commercial configuration. *See, e.g.*, Ex. G at NichiaOPP0001107-08 (asserting the claim element is present "[i]n the Accused Product"), NichiaOPP0001176-81 (same), NichiaOPP0002395-96 (same).  As to the Accused Products with curved filaments, he explained that they "each have a wavelength conversion member that is elongated in the longitudinal direction when viewed in the claimed plan view.  This is so even for LED filaments configured in a 'curvilinear, spiral-like' shape where the substrate is flexible."  Shah Decl., Ex. 21 at ¶ 203.  To make the point even clearer, he said: "To be clear, this product infringes based on its configuration in the bulb, as it is sold."  Ex. G at NichiaOPP0002368.  Feit does not address this testimony.

Feit further errs by assuming that the relevant "plan view" is a view looking

down on the top of the bulb towards the support base.  Dkt. 433 at 16, 18.  But the claims refer to the wavelength conversion member (not the bulb) being "viewed in plan view," and in particular, states that the plan view is "of the first surface side of the board" (not looking down on the top of the bulb towards the support base).  When considering the language of the claim, and the Court's construction of "longitudinal" as "lengthwise," it is apparent (as Mr. Gershowitz demonstrates) that the wavelength conversion member is elongated as the claim requires.

Feit's position is also contrary to its own expert's position on validity.  Dr. Lebby applied the present limitation to a vertically oriented board (Mano) – which Feit now says cannot be "longitudinal," or be elongated in the relevant "plan view."  Dr. Lebby also applied the present limitation to curvilinear boards (Maxik and Ishibashi) – which Feit also now says cannot be "longitudinal," or be elongated in the relevant "plan view."  Ex. D, ¶¶ 98 (NichiaOPP0000616-7), 163 (NichiaOPP0000646-47), 201 (NichiaOPP0000666-67).  Feit tries to have it both ways, but as Feit itself has argued, that cannot work.  *Cf.* Dkt. 433 at 7 ("Nichia cannot have it both ways—Nichia must apply the same standard it used to distinguish the prior art references when asserting infringement.").

These points dispose of Feit's argument.  However, in view of some differences between the Accused Straight-Filament Products (where Feit never before raised this element as a disputed issue) and the Accused Curved-Filament Products, additional points relevant to these categories are provided below.

### 2. *Accused Straight-Filament Products*

In over two-and-a-half years of litigation, Feit never before argued that the Accused Straight-Filament Products do not have a wavelength conversion member that is elongated when viewed in plan view of the first surface side of the board.

*First*, as to "longitudinal direction," at the *Markman* hearing, the Court noted explicitly that it did not think "longitudinal" was used to denote "an east/west directional aspect."  Dkt. 82 at 31:19-32:3.  In that context, the Court asked the parties

if "longitudinal" means "lengthwise." *Id.* Feit agreed: "I believe longitudinal was referring to a lengthwise direction…." *Id.* at 33:17-19. Feit's expert, in his rebuttal report on infringement, argued only that "longitudinal" means "linearly." Ex. E, p. 64, ¶ 139 (NichiaOPP0000977) ("I understand, for example, the first region of the board to have a length that runs linearly from one end of the board to the center of the board.").

It was not until Dr. Lebby's deposition that he stated that "longitudinal" had to be horizontal, based on "preferred embodiments, Figure 8 and Figure 10," of the '734 Patent. Ex. B, 394:11-14, 413:4-10. Feit's position is wrong at least because "lengthwise" does not require a horizontal direction. *See* Dkt. 444 at 21-23. Moreover, Feit should be precluded from arguing this, as it did not disclose this position during written discovery, despite a Court order to do so. *See* Dkt. 445 at 15; Dkt. 131 (ordering Feit to respond in full and without objection to Nichia's Interrogatory No. 9, seeking "factual and legal bases for [Feit's] defense of non-infringement" including "the basis for how and why [an] element is not satisfied").

*Second*, Mr. Gershowitz did not improperly deconstruct the Accused Straight-Filament Products. He applied the claim elements to the Accused Straight-Filament Products as they are sold, in their commercial configuration. Feit also never raised this theory as a basis for non-infringement – not in written discovery, not in its expert's rebuttal report on infringement, and not in its expert's deposition testimony. It should therefore be precluded from doing so for the first time at summary judgment.

Feit is also wrong on the merits. Mr. Gershowitz relied *in part* on photographs of destructive tests, e.g., breaking the bulb of a product, removing its filaments, cross-sectioning its filaments, removing the encapsulant, and so on. Ex. G at NichiaOPP0001107-08, NichiaOPP0001176-81. This is ordinary testing that takes place in patent litigation. For example, the encapsulant covers the board and LED chips – so one way to show the Accused Products have a board and LED chips is to

remove the encapsulant. But that does not mean that infringement is being asserted against the deconstructed product. Rather, the deconstructed product is evidence of what the commercial configuration comprises.

At root, Feit's argument about "plan view" depends on its interpretation of "longitudinal" (contrary to the Court's construction) to mean horizontal. Feit argues that because the filament in the Accused Straight-Filament Products is not horizontal, Nichia has to remove them from the bulb to show them elongated in a horizontal direction. Dkt. 433 at 18-19. Not so. The reference to "longitudinal direction" refers to the direction along the length of the wavelength conversion member. The claim simply requires that the wavelength conversion member, when viewed in plan view of the first surface side of the board, is elongated in this direction. And that is the case in the commercial configuration. Ex. G at NichiaOPP0001078-79, NichiaOPP0001107-08, NichiaOPP0001148-49, NichiaOPP0001176-81.

Feit argues that Nichia's approach is "wholly subjective," and that if allowed then Feit should equally be able to "reorient the board 90 degrees such that the wavelength conversion member is vertical, not longitudinal." Dkt. 433 at 18-19. Feit misses the point. Nothing about the board being vertical or horizontal affects whether it has a longitudinal direction. By indicating the elongation is in the "longitudinal direction," what matters is the direction along the length of the wavelength conversion member, not the orientation of the filament in the bulb.

*3. Accused Curved-Filament Products*

As with the Accused Straight-Filament Products, Feit's position is baseless.

*First*, as to "longitudinal direction," Feit asserts (without support) that the lengthwise directions that Mr. Gershowitz annotated in the commercial as-sold configuration "are going curvilinear, U-shaped, and trace other non-longitudinal paths, *i.e.*, these are plainly not going in a 'longitudinal direction'…." Dkt. 433 at 16. Feit cites no evidence to support this position, and Feit's argument assumes that "longitudinal" must be a straight path (indeed, a horizontal one). As explained

earlier, this is wrong; the claims do not require a straight (or horizontal) direction, merely a "lengthwise direction." For a straight filament, the lengthwise direction follows the (linear) length of the filament and is therefore straight, while for a curved filament, the lengthwise direction follows the (curvilinear) length of the filament and is therefore curvilinear. As Mr. Gershowitz testified:

> Note that the longitudinal (*i.e.*, lengthwise) direction follows the length of the board. When the flexible board is in the curved configuration in the bulb, the longitudinal (*i.e.*, lengthwise) direction will similarly be curved.

Ex. G at NichiaOPP0002370-71.

*Second*, Mr. Gershowitz did not improperly deconstruct the Accused Products. He applied the claim elements to the Accused Products as they are sold, in their commercial configuration. As explained above, Mr. Gershowitz analyzed ordinary testing of the products, including destructive testing that provides evidence of what the commercial configuration of the Accused Products comprises. Indeed, Mr. Gershowitz was explicit, as Feit had previously raised this issue for curved products:

> To be clear, this product infringes based on its configuration in the bulb, as it is sold….. In some images, the LED filament has been removed from the bulb, and may be shown in different shapes (including flattened out). The filament was removed in order to perform certain testing on the LED filament. Because it is the same board, with the same dimensions and properties, annotations of the LED filament in these different configurations are applicable to the LED filament in its configuration in the bulb, as it is sold.

Ex. G at NichiaOPP0002368; *see also* Shah Decl., Ex. 21 at ¶ 203.

At the very least, there is a genuine dispute of material fact on Feit's motion: Mr. Gershowitz analyzed the Accused Curved-Filament Products and determined (contra Feit) that these products have wavelength conversion members that are

elongated when viewed in plan view of the first surface side of the board.[9]  *See also*
Ex. H, 236:2-6 ("But if we were to look at some of the primary reports, from there
we can see photographs of the curved filament products and from those photographs,
we can deduce the plan view of the curved filament … in the product."); 236:21-
237:4 ("From the primary reports, there are clear photographs of the curved filament
products in their as-sold condition from which clearly the plan view can be
determined in those products to be the same plan view either in the as-sold
configuration or if the filament is removed from the product and placed in other
positions or orientations as these summary photographs for claim 1.8 in [Exhibit]
CC-25 illustrate."); 237:24-238:13; 240:4-241:15; 241:16-243:5.  Feit asks the Court
to make a credibility assessment between competing expert testimony, and weigh the
evidence in Feit's favor—neither is proper at the summary judgment stage.  *See T.W.
Elec. Serv., Inc.*,809 F.2d at 630.

    **C.**    **Feit is not entitled to summary judgment that the subset of
Accused Products having an LED chip in the center of the board
do not infringe because they lack either "board" or "set" elements.**

    The subset of Accused Products having an LED chip in the center of the board
include first and second "sets" of LED chips mounted on and arranged in regions of
a "board" in the manner claimed.  Nichia established these claim elements are present
with product testing and expert analysis.  *See* Shah Decl., Ex. 21 at ¶¶ 186-188
(addressing Feit's non-infringement position related to a chip in the center of the
board); Ex. G at NichiaOPP0001295-99, NichiaOPP0001326-29.[10]  For example,
Nichia's infringement expert (Mr. Gershowitz) explained that "[n]othing in the

---

[9] Feit states that "there is no way to view a curved board 'from the first surface side'
when considering the curved products in their commercial state." Dkt. 433 at 16.  No
evidence (and certainly no expert testimony) supports this position.  It is also contrary
to the testimony noted here by Mr. Gershowitz.

[10] One claim chart of the Gershowitz Report is cited for exemplary purposes; other
claim charts where there is a center LED chip include similar evidence and analysis.

Court's construction of any of these terms forbids an LED chip from being in the center portion."  Shah Decl., Ex. 21 at ¶ 187.

In addition to Mr. Gershowitz's analysis of the evidence, Feit's expert (Dr. Lebby) admits that the only issue he sees with a chip in the center of the board relates to indefiniteness, not infringement:  "The only issue between the odd and the even number of chips is, it's a strong argument for indefiniteness of the term 'center portion.'"  Ex. B, 201:3-8.  But the Court already held that these terms would be clear to a POSITA, as discussed in § IV(E) of this memorandum, below.

None of Feit's arguments rebut these points.

Feit begins by asserting that Nichia cannot point to any "functional significance of any of these claim terms."  Dkt. 433 at 19.  While Feit does not cite to any authority that functional significance is relevant to infringement (it is not), Feit is also wrong.  *See NSF 45.*  For example, Nichia's technical experts have explained that these claim elements "allow[] for maximum light emission."  Ex. C, ¶ 345 (NichiaOPP0000502); *id.*, ¶¶ 47-48 (NichiaOPP0000369-70) (explaining that "advantages include broad light emission" and the ability to "mimic the appearance of a traditional incandescent bulb"); Shah Decl., Ex. 21 at ¶¶ 71-73 (same).

Feit next cites the Court's statement during the *Markman* hearing that "if there is an LED chip [in the center portion], it can't be, by definition, center portion."  Dkt. 82 at 49.  But that statement came in the middle of arguments by both sides as the Court tried to understand the claims.  Following the hearing, the Court ordered additional briefing, posing this very question:  "May an LED chip lie within or at the 'center portion,' …?"  Dkt. 86 at 2.  Nichia answered yes.  Dkt. 87 at 8-9.  Feit argued that "if Nichia's construction is adopted, this further renders 'portions,' 'regions' and 'sets' circular and indefinite."  Dkt. 88 at 16.  The Court rejected Feit's indefiniteness arguments and construed the portions, regions, and sets terms.  Dkt. 90 at 7-9 and 14-15.  The Court's *Markman* order construed "center portion" as "center," and does not preclude an LED chip from being in the center.  Dkt. 90 at 9, Shah Decl., Ex. 21 at

¶ 187.  Feit's reliance on the Court's statement ignores what came after.

Finally, Feit suggests that either (i) a center chip would be in both the first and second sets, and therefore "destroy the set distinction;" or (ii) would "create a third region that is not contemplated by the claims."[11]  Dkt. 433 at 20.  This argument makes no sense.  *First*, Feit contradictorily asserts that a chip in the center of the board would not be part of either the first or second set.  *See* FSF 30.  Nichia agrees with this, as it explained to the Court in supplemental briefing (Dkt. 87 at 8-9), and as Mr. Gershowitz also concluded (Shah Decl., Ex. 21 at ¶ 187).  *See also* NSF 56.  Feit also does not explain what "the set distinction" is, why it would be "destroy[ed]," and why this would matter in terms of whether the claim is infringed.

*Second*, Feit assumes that "a third region that is not contemplated by the claims" is a problem, but does not explain why.  In fact, it is not a problem.  Additional, unclaimed elements do not defeat infringement.  *Gillette Co.,* 405 F.3d at 1371-72 ("The addition of elements not recited in the claim cannot defeat infringement").  As a corollary, if an Accused Product without a chip in the center of the board infringes, adding an additional chip in the center of the board does not defeat infringement.  This is also the same argument Feit raised during claim construction, in the context of indefiniteness, that the Court rejected.  Dkt. 88 at 15-16 (Feit arguing that "a chip at the center would defy this arrangement such that there would be a third region or an additional set such that the first and second 'regions' or 'set' limitations would be violated").

In sum, Feit errs by focusing on one comment the Court made during the *Markman* hearing, but ignores the supplemental briefing on this question and the Court's actual construction following that supplemental briefing.

---

[11] Notably, this argument is not made by Dr. Lebby.  His report concludes (wrongly) only that a chip in the center means there is no center portion, not that other elements also are not met.  Ex. E, §X(C)(1).

**D.   Feit is not entitled to summary judgment on non-infringing alternatives.**

Feit's alleged non-infringing alternatives arise in connection with the testimony of its damages expert, Ms. Hall.  Ms. Hall's reasonable royalty damages opinion hinges on the assumption that Feit would not have paid more in reasonable royalty damages to Nichia than it would have paid to avoid infringement by switching to an available and acceptable non-infringing alternative. Dkt. 441 at 5-6.  Because the alternatives Feit has proposed were not available on the market at the relevant time (that is, the date of first infringement), Feit has the burden to show that these alternatives were non-infringing, "available" and "acceptable." *Grain Processing Corp.*, 185 F.3d at 1353.  Feit cannot meet its burden. [12]

*First*, Feit improperly refers to alleged alternatives that it did not disclose during discovery.  Feit provides several examples of specific chip arrangements, referring to Figure 14 of the '734 Patent, and hypotheticals provided by the Court in the *Markman* hearing – but none of these were included in Feit's discovery responses. Dkt. 443-1 at Statement of Fact ("SOF") No. 55.  Feit's arguments on previously-undisclosed alternatives should be ignored, and its motion should be denied on this basis alone. *See* Dkt. 445 at 10-12.

*Second*, while Feit complains that Mr. Gershowitz failed to "offer[] a substantive non-infringement position" as to some alternatives, the problem is with Feit's alternatives.  Some of Feit's designs simply put the word "not" in front of a claim element (e.g., a "configuration[] in which a wavelength conversion member is not a wavelength conversion member formed unitarily with a transparent member," Dkt. 433 at 22).  As both of Nichia's technical experts noted, the practice of simply

---

[12] *See* Dkt. 443 at 24 (explaining that the alleged alternatives that were on the market in September 2017 are all Accused Products, and it should be axiomatic that an infringing product cannot by definition by a non-infringing alternative) (citing *Webasto Thermo & Comfort N.A.,Inc. v. Bestop, Inc.*, No. 16-cv-13456, 2019 WL 3334563, *4 (E.D. Mich. July 25, 2019)).

taking a claim element and putting "not" in front of it does not provide any explanation as to how the product would look or operate. They correctly found that Feit's proposed alternatives are "unclear and incomplete hypothetical designs." Shah Decl., Ex. 21 at ¶ 257; Ex. K, ¶ 74 (NichiaOPP0003063). ███████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

Shah Decl., Ex. 21 at ¶ 256; Ex. K, ¶ 74 n.5 (NichiaOPP0003063).

*Third*, even if this Court were to find that the alternatives discussed in Feit's motion were timely disclosed and are non-infringing as a matter of law (which Nichia disputes), Feit cannot – as a matter of law – meet its burden to show that any of these alternatives was both available and acceptable. *See* Dkt. 443 at 24-29.

Feit devotes only one sentence of its motion to availability: "Nor can there be a dispute that Feit Electric had the means to have such designs, which essentially remove LED chips from its existing designs, manufactured." Dkt. 433 at 23. Feit cites no evidence (expert analysis or otherwise) for this proposition and it fails to consider the relevant time frame, *i.e.*, September 2017. To determine whether a non-infringing alternative was available during the accounting period, courts consider whether the accused infringer can show that it had all of the "necessary equipment, know-how, and experience" to make the alternative product. *Grain Processing Corp.*, 185 F.3d at 1354. Feit cannot meet this standard, nor does it allege in its motion that it can. Nichia has offered abundant evidence – including the testimony of Feit's founder and CEO – to the effect that the alternatives were not available, or at least Feit would not have asked its suppliers to make these new products. *See* Dkt. 443 at 25-27. Indeed, Feit's CEO testified ████████████████████

███████████████████████████████████████████

███████████. Feit's expert never considered ████████████

████████████████. Dkt. 443-1 at SOF Nos. 59-74 and 99.

As to acceptability, Feit says nothing at all.  Again, Nichia offers evidence, including Feit testimony, showing that the designs were unacceptable.  Dkt. 443 at 27-29.  Feit never considered what the effect of the "design arounds" would have on the product's appearance, price, or performance, nor does Feit's expert opine that the alternative designs would be acceptable substitutes for the Accused Products.  Dkt. 443-1 at SOF Nos. 75-98.  And again, Feit ignores the evidence despite seeking summary judgment.

Feit's motion as to the alternatives should be denied on multiple grounds.

### E.       Feit is not entitled to summary judgment on indefiniteness of the "board" limitation.

Feit must prove indefiniteness by clear and convincing evidence.  Dkt. 90 at 8. Feit cannot meet its burden.  *See generally* Dkt. 443 at 18-20 (arguing that Nichia is entitled to partial summary judgment that the claims of the '734 Patent are not indefinite).  Indeed, the Court already addressed Feit's argument, and found that this term is not indefinite:

> The Court agrees with [Nichia] that the disputed limitations are not indefinite, because the 'end portions, 'center portion,' 'first region,' and 'second region' are defined relative to each other and the 'first set' and second set' of chips.  The Court declines to consider directional terms like 'end' and 'center' in isolation.  Rather, considering these terms in the context of the claims as a whole, [Feit] has not clearly and convincingly proven that the relative descriptions provide insufficient teaching to one skilled in the art about the location of these components.

Dkt. 90 at 9.  Feit fails to present new arguments or evidence that would warrant any different conclusion than the one the Court already reached.

Feit argues that Nichia and its witnesses have been inconsistent, but it misconstrues the record.  Nichia has consistently explained that the significance of

the "end portions" and "center portion" terms is their relative position or "directionality," not their size. Dkt. 90 at 8 (summarizing Nichia's position as "directionality, not size, is important" because "these terms define relative positions"). The Court agreed. Dkt. 90 at 9 (holding that "the 'end portions,' 'center portion,' 'first region,' and 'second region' are defined relative to each other and the 'first set' and 'second set' of chips.").

Feit also confuses the law on indefiniteness. To be indefinite, it is the scope of the claim that matters, not an individual element. *See* Dkt. 90 at 8 ("To establish indefiniteness, 'an accused infringer [must] show[] by clear and convincing evidence that a skilled artisan could not discern *the boundaries of the claim*....") (emphasis added) (quoting *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F. 3d 1244, 1249-50 (Fed. Cir. 2008)). Feit does not address the boundary of the claim, and instead focuses narrowly on the "center portion." Dkt. 433 at 24 (arguing that "the scope of the claimed 'center portion' has been [a] moving target"). Nichia has repeatedly said, what affects the claim's scope is the directionality of the portions specified in the claim terms, not the size of the individual portions.

Feit cites one of Nichia's experts, Dr. Wetzel, as saying that a "number of sizes are possible for the end portion," that different shapes are possible, and that end portions and center portion can be different sizes. Dkt. 433 at 24-25. Nichia addressed Dr. Wetzel's testimony in the prior claim construction briefing. *See* Dkt. 70 at 7-8 (under heading "Feit misrepresents Dr. Wetzel's testimony"). Further, Dr. Wetzel was testifying prior to the Court's Markman order that construed "center portion" to mean "center." In that context, when he was asked to draw the center portion, Dr. Wetzel initially drew a straight line down the center of the board. When pressed by Feit to identify a larger center portion, he drew a larger region around that center line. Shah Decl., Ex. 6 at 130:22-134:5. Rather than being inconsistent, Dr. Wetzel's position is that it is the directionality of the terms, not their size, that matters. *Id.*, 131:20-132:1, 142:18-24.

Feit also cites one of the inventors, Mr. Matsushita, who represented the center with a vertical line.  Dkt. 433 at 25.  The vertical line is consistent with both Dr. Wetzel's and Nichia's position.  Mr. Matsushita was clear that "there is no need to impart or to ascribe a width to the center line."  Shah Decl., Ex. 5 at 212:13-15; *see also* NSF 54; Ex. C, ¶¶454-456 (NichiaOPP0000556-61) (after analyzing testimony, concluding that "[i]n my opinion, Mr. Matsushita's identification of sets … is consistent with the Court's claim construction and exemplifies how a POSITA would identify the first and second set of chips.")

Feit argues that Nichia provided a "different" position in its interrogatory responses.  Dkt. 433 at 25.  That is not true.  Nichia stated:  "Nichia understands the center of the board in each of the Accused Products, as the Court has construed the 'center portion' term, to refer to a geometric center such that the board's center is equidistant from the board's ends in a lengthwise direction."  Shah Decl., Ex. 24 at 44.  In response to Judge Eick's order requiring Nichia to provide a supplemental response and identify "all" center portions, Nichia responded that its additional identification was premised on Feit's "apparent position" that a center portion must have width, although Nichia disagreed:

> Feit apparently takes the position that the "center portion" does not refer to the geometric center.  Nichia does not acquiesce to Feit's apparent position, and Nichia's position is that its identification of the center portion in the Accused Products is correct, sufficient, and consistent with the Court's construction.  Nonetheless, Nichia describes how one could identify a center portion having a width, to the extent Feit's apparent position is deemed relevant.

*Id.*, at 45 n.3.  Nichia also clarified that its additional response was provided only "[t]o the extent that a center portion must have a width." *Id.* at 45.  To that end, Nichia identified center portions with a width.  But even without the above disclaimer, there is nothing inconsistent with this: Nichia's position has always been that the

1  directionality of these terms matters, not their size.

2  Feit argues that Nichia's witness, Mr. Gershowitz, said the center portion can

3  change depending on whether a chip is in the center.  Feit mischaracterizes his

4  testimony.  *See* NSF 57-58.  Mr. Gershowitz's position has been that the "the

5  presence of chips mounted on the board does not affect where its center or ends are."

6  Shah Decl., Ex. 21, ¶ 184; *see also* FSF 43 (Feit asserting the same as a fact).

7  In sum, Nichia has been consistent, and its position (as the Court held in its

8  *Markman* ruling) is and has been that the disputed terms "are defined relative to each

9  other and the 'first set' and 'second set' of chips," and that a POSITA "could apply

10 the location-arrangement language in [the 'sets'] limitation to understand where the

11 first and second set of chips are placed on the board relative to the first and second

12 regions, the center portion, and the end portions."  Dkt. 90 at 9, 15.

13 **V.  CONCLUSION**

14 For the foregoing reasons, Nichia requests that this Court deny Feit's motion

15 for summary judgment.

16 Respectfully submitted,

17

18 DATED: August 17, 2022        ROTHWELL, FIGG, ERNST &MANBECK P.C.

19                               By: */s/ Robert P. Parker*

20                               ROBERT P. PARKER (*pro hac vice*)

21                               LEWITT, HACKMAN, SHAPIRO, MARSHALL

22                               & HARLAN

23                               By: */s/ Jeffrey A. Kobulnick*

24                               JEFFREY A. KOBULNICK

25                               *Attorneys for Plaintiff Nichia Corporation*

26

27

28