SALIL BALI, SBN 263001
  sbali@stradlinglaw.com
MATTHEW STEPHENS, SBN 288223
  mstephens@stradlinglaw.com
STRADLING YOCCA CARLSON & RAUTH
A PROFESSIONAL CORPORATION
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660-6422
Telephone:  949-725-4000
Facsimile:  949-725-4100

KAL SHAH (admitted *pro hac vice*)
  kshah@beneschlaw.com
MIRCEA TIPESCU (admitted *pro hac vice*)
  mtipescu@beneschlaw.com
SIMEON PAPACOSTAS (admitted *pro hac vice*)
  spapacostas@beneschlaw.com
LOUIS CONSTANTINOU (admitted *pro hac vice*)
  lconstantinou@beneshlaw.com
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
71 S. Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: 312-212-4949
Facsimile: 312-767-9192

Attorneys for Defendant
Feit Electric Co., Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| NICHIA CORPORATION,<br><br>    Plaintiff,<br><br>    vs.<br><br>FEIT ELECTRIC COMPANY, INC.,<br><br>    Defendant. | CASE NO. 2:20-CV-00359-GW-E<br><br>Honorable George H Wu<br>Magistrate Charles F. Eick<br><br>**DEFENDANT FEIT ELECTRIC COMPANY, INC.'S OPPOSITION TO PLAINTIFF NICHIA CORP.'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. 443)** |
|---|---|

# **TABLE OF CONTENTS**

I.      INTRODUCTION .......................................................................................... 1

II.     ARGUMENT ................................................................................................ 3

    A.      There Is No Genuine Issue Of Material Fact That Nichia Cannot Establish The "Support Leads" Limitation ........................................ 3

    B.      Triable Issues Exist as to Whether the Accused Products Include The Wavelength Conversion Member Limitation ..................................... 9

    C.      Triable Issues Exist as to Other Limitations of The Asserted Claims Of The '734 Patent ............................................................................ 12

    D.      Triable Issues of Fact Exist as to Whether Claim 1 is Anticipated . 14

    E.      Triable Issues of Fact Exist as to Whether Claim 19 is Obvious Over the Prior Art ...................................................................................... 17

    F.      At a Minimum, Triable Issues of Fact Exist as to Whether The Claims are Indefinite ........................................................................ 19

    G.      Triable Issues of Fact Exist As to Enablement ................................ 20

    H.      Triable Issues of Fact Exist as to Written Description .................... 22

    I.      Nichia Cannot Obtain Summary Judgment of No Non-Infringing Alternatives Based on its Admissions ............................................. 24

III.    CONCLUSION ........................................................................................... 27

TABLE OF CONTENTS

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

1
2

# <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

**Cases**

5
6

*ALZA Corp. v. Andrx Pharms., LLC,*
    603 F.3d 935 (Fed. Cir. 2010) ......................................................................... 21

7
8

*Apple Inc. v. Samsung Elecs. Co.,*
    2016 WL 524904 (N.D. Cal. Feb. 10, 2016) ............................................. 26, 27

9
10

*Athletic Alternatives, Inc. v. Prince Mfg., Inc.,*
    73 F.3d 1573 (Fed. Cir. 1996) ......................................................................... 19

11
12

*Berkheimer v. HP Inc.,*
    881 F.3d 1360 (Fed. Cir. 2018) ....................................................................... 20

13

*In re Bimeda Research & Dev. Ltd.,*
    724 F.3d 1320 (Fed. Cir. 2013) ....................................................................... 22

14
15

*Exigent Tech., Inc. v. Atrana Sols., Inc.,*
    442 F.3d 1301 (Fed. Cir. 2006) ..................................................................... 9, 10

16
17

*Genentech, Inc. v. Novo Nordisk A/S,*
    108 F.3d 1361 (Fed. Cir. 1997) ....................................................................... 21

18
19

*In re Gleave,*
    560 F.3d 1331 (Fed. Cir. 2009) ....................................................................... 14

20
21

*Graham v. John Deere Co. of Kansas City,*
    383 U.S. 1 (1966) ............................................................................................. 17

22
23

*Halliburton Energy Svcs., Inc. v. M-I LLC,*
    514 F.3d 1244 (Fed. Cir. 2008) ....................................................................... 19

24
25

*Int'l Rectifier Corp. v. IXYS Corp.,*
    361 F.3d 1363 (Fed. Cir. 2004) ....................................................................... 14

26
27

*Interval Licensing LLC v. AOL, Inc.,*
    766 F.3d 1364 (Fed. Cir. 2014) ....................................................................... 20

28

*KSR Int'l Co. v. Teleflex Inc.,*
    550 U.S. 398, 127 S. Ct. 1727, 167 L. Ed. 2d 705 (2007) .............................. 19

*Mars, Inc. v. H.J. Heinz Co.*,
  377 F.3d 1369 (Fed. Cir. 2004) ........................................................................ 4

*Nautilus v. Biosig Instruments, Inc.*,
  134 S. Ct. 2120 (2014) ............................................................................. 19, 20

*Novartis Corp. v. Ben Venue Labs., Inc.*,
  271 F.3d 1043 (Fed. Cir. 2001) ................................................................. 1, 7, 8

*Omega Eng'g, Inc, v. Raytek Corp.*,
  334 F.3d 1314 (Fed. Cir. 2003) ........................................................................ 4

*Omegaflex, Inc. v. Parker-Hannifin Corp.*,
  243 Fed. Appx. 592 (Fed. Cir. 2007) ............................................................... 19

*Panavision Imaging v. Omnivision Techs.*,
  2012 WL 12952006 (C.D. Cal. May 25, 2012).............................................. 7, 8

*Phillips v. AWH Corp.*, 415
  F.3d 1303 (Fed. Cir. 2005) ............................................................................... 4

*Process Control Corp. v. HydReclaim Corp.*,
  190 F.3d 1350 (Fed. Cir. 1999) ........................................................................ 4

*Procter & Gamble Co. v. Teva Pharm. USA, Inc.*,
  566 F.3d 989 (Fed. Cir. 2009) ........................................................................ 17

*Southwall Techs., Inc. v. Cardinal IG Co.*,
  54 F.3d 1570 (Fed. Cir. 1995) ........................................................................ 15

*Synthes USA, LLC v. Spinal Kinetics, Inc.*,
  734 F.3d 1332 (Fed. Cir. 2013) ...................................................................... 22

*Transco Products Inc. v. Performance Contracting, Inc.*,
  38 F.3d 551 (Fed. Cir. 1994) ............................................................................ 4

*Traxcell Technologies, LLC v. Nokia Solutions and Networks Oy*,
  15 F.4th 1136 (Fed. Cir. 2021) ......................................................................... 6

*Upsher-Smith Labs., Inc. v. Pamlab, L.L.C.*,
  412 F.3d 1319 (Fed. Cir. 2005) ................................................................. 15, 18

*Webasto Thermo & Comfort N. Am., Inc. v. BesTop, Inc.*,
  2019 WL 3334563 (E.D. Mich. July 25, 2019).............................................. 26

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-ii-

TABLE OF AUTHORITIES

*Wyeth and Cordis Corp. v. Abbott Laboratories*,
 720 F.3d 1380 (Fed. Cir. 2013) ........................................................................ 22

**Statutes**

35 U.S.C. §112 ....................................................................................... 2, 22, 23

35 U.S.C. § 112(b) ...................................................................................... 19

35 U.S.C. § 112, ¶ 1 ................................................................................. 21

TABLE OF AUTHORITIES

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

## I.    INTRODUCTION

Nichia moves for summary judgment of infringement, validity, and non-infringing alternatives. Dkt. 443 ("Mot."). In doing so, Nichia no doubt proffers its best evidence to persuade this Court that it is entitled to this relief. Nichia's purported evidence, however, establishes that it cannot meet its burden on infringement. Therefore, this Court should deny Nichia's motion and grant Feit Electric's co-pending motion for summary judgment (Dkt. 433). But even if this Court finds issues of fact exist as to infringement, there also are numerous issues of material fact as to validity and non-infringing alternatives such that this Court should deny Nichia's motion in its entirety.

As it relates to infringement, Nichia alone carries the burden. *Novartis Corp. v. Ben Venue Labs., Inc.,* 271 F.3d 1043, 1046 (Fed. Cir. 2001). On summary judgment, Nichia must establish there is no materially disputed fact as to the presence of each claim limitation for each of the over 600 products it accuses. Nichia not only fails to meet this burden, but Nichia's motion confirms that it has not and indeed *cannot* demonstrate the presence of the "support leads" limitation (which Nichia dubs "element 1.5") for *any* of the accused products. Nichia's omission is dispositive. It made a bright line distinction between "leads" and "support leads" in the intrinsic record, and again in this litigation, but nevertheless failed to conduct any testing to determine the type of leads present in the accused devices. This warrants summary judgment of no infringement.

As to the other grounds on which Nichia seeks summary judgment of infringement, there are critical issues of fact that preclude summary judgment. Feit Electric disputes whether Nichia can establish the presence of, among other limitations, the claimed "center/end portions" and "first/second regions," the "wavelength conversion member formed unitarily with a transparent member," a "wavelength conversion member . . . provided on the first surface side and the second surface side," or a "wavelength conversion member . . . elongated in the

-1-

OPPOSITION TO NICHIA'S MOTION FOR SUMMARY JUDGMENT

longitudinal direction when viewed in plan view of the first surface side of the board." Simply put, if this Court does not find summary judgment of no infringement, infringement is then an issue for the jury.

Nichia's positions on validity underscore the fatal deficiencies in its infringement position. For example, Nichia applies the claim limitations broadly for infringement, *e.g.*, conflating leads and support leads, while simultaneously applying the limitations narrowly to differentiate prior art, *e.g.*, asserting that only leads (that do not provide support) are disclosed. Nichia cannot have it both ways. Nichia's flip-flopping reveals scores of issues of fact as to the teachings of the prior art such that validity must be determined by the trier of fact.

The same holds true for Nichia's attempt to defeat Feit Electric's defenses under 35 U.S.C. §112. As an initial matter, Nichia fails to address all grounds under which Feit Electric asserts lack of enablement and indefiniteness. This alone warrants denial of Nichia's motion. If this Court considers partial summary judgment as to these defenses, Nichia's motion still fails to demonstrate the absence of disputed material facts. Nichia does not address the core criticism of the specification relied upon by Feit Electric. Nichia instead relies on snippets of testimony taken out of context. But as discussed in detail below, there is more to each of these issues such that summary judgment should be denied.

Finally, Nichia's attempt to seek summary judgment of non-infringing alternatives is untenable. Nichia cannot undo the repeated concessions it made in this case to obtain claim constructions it desired. *See, e.g.*, Dkt. 433 at 21-23.[1] Nor can Nichia ignore the bases on which is distinguishes the prior art, and its corresponding concession that any novelty of the asserted patent is limited to the physical arrangement of otherwise well-known components. Moreover, Nichia's

---

[1] Feit Electric incorporates by reference the arguments and evidence presented in its motion for summary judgment.  (Dkt. 433).

OPPOSITION TO NICHIA'S MOTION FOR SUMMARY JUDGMENT

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

1  enablement positions effectively concede both the availability and acceptability of

2  non-infringing alternatives. Nichia's motion should also be denied on this front.

3  **II.    ARGUMENT**

4  **A.    There Is No Genuine Issue Of Material Fact That Nichia Cannot**

5  **Establish The "Support Leads" Limitation.**

6  The '734 patent does not teach a novel method or component. Rather, as

7  Nichia itself explained to this Court, "[t]he novelty that we're claiming here isn't

8  directed to any individual component . . . the novelty is in the configuration all the

9  different components and how they interact together." Dkt. 82 at 9. Nichia

10  contends that the crux of the patent is an emulated Edison-style bulb wherein the

11  traditional tungsten filament is replaced with the claimed board and additional

12  components. A central limitation of *all asserted claims* of the '734 patent is

13  "support leads that secure the plurality of light emitting element chips inside the

14  transparent bulb." Nichia's request for summary judgment of infringement

15  demonstrates that Nichia has not and cannot show the presence of this limitation

16  in the Accused Products.

17  As described in the '734 patent, the support lead is used to electrically

18  connect the LEDs on the board to the base. This is depicted as highlighted below:

19
20
21
22  
23
24
25  Nichia has at least twice confirmed that this component when used in a light

26  emitting device of the type at issue can consist of a lead or a support lead.

27
28

OPPOSITION TO NICHIA'S MOTION FOR SUMMARY JUDGMENT

*First,* Nichia made the distinction during prosecution to secure patent protection. The '734 patent is a continuation of, among others, U.S. Patent No. 9,491,812 (the "'812 patent"). *See* RSF 33[2], at Ex. A[3] ("the '812 patent"). As a continuation, the patents share the same specification and there can be no new subject matter from one to the next. *Transco Products Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 555 (Fed. Cir. 1994). It is further axiomatic that terms in a parent and child patent must be applied consistently. *Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003) ("[T]he same claim term in the same patent or related patents carries the same construed meaning."). Claim 1 of the '812 patent recites "a pair of **leads**[4] configured to connect the transparent board within the transparent bulb . . ." (RSF 33). Dependent claim 16, narrows this limitation further, claiming: "[t]he light emitting device according to claim 1, wherein the ***leads are support leads*** configured to provide power to the light element." *Id*. Nichia, therefore, affirmatively and unequivocally established that either a lead or support lead can be used in the subject invention. Nichia also established that the two are distinct with support leads being a type of lead but not all leads being support leads. *See., e.g., Phillips v. AWH Corp.¸* 415 F.3d 1303 (Fed. Cir. 2005) (distinguishing "baffles" from "steel baffles"); *Mars, Inc. v. H.J. Heinz Co.*, 377 F.3d 1369, 1374 (Fed. Cir. 2004) (claim term "ingredients" construed in light of the use of the term "mixture" in the same claim phrase); *Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1356 (Fed. Cir. 1999) (claim term "discharge rate" construed in light of the use of the same term in another limitation).

*Second*, Nichia argued around prior art references based on the distinction

---

[2] Citations to "RSF [X]" refer to Feit Electric's concurrently filed Responses to Nichia's Statement of Uncontroverted Material Facts and Conclusions of Law in Support of its Motion for Partial Summary Judgment.
[3] Exs. A-G are attached to the concurrently filed Declaration of Kal Shah.
[4] All emphases added unless otherwise stated.

STRADLING YOCCA CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

OPPOSITION TO NICHIA'S MOTION FOR SUMMARY JUDGMENT

between leads and support leads. For instance, in response to Feit Electric's applying U.S. Patent App. No. 2004/0239242 A1 ("*Mano*") as invalidating prior art against the '734 patent claims, Nichia responded "Mano does not offer support and in particular does not 'secure the plurality of light emitting element chips inside the transparent bulb.'" (SOF 52)[5]. Similarly, in response to the Shibata '525 reference ("*Shibata*"), Nichia argued "wires 1d (which are described as providing electrical connection) do not provide support…." (SOF 53).

Nichia was not only on notice of this obligation based on the intrinsic evidence and its litigation positions, but Feit Electric placed Nichia on notice of this issue as well. For instance, when identifying non-infringing alternatives, Feit Electric disclosed the use of "leads (***as in the current case***) that are not supporting but rather just electrical leads…." (RSF 72-75), Ex. B. Feit Electric even provided specific examples: "[t]he PS50/S/820/LED product does not use support leads to secure the plurality of light emitting element chips inside the transparent bulb. Rather, the chips are secured to a curvilinear spiral-like flexible substrate, which is in turn supported by support wires" *Id.* Nichia nevertheless failed to conduct adequate testing to distinguish a lead from a support lead and it further failed to consider and eliminate the impact of other incorporated support mechanisms.

The sum total of Nichia's evidence is the unilateral statement that the leads "serve to suspend the LED filaments in the bulb….[w]ithout the support leads, the filament (and the chips mounted thereon) would be entirely unsecured." *See* Mot. At 8. This is no more than mere attorney argument, and wholly inadequate. Nichia provides no metrics to what is meant by "secured." Nichia appears to suggest that the mere fact that the leads are connected is sufficient. But this cannot be the test. The '812 patent claims a light emitting device using a board with metal plates connected to the base via leads. *Compare, e.g.*, RSF 33, Ex. B (at claims 1 and 16

---

[5] Citations to "SOF [X]" refer to Feit Electric's Statement of Uncontroverted Material Facts in Support of its Motion for Summary Judgment (Dkt. 433-28).

*with* Dkt. 1-1 ('734 patent claims). Any claim that these leads could not "secure," *i.e.,* connect or attach the board, would render the patent invalid for lack of enablement and written description.[6] Perhaps most damning is Nichia's reliance on the filament falling when the leads "have been cut." Mot. At 8. This is not helpful or scientifically defensible. There can be no dispute that when attached by leads or support leads, the board will fall when the leads have been cut. This cannot be the basis for assessing the presence of "support lead" in the accused products.[7] Nichia appears to read "support" to simply mean connected or attached, but that cannot be the case in view of Nichia's positions taken via the '812 patent as well as in this litigation.

Nichia's assessment of this limitation is further inadequate because it failed to test each lead individually. The claim language clearly requires support "lead*s*," *i.e.,* more than one support lead. Nichia's only "test" was to sever the filament entirely from both leads thereby failing to assess each lead in isolation to confirm whether or not *each* is a support lead. Nichia's approach leaves unanswered the

_____

[6] Any claim by Nichia that the doctrine of equivalents could substitute for this deficiency is unavailing. For starters, such a claim would be untimely as it was neither disclosed in Nichia's infringement contentions or expert opinions. And, as a matter of law, Nichia cannot use this limitation to distinguish the prior art, and then seek the benefit of the doctrine of equivalents here. *See Traxcell Technologies, LLC v. Nokia Solutions and Networks Oy*, 15 F.4th 1136, 1145-46 (Fed. Cir. 2021) ("If a patentee surrenders some scope during prosecution, that territory isn't available later as a doctrine-of-equivalents battleground.").

[7] Nichia's argument that Feit Electric improperly focused on the LEDs rather than the board is without merit. Nichia has not established whether the leads are support leads, let alone whether they perform the additionally required function of "secur[ing] the plurality of light emitting of the light emitting device through the second surface of the element chips inside the transparent bulb." Nichia cannot disclaim this additional claimed function—for which it also did not test—because it used this claim feature to distinguish the prior art. (*See* SOF 52) (Nichia asserting "Mano does not offer support and in particular does not 'secure the plurality of light emitting element chips inside the transparent bulb.'").

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

OPPOSITION TO NICHIA'S MOTION FOR SUMMARY JUDGMENT

critical question of whether one or neither of the leads provides the claimed support. *See Panavision Imaging v. Omnivision Techs.*, No. 2:09-CV-01577-MRP (CTx), 2012 WL 12952006, at *4 (C.D. Cal. May 25, 2012); *Novartis Corp. v. Ben Venue Laboratories, Inc.*, 271 F.3d 1043, 1046, 60 U.S.P.Q.2d 1836 (Fed. Cir. 2001) ("Summary judgment must be granted against a party who has failed to introduce evidence sufficient to establish the existence of an essential element of that party's case, on which the party will bear the burden of proof at trial.").

Nichia's approach also impermissibly fails to account for or address the myriad of other support structures present in the Accused Products. *See id.* Nichia presents only a single product, allegedly Feit Electric Model 72007.[8] This fixture, in fact, historically has come with any number of bulbs, each having different support structures and other features:

Feit Electric 48' LED
Filament String Light Set
(Item 710090)

S14/822/PC/24






(RSF 11).[9] This variation in non-lead components providing support structures is

---

[8] Feit Electric Model 72007 is not "light emitting device" as used in the '734 patent. (RSF 11). Rather, Model 72007 is a string light fixture that "includes several lightbulbs, and is referred to as a 'string light' product." *See* Mot. at 3, 5. The box of light bulbs included with the fixture varies. However, Nichia has accused each such bulb. Nichia's failure to account for the structural variations even in the same type of product underscores the inapplicability of Nichia's proffered "representative" concept.

[9] The individual bulb that Nichia labels "Feit Electric 48' LED Filament String Light Set (Item 710090)" in its Final Infringement Contentions actually bears the SKU number S14/822/PC or S14/822/PC/24. (RSF 11).

OPPOSITION TO NICHIA'S MOTION FOR SUMMARY JUDGMENT

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

also true of Accused Products having with multiple straight filaments:

**BPA19100CL927CAFIL/2(K)**   **BPA1940CL927CAFIL2RP**   **BPG2525/827/LED**





(RSF 4). These, too, have separate support structures, with varying degrees of complexity. And the Accused Products with curved filaments demonstrate even more varieties of alternate support mechanisms[10]:

**AT19/S/CL/FILED**   **T6/S/CL/FILED**   **LUNA/7/SMK/FIL**





*Id*. These support structures, and Nichia's attempt to rely on a singular product despite these variations, further warrant denial of Nichia's motion and summary judgment of no infringement. Nichia made no effort to engage in the legally required analysis of the impact of these structures. *Panavision Imaging*, 2012 WL 12952006, at *4; *see also* Dkt. 433 at 6-9. Nichia's omission is particularly inexcusable, as its technical experts warned that these additional structures in the Accused Products provide a support function. Dr. Gary Allen ("Allen"), conceded "that there is a support component in the Feit lamps that are not a lead." (SOF 48). Mr. Gershowitz similarly admitted it was "possible" for the filaments to tilt and

---

[10] Feit Electric recognizes that photographs are not the best mechanism for assessment of three-dimensional products and will readily provide samples for the Court's inspection upon request.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

OPPOSITION TO NICHIA'S MOTION FOR SUMMARY JUDGMENT

1    touch the side of the bulb if the cylindrical stem was removed, but the leads

2    remained attached to the filaments. (SOF 40); Dkt. 433 at 9-13.

3    It is beyond dispute that Nichia did not conduct the proper analysis and

4    therefore cannot present admissible evidence to allow a trier of fact to assess

5    whether the Accused Products comprise leads (non-infringing), or support leads.

6    Because Nichia cannot carry its burden on establishing this key limitation,

7    Nichia's motion for summary judgment of infringement should be denied, and Feit

8    Electric's motion for summary judgment of non-infringement should be granted.

9    *See* Dkt. 433 at 6-13; RSF 33-34; *see also Exigent Tech., Inc. v. Atrana Sols., Inc.*,

10   442 F.3d 1301, 1308–09 (Fed. Cir. 2006) ("we conclude that nothing more is

11   required than the filing of a summary judgment motion stating that the patentee

12   had no evidence of infringement and pointing to the specific ways in which

13   accused systems did not meet the claim limitations.").

14   **B.    Triable Issues Exist as to Whether the Accused Products Include**

15   **The Wavelength Conversion Member Limitation.**

16   If this Court agrees that Nichia has not met its burden as to the support lead,

17   the Court should grant Feit Electric's motion for summary judgment and it need

18   go no further. To the extent this Court finds disputed facts exist as to that

19   limitation, issues of fact similarly plague other limitations of the claim including

20   as to the "wavelength conversion member formed unitarily with a transparent

21   member" limitation (Nichia's element 1.3). This Court construed that limitation to

22   be a "single component that both converts light and allows light to pass through."

23   Dkt. 90 at 18. Feit Electric contests that this limitation is present in the Accused

24   Products. Nichia's single page of argument on this limitation does not demonstrate

25   the absence of a material issue of disputed fact.

26

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-9-

OPPOSITION TO NICHIA'S MOTION FOR SUMMARY JUDGMENT

Feit Electric's expert, Dr. Lebby, conducted a thorough analysis of the Accused Products and Nichia's position to conclude that the products do not use a single component, but rather evidence two distinct members. (RSF 13, 26). This is further supported from even a cursory review of images of products from Nichia's own contentions and experts' sample testing, reflecting two members separated by a gap layer spanning the length of the board:



*Id*. Dr. Lebby also included his own photographs showing a significant color differentiation between the two layers, further indicating the presence of at least two components as opposed the single component required. *Id*.

Nichia attempts to avoid Dr. Lebby's analysis by misleadingly cropping recitations of Dr. Lebby's testimony. For instance, Nichia asserts "Dr. Lebby admitted there is no demarcation between the two sides of the encapsulant…." *See* Mot. At 10 (citing a mere five lines from Dr. Lebby's deposition transcript). But Nichia crops out crucial context establishing that Dr. Lebby concluded the ***exact opposite***. The full exchange is presented below with the portions of Dr. Lebby's testimony omitted by Nichia underlined:

**Q.** What do you see here?

**A.** I see what looks like a white platform for which it looks like an LED chip is being mounted. That white platform is probably ceramic based or alumina. And I see that is surrounded by organic material that is a yellowy-orange above the chip and olive green below the chip.

**Q**. And are you able to tell, from looking at this picture, how this was manufactured?

**A.** Well, I certainly can see that the material – the organic material on the top is very different than the organic material on the bottom. I certainly cannot see a demarcation between the material on the top and the material on the bottom, but I do see an area where both the yellowy-

OPPOSITION TO NICHIA'S MOTION FOR SUMMARY JUDGMENT

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

orange organic material is mixed with the olive green material at the bottom. <u>And you can see in the picture on the left-hand side, which is the cross-section from a different view, that those two materials are completely different. And so my guess is, during the manufacturing process, the extrusion on the top may have mixed with the extrusion on the bottom. And so still in my eyes, these are two wavelength conversion members, one on the top of the board and one below the board.</u>

Dkt. 443-16 at 142:12-143:18.

Dr. Lebby went on to identify the two separate components by drawing a line of demarcation, and then repeatedly confirmed his conclusion that the cross-sectional image of a bulb purportedly used with Model No. 72007 depicted two separate members. *See id*. at 144:6-147:9 ("And certainly, the extrusion on the top of the board is different than the extrusion on the bottom of the board. That's why I'm referring to the wavelength conversion member on the top of the board as A and the wavelength conversion member on the bottom of the board as B. There are different colors. You can actually see from this view there is a different composition of that organic material. . . . [A]s I sit here today, I can see they are very different, and there's two wavelength conversion members that I'm looking at in this cross-section."). Accordingly, Feit Electric clearly disputes the presence of the "wavelength conversion member" limitation.

Nichia also argues that Feit Electric's position relies on some specific manufacturing process. This is a strawman. As set forth above, Dr. Lebby identified clear differences in the top and bottom members, illustrating two separate members. Dr. Lebby references the extrusion method merely to explain why "top of the board as A and the wavelength conversion member on the bottom of the board as B" have different colors the source of the different materials." (RSF 13, 26).  Dr. Lebby opines this is the result of an extrusion process, widely used in the lighting industry. *Id*. Nichia does not contest that this process is used. And, Dr. Lebby confirmed both in his report and his deposition that his opinion that the

-11-

Stradling Yocca
Carlson & Rauth
Lawyers
Newport Beach

1    Accused Products comprise at least two members rather than the required "single

2    component" has multiple bases, including his inspection of the Accused Products,

3    ████████████████████████, his significant experience in the industry and

4    evidence from Nichia's own sample testing. *Id.*

5         Dr. Lebby's expert opinion, which is both well-founded and reliable, is

6    more than sufficient to create a triable issue as to whether the Accused Products,

7    including the bulbs in 72007 string light, contain the wavelength conversion

8    member limitation as construed by this Court. *See, e.g..*, RSF 13, 26-27, 40-1, 43.

9         **C.    Triable Issues Exist as to Other Limitations of The Asserted**

10             **Claims Of The '734 Patent.**

11        Feit Electric also disputes many other limitations of the asserted claims.

12   This includes, but is not limited to, what Nichia identifies as limitations 1.0, 1.9

13   and claim 23. These disputes cannot be resolved at the summary judgment stage.

14        For instance, as it relates to limitations relating to the claimed "wavelength

15   conversion member," (1.3, 1.7, 1.8) Nichia cannot prove that the wavelength

16   conversion member is "elongated in the longitudinal direction when viewed in

17   plan view of the first surface side of the board" for the straight filament products.

18   Feit Electric in fact asserts they do not meet this limitation because the filaments

19   of those products are oriented substantially vertically in the bulb, rather than

20   longitudinally as in the traditional incandescent bulb sought to be emulated by the

21   '734 patent. Dkt. 433 at 13-19. Because Nichia also cannot apply its claims

22   without impermissibly extracting the filament from the bulb and reorienting it so

23   that it is no longer in its commercial state, it cannot show infringement. *Id*. At 18-

24   19. Consequently, Feit Electric seeks summary judgment of this limitation but to

25   the extent the Court disagrees, the issue should be resolved by the jury.

26        Nichia is also mistaken as to certain limitations it unilaterally asserts are

27   undisputed. For example, Feit Electric does indeed dispute the "region" and

28   "portion" limitations of the '734 patent are met. For starters, Feit Electric asserts

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-12-

OPPOSITION TO NICHIA'S MOTION FOR SUMMARY JUDGMENT

these limitations are indefinite because, as the record now shows, their definition is a moving target. Indeed, Nichia reads out "center portion" entirely and uses only the geometric center not a portion. Even if not found to be indefinite, Feit Electric contests that the corresponding regions and portions have been established by Nichia. And, Feit Electric disputes that Accused Products in which an LED chip is placed at the geometric center of the board infringe these claim limitations, in part because it would result in "a third region that is not contemplated by the claims." *Id*. At 19-21; *see also* SOF 49 (the Court agreeing that "if there is an LED chip [in the center portion], it can't be, by definition, center portion").[11] Nichia has not shown whether such a chip is present.

Dependent claim 23 depends on claim 1 and adds the limitation that "the support leads extend from the support base towards the pair of metal plates." As discussed above, because Nichia has failed to show that any of the Accused Products include the claimed "support leads," this claim element modifies those support leads, so it cannot be satisfied by the Accused Products. However, if the Court were to reach this question, Nichia has not shown by a preponderance of evidence that there are no facts in dispute as to whether this limitation is met. Nichia admits that "the second support lead extends past the metal plate," but then unilaterally deems this concession as "irrelevant," ostensibly because, in Nichia's view, "the claim requires extending towards, but does not preclude going past." Mot. At 12; *see also* Dkt. 433-23 at 64 (describing lead as "extending past metal plate"). But the only added limitation here is expressly directional, and according to Dr. Lebby, "extending past," as Nichia admits is the case here, is different than "extending towards," as the claim requires. *See, e.g.*, *id*. at 61, ("[A]s shown in the

---

[11] Nichia's incorrectly asserts "Feit disputes claim element 1.1 only for products with an *odd* number of chips, but not for products with an *even* number of chips." Mot. at 6 n.4. Nichia has not demonstrated that boards with an even number of LEDs do not have one placed in the center.

images that Mr. Gershowitz provides, at least one alleged lead does not extend 'towards' a metal plate, but rather it extends 'past' the metal plate . . ."); *see id*. at 59-62. Nor does the '734 patent depict any support lead "extending past" a metal plate in any embodiment; the specification does not deal with the term "extending towards" at all. At a minimum, should the Court reach this claim, the parties have a genuine dispute of material fact as to the application of the "extending towards" claim term, and accordingly summary judgment of infringement should be denied. *See, e.g.*, *Int'l Rectifier Corp. v. IXYS Corp.*, 361 F.3d 1363, 1375 (Fed. Cir. 2004) (finding that parties' dispute over whether accused devices "include the 'polygonal' and 'annular' limitations of the claims, as properly construed" raised "factual issues" precluding summary judgment of infringement).

Nichia cannot unilaterally declare that Feit Electric does not dispute claim terms, and then claim there are no facts in dispute in order to seek summary judgment. Even regarding the single bulb Nichia analyzes in its motion, numerous issues of fact exist regarding infringement, and its motion should be denied.

### D.    Triable Issues of Fact Exist as to Whether Claim 1 is Anticipated

Nichia also seeks summary judgment that the '734 patent is not anticipated. Whether a prior art reference anticipates a patent claim is a question of fact. *In re Gleave*, 560 F.3d 1331, 1334 (Fed. Cir. 2009). Importantly, the same construction and application must be used for infringement and validity. *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995); *Upsher-Smith Labs., Inc. v. Pamlab, L.L.C.*, 412 F.3d 1319, 1322 (Fed. Cir. 2005) ("[A] product 'which would literally infringe if later in time anticipates if earlier.'"). Nichia's positions on validity are impermissibly out of sync with its positions on infringement. When applying the terms as Nichia does for infringement, Nichia's motion should be denied.

Feit Electric alleges the asserted claims are anticipated by each of the *Mano*, *Maxik*, and *Ishibashi* references. Nichia argues that "Feit's own admissions and

-14-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

1    the testimony of its expert - for example, regarding the absence of features in the

2    references that are required by the claims - show that there are no genuine issues

3    of material fact that preclude summary judgment on the issues of anticipation and

4    obviousness." Mot. at 12-13. But Nichia cannot have it both ways. Either there is

5    a meaningful distinction for certain terms, such that Nichia cannot establish

6    infringement, or there is not, such that Nichia is not entitled to a finding of validity

7    on summary judgment. The "support leads" limitation discussed above with

8    respect to infringement is a prime example.

9        Nichia claims "Feit admits that the claimed 'support leads' are not

10   'explicitly disclosed' by *Mano*," and quotes Dr. Lebby's report to assert that he

11   "has not argued that this missing disclosure would have been inherent, let alone

12   shown that the claimed support leads were 'necessarily' present. Mot. at 13. But

13   this is entirely inconsistent with the '734 patent and Nichia's own arguments. As

14   explained above, the intrinsic record reveals that Nichia unequivocally

15   differentiated "leads" from "support leads" in the '812 patent. But because Nichia

16   failed to provide a basis in this litigation to delineate one from the other, and in

17   fact attempts to blur the two, it cannot discount *Mano* in this regard. Dr. Lebby

18   specifies, "the element 20 includes an elongated rectangular base 22 provided with

19   an anode 23a at one end and a cathode 23b at the other end," and further identifies

20   figures in *Mano* that "also disclose this limitation." Dkt. 250-2 at ¶ 92; *see also id.*

21   at ¶¶ 93-94; 108-110; 139-140. Whether its disclosure does so inherently is an

22   issue for the jury, particularly to the extent Nichia is permitted to assert

23   infringement based on its ambiguous application.[12] *See id*. at ¶ 240; *see also* RSF

24   132-133.

_____

26   [12] Nichia's validity argument only reinforces the critical scope of this limitation.
27   Nichia's inability to distinguish a lead from a support lead is fatal to its
     infringement claim and, if not, no prior art with a lead cannot be discarded based
28   on this limitation.

OPPOSITION TO NICHIA'S MOTION FOR SUMMARY JUDGMENT

1        Dr. Lebby made clear that he was "applying Nichia's apparent application

2    of 'support leads that secure the plurality of light emitting element chips inside the

3    transparent bulb from its infringement contentions," and importantly clarifies that

4    Nichia "does not indicate what support is to be provided." *See id.* at ¶ 94. Nichia

5    also ignores Dr. Lebby's detailed analysis establishing that "Claims 1, 3, 4, 6, 7,

6    11-15, 17-22, 24, 25, and 27 are anticipated by Mano," including his specific

7    mapping of each claim limitation to *Mano*. *See id.* at ¶¶ 79-142.

8        Nichia's position is riddled with inconsistencies. In a further attempt to

9    dispute anticipation by *Mano*, Nichia alleges the reference cannot render the '734

10   claim anticipated because the board in *Mano* extends into the support base because

11   it then is "not enclosed by the bulb, as the claims require." Mot. at 14.  But Nichia

12   also asserted that it does not understand such a design-around, *see, e.g.*, Dkt. 426

13   at 13-14, and similarly seeks to strike any testimony by Dr. Lebby regarding such

14   existing, and now admitted, alternatives. Mot. at 24-29; *see also* Dkt. 442. Nichia

15   also ignores Dr. Lebby's opinion that "Claims 1, 3, 4, 6, 7, 11-15, 17-22, 24, 25

16   and 27 are anticipated by *Mano*" including his mapping of each limitation to

17   *Mano.* Dkt. 250-2 at ¶¶ 79-142).

18       Nichia similarly plucks a single sentence out of context from Dr. Lebby's

19   obviousness opinions when it argues that it should be granted summary judgment

20   of no anticipation with respect to the *Maxik* and *Ishibashi* references. *See* Mot. at

21   14-15. Again, Dr. Lebby has affirmatively opined for both references that this

22   limitation is disclosed based on Nichia's liberal application. *See id*., ¶ 163; *see also*

23   Dkt. 443-16 at 229:11-24 ("I'd like to point you to page 71 where I actually do the

24   analysis of Maxik as Maxik anticipates the '734, and in particular the claim

25   element (i) on paragraph 163 where I detail that Maxik does disclose this

26   limitation."); *see also* RSF 134-135, 138-39, 142-145. As explained above, Nichia

27   argues that two separate components, even if separated by a gap layer, still

28   constitute the wavelength conversion member. If this application is permitted by

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

the Court, then triable issues of fact exist regarding anticipation by *Maxik* and *Ishibashi* exist as their disclosures need to be considered in a similarly broad light. Nichia's attempt to apply terms as broad as possible for infringement on one hand, and as narrow as possible on for validity on the other hand, is untenable and should be rejected.

### E.    Triable Issues of Fact Exist as to Whether Claim 19 is Obvious Over the Prior Art

Nichia's motion for summary judgment against Feit Electric's obviousness defenses (Mot. at 15-16) is on equally shaky ground. Obviousness is a question of law based on underlying factual inquiries. Those factual inquiries include: (1) the scope and content of prior art; (2) differences between the claim at issue and the prior art; (3) the level of ordinary skill in the pertinent art; and (4) objective indicia of non-obviousness, also known as secondary considerations, such as satisfaction of a long-felt but unresolved need, commercial success, skepticism in the field, and failure of others. *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966); *Procter & Gamble Co. v. Teva Pharm. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009). Claim 19 is a dependent claim that requires that the light emitting chips "are aligned along a line." *See* Dkt. 1-1. Nichia argues that *Maxik* and *Ishibashi* cannot render this claim obvious because "claim 19 does not apply to products in which the board is curved, or when light emitting chips are arranged radially." Mot. at 15. Nichia's position again applies a double standard.

OPPOSITION TO NICHIA'S MOTION FOR SUMMARY JUDGMENT

Nichia accuses hundreds of Feit Electric curvilinear products under this claim by breaking and reshaping them in a non-functional but allegedly infringing shape. *See* Dkt. 433 at 13-17. Because such manipulation is contrary to the law, Feit Electric seeks summary judgment of no infringement as to these products. Dkt. 433 at 13-17. However, if this Court allows such the subjective manipulation of products for infringement, the same must be permitted for invalidity. *See, e.g.*, *Upsher-Smith Labs., Inc. v. Pamlab, L.L.C.* 412 F.3d at 1322. In that regard, Nichia's position that *Maxik* and *Ishibashi* incorporate a different arrangement or shape is unpersuasive. For instance, Nichia asserts the following product infringes this limitation by reshaping it as shown:

 

*See* (SOF 21); Dkt. 433 at 13-15. If Nichia can destroy and reshape filaments for infringement, the same must be permitted in considering validity.

Further, Dr. Lebby identified disclosures in *Maxik* and *Ishibashi* each depicting a flat board with LEDs laid along a line. *See, e.g.*, Dkt. 250-2, ¶ 357, ¶ 426; *see also* Dkt. 418-42 at claims 1-12 (confirming that *Maxik* discloses placing LED chips along a line on a non-flexible rectangular board); Dkt. 418-41 at claims 1-2 (same). Unlike the relationship between infringement and anticipation, that the end products of *Maxik* and *Ishibashi* are curvilinear does not foreclose a finding of obviousness. Indeed, "[i]f a person of ordinary skill in the art can implement a predictable variation, and would see the benefit of doing so, § 103 likely bars its patentability." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 401, 127 S. Ct. 1727,

1731, 167 L. Ed. 2d 705 (2007) ("If a person of ordinary skill in the art can implement a predictable variation, and would see the benefit of doing so, § 103 likely bars its patentability."). In light of competing testimony from Dr. Lebby on this issue, summary judgment of non-obviousness should be denied. *See Omegaflex, Inc. v. Parker-Hannifin Corp.*, 243 Fed. Appx. 592 (Fed. Cir. 2007) (reversing summary judgment that patent claims were proven not invalid for obviousness and holding that non-movant's evidence "cannot simply be disregarded at summary judgment").

**F.   At a Minimum, Triable Issues of Fact Exist as to Whether The Claims are Indefinite.**

To be valid, a patent must "particularly point out and distinctly claim the invention." 35 U.S.C. § 112(b). "Because claims delineate the patentee's right to exclude, the patent statute requires that the scope of the claims be sufficiently definite to inform the public of the bounds of the protected invention." *Halliburton Energy Svcs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008). A patent that does not satisfy this requirement fails to put the public on notice of what would infringe and what would not infringe. *See id.*; *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1581 (Fed. Cir. 1996). Thus, "[a] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014). The claims, when read in light of the specification and the prosecution history, must provide objective boundaries for those of skill in the art. *See id.* at 2130 & n.8; *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370-71 (Fed. Cir. 2014); *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1364 (Fed. Cir. 2018).

Nichia's motion for summary judgment on Feit Electric's indefiniteness defenses should be denied because it fails to show that there is no genuine dispute

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

OPPOSITION TO NICHIA'S MOTION FOR SUMMARY JUDGMENT

1   of material fact. In fact, as detailed in Feit Electric's own motion for summary

2   judgment, claim construction did not foreclose the issue of indefiniteness as Nichia

3   repeatedly claims, and at the "center/end portion" claim terms are indefinite based

4   on Nichia's own repeated failures to provide consistent, objective boundaries as

5   to those terms. *See* Dkt. 433 at 23-27. As it stands every Nichia witness has

6   identified a different "center portion" and "end portion" and corresponding

7   regions. *See id.* (in which Nichia's inventor, its technical experts, and Nichia itself

8   all provide different definitions). To the extent the Court does not find invalidity

9   at this stage, this issue should remain open for the jury to address underlying issues

10  of fact regarding the ultimate confusion and uncertainty from this language.

11  (RSF 18, 21, 45-46, 102-105, 107-108, 112-113).

12  **G.    Triable Issues of Fact Exist As to Enablement**

13          Nichia asks this Court to dismiss Feit Electric's defense of enablement

14  based on a single page of argument. Mot. at 20-21. Nichia misses the mark.

15  Nichia's motion addresses only one of the four arguments presented by Feit

16  Electric on enablement, each of which separately renders the claims not enabled.

17  *Compare id. with* Dkt. 250-2, ¶¶ 517-521. Accordingly, Nichia is not entitled to

18  summary judgment regarding enablement. Indeed, even as to the "formed

19  unitarily" claim limitation identified by Nichia, its arguments fall short.

20          Dr. Lebby opines that the '734 patent claims are not enabled based on: (i)

21  the portions and regions limitations; (ii) the board limitation; (iii) the wavelength

22  conversion member limitation; and (iv) the outer periphery limitation.  Nichia

23  addresses only the wavelength conversion limitation, therefore, Feit Electric's

24  defenses based on the other three grounds foreclose summary judgment that the

25  '734 patent is enabled.

26          "To be enabling, the specification of a patent must teach those skilled in the

27  art how to make and use the full scope of the claimed invention without undue

28  experimentation." *ALZA Corp. v. Andrx Pharms., LLC*, 603 F.3d 935, 940 (Fed.

1   Cir. 2010) (emphasis added; internal quotation marks omitted). "It is the
2   specification, not the knowledge of one skilled in the art, that must supply the
3   novel aspects of an invention in order to constitute adequate enablement."
4   *Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1366 (Fed. Cir. 1997)
5   (emphasis added). Thus, "[t]o satisfy the plain language of 35 U.S.C. § 112, ¶ 1,
6   [a patentee is] required to provide an adequate enabling disclosure in the
7   specification; it cannot simply rely on the knowledge of a person of ordinary skill
8   to serve as a substitute for the missing information in the specification." *ALZA*,
9   603 F.3d at 941 (emphasis added). In other words, the patentee cannot merely
10  provide a goal (in this case–mix phosphor and resin in a way that produces a
11  desired wavelength conversion) and rely on the person of skill in the art to fill in
12  how to achieve that claimed goal.

13      As to the wavelength conversion member limitation, Nichia argues that Dr.
14  Lebby indicated that the '734 patent explains "the claimed member can be made
15  by mixing resin and phosphor." But Nichia omits the crux of Dr. Lebby's opinion,
16  namely, that:

17      The specification does not provide any specific combinations of a
        resin/phosphor mixture and a light emission wavelength that result in a
18      desired, or even actual, wavelength conversion, let alone teach the
        difference between what it labels a "wavelength conversion member"
19      versus a "wavelength conversion member formed unitarily with a
20      transparent member."

21  Dkt. 250-2 ¶ 518; (RSF 116). This testimony demonstrates that a genuine issue of
22  fact exists regarding the disclosure relating to "a wavelength conversion member
23  formed unitarily with a transparent member."

24      Nichia's assertion that Dr. Lebby does not address the amount of undue
25  experimentation is misplaced. Nichia challenges any non-infringing alternative,
26  even those disclosed in the patent, as not readily available and subject to
27  significant periods of design and experimentation. *See, e.g.*, Mot. at 22-29.
28  Accordingly, should its arguments be credited, then the same applies to

OPPOSITION TO NICHIA'S MOTION FOR SUMMARY JUDGMENT

determining a proper mixture and ratio of phosphor and resin or components used for the wavelength conversion member limitation. *See Wyeth and Cordis Corp. v. Abbott Laboratories,* 720 F.3d 1380, 1384 (Fed. Cir. 2013) ("Claims are not enabled when, at the effective filing date of the patent, one of ordinary skill in the art could not practice their full scope without undue experimentation."). Having conceded that the asserted claims purport to cover well-known components, Nichia cannot on the one hand argue that its claim limitations are not the subject of experimentation but concurrently argue all Feit Electric alternatives somehow would not be available to because it would require too much experimentation. This is another issue for the jury, and Nichia's motion should be denied here, too.

## H.    Triable Issues of Fact Exist as to Written Description

Section 112 of the Patent Act provides that a patent "specification shall contain a written description of the invention." 35 U.S.C. § 112. A patent claim is invalid if the specification does not "reasonably convey[] to those skilled in the art that the inventor ha[d] possession of the claimed subject matter as of the filing date." *Synthes USA, LLC v. Spinal Kinetics, Inc.*, 734 F.3d 1332, 1341 (Fed. Cir. 2013). As Plaintiffs acknowledge (Mot. at 20), this requirement is a question of fact. *In re Bimeda Research & Dev. Ltd.*, 724 F.3d 1320, 1323 (Fed. Cir. 2013).

All of the claims in the '734 patent include limitations relating to "center/end portions" and "first/second regions." Yet the asserted claims of the '734 patent fail to satisfy the written description requirement because the patent specification does not describe these terms at all. Dkt. 250-2 at ¶ 507. Nichia's own inventor and 30(b)(6) witness conceded that these terms serve no functional purpose, while its technical expert witness on infringement issues would not even attempt a guess. (SOF 45) Dkt. 428-2 at 215:20-218:4 ("I have no opinion to why a first and second set have been defined as they have in the claims of this patent. . . . Again, as I've stated several times before, I have no opinion on why these first and second sets were elements in the patent and how the patent claims were

-22-

constructed. I have no opinion on that."). In fact, there is no agreed-upon definition even within Nichia, rendering the "center portion" and related terms also indefinite. Dkt. 433 at 23-27. This is unsurprising because the '734 patent specification provides no parameters for describing the boundaries or explaining how to define these claim terms over various types of filaments. Accordingly, as Dr. Lebby explained, a person of ordinary skill in the art reading the four corners of the '734 patent specification would not conclude that the applicant was in possession of the claimed subject matter. Dkt. 250-2, ¶ 507.

Nichia claims that "[t]he specification describes ***in detail*** an exemplary transparent board 20 and related components, as well as the characteristics of the board and related components," and cites to figures and passages from the specification, in the hopes that the quantity of passages it relies on somehow implies that perhaps some holistic descriptions of the "center/end portions" and "first/second regions" are present. Mot. at 22. There is not. Nichia relies on inapposite case law for the proposition that "drawings alone may provide 'written description' of an invention as required by § 112," and those cases are readily distinguishable. *See* Mot. at 22. For example, in *Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*, the Federal Circuit reversed the district court's finding of failure to meet the written description requirement because the figure at issue in the specification depicted the arrangement of the components as claimed. 291, F.3d 1317, 1320-23 (Fed. Cir. 2002). But notably, the challenged claim in *Cooper* recited "[a] wellhead comprising ... a workover port extending laterally through the wall of the spool tree from between the two plugs," and the drawing the Court relied on to provide written description "show[ed] the position of the plugs 66 and 69, as well as the workover port 73." *Id*. at 1320. That is, the challenged elements were expressly labeled by the patentee in the specification. Similarly, in *Koito Mfg. Co. v. Turn-Key-Tech, LLC*, the Federal Circuit found the written description requirement satisfied by a patent figure where it showed one

-23-

component as being "significantly thicker and wider" than another, as required by the claims. 381 F.3d 1142, 1154 (Fed. Cir. 2004). In other words, the Federal Circuit relied on the thickness of lines to compare the size of adjacent components, ultimately *confirming* that the figure matched a description that was provided by both the claim language and specification. *Id*. Those cases stand in stark contrast to the '734 patent, which contains no mention of these terms in the specification or the figures, let alone define them.

Unlike the cases Nichia relies on, the actual portion of the drawings it relies on to provide written description in the '734 patent are the annotations Nichia's attorneys themselves have added:



Mot. at 22 (Nichia counsel annotations in red, purple, blue, and yellow). But Nichia's *post hoc* attorney argument cannot suffice. Indeed, Nichia gives the game away on both written description and confirms indefiniteness by providing yet another attempt to define these terms. *Compare id. with* Dkt. 433 at 24-27. At a minimum, triable issues of fact exist as to written description.

## I.    Nichia Cannot Obtain Summary Judgment of No Non-Infringing Alternatives Based on its Admissions.

Nichia also moves for a ruling on summary judgment that Feit Electric cannot rely on *any* of the proposed non-infringing alternatives it has identified throughout the course of this litigation. Mot. at 22-29. As an initial matter, Nichia's position is not credible. Throughout this matter, Nichia readily and repeatedly

1    identified non-infringing configurations. *See, e.g.,* Dkt. 433 at 21-22. Those

2    configurations included designs disclosed in Figure 10 and 14 of the '734 patent.

3    *Id*. It also included slight variations such as a device with three LEDS or where a

4    single LED chip is placed on one side of the geometric center. *Id*. Other

5    alternatives disclosed in the '734 patent include a wavelength conversion layer is

6    separate from a transparent layer, or a wavelength conversion member is non-

7    unitarily formed with a transparent member. *Id.* There is simply no basis for Nichia

8    to seek summary judgment of no non-infringing alternatives. Rather, this Court

9    should hold Nichia to its admissions as sought in Feit Electric's summary

10   judgment motion.

11        Even before any litigation commenced, one needed only look at the

12   specification of the '734 patent itself, which discloses alternative configurations

13   falling outside the claims in which a wavelength conversion member is not a

14   wavelength conversion member formed unitarily with a transparent member, a

15   wavelength conversion layer is separate from a transparent layer, or a wavelength

16   conversion member is non-unitarily formed with a transparent member. (SOF 14).

17   Even now in its motion for summary judgment, Nichia continues to concede that

18   Feit Electric's proposed non-infringing alternatives would not satisfy the asserted

19   claims. For example, to avoid prior art Nichia asserts "a board extending into a

20   support base" is a non-infringing design. *See, e.g.*, Mot. at 13-15 (also conceding

21   that using resin on only one side of the board or using multiple resin structures that

22   do not surround the board are a non-infringing designs).

23        These concessions definitively confirm Feit Electric's long-held

24   contentions that numerous design-arounds to the '734 patent exist. (RSF 72-75).[13]

25
26
27
28

[13] Nichia attempts to cap Feit Electric's number of proposed design-arounds at 20,
but this is incorrect. As Feit Electric has consistently contended, "[t]he options for
design-arounds to the '734 Patent are only limited by Feit Electric's imagination,
time, and attention," as "the limited novelty of the asserted patent rests in a specific
configuration of known components, and any other of the infinite configurations

1   Nichia's attempt to bar Feit Electric from non-infringing alternatives merely

2   because Nichia has accused them of infringing is too cute by half.  Mot. at 24-25.[14]

3   As an initial matter, it is unworkable as every Plaintiff would simply assert

4   infringement over such alternatives to avoid them. It is well established that

5   accused products found not to infringe may properly be considered non-infringing

6   alternatives. *See Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2016

7   WL 524904, at **7-9 (N.D. Cal. Feb. 10, 2016) (denying motion to strike expert

8   testimony that "five Samsung products found not to infringe the D'087 should be

9   considered as evidence of non-infringing alternatives to the D'087 patent"). Nichia

10  is wrong as a matter of law, and its motion should be rejected. *Id*.

11      Nichia's arguments regarding availability and acceptability of non-

12  infringing alternatives also have no merit. As an initial matter, and as detailed in

13  Feit Electric's co-pending motions, Nichia uses the wrong legal standard for

14  acceptability. *See* Dkt. 427 at 2-5. Coupled with Nichia's misstatement of a record

15  that is replete with evidence that the proposed design arounds would be acceptable

16  to consumers, *see id.*, its motion should be denied on this basis as well.

17      Finally, Nichia baldly claims that "Feit has no evidence that the alleged

18  alternatives would have been available," Mot. at 27, but can only make this claim

19  by burying its head in the sand and ignoring Dr. Lebby's opinions regarding the

20  simplicity of redesigns utilizing well-known components and routine

21

22  is non-infringing." (RSF 72-75). Feit Electric also specifically incorporated by
    reference "any basis on which Nichia differentiates the prior art," *see id.*, which,
23  as discussed above, continues to bear fruit as Nichia's application of its claims
24  continues to shift to avoid such art.

25  [14] Nichia relies on a single, inapposite case, in which the non-infringing alternative
    that was proposed by the defendant's damages expert was the single Accused
26  Product, which had already been determined to infringe. *See Webasto Thermo &
    Comfort N. Am., Inc. v. BesTop, Inc.*, No. 16-CV-13456, 2019 WL 3334563 at *4-
27  5 (E.D. Mich. July 25, 2019). But here, no conclusive determination has been made
28  as to whether any of the over 600 Accused Products actually infringe.

1    manufacturing methods, as ███████████████████████████████

2    ██████████████████████████████████████████████████. All of

3    the proposed design-arounds were known, available long before the parties'

4    September 2017 hypothetical negotiation, and acceptable alternatives. Dkt. 433 at

5    21-23. Having conceded that numerous designs do not infringe, any quibbles

6    Nichia have based on their availability or acceptability raise a factual dispute the

7    jury at best. Nichia's motion for summary judgment must therefore be denied as

8    to non-infringing alternatives.

9    **III.   CONCLUSION**

10          Nichia has failed to adduce any evidence that any Accused Product satisfies

11    the "support lead" limitation present in each of the asserted claims of the '734

12    patent, and accordingly, Nichia's motion for summary judgment of infringement

13    should not only be denied, but Feit Electric's co-pending motion for summary

14    judgment of non-infringement (Dkt. 433) should be granted. To the extent the

15    Court finds that issues of fact remain as to that issue, then at a minimum, issues of

16    fact also exist as to Nichia's infringement claims, as well as its invalidity and non-

17    infringing alternative theories. For the reasons contained herein, Feit Electric

18    respectfully requests that Nichia's motion be denied in its entirety.

19
20    DATED:  August 17, 2022          STRADLING YOCCA CARLSON & RAUTH
                                       A PROFESSIONAL CORPORATION

21                                     By:   _/s/ Salil Bali_____
22                                           Salil Bali
                                             Matthew Stephens
23                                           Attorneys for Defendant

24
25
26
27
28

1   DATED:  August 17, 2022      BENESCH, FRIEDLANDER, COPLAN &
                                 ARONOFF LLP
2

3                                By:   */s/ Kal Shah*
                                       Kal Shah
4                                      Mircea Tipescu
                                       Simeon Papacostas
5                                      Louis Constantinou
                                 ***Attorneys for Defendant***
6                                ***Feit Electric Company, Inc.***

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-28-
OPPOSITION TO NICHIA'S MOTION FOR SUMMARY JUDGMENT