DAVID GURNICK (SBN 115723)
dgurnick@lewitthackman.com
JEFFREY A. KOBULNICK (SBN 228299)
jkobulnick@lewitthackman.com
JESSICA W. ROSEN (SBN 294923)
jrosen@lewitthackman.com
LEWITT, HACKMAN, SHAPIRO,
MARSHALL & HARLAN
16633 Ventura Boulevard Eleventh Floor
Encino, CA 91436
Telephone: (818) 990-2120
Facsimile: (818) 981-4764

ROBERT P. PARKER (*pro hac vice*)
rparker@rfem.com
MARTIN ZOLTICK (*pro hac vice*)
mzoltick@rfem.com
JENNY COLGATE (*pro hac vice*)
jcolgate@rfem.com
MICHAEL JONES (*pro hac vice*)
mjones@rfem.com
MARK RAWLS (*pro hac vice*)
mrawls@rfem.com
D. LAWSON ALLEN (*pro hac vice*)
lallen@rfem.com
NICOLE DEABRANTES (*pro hac vice*)
ndeabrantes@rfem.com
ROTHWELL, FIGG, ERNST & MANBECK P.C.
901 New York Avenue N.W.
Suite 900 East
Washington, DC 20001
Telephone:  (202) 783-6040
Facsimile:   (202) 783-6031

Attorneys for Plaintiff Nichia Corporation

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHIA CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>FEIT ELECTRIC COMPANY, INC.<br><br>Defendant. | Case No.  2:20-cv-00359-GW-E<br><br>***REDACTED***<br><br>**PLAINTIFF NICHIA CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO PRECLUDE THE EXPERT TESTIMONY OF  DR. MICHAEL LEBBY**<br><br>Hearing Date:     September 29, 2022<br>Time:                   8:30 a.m.<br>Courtroom:          9D |

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...........................................................................................ii

I.  INTRODUCTION ....................................................................................................1

II. ARGUMENT ..........................................................................................................2

    A.  Dr. Lebby Should Be Precluded From Testifying at Trial on How the
        Accused Products Were Made Because He Does Not Know ................2

    B.  Dr. Lebby Should Be Precluded from Opining at Trial on the
        Availability of the Alleged Non-Infringing Alternative Products
        Because He Does Not Know if Feit's Manufacturers Had the
        Equipment, Know-How, and Experience to Make Them .....................8

    C.  Dr. Lebby Should be Precluded from Opining at Trial on the
        Acceptability of the Alleged Alternative Products ..............................13

III. CONCLUSION .....................................................................................................16

1

# <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3 *Daubert v. Merrell Dow Pharms., Inc.*,

4     43 F.3d 1311 (9th Cir. 1995) ................................................................7

5 *Elcock v. Kmart Corp.*,

6     233 F.3d 734 (3d Cir. 2000) ...............................................................1

7 *Grain Processing Corp. v. Am. Maize-Prods. Co.*,

8     185 F.3d 1341 (Fed. Cir. 1999) ..........................................8, 9, 12, 15

9 *In re C.R. Bard, Inc.*,

10     MDL 2187, 2018 WL 4220671 (S.D.W. Va. Sept. 5, 2018)................8

11 *In re Mirena IUD Prods. Liab. Litig.*,

12     169 F.Supp.3d 3964 (S.D.N.Y. 2016) ...............................................10

13 *Laser Dynamics, Inc. v. Quanta Comput., Inc.*,

14     No. 06-348, 2011 WL 197869 (E.D. Tex. Jan. 20, 2011) ......................9

15 *Longhorn HD LLC v. NetScout Sys., Inc.*,

16     No. 20-00349, 2022 WL 991696 (E.D. Tex. Mar. 31, 2022)...............12

17 *Nash-Perry v. City of Bakersfield*,

18     No. 18-01512, 2021 WL 3883681 (E.D. Cal. Aug. 31, 2021) ..............3

19 *Open Text S.A. v. Box, Inc.*,

20     No. 13-04910, 2015 WL 393858 (N.D. Cal. Jan. 29, 2015) ..........13, 14

21 *Primiano v. Cook*,

22     598 F.3d 558 (9th Cir. 2010) ...............................................................6

23 *Teleflex, Inc. v. Ficosa North Am. Corp.*,

24     299 F.3d 1313 (Fed. Cir. 2002) ..........................................................7

25 *WhereverTV, Inc. v. Comcast Cable Comm'ns, LLC*,

26     No. 18-529, 2022 WL 2751752 (M.D. Fla. July 14, 2022)...................9

27 **Rules**

28

Fed. R. Evid. 702 ................................................................................................2

Fed. R. Evid. 702(a) ...........................................................................................7

Fed. R. Evid. 702(b) ...........................................................................1, 3, 8, 13

1    Plaintiff Nichia Corporation ("Nichia") respectfully submits this reply in
2  further support of its motion to preclude the testimony of Feit Electric Company,
3  Inc.'s ("Feit's") technical expert, Dr. Michael Lebby (Dkt. 410).

4  ## I.    INTRODUCTION

5    In its opposition (Dkt. 481 ("Opp.")), Feit asserts that Nichia is attempting to
6  "silence" Dr. Lebby.  This is untrue.  If Nichia were attempting to silence Feit's
7  expert through *Daubert* challenges, it would have moved on more than just thirty-
8  five of Dr. Lebby's proffered 741 paragraphs of expert testimony.  In fact, Nichia has
9  filed *Daubert* challenges that are narrowly tailored to exclude only testimony that
10 crosses the line from objectionable to unreliable.  Indeed, the issue for all of the
11 challenged testimony is not that Nichia and its experts disagree with Dr. Lebby's
12 conclusions—rather, the issue is that Dr. Lebby is offering baseless opinions
13 purporting to opine on facts he does not know and that are not in the record.  In other
14 words, he is speculating and passing off that speculation as expert opinion.  The law
15 requires courts to be "gatekeepers" in situations like this, and where an expert's
16 testimony lacks a sufficient factual foundation, that testimony should be excluded.
17 Fed. R. Evid. 702(b) (expert testimony must be based on "sufficient facts or data").

18   In its opposition, Feit does not identify *any facts* that Dr. Lebby purportedly
19 relied on to support his challenged opinions.  Instead, Feit's buries the issues under
20 irrelevant details, such as an overview of Dr. Lebby's technical experience.  Dr.
21 Lebby's experience cannot make up for the lack of factual support for his opinions.
22 *Elcock v. Kmart Corp.*, 233 F.3d 734, 755 (3d Cir. 2000) (to be admissible, expert
23 testimony must be "accompanied by a sufficient factual foundation.").

24   For these reasons and others explained in more detail below and in Nichia's
25 opening brief, Dr. Lebby should be precluded from testifying on the challenged
26 subject matter at trial.

27
28

## II.    ARGUMENT

### A. Dr. Lebby Should Be Precluded From Testifying at Trial on How the Accused Products Were Made Because He Does Not Know

Fed. R. Evid. 702 calls out four requirements that an expert must meet to testify in the form of an opinion or otherwise. These are: (a) the expert's scientific, technical or other specialized knowledge will help the trier of fact understand the evidence or determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Extensive expertise and analysis cannot offset a lack of facts. *See, e.g., Wilson v. Taser Int'l, Inc.*, No. 07-01844, 2010 WL 3787106, *3 (D. Colo. Sept. 21, 2010) ("If he had compiled sufficient facts, Dr. Peters' experience and education would likely be sufficient to qualify him to interpret and offer an opinion based on those facts. Such qualifications, however, may not serve to replace adequate factual underpinnings.").

Nichia challenged Dr. Lebby's opinions regarding manufacture of the Accused Products on the ground that Dr. Lebby does not know how the Accused Products were made. Specifically, Nichia's motion focuses on Dr. Lebby's opinion that the "wavelength conversion member" in the Accused Products was made by a particular extrusion process. According to Dr. Lebby, given this postulated extrusion process, the "wavelength conversion member" is not a "single component." *See* Ex. A[1] ¶¶ 95-97 (*e.g.,* "I agree with Feit Electric that, based on this manufacturing process, that the two alleged members cannot be considered 'a single component'[.]").

Feit focuses its opposition on Dr. Lebby's experience and his analysis of photographs and products. As noted above, experience is no substitute for facts –

---

[1] Citations to exhibits A and C refer to exhibits attached to the Declaration of Jenny L. Colgate in Support of Plaintiff's Motion to Preclude Expert Testimony of Dr. Michael Lebby. *See* Dkt. 442. Exhibits F through K refer to exhibits attached to the Declaration of D. Lawson Allen filed concurrently herewith.

1    and Feit did not point to *any* facts that Dr. Lebby had access to, or relies on, for his

2    opinions regarding Feit's suppliers' manufacturing processes.  Indeed, there are none

3    – in large part because Feit resisted discovery on this subject.  *See* Dkt. 253 (order

4    sanctioning Feit for defying a Court order to seek information from its suppliers).

5    Not only does Dr. Lebby have no information on Feit's suppliers'

6    manufacturing processes, he admitted that he *did not consider* the methods used to

7    manufacture the Accused Products.  He testified:

8    I certainly haven't looked at all of Feit's products to see how all of them

9    are made, and I certainly haven't visited their manufacturing suppliers

10    in order to make a determination.

11    Ex. F (Lebby Depo.) at 96:2-6.

12    I'm certainly not privy to the manufacturing processes.

13    *Id*. at 145:10-11.  On these admissions alone, the motion should be granted.

14    Nonetheless, Feit argues in its opposition that Dr. Lebby based his opinion on

15    Feit's response to an interrogatory, which indicated that the Accused Products have

16    ██████████████████████████████████████████████████████████

17    ████████████████████████████████████  Opp. at 10.  The

18    interrogatory response does not constitute a sufficient factual basis under Fed. R.

19    Evid. 702(b) for several reasons.  *First*, Dr. Lebby admitted that he is not privy to,

20    and would be guessing, about the manufacturing processes for the Accused Products.

21    There is no reason to discredit Dr. Lebby's own testimony on what he considered in

22    rendering his opinions.  *Second*, the interrogatory response Feit relies on is unsworn

23    and unverified; thus, it is not reliable.  *See, e.g.*, *Nash-Perry v. City of Bakersfield,*

24    No. 18-01512, 2021 WL 3883681, at *5 (E.D. Cal. Aug. 31, 2021) (collecting cases

25    explaining that unverified interrogatories are inadmissible).  *Third*, piggybacking on

26    the second point, it cannot be the case *that Feit knows* whether the extruded resin

27    mixture is applied independently and separately on each side of the boards in the

28

Accused Products. Indeed, the record is crystal clear that the process by which Feit's suppliers make filament-style LED lightbulbs is a ████████████████████████ ███████████████████████████████████. Ex. G (Aaron Feit Depo.) at 73; *see also id.* at 151 (████████████████████████████████████ ████████████████████████████████████████████████ ████████████), 41 (explaining that ████████████████████ ████████████████████████████████████████████ ████████████████); Ex. H (Aaron Feit Decl.), ¶ 23 (Feit has no contractual right to request technical information on its products, and making such requests to its suppliers could irreparably harm Feit's business relationships). In view of the record, Feit's interrogatory response is insufficient to push Dr. Lebby's testimony over the line from "unreliable" to merely "objectionable but admissible".

For the same reasons, Dr. Lebby cannot (as Feit has asserted) "ascertain the method of manufacture based on his experience and apply it to an infringement analysis." If it were the case that a person with experience in the industry could determine an LED filament's method of manufacture based on an inspection of the product, then this information would hardly be considered ████████████████ ██████ Ex. G (Aaron Feit Depo.) at 200. And again, Dr. Lebby testified under oath that he does *not* know how the Accused products are made. Ex. F (Lebby Depo.) at 143:13-15 (Dr. Lebby concedes he is only guessing).

Feit also discounts the fact that ████████████████████████ ████████████████████████████████████████████████████ ██████████ Opp. at 12. While Nichia agrees that this alone is not a basis for exclusion, the point is that Dr. Lebby did not learn about how the Accused Products were made from Feit or any other sources. Dr. Lebby testified that he did not have conversations with anyone knowledgeable about the manufacturing processes, he did not have access to any facts on the manufacturing processes, and he admitted that he does not

know the suppliers' manufacturing processes.  Ex. F (Lebby Depo.) at 96:4-7, 104:11-13, 143:13-14, 145:10-11, 146:18-19, 147:13-19.

The rest of Feit's arguments are even more off-base.  For example, Feit points to photographs and product inspections that purportedly support Dr. Lebby's non-infringement opinion.  *See* Opp. at 6-12.  This is irrelevant.  Nichia's *Daubert* challenge is limited only to Dr. Lebby's testimony and opinions on the *method of manufacturing* the Accused Products.  Nichia does not raise a *Daubert* challenge on Dr. Lebby's opinions as to the presence or absence of a claimed element in the as-manufactured Accused Products.

Feit also argues that Dr. Lebby relied on "a video, produced in discovery, describing the extrusion process and illustrating the manufacturing process used for modern LED filaments."  Opp. at 9.  But as Nichia already explained in its opening brief, this video has no bearing on this case.  *See* Dkt. 442 at 5-6. ███████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████ *Id*. ███████████████████████
███████████████████████████████████████████████████████ *Id*.  Indeed, all Dr. Lebby says is that Feit produced the video to demonstrate a particular extrusion process, but he does not offer any opinion as to whether that process was used to make any of the Accused Products.  *Id*.  The fact that Nichia included these points in its opening motion, and Feit failed to address any of them in its opposition, speaks volumes.

Feit also says that "Nichia provides no alternatives or reasons to suggest Dr. Lebby is wrong."  Opp. at 9.  Of course not.  This is because there are *no facts* in the record on the manufacturing processes used to make the Accused Products.  Thus, it is impossible to tell if Dr. Lebby's conclusions are right or wrong.  This is the point – neither Nichia, the Court, nor a jury has any basis to evaluate Dr. Lebby's opinion

because he did not rely on any facts.  That an expert's opinion *might* be correct is irrelevant.  *Daubert* motions go to the reliability of the process, not the correctness of the conclusions.  *See, e.g., Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("[T]he test under Daubert is not the correctness of the expert's conclusions but the soundness of his methodology." (citations omitted)).

Finally, the Court should note and reject any effort to place the onus for the lack of a record onto Nichia.  Feit itself was the major barrier to the collection of information from its suppliers despite a Court order.  It should not be allowed to bypass this Court's orders by offering an expert's unsubstantiated speculations.

\*\*\*

Nichia also asserted a second and independent basis for why Dr. Lebby's method of manufacturing opinions should be precluded.  As Nichia explained, Dr. Lebby's opinions are irrelevant because the claims of the patent-in-suit are product claims, and do not require that the Accused Products be manufactured by any particular process.  *See* Dkt. 442 at 4 ("[T]estimony about how the accused products were manufactured will not 'help the trier of fact to understand the evidence or to determine a fact in issue.'  On the contrary, the danger is that Dr. Lebby's testimony will confuse the jury by suggesting, incorrectly, that process steps are relevant to a determination of whether the Accused Products infringe.").  In its opposition, Feit argues that Nichia "has things exactly backwards," because even if the claims do not *require* that the Accused Products be made by any particular manufacturing process, the process that Feit attributes to its suppliers is relevant in determining if the claim limitation that requires a "wavelength conversion member" be a "single component" has been met.  Opp. at 13.

Not so.  To start, Feit asserts that "the extrusion process [Dr. Lebby describes] further is relevant as it teaches away from the '734 patent" because "[t]he only process for manufacturing the claimed wavelength conversion member disclosed in

the '734 patent is through use of a mold." Opp. at 14. Feit's contention flies in the face of a basic cannon of claim construction that the claims are not limited to the embodiments disclosed in the specification. *See, e.g., Teleflex, Inc. v. Ficosa North Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002) ("the number of embodiments disclosed in the specification is not determinative of the meaning of disputed claim terms"). Because the claims of the '734 patent do not require the use of a mold, a manufacturing process that does not involve a mold cannot be said to "teach away from" the patent. As Nichia explained in its opening motion, the introduction of irrelevant manufacturing processes into the matter would raise the significant possibility that the jury would incorrectly credit the testimony and improperly narrow the claim.

Feit also fails to explain why it believes Dr. Lebby's method-of-manufacturing testimony would *help* a jury determine if the Accused Products have a wavelength conversion member that is a "single component." *See* Fed. R. Evid. 702(a) (the expert's scientific, technical, or other specialized knowledge *will help the trier of fact to understand the evidence or to determine a fact in issue*") (emphasis added). Feit merely points out that the manufacturing process may be *consistent with* what one can observe by inspection. This is not enough. *See Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) (expert testimony is relevant only if it "logically advances a material aspect of the proposing party's case"). If (as Feit says) a visual inspection is sufficient to determine whether a "wavelength conversion member" is a "single component," then Dr. Lebby's speculations about the manufacturing methods are not only irrelevant, but entirely unnecessary.

Finally, Feit does not (and cannot) discount the risk that a jury could become confused by Dr. Lebby's opinions on manufacturing methods, and find that any product that (according to Dr. Lebby) was manufactured by a particular method necessarily does not infringe. *See, e.g., In re C.R. Bard, Inc.*, MDL 2187, 2018 WL

4220671, *5 (S.D.W. Va. Sept. 5, 2018) (excluding expert testimony on grounds that it would not help the jury understand the evidence or determine a fact in issue, and the expert's testimony could "lead to more confusion than enlightenment").

***

In sum, Dr. Lebby disclaimed in sworn testimony any knowledge of Feit's suppliers' manufacturing methods, and there are no facts in the record to support his opinions on that issue.  If more were needed, Dr. Lebby's opinions on manufacturing processes are irrelevant and could well confuse a jury.  For these reasons, Nichia's motion should be granted, and Dr. Lebby should be precluded from testifying on how the Accused Products were made.

**B.    Dr. Lebby Should Be Precluded from Opining at Trial on the Availability of the Alleged Non-Infringing Alternative Products Because He Does Not Know if Feit's Manufacturers Had the Equipment, Know-How, and Experience to Make Them**

Nichia argued in its opening brief that Dr. Lebby's opinions on the availability of Feit's alleged non-infringing alternatives should be precluded because they are not based on sufficient facts or data.  Fed. R. Evid. 702(b).  As the Federal Circuit has explained, the "availability" of a non-infringing product turns on whether the manufacture had the equipment, know-how, and experience to make the alleged non-infringing alternatives at the time of first infringement.  *See Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1354 (Fed. Cir. 1999).  Because Dr. Lebby had no facts regarding Feit's manufacturers' capabilities or circumstances, his opinions on the availability of the alternatives are mere speculation.

In its opposition, Feit failed to identify *any* facts regarding Feit's suppliers' equipment, know-how, or experience that provide a basis for Dr. Lebby's opinions. This should end the matter, and Nichia's motion should be granted.  *See, e.g., Laser Dynamics, Inc. v. Quanta Comput., Inc.*, No. 06-348, 2011 WL 197869, *3 (E.D.

Tex. Jan. 20, 2011) (excluding expert testimony where expert acknowledged others' implementation of alleged alternatives, but failed to opine on whether *Quanta* would be capable of implementing them)[2]; *WhereverTV, Inc. v. Comcast Cable Comm'ns, LLC*, No. 18-529, 2022 WL 2751752, *6-7 (M.D. Fla. July 14, 2022) (granting motion to strike expert's testimony on "many" proposed alternatives which were addressed only vaguely in expert's report, without analysis of how *Comcast* would implement them using technologies and materials in existence to Comcast at the time of the hypothetical royalty negotiation); *Grain Processing Corp.*, 185 F.3d at 1353 ("the trial court must proceed with caution in assessing proof of the availability of substitutes not actually sold during the period of infringement").

Instead of pointing to facts that support Dr. Lebby's availability opinions, Feit argues that ███████████████████████████████████████████ ███████████████████████████████████████████████ Opp. at 17, n.7; *see also id.* at 19 (████ ████████████████████████████████████████████ ████████████████████████████). Feit also points to deposition testimony to the effect that ███████████████████████████████ ██████████████. Opp. at 18. ███████████████████████ █████████████████████████████████████████████ ███████████████████████████████████████.

_____

[2] Feit's attempt to distinguish this case falls flat. Feit points to Nichia's purported concession that "all of the components were available and orientation is the only point of novelty." Opp. at 17, n.7. Feit is confusing two different legal concepts. "Available" in the context of prior art refers to whether the individual elements of the invention were already *known*, whereas "available" in the context of non-infringing alternatives refers to whether the alternative existed at the time of the first infringement, and if not, whether the manufacturers would be ready, willing, and able to *change* the existing products.

In any event, neither common sense nor Feit's previous experience is a sufficient factual basis for Dr. Lebby's availability opinions. *First*, Feit's "common sense" argument is nonsensical. It goes without saying that the ability to manufacture the Accused Products cannot – in and of itself – constitute sufficient evidence to manufacture the alleged alternatives. Otherwise, there would be no need for an "availability" showing at all. *Second*, even if Feit's "common sense" argument had some merit, an expert's opinion cannot be based on common sense. *See In re Mirena IUD Prods. Liab. Litig.*, 169 F.Supp.3d 396, 484 (S.D.N.Y. 2016) ("If her opinion is based on simple common sense, it is not helpful; the jury does not need expert opinion because its common sense will suffice."). *Third*, that a manufacturer was able to make infringing products does not mean that they would, *ipso facto,* have been able to design-around and manufacture a different design during the relevant time period. *Fourth,* to the extent Feit relies on ███████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████████.

Feit again relies on Dr. Lebby's "inherent experience of 40 years in the industry" in an attempt to offset the lack of a factual foundation for his opinions. But it bears repeating that extensive expertise cannot offset a lack of facts. *See, e.g., Wilson*, 2010 WL 3787106, *3 ("If he had compiled sufficient facts, Dr. Peters' experience and education would likely be sufficient to qualify him to interpret and offer an opinion based on those facts. Such qualifications, however, may not serve to replace adequate factual underpinnings."). Similarly, Dr. Lebby's testimony on the "simplicity" of the redesigns is untethered to the facts of this case, and therefore irrelevant. The availability inquiry hinges on whether *Feit's suppliers* could have made the alleged alternatives at the time of infringement, not whether the alternatives were simple or complex. And indeed, in the case of redesigns that change the

filament, ████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████.  *See* Ex. I (Cindi Mullane Depo.) at 36-37 (█

████████████████████████████████████████████████████

████████████████████████████).   At the end of the day, Dr. Lebby's

testimony on his experience and the "simple" nature of the alternatives is no

substitute for the lack of a factual foundation for his opinion.  *See id.*

As further support for Dr. Lebby's "simple" and "easy to implement" points,

Feit resorts to attorney argument—pointing out that Feit's alleged alternatives

"utilize the same or even fewer components as already-existing designs, which are

merely arranged differently."  Opp. at 20.  Feit is wrong.  Many of Feit's alleged

alternatives have *more* components than the Accused Products, which is precisely

one of the reasons why Nichia's expert, Dr. Allen, opined that these alternatives

would compare unfavorably to the Accused Products in terms of cost, performance,

reliability, and aesthetics.  *See* Ex. J (Allen Opening Report) ¶¶ 72-125.  For example,

Feit's alleged alternatives include, *inter alia*, an increased number of boards (*see* Ex.

A (Lebby Rebuttal Report) ¶¶ 170, 177; *see also id.* ¶ 174); the addition of separate

support structures (as opposed to "support leads," which provide both support and

electric) (*id.* ¶¶ 171-173); and the addition of packaging for the LED chips (*id.*

¶¶ 185-186).  Further, even for alternatives that might have the same components as

the Accused Products but in different arrangements, this does not mean that Feit's

suppliers would have had the equipment, know-how, and experience to implement

these alternative designs into all of the Accused Products in September 2017.

Feit also points to Nichia's alleged "admissions" that the patent-in-suit

purportedly does not teach any novel component, method, or new part, and that

embodiments disclosed in the patent-in-suit and prior art are purportedly non-

infringing.  Opp. at 16.  Feit is (again) confusing unrelated legal issues.  Putting aside

whether Feit has accurately represented the record, what Nichia has said with respect to the *validity* of the patent-in-suit, or whether certain embodiments *are infringing,* has no relevance to whether Feit's suppliers had the equipment, know-how and experience to make the alleged alternative products at the time of first infringement. *See Grain Processing Corp.*, 185 F.3d at 1354.  Also, Feit offers no legal support (and Nichia is aware of none) that says the disclosure of alternatives in the prior art, or in a patent specification, renders them "available."  It does not.  *See generally id.*

Finally, Feit says that a number of its proposed design-arounds are purportedly based on "configurations present in the prior art."  Opp. at 17.  Again, just because a component or configuration is present in the prior art (*e.g.*, illustrated in picture form in a patent), does not mean that it was "available" – *i.e.*, that it was ever manufactured, or that it could have been manufactured by Feit's suppliers at the time of first infringement.

The whole point of the "availability" requirement for alleged non-infringing alternatives is that an accused infringer should not be able to reduce its damages liability by referring to mere concepts or ideas that *might have* been possible.  It has to show that it *could have* offered a different, non-infringing product.  In this case, there are no facts on Feit's suppliers' equipment, know-how, or experience to do so.  Dr. Lebby's opinions on the availability of the alleged alternatives accordingly have no basis, and the Court should grant Nichia's motion and preclude him from opining on non-infringing alternatives.[3]

---

[3] Feit does not appear to dispute that if the Court finds Dr. Lebby's testimony on "availability" or "acceptability" excludable, then all of Dr. Lebby's (and Ms. Hall's) testimony on non-infringing alternatives must be excluded.  *See Longhorn HD LLC v. NetScout Sys., Inc*., No. 20-00349, 2022 WL 991696, *4 (E.D. Tex. Mar. 31, 2022) ("A reliable opinion on whether a product is or is not a non-infringing alternative is incomplete without opining on whether the product is both 'available' and 'acceptable'.").

### C. Dr. Lebby Should be Precluded from Opining at Trial on the Acceptability of the Alleged Alternative Products

Nichia argued in its opening brief that Dr. Lebby's opinions on the acceptability of Feit's alleged non-infringing alternatives should be precluded because (1) as to three alternatives, Dr. Lebby does not provide any opinion at all, and (2) as to the other alternatives, Dr. Lebby's opinions are insufficient and baseless. Fed. R. Evid. 702(b). Feit's opposition ignores the first point. That is, Feit does not dispute that Dr. Lebby provided *no opinions* (affirmative or rebuttal) on acceptability as to the following alternatives (with Dr. Lebby's letter designations): (A) a board extending into a support base so that a bulb does not enclose the board; (B) plurality of light emitting chips arranged transversely on the board; and (E) multiple short pieces of metal or other support structures substituted for the board. *See* Dkt. 442 at 12. Nichia's motion should be granted at least with respect to these alternatives.

Nichia's motion should be granted with respect to the remaining alternatives as well. Feit does not dispute that Dr. Lebby made no assessment as to the Accused Products' acceptability to customers during the relevant time period, but instead purported to rebut the contrary opinion of Nichia's expert, Dr. Allen. Feit also does not dispute Dr. Lebby's admission that he does not know why consumers buy different types of bulbs. Dkt. 442 at 12-15. These points are addressed further below.

*First*, the law on acceptability requires: (1) an assessment of any differences between the alleged alternative and the Accused Product, followed by (2) an assessment of how those differences (if any) would affect the royalty rate. *Open Text S.A. v. Box, Inc.*, No. 13-04910, 2015 WL 393858, *4 (N.D. Cal. Jan. 29, 2015). Feit purportedly relied on Dr. Lebby for the first requirement, but he never did the required analysis. Dr. Lebby did not affirmatively compare the alleged non-infringing alternatives to the Accused Products, and opine on (much less explain)

1    whether they offered the same benefits or, if not, how they were different.  *See* Ex.

2    A (Lebby Rebuttal Report) ¶¶ 158-187.

3         The shortcomings of Dr. Lebby's opinion – and the reason why a rebuttal is

4    not sufficient – become apparent when comparing his conclusions on acceptability

5    (*i.e.*, mere rebuttal points) to the assumptions on which Ms. Hall (Feit's damages

6    expert) relies.  In issuing her reasonable royalty opinion, Ms. Hall assumes that there

7    are no noticeable differences between the alleged alternatives and the Accused

8    Products, and that the alternatives offer customers the same benefits as the Accused

9    Products.  *See* Ex. K (Hall Report) ¶¶ 19, 145.  Yet Dr. Lebby's acceptability

10   opinions do not mirror Ms. Hall's assumptions.  He merely opined that Dr. Allen was

11   wrong, but never provided support for Ms. Hall's position.  That is, Dr. Lebby never

12   compared the alternatives to the Accused Products, assessed whether the two offer

13   the same benefits, or explained why the alternatives would be acceptable to

14   consumers.  In these circumstances, both experts' opinions should be excluded.  Dr.

15   Lebby's opinions should be stricken because he did not do the required analysis, all

16   he said was that, in his opinion, Nichia's expert is wrong.  As explained in greater

17   detail in Nichia's *Daubert* motion directed to Ms. Hall, her royalty calculations

18   should be excluded as well.  *See* Dkt. 441 at 9-11; Dkt. 495 (Reply brief ISO Hall

19   *Daubert* Motion) at 9-13.

20        Feit argues in its opposition that Nichia misstated the law on acceptability in

21   the context of a reasonable royalty.  Opp. at 21.  Feit is wrong.  Both parties have

22   referred to the same cases in their briefs before the Court, including *Open Text S.A.*

23   2015 WL 393858 at *4.  Again, the problem with Dr. Lebby's opinion is that he does

24   not do step (1) of the *Open Text* analysis (assessment of the product differences) at

25   all.  He just purports to rebut some of Dr. Allen's assessment.

26        Feit also argues in its opposition that "Nichia itself quotes Dr. Lebby

27   affirmatively stating that a proposed design-around would 'achieve the desired

28

PLAINTIFF'S REPLY ISO ITS MOTION TO PRECLUDE EXPERT TESTIMONY OF DR. MICHAEL LEBBY

lighting effects,' i.e., that it would be acceptable." Opp. at 22. To be clear, Dr. Lebby's statement that an alternative would achieve the desired lighting effects is *not an opinion* that the alternative would be acceptable. It is just a statement that, in a particular design-around, one could offset the light output issues caused by all LED chips being on a single side of a board by using multiple boards. Dr. Lebby says nothing about whether this "solution" to the light output issue would be acceptable to customers in terms of cost, appearance, or reliability. Indeed, the record, including testimony of Feit witnesses, shows that customers care about more than just light output when buying a lightbulb. *See, e.g.,* Ex. G (Aaron Feit Depo.) at 96-97 ("███████████████████████████████"); *id.* at 89-90 ("████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████").

The law is also clear that "acceptability" relates to more than just the operation of the product. *See Grain Processing Corp.*, 185 F.3d at 1355 (factors include the relative price of the alternative and the Accused Product, similarity of appearance, and operation). Dr. Lebby's opinion that an alternative would achieve the desired lighting effects is insufficient.[4]

***

Even if the Court does not exclude Dr. Lebby's "acceptability" testimony for the reasons above, it should be excluded on grounds that Dr. Lebby's opinions are baseless. As Nichia explained in its opening brief, Dr. Lebby admitted in deposition

---

[4] In response to Nichia's demonstration that Dr. Lebby did not consider relevant factors on one of the alleged alternatives (e.g., how many board would be required, the cost of the resulting products, what the product would look like, and whether customers would consider it to be an acceptable substitute), Feit refers to "Nichia's *sui generis* factors." Opp. at 22 (referring to Dkt. 442 at 13). Nichia did not make these factors up. They mirror those identified by the Federal Circuit in *Grain Processing*.

that "I haven't actually looked into why users – end users will buy different types of bulbs." Ex. C (Lebby Depo. 1ˢᵗ day) at 52, 76-77. This admission alone renders Dr. Lebby's opinions on the acceptability of the alleged alternatives entirely speculative. Feit ignores this point.

Nichia also cited examples in its opening brief of how Dr. Lebby's opinions constitute a combination of speculation and lay testimony. For example, when asked why a consumer would buy a particular lightbulb, Dr. Lebby responded based on his own personal experiences, and then admitted that "coming into this deposition, I haven't actually looked into why users – end users will buy different types of bulbs." *Id*. at 51-53. Again, Feit ignores this point.

In view of the above, Dr. Lebby should be precluded from opining on the alleged alternatives at trial. *See Longhorn HD LLC*, 2022 WL 991696 at *4.

## III.    CONCLUSION

For the foregoing reasons, and the reasons set forth in Nichia's opening brief, Nichia hereby requests that this Court grant its Motion and issue an order precluding Dr. Lebby from presenting the above-mentioned testimony and opinions at trial.

Respectfully submitted,

DATED: August 31, 2022         ROTHWELL, FIGG, ERNST & MANBECK P.C.
                                                   By: */s/ Robert P. Parker*

                                                   ROBERT P. PARKER (*pro hac vice*)

                                                   MARTIN M. ZOLTICK (*pro hac vice*)
                                                   JENNY COLGATE (*pro hac vice*)
                                                   MICHAEL JONES (*pro hac vice*)
                                                   MARK RAWLS (*pro hac vice*)
                                                   D. LAWSON ALLEN (*pro hac vice*)
                                                   NICOLE DEABRANTES (*pro hac vice*)

1   LEWITT, HACKMAN, SHAPIRO, MARSHALL
2   & HARLAN

3   By: */s/ Jeffrey A. Kobulnick*

4   DAVID GURNICK
5   JEFFREY A. KOBULNICK
    JESSICA W. ROSEN

6
7   *Attorneys for Plaintiff Nichia Corporation*

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28