DAVID GURNICK (SBN 115723)
dgurnick@lewitthackman.com
JEFFREY A. KOBULNICK (SBN 228299)
jkobulnick@lewitthackman.com
JESSICA W. ROSEN (SBN 294923)
jrosen@lewitthackman.com
LEWITT, HACKMAN, SHAPIRO,
MARSHALL & HARLAN
16633 Ventura Boulevard Eleventh Floor
Encino, CA 91436
Telephone: (818) 990-2120
Facsimile: (818) 981-4764

ROBERT P. PARKER (*pro hac vice*)
rparker@rfem.com
MARTIN ZOLTICK (*pro hac vice*)
mzoltick@rfem.com
JENNY COLGATE (*pro hac vice*)
jcolgate@rfem.com
MICHAEL JONES (*pro hac vice*)
mjones@rfem.com
MARK RAWLS (*pro hac vice*)
mrawls@rfem.com
D. LAWSON ALLEN (*pro hac vice*)
lallen@rfem.com
NICOLE M. DEABRANTES (*pro hac vice*)
ndeabrantes@rfem.com
ROTHWELL, FIGG, ERNST & MANBECK P.C.
901 New York Avenue N.W.
Suite 900 East
Washington, DC 20001
Telephone:  (202) 783-6040
Facsimile:   (202) 783-6031

Attorneys for Plaintiff Nichia Corporation

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHIA CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>FEIT ELECTRIC COMPANY, INC.<br><br>Defendant. | Case No.  2:20-cv-00359-GW-E<br><br>**PLAINTIFF NICHIA CORPORATION'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT OF INFRINGEMENT AND ON DEFENDANT'S AFFIRMATIVE DEFENSES OF INVALIDITY AND NON-INFRINGING ALTERNATIVES**<br><br>Hearing Date: September 29, 2022<br>Time:       8:30 a.m.<br>Ctrm:       9D |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................ii

I.    INTRODUCTION ..................................................................................... 1

II.   ARGUMENT .............................................................................................. 2

    A.    Feit's Model 72007 Infringes the '734 Patent ..................................... 2

        1.    Claim element 1.1 .................................................................. 2

        2.    Claim element 1.3 .................................................................. 3

        3.    Claim element 1.5 .................................................................. 6

        4.    Claim element 1.8 .................................................................. 9

        5.    Dependent Claims 19 and 23 ................................................ 9

    B.    Nichia is Entitled to Summary Judgment Because Feit Failed to Show that it can Prevail on its Invalidity Defenses. ..................................... 10

        1.    Claim 1 is Not Anticipated by Mano for Two Reasons ........... 11

        2.    Claim 1 is Not Anticipated by either Maxik or Ishibashi ......... 13

        3.    Claim 19 Would not have been Obvious ................................. 15

        4.    Claim 1 is Not Indefinite ....................................................... 17

        5.    Claim 1 is Enabled by the '734 Patent Specification ............... 19

        6.    The Claims have Written Description Support ........................ 22

    C.    Feit Cannot Show that the Alleged Non-Infringing Alternatives Were Both Acceptable and Available to Feit ................................................ 23

III.  CONCLUSION ......................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alza Corp. v. Andrx Pharms., LLC*,

    603 F.3d 935 (Fed. Cir. 2010) ..............................................................19

*Anderson v. Liberty Lobby, Inc.*,

    477 U.S. 242 (1986).................................................................*passim*

*Celotex Corp. v. Catrett*,

    477 U.S. 317 (1986)..........................................................................11, 19

*CFMT, Inc. v. Yieldup Int'l Corp.*,

    349 F.3d 1333 (Fed. Cir. 2003) ...........................................................21

*Droplets, Inc. v. Yahoo! Inc.*,

    No. 12-03733, 2021 WL 9038509 (N.D. Cal. Apr. 27, 2021) ............23

*Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*,

    909 F.3d 398 (Fed. Cir. 2018) .............................................................14

*Gillette Co. v. Energizer Holdings, Inc.*,

    405 F.3d 1367 (Fed. Cir. 2005) .............................................................3

*Grain Processing Corp. v. Am. Maize-Products Co.*,

    185 F.3d 1341 (Fed. Cir. 1999) ......................................................24, 25

*Koito Mfg. Co. Ltd. v. Turn-Key-Tech, LLC*,

    381 F.3d 1142 (Fed. Cir. 2004) ...........................................................22

*Matsushita Elec. Indus. Co. v. Zenith Radio*,

    475 U.S. 574 (1986)...............................................................................3

*Microsoft Corp. v. i4i Ltd. P'ship*,

    564 U.S. 91 (2011)...............................................................................10

*Nautilus, Inc. v. Biosig Instruments, Inc.*,

    572 U.S. 898 (2014)............................................................................19

*Net MoneyIN, Inc. v. VeriSign, Inc.*,

    545 F.3d 1359 (Fed. Cir. 2008) .....................................................12, 14

*Scott v. Harris*,

    550 U.S. 372 (2007) ................................................................................. 3

*Sherwin-Williams Co. v. PPG Indus., Inc.*,

    No. 17-01023, 2019 WL 7494202, *9 (W.D. Pa. Nov. 12, 2019), *adopted in*

    *relevant part*, 2020 WL 1283465 (W.D. Pa. Mar. 18, 2020) .............................. 24

*Soremekun v. Thrifty Payless, Inc.*,

    509 F.3d 978 (9th Cir. 2007) ................................................................... 7

*SRI Int'l Inc. v. Cisco Sys., Inc.*,

    930 F.3d 1295 (Fed. Cir. 2019) .............................................................. 13

*Therasense, Inc. v. Becton, Dickinson & Co.*,

    593 F.3d 1325 (Fed. Cir. 2010) .............................................................. 11

*Trintec Indus., Inc. v. Top-U.S.A. Corp.*,

    295 F.3d 1292 (Fed. Cir. 2002) ...................................................... 13, 14

**Statutes**

35 U.SC. § 282 ..................................................................................... 10

## I.    INTRODUCTION

With respect to infringement, Feit misunderstands Nichia's motion. Nichia has moved for partial summary judgment of infringement as to only one Feit product—Model 72007. In its opposition, however, Feit claims that "Nichia must establish there is no materially disputed fact as to the presence of each claim limitation for each of the over 600 products it accuses." Dkt. 483 at 1. Likewise, Feit relies on testing of different, unrelated products. *See, e.g.*, *id.* at 8-10. To win on its motion, Nichia need only establish that Model 72007 meets each and every element of the patent claims on which Nichia is moving. While Feit purports to raise issues of material fact, Feit has no evidence on which a reasonable jury could return a verdict in its favor on the issue Nichia actually raised.

Feit also ignores the fact that it has the burden to prove invalidity by clear and convincing evidence. For anticipation and obviousness, Nichia showed that certain features were not disclosed in the references. Dkt. 443 at 12-16. But Feit did not respond with clear and convincing facts to the contrary, *e.g.,* by identifying specific teachings in the references. *See* Sections II(B)(1)-(3). The same is true for written description, enablement, and indefiniteness—Feit has not pointed to facts or testimony on which a jury could find in its favor. *See* Sections II(B)(4)-(6). As the Court is aware, it "must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). Feit cannot meet its high burden on any of the invalidity defenses on which Nichia has moved for summary judgment.

As to non-infringing alternatives, the law requires that any design-around be "available" and "acceptable" as of the date of the parties' hypothetical negotiation. Feit offers no evidence to sustain its burden that its proposed alternatives (that were not on the market in 2017) were available and acceptable. It also cites no law contrary to that on which Nichia's motion rests. Thus, Nichia's motion should be granted.

## II.    ARGUMENT

### A. Feit's Model 72007 Infringes the '734 Patent

#### 1. Claim Element 1.1

Claim element 1.1 requires "a board having *end portions* and *a center portion* therebetween *in a longitudinal direction*, the board having … a first region and a second region…." Dkt. 1-1, 15:12-21 (emphasis added). The Court construed this term to mean "a board with a first region running lengthwise from one end of the board to the center of the board, and a second region running lengthwise from the other end of the board to the center of the board." Dkt. 90 at 9.

Feit's opposition on this issue raises two arguments: (1) that the "lengthwise" or "longitudinal direction" must be horizontal in the bulb; and (2) claim 1 is not infringed if there is a chip in the center of the board. *See* Dkt. 483 at 12-13 ("Nichia has not shown whether such a chip is present."); Feit's Response to SF[1] 18 ("the LED filament … is substantially vertical"). Feit's arguments are legally deficient, and also fail to raise a genuine dispute of material fact.

<u>First</u>, the Court has construed "longitudinal" to mean "lengthwise," and therefore Feit's argument that it must instead mean "horizontal" relative to the screw base is contrary to the Court's construction. *See* Dkt. 444, § IV(F). The claim requires that the "longitudinal" or "lengthwise" direction is along the board—that is, from one of the board's ends to the other. There can be no genuine dispute that the rectangular board in Model 72007 has a length and has a center between two ends in the direction along the length of the board. Dkt. 443 at 5 (showing photograph of Model 72007's board); SF 18. The filament's arrangement horizontally or vertically in the bulb does not "affect the outcome of the suit." *Anderson*, 477 U.S. at 248. Feit has raised no genuine issue of material fact precluding summary judgment.

---

[1] "SF" refers to Nichia's Response to Feit's Statement of Genuine Disputes of Material Fact in Support of Its Opposition to Plaintiff's Motion for Summary Judgment, filed concurrently herewith.

Second, there is no chip at the center of the board in Model 72007. Nichia tested two Model 72007 products, and found no chip at the center. *See* Dkt. 458-8 (Ex. G) at NichiaOPP0001083-86, 1109-1112, 2302-5, 2327-30. Feit has offered no evidence showing a "center" chip in any Model 72007 product. And even if there were a chip in the center of the board, nothing in the Court's construction of "center portion" to mean "center" precludes such a chip. Dkt. 484, § IV(C). As explained in Nichia' Opposition to Feit's Motion for Summary Judgement, provided there is a set of chips on either side of the board's center as the claims require, the existence of additional components (*e.g.*, a chip at the center) does not "undo" infringement. *See* Dkt. 484 at 23; *Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1371-72 (Fed. Cir. 2005) ("The addition of elements not recited in the claim cannot defeat infringement"). In sum, Feit is wrong on the law and has raised no genuine issue of material fact.

### 2. Claim Element 1.3

Claim element 1.3 is directed to "a wavelength conversion member formed unitarily with a transparent member" (Dkt. 1-1, 15:24-25), which has been construed as "a single component that both converts wavelength and allows light to pass through" (Dkt. 90 at 10). Feit argues that instead of being "a single component," the wavelength conversion member (or "encapsulant") in Model 72007 is actually *two* components. *See* Dkt. 483 at 10. Feit is wrong.[2]

As an initial matter, it cannot be argued credibly that the encapsulant of Model 72007 is "two distinct members." Baseless disputes are not genuine—"[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-

---

[2] Feit presents this dispute in the context of claim element 1.3; however, if there is at least one wavelength conversion member formed unitarily with a transparent member, that would satisfy claim element 1.3, even if there were also an additional member as Feit alleges. Thus, it appears Feit is disputing that the wavelength conversion member is provided on the first surface side and second surface side of the board (*i.e.*, claim element 1.8). Nichia's arguments apply to both elements.

moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986) (citation omitted); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts [when] ruling on a motion for summary judgment."). The cross-sectional image of the product below makes this clear; a single member (the yellow material) surrounds the board and chips:



LED chips (one is visible in this view)

the "board"

the "wavelength conversion member," also referred to as the "encapsulant"

Dkt. 416-18 (Ex. 16) at NichiaSJ001702. Summary judgment is therefore proper.

Feit refers to evidence of "two distinct members" by showing a photograph from a product *different from the one Nichia has moved on*.[3] Dkt. 483 at 10. Feit also references photographs that Dr. Lebby took of products that are also *different from the one Nichia has moved on*.[4] *Id.* Suffice to say, evidence as to other products does not raise a genuine issue of material fact as to infringement of Feit's Model 72007. Feit points to these other products because they show a "gap," where part of the board is exposed. Even if Model 72007 had such a gap (it does not), it would still infringe. *See* Dkt. 444 at § IV(E) (explaining that a "gap" is within the claim's scope). Regardless, Feit has no evidence that any Model 72007 product ever included such a "gap," and the ones Nichia tested do not have it. Dkt. 443 at 6 (showing lengthwise cross section of Model 72007's filament); SF 11, 26, 39.

---

[3] As best as Nichia can determine, the product is Model No. BPG1660W/950CA/FIL/2(K). Dkt. 443-18 (Ex. 24) at NichiaSJ002430 (Fig. 21).

[4] As best as Nichia can determine, the photographs are from ¶ 106 (Figures 26-28) or ¶ 113 (Figure 32) of Dr. Lebby's report. Neither of these relates to Model 72007.

Feit's expert, Dr. Lebby, admitted there was no demarcation between the wavelength conversion member on the first surface side and the second surface side (*i.e.,* it is a single component).  Dkt. 483 at 10-11 (quoting Dkt. 443-16 (Ex. 22) at 142:12-143:18).  Yet Feit still contends that Model 72007 does not infringe because (it says) there are two wavelength conversion members.  Dkt. 483 at 10-11.  But disagreement is not enough.  In opposition to Nichia's demonstration, based on test results and testimony, Feit must show facts sufficient to raise a genuine dispute such that a reasonable jury could return a verdict in its favor.  *Anderson*, 477 U.S. at 250-52.  It has not done so here.

Feit's main "fact" is Dr. Lebby's *guess* as to the manufacturing process Feit's suppliers use, even though he lacks any evidence as to how it was manufactured.[5]  He surmises that "the extrusion on the top *may have* mixed with the extrusion on the bottom" such that he "certainly cannot see a demarcation between the material on the top and the material on the bottom."  Dkt. 483 at 10-11 (quoting Dkt. 443-16 (Ex. 22) at 142:12-143:18).  Feit contends that "Dr. Lebby went on to identify the two separate components *with a line of demarcation*…."  *Id*. (emphasis added).  Not so.  Dr. Lebby drew red boxes that he referred to as "an area where it seems to have mixed between the two":



Dkt. 443-16 (Ex. 22) at 145:5-7; Ex. 45 at Slide 16.[6] Nichia correctly quoted Dr.

---

[5] Regardless, the manufacturing process is not relevant to the infringement analysis.  *See* Dkt. 444 at §IV(C).

[6] Exhibits 45-47 are attached to the Declaration of Robert P. Parker filed concurrently herewith.

Lebby and his conclusion that he "certainly *cannot* see a demarcation between the material on the top and the material on the bottom." Dkt. 443-16 (Ex. 22) at 143:4-6 (emphasis added.)  In other words, there is a single component.

Dr. Lebby also suggests that the wavelength conversion member on the first surface side is different from the wavelength conversion member on the second surface side because "[t]here are different colors" (though he acknowledges the colors have intermixed).  Dkt. 483 at 11.  This conclusion is not credible.  <u>First</u>, it depends on Dr. Lebby's improper additions to the Court's claim construction, requiring (in Dr. Lebby's words) that "the material on the first surface is materially indistinguishable from and otherwise uninterrupted by the material on the second surface."  Dkt. 443-18 (Ex. 24), ¶102 (NichiaSJ002424-25).  But the claim does not require the material on each side to be "indistinguishable," or otherwise limit the color or phosphor distribution (which can affect color).  *See* Dkt. 444, §§ IV(C), (D), and (E).  Therefore, Dr. Lebby's argument is not relevant.  <u>Second</u>, as discussed above, Dr. Lebby admitted there is no clear demarcation between the top and bottom because the material has mixed together.  Thus, the dispute is not genuine.

### 3.  Claim Element 1.5

Feit's argument on claim element 1.5 ("support leads that secure the plurality of light emitting element chips inside the transparent bulb") is that Nichia treats "lead" and "support lead" identically, and thus, fails to show any support function.  Dkt. 483 at 3-6.  This is wrong.

As an initial matter, many of Feit's arguments have been rebutted in opposition to Feit's motion for summary judgment (*see generally* Dkt. 484, § IV(A)), and the legal questions regarding the meaning of "support leads" are addressed in Nichia's motion *in limine* (*see* Dkt. 444, § IV(B)).  As to the present motion, Feit has not identified "specific facts showing that there is a genuine issue for trial."  *See Anderson*, 477 U.S. at 250.  Feit glosses over the extensive evidence Nichia cited, including admissions from Feit's own expert, and offers nothing in return.

REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Most relevant, Feit's expert has admitted that the support leads provide indirect support:  "So indirectly -- one answer to this question is, indirectly, the leads would support the LEDs as per the claim element of supporting leads for securing the plurality of lighting in the chips inside the transparent bulb. But not directly."  Dkt 443-16 (Ex. 22) at 253:19-24; Dkt. 443 at 9.  As Nichia has explained, because indirect support is sufficient, Dr. Lebby's argument that the support is not direct is immaterial.  *See* Dkt. 444 at § IV(B).  When Feit contends that no support is provided, it overlooks its own expert's admission to the contrary.

In addition, Nichia's expert, Mr. Gershowitz, pointed to specific tests that demonstrate the required support.  To start, the support function is visually apparent; the support leads can be seen to bear the weight of the filament.  Dkt. 485 at 6-7; Dkt. 484 at 5-6, 9-10.  The filament also remains supported by the support leads when the bulb is rotated or moved about.  *See id.*  Finally, and conclusively, when the support leads are cut, the filaments become unsecured.  Dkt. 483 at 6; SFs 31-35.

Feit discounts these points, and says that Nichia's motion is based on "no more than mere attorney argument."  Dkt. 483 at 5.  As explained above, however, Dr. Lebby admits the leads provide support.  Nichia relies on Mr. Gershowitz's analysis and the results of tests.  In fact, Feit ultimately concedes "[t]here can be no dispute" that if the leads are cut, the filament becomes unsecured.  Dkt. 483 at 6.

Feit appears to argue that cutting the leads is not a proper test because the same result will occur whether there are "leads" or "support leads."  Dkt. 483 at 6.  Feit cites no evidence or authority for this proposition, and it should be disregarded.[7]  *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("Conclusory, speculative testimony in … moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.").  At most, Feit argues that Nichia's position is

---

[7] It is also not clear what it would mean to "cut" a lead such as the thin plating material in Mano.  At any event, removing the lead in Mano *would not* result in the LED chips becoming unsecured.  Dkt. 443-21 (Ex. 34), ¶¶ 132-136.  In addition to lacking expert support, Feit's position is wrong.

inconsistent with a related patent (the '812 patent) that claims "leads" (instead of "support leads"), and therefore "[a]ny claim that these leads [of the '812 patent] could not 'secure,' *i.e.*, connect or attach the board, would render the ['812] patent invalid for lack of enablement and written description." Dkt. 483 at 6. Feit appears confused about basic patent law. The *support leads* disclosed in the specification are *leads*, and therefore enable and provide written description support for the claimed *leads* of the '812 Patent. The fact that the *leads* also provide support, and therefore qualify as *support leads,* does not raise any issues for either patent.

Feit also suggests that Nichia erred by testing both of the support leads together. Dkt. 483 at 6-7. Apparently, Feit contends that one lead may provide all of the support, while the other lead provides no support. Again, it has presented no evidence or expert testimony to support that position. Moreover, Feit's speculation is contrary to the evidence. Each lead is attached to a metal plate, and can be seen visually to provide support. Dkt. 443 at 8 (showing support leads). And again, Feit's own expert agreed that the support leads provide support. Dr. Lebby admitted that "indirectly, the leads would support the LEDs as per the claim element of supporting leads for securing the plurality of lighting in the chips inside the transparent bulb." Dkt. 443-16 (Ex. 22) at 253:19-24; Dkt. 443 at 9.

Finally, Feit again points to products *different from the one Nichia is moving on* to argue that Nichia fails to account for or address other support structures. Dkt. 483 at 7-8. Setting aside whether Feit's arguments are relevant (they are not), the Model 72007 products that Nichia tested do not have these other structures, and Feit has not provided evidence that any Model 72007 does. *See* SFs 11, 32-35. In any event, the presence of additional support structures (if Feit could establish it) does not affect infringement. Dkt. 444 at § IV(B); Dkt. 484 at § IV(A)(4).

In sum, the evidence establishes that Feit's Model 72007 has the claimed "support leads" that provide both electrical connection and support. Feit's expert admits as much – his only quibble is whether "indirect" support is sufficient. As a

matter of law, Dr. Lebby is wrong about the scope of the claim, and Feit has not raised a genuine issue of material fact.

### 4. Claim Element 1.8

Feit's position on claim element 1.8 is that the wavelength conversion member is not "elongated in the longitudinal direction" because it is "oriented substantially vertically in the bulb." Dkt. 483 at 12. That is, Feit re-construes the claim to define the "longitudinal direction" as a horizontal direction relative to the base of the bulb. *Id.* But the claim does not require a horizontal direction. *See* Dkt. 444 at § IV(F); Dkt. 484 at 16-19. Indeed, the Court construed "longitudinal" to mean "lengthwise," and there can be no reasonable dispute that the wavelength conversion member in Model 72002 is "elongated in the lengthwise direction when viewed in plan view of the first surface side of the board." *See* Dkt. 443 at 5, 9 (showing plan view of first surface side of board). This is a legal dispute based on Feit's new, narrow construction of "longitudinal," and does not implicate any disputes of fact. As with other claim elements, the Court can (and should) grant summary judgment to Nichia simply by rejecting Feit's narrowing constructions.

Notably, and as Nichia explained in opposition to Feit's motion for summary judgment, Feit raised this purported defense for the first time in its summary judgment motion. Dkt. 484 at 17-18. As such, Dr. Lebby does not support Feit's position in his report, where he says only that "lengthwise" means "linearly." *Id.*

### 5. Dependent Claims 19 and 23

Feit does not dispute Nichia's allegation that Model 72007 is covered by claim 19. *See generally* Dkt. 483, § II; *see also id.* at 12-14; SF 48. Accordingly, if claim 1 is found to be infringed, Model 72007 infringes dependent claim 19 as well.

Feit's only dispute regarding claim 23 is based on claim construction—there are no factual disputes regarding the structure of Model 72007. Specifically, Feit argues that the *scope* of claim 23 does not encompass a support lead that extends past one of the metal plates. *See* Dkt. 483 at 13-14 (disputing Nichia's view that "the

1  claim requires extending towards, but does not preclude going past").

2      In support of its claim construction argument, Feit states: "Nor does the '734

3  patent depict any support lead 'extending past' a metal plate in any embodiment."

4  Dkt. 483 at 14.  This is untrue.  Embodiments of the '734 Patent show support leads

5  (62, 62B) extending from the base toward, and past, the pair of metal plates (30):



14  *See* Dkt. 1-1, FIGS. 8 and 10 (annotated).  Given the intrinsic evidence, there is no

15  basis to conclude that claim 23 excludes support leads extending past one of the metal

16  plates.  *See* Dkt. 444 at § IV(G).

17      The support leads in Model 72007 undisputedly extend (and attach) *to* the pair

18  of metal plates.  *See* SF 51.  As the support leads extend from the support base *to* the

19  pair of metal plates to which they are attached, no reasonable jury could find that

20  they do not extend *towards* the pair of metal plates under the plain meaning of that

21  term.  Feit has made no non-infringement arguments regarding the limitations of

22  claim 23 that do not rely on its improper claim construction.  *See* Dkt. 483 at 12-14.

23  Thus, Feit has presented no factual basis on which a jury could find in its favor.

24  Summary judgment is proper.

25      **B. Nichia is Entitled to Summary Judgment Because Feit Failed to Show**

26          **that it can Prevail on its Invalidity Defenses.**

27      A patent is presumed valid and Feit "bears the burden of proving invalidity"

28  by "clear and convincing" evidence.  35 U.S.C. § 282; *see also Microsoft Corp. v. i4i*

*Ltd. P'ship*, 564 U.S. 91, 105 n.7 (2011).   Thus, upon Nichia's showing that Feit cannot establish elements of its invalidity defenses, Feit was required to "point to facts that genuinely contradict" Nichia's arguments to avoid summary judgment. *Anderson*, 477 U.S. at 250-51; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).   Feit failed to do so.

### 1. Claim 1 is Not Anticipated by Mano for Two Reasons

Nichia presented two independent reasons why Feit cannot meet its burden: (i) Mano does not disclose "support leads" (a fact Feit admits); and (ii) Mano does not disclose "a transparent bulb that encloses the board and the plurality of light emitting element chips."   Dkt. 443 at 13-14.   In response, Feit did not show that a jury could reasonably find in its favor on either issue.   *Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325, 1332-33 (Fed. Cir. 2010) (anticipation requires that "each claim element must be disclosed").   Thus, there are no genuine disputes of material fact and summary judgment is warranted.

> a. <u>"a transparent bulb that encloses the board and the plurality of light emitting element chips" (claim element 1.4)</u>

If there were any basis for a jury to conclude that Mano discloses this claim element, Feit could have pointed to that disclosure.   It did not.   Dkt. 483 at 16. Instead, Feit ignores the teachings of Mano entirely and argues that there are "inconsistencies" in Nichia's position.   *Id.*   Specifically, Feit suggests it can avoid summary judgment because Nichia "does not understand … a design-around."   *Id*. But the lack of clarity in Feit's proposed design-arounds is irrelevant to the deficiencies of Mano.[8]

Likewise, Feit does not raise any genuine disputes of fact.   Rather, it is

---

[8] The specific point Nichia indicated confusion about was that Feit had referred to an alleged design-around where the "bulb does not enclose the support base"—but the claim requires the bulb enclose the *board*, not the *support base*.   For that reason, Mr. Gershowitz noted that "the bulb not enclosing the support base in Feit's proposed design-around would not make it non-infringing."   Dkt. 443-14 (Ex. 15), ¶ 269.

undisputed that the transparent bulb shown in FIG. 13 of Mano has a board that
extends into the support base, contrary to the requirements of claim 1:



Dkt. 416-39 (Ex. 37), FIG. 13 (annotated), ¶ [0084]; *see also id.*, FIGs. 1-32; SF 131.
At most, Feit suggests in its disputes of material fact (but not in its opposition), that
there are "additional devices" (*i.e.*, boards) in Mano "that do not extend into the base
of a lightbulb."  *See* SFs 132-133.  Feit misses the point.

Feit cites only to claim 1 of Mano, which is directed to internal components
without reference to a bulb.  Nichia does not dispute that Mano discloses alternative
embodiments that do not include a bulb.  The point Feit misses is that the only
*lightbulb* disclosed in Mano is that shown in Figure 13.  Feit needed to show a "*bulb*
that encloses the board," and no such bulb is disclosed in Mano.  *See Net MoneyIN,
Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1371 (Fed. Cir. 2008) ("unless a reference
discloses … not only all of the limitations claimed but also all of the limitations
arranged or combined in the same way as recited in the claim, it … cannot
anticipate").  Any purported disputes about whether other, unspecified "additional
devices" are disclosed in Mano is immaterial.

Given the lack of disclosure in Mano regarding "a transparent bulb that
encloses the board," the reference does not anticipate the claims as a matter of law.
The Court need not address Feit's arguments regarding "support leads."  Nonetheless,

Feit is also wrong with respect to "support leads."

> b. "support leads that secure the plurality of light emitting element chips inside the transparent bulb" (claim element 1.5)

Dr. Lebby correctly admitted that "Mano does not explicitly disclose support leads." Dkt. 416-29 (Ex. 27), ¶ 240. This means that Feit can prevail at trial only by demonstrating that the claimed "support leads" are inherently disclosed. *SRI Int'l Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1306 (Fed. Cir. 2019) ("Anticipation requires that a single prior art reference disclose each and every limitation of the claimed invention, either expressly or inherently."). But inherent disclosure requires that the missing material is "necessarily present," and Feit has already agreed that "[s]upport leads that secure the LED chips that are mounted on the board *are not necessary* for the device disclosed in Mano to function." SF 129 (emphasis added); *Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1295 (Fed. Cir. 2002). Thus, it is undisputed that the claimed feature is not inherently disclosed in Mano, and Feit cannot—as a matter of law—establish all elements of its anticipation defense.

Feit's primary point in opposition is that Nichia's position is "inconsisten[t]" and "blur[s]" the distinctions between "leads" and "support leads." *See* Dkt. 483 at 15-16. As explained elsewhere, Feit's characterization of Nichia's positions is incorrect. *See* § II(A)(3). Feit concedes that Mano does not have "support leads," but tries to argue that "leads" that lack a support function are sufficient (based on the false premise that this is Nichia's position). In any event, Feit cannot disregard a claim element because it (wrongly) believes Nichia has been inconsistent. Feit's concession that Mano does not have "support leads" is dispositive on anticipation.

### 2.  Claim 1 is Not Anticipated by Either Maxik or Ishibashi

Feit's Opposition and Responses to Nichia's Alleged Uncontroverted Material Facts (Dkt. 483) confirm that neither Maxik nor Ishibashi anticipates claim 1. In addition to its admissions, Feit repeats its earlier error: misunderstanding Nichia's infringement positions and asserting it can establish anticipation based on a "liberal

application" of the claims, rather than the claims' actual meaning. Dkt. 483 at 16.

Claim 1 requires that "the wavelength conversion member is provided on the first surface side *and the second surface side*" of the board. Dkt. 1-1, 15:35-36 (claim element 1.8) (emphasis added). That is, the wavelength conversion member must be present on the backside of the board (*i.e.*, the "second surface side"). But Feit—both in its expert's testimony and its responses to undisputed facts—confirms that there is no evidence of the wavelength conversion member on the backside of the boards of Maxik and Ishibashi. *See, e.g.*, Dkt. 443-16 (Ex. 22), 233:13-14 (conceding "[t]here's nothing on the back side of the board"), 238:2-3, 242:17-243:14; SFs. 134-137.

Rather than point to disclosure of the claim element in the references (as required by anticipation), Feit suggests the references "could" include the claim element, even though they do not disclose it. Feit's challenges to the facts are telling. Rather than argue what the references disclose, it argues the references "could involve an encapsulant that surrounds both sides of the board." SF 138 (Maxik); SF 139 (Ishibashi). That a reference "could involve" use of a feature is not sufficient. *Net MoneyIN, Inc.*, 545 F.3d at 1371; *Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, 909 F.3d 398, 405 (Fed. Cir. 2018) ("Prior art that must be modified to meet the disputed claim limitation does not anticipate the claim.").

Likewise, there is no inherent disclosure. For inherency, the missing material must be "necessarily present." *Trintec Indus., Inc.*, 295 F.3d at 1295-96. Dr. Lebby never opined that wavelength conversion on the second surface side of the board was "necessary" in either reference, and indeed, he conceded the opposite. Dkt. 443-16 (Ex. 22) at 235:14-25, 242:17-243:14. This admission is echoed by Feit—it is undisputed that both Maxik and Ishibashi "would operate as a lightbulb without a wavelength conversion member on the back side of the board." SF 140, 141 (both undisputed). In other words, the missing feature is not necessary. This forecloses a finding of inherent anticipation by either reference. Accordingly, as a matter of law, neither Maxik nor Ishibashi anticipates claim 1 and summary judgment is warranted.

Feit's final argument is also wrong.  Feit contends that "triable issues of fact exist" if Nichia's application of the wavelength conversion member term is allowed. Dkt. 483 at 16-17.  Feit specifically points to Nichia's argument that claim element 1.8 does not require the wavelength conversion member to be physically connected between the first and second surface sides, *i.e.*, it permits a "gap."  *Id.*  But this has nothing to do with Nichia's argument that Maxik and Ishibashi do not anticipate claim 1.  Nichia is not arguing that Maxik and Ishibashi fail to teach the claim limitation because of "two separate components" or "a gap layer."  Rather, the evidence conclusively shows *there is nothing at all on the second surface side* of Maxik and Ishibashi.  Feit has simply missed the point.

### 3. Claim 19 Would Not Have Been Obvious

As explained in Nichia's Motion, claim 19 requires that "*all* light emitting element chips mounted on the first surface side of the board *are aligned along a line*." Dkt. 1-1, 16:41-43 (emphasis added).  The parties agree that this means that all light emitting element chips are in a straight line, a point Feit does not contest in its Opposition.  *See* Dkt. 483 at 17-19.  And there is no evidence on which a jury could find that either Maxik or Ishibashi teach, or would have suggested, a lighting device with all chips in a straight line.  Accordingly, Nichia is entitled to summary judgment that claim 19 would not have been obvious.

The references on which Feit relies use curvilinear or radially arranged LEDs or curved boards, not LED chips that are "all" in a straight line. Dkt. 443 at 15-16. The lightbulbs disclosed in these references are shown below, with the printed circuit board containing the LED chips (prior to its insertion in the lightbulb) next to it.



(*Maxik*)                    (*Ishibashi*)

Dkt. 416-41 (Ex. 39) (Maxik), FIGs. 1 and 2; Dkt. 416-40 (Ex. 38) (Ishibashi), FIGs. 1 and 2. While these figures confirm the lack of disclosure, it is also evident from the undisputed facts. *See* SFs 142-145. For instance, Feit admits that "some devices disclosed in Maxik [and Ishibashi] have *curvilinear or radially arranged LEDs* and/or curved boards" and that "in some devices disclosed in Maxik [and Ishibashi] the board in the disclosed lightbulb is curved such that the LED chips on the board *are not in a straight line*." *Id.* (emphasis added). Feit attempts to qualify its admissions by arguing that these features are not "required" by either Maxik or Ishibashi, but identifies no disclosure in either reference of LED chips that are not arranged radially on star-shaped boards, or where chips are "all" in a straight line. *Id.* This is unsurprising given the inventions of Maxik and Ishibashi, which are specifically directed to this curved arrangement.[9] *See* Dkt. 416-41 (Ex. 39), Abstract, 2:54-63; Dkt. 416-40 (Ex. 38), Abstract, ¶ [0008].

Feit argues that this issue should go to the jury so that Feit can attempt to further develop its obviousness case. Feit is wrong. Feit supports its position with attorney argument suggesting that claim 19 might be obvious if the structures in Maxik and Ishibashi were "subjectively manipulate[ed]," "reshape[d]," or "a predictable variation" were implemented. Dkt. 483 at 18-19 (quoting *KSR Int'l Co.*

---

[9] Feit refers to "a flat board with LEDs laid along a line." Dkt. 483 at 18. These are intermediary configurations of a substrate that is inserted into a lightbulb as shown in the figures reproduced above. And even in the intermediary configuration, it is not true that *all* the LEDs are in a straight line.

*v. Teleflex Inc.*, 550 U.S. 398, 401 (2007)).  *But no witness has ever suggested that it would have been obvious to modify the structures of Maxik or Ishibashi in any way.* Dr. Lebby's entire analysis for claim 19 amounted to three sentences:

> Maxik discloses this limitation.  For instance, Maxik discloses in the light emitting devices of Figs. 1 and 2 light emitting element chips 108 mounted on the first surface side of the board 106 that are aligned along a line.  Specifically, the light emitting element chips 108 along any two corresponding longitudinal finger-like projections 116 of the board 106 are aligned along a line commensurate with the length of the corresponding two finger-like projections 116.

Dkt. 416-29 (Ex. 27), ¶ 357; *id.* at ¶ 426 (same for Ishibashi).  Dr. Lebby relied solely on the express disclosure of the references, without modification.[10]  There is no evidence to support Feit's new, hypothetical obviousness challenge.  In any event, Feit is wrong to suggest that Nichia's infringement allegations support such "subjective manipulation."  Dkt. 483 at 18.  As Nichia has repeatedly explained, it accuses Feit's curved filament products based on their commercial configuration.  Dkt. 443 at 15; Dkt. 484-1 at Nichia's Response to SFs 22-24.

Obviousness is Feit's burden and it has not provided clear and convincing evidence on which a jury could find in its favor.  Feit had the opportunity to identify specific teachings in the references showing the features of claim 19, but it did not.  Summary judgment is warranted.

### 4.  Claim 1 is Not Indefinite

Feit gives short shrift to the issue of indefiniteness, ignoring a number of terms

---

[10] A careful reading of Dr. Lebby's argument shows that he never actually argued that "all" of chips mounted on the first surface side of the board "are aligned along a line."  *See id.*  Instead, he suggests that selecting a subset of the "finger-like projections" shows *some* of the LED chips along a line—but not all.  *See id.*  This deficiency was explained by Nichia's expert Dr. Allen.  Dkt. 443 (Ex. 34), ¶¶ 235-236.  Feit's obviousness case for claim 19 was doomed from the outset, and cannot be resuscitated at trial with new, unsupported arguments.

altogether. *See* Dkt. 483 at 19-20. Most importantly, Feit ignores the Court's prior ruling in this issue, in which the Court already rejected the same arguments. *See* Dkt. 443 at 16-20. Feit does not offer any reason for the Court to revisit its ruling.

a. The "wavelength conversion member formed unitarily with a transparent member" term does not render the claims indefinite

Feit does not rebut—or even address—Nichia's arguments with respect to this term. *See* Dkt. 483 at 19-20. That should be the end of the matter.

As explained in Nichia's Motion (Dkt. 443 at 17-18), the Court rejected Feit's indefiniteness arguments and construed this term to mean "a single component that both converts wavelength and allows light to pass through." Dkt. 90 at 10. Feit does not challenge the Court's decision. Dkt. 483 at 19-20. And during discovery, Feit's own expert Dr. Lebby was able to understand and apply the scope of the claim term. *See* Dkt. 443 at 17-18; SF 104. As Dr. Lebby explained, "as I look at Figure 6 … it actually aligns really nicely to the Court's construction of a single component that both converts wavelength and allows light to pass through. So it is a single wavelength conversion member." Dkt. 443-16 (Ex. 22) at 180:2-181:22. The Court should affirm its prior ruling. Dkt. 90 at 10.

b. The "first/second set" terms do not render the claims indefinite

Feit again fails to respond to Nichia's arguments. Dkt. 483 at 19-20. Dr. Lebby opined that the claim terms are indefinite by focusing on the wiring connections (e.g., series vs. parallel). *See* Dkt. 416-29 (Ex. 27), ¶¶ 545-549. The Court rejected this argument during *Markman*. Dkt. 90 at 15 ("The balance of the limitation describes relative placement, not wiring requirements."). Feit does not address this issue in its opposition, so it appears that Feit has abandoned its challenge.

c. The "end portion," "center portion," and "first/second region" do not render the claims indefinite

Rather than substantively respond to Nichia's positions, Feit argues that "this issue should remain open for the jury to address." Dkt. 483 at 19-20. Feit is wrong.

<u>First</u>, the basis for Feit's argument—that Nichia "fail[s] to provide consistent, objective boundaries as to those terms"—is untrue.  Nichia has explained this in other papers.  *See* Dkt. 484 at 26-29 ("[T]he significance of the 'end portions' and 'center portion' terms is their relative position or 'directionality,' not their size.").  Nichia's approach tracks the Court's *Markman* ruling. Dkt. 90 at 8.

<u>Second</u>, Feit's argument is inconsistent with the fact that Feit filed its own motion for summary judgment regarding indefiniteness on these terms.  Dkt. 433 at 23-27.  Indefiniteness under § 112 is a question that is regularly decided without a jury (e.g., at the *Markman* stage), and indeed, this Court already concluded these terms are clear given the relative locations identified in these terms.  Dkt. 90 at 9, 15.

<u>Third</u>, Feit's arguments are inappropriate for a jury.  Neither Feit nor its expert has ever argued that the scope of this term—as construed—is unclear.  *See* Dkt. 443 at 18-19.  It would be improper for Feit to tell the jury that the Court's construction is wrong or should be ignored. Moreover, Feit does not even say what it believes is wrong with the Court's construction or prior findings.  Both Feit's opposition to Nichia's motion and Feit's own motion for summary judgment are silent in this respect.  *See* Dkt. 433 at 23-27; Dkt. 483 at 19-20.  Feit has presented no basis on which a jury could conclude that the claims *as construed* do not have a reasonably certain scope.  *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).  The Court's analysis from *Markman* remains correct. Dkt. 90 at 9, 15.  Feit cannot meet its high burden to show the claims are indefinite.

### 5.  Claim 1 is Enabled by the '734 Patent Specification

Feit's arguments regarding enablement fail as a matter of law.   In its Opposition, Feit recognizes the correct test for enablement—"the specification of a patent must teach those skilled in the art how to make and use the full scope of the claimed invention *without undue experimentation*."  Dkt. 483 at 20-21 (quoting *Alza Corp. v. Andrx Pharms., LLC*, 603 F.3d 935, 940 (Fed. Cir. 2010)) (emphasis added). Feit never developed *any* evidence that experimentation would be necessary, much

less the amount of "experimentation" that would be required, let alone whether it would be considered "undue." Dr. Lebby's invalidity report is silent on the issue, and Feit offers no facts in its Opposition. *See* Dkt. 416-29 (Ex. 27), ¶¶ 517-518; Dkt. 483 at 20-22. As Feit has no evidence to support it on an issue for which it carries the (high) burden, Nichia is entitled to summary judgment. *See Celotex Corp.*, 477 U.S. at 322–23.

Not surprisingly given Feit's silence, the available evidence supports Nichia. "Dr. Lebby agrees that FIG. 6 of the '734 Patent and corresponding portions of the specification describe 'a wavelength conversion member formed unitarily with a transparent member' as that term is used in claim 1 of the '734 Patent." SF 106 (undisputed). FIG. 6 and the corresponding portions of the specification explain that a phosphor is mixed into an epoxy resin (Dkt. 1-1, 7:49-53), and it is undisputed that "[m]ixing a phosphor into a transparent carrier medium, such as resin or glass, is (and was as of the time of invention) well understood in the technical field relevant for the '734 Patent" (SF 111). *See also* SF 109 (undisputed that "[w]avelength conversion is (and was as of the time of invention) well understood…."), SF 112.

Feit argues that the admittedly extensive knowledge of a POSITA is irrelevant (Dkt. 483 at 21), but ignores the undisputed facts that: (i) "[t]he '734 Patent provides *specific examples of resin* that may be used in a wavelength conversion member" (SF 114); and (ii) "[t]he '734 Patent provides *specific examples of phosphor materials* that may be used in a wavelength conversion member" (SF 115) (emphasis added). That is, the knowledge of a POSITA coupled with the teachings of the patent enable claim 1.

On this record, Feit cannot prevail on its enablement defense and summary judgment is proper. Feit's remaining arguments do not change that result.

First, Feit asserts that the "crux" of Dr. Lebby's argument is that (1) the specification does not provide "specific combinations of a resin/phosphor mixture," and (2) the wavelength conversion member terms are unclear. Dkt. 483 at 21 (citing

Dkt. 250-2, ¶ 518).  These opinions do not bear on the amount of experimentation required.  The claim does not require a particular "resin/phosphor mixture," or any particular "light emission wavelength."  In any event, the ratio of resin and phosphor to achieve a light emission wavelength is not the claimed novelty of the invention, and it is undisputed that mixing resin and phosphor to achieve wavelength conversion was well-known.  Thus, Feit cannot establish undue experimentation.

Second, Feit claims that the lack of availability of non-infringing alternatives is relevant to the question of enablement.  Dkt. 483 at 21-22.  It is not.  As Nichia explained, Feit has neither the internal capabilities, nor the necessary relationship with its suppliers, to fully redesign, test, and bring to market purportedly non-infringing bulbs.  *See* Dkt. 443 at 25-27.  Feit's inability to re-design a commercially acceptable lightbulb in or around September 2017 is wholly unrelated to the question of how much experimentation would be required by a POSITA in or around December 2005 to make "a wavelength conversion member formed unitarily with a transparent member."  *See CFMT, Inc. v. Yieldup Int'l Corp.*, 349 F.3d 1333, 1338 (Fed. Cir. 2003) (It is not necessary to "enable one of ordinary skill in the art to make and use a perfected, commercially viable embodiment absent a claim limitation to that effect.").

Finally, Feit incorrectly states that "Nichia's motion addresses only one of the four arguments presented by Feit."  Dkt. 483 at 20 (listing purported bases (i)-(iv)). As to "(i) the portions and regions limitations," Dr. Lebby only provides opinions regarding an alleged lack of written description, not enablement.  Dkt. 416-29 (Ex. 27), ¶¶ 506-510 (opining on whether "a POSA can reasonably conclude that the applicant had possession of the claimed invention").  Feit is confused by a typo in the header of Section VI of Dr. Lebby's report—enablement is addressed in Section VII, which does not include the portions and regions limitations.  *See id.*; Dkt. 443-21 (Ex. 34), ¶ 376 (explaining typographical error in Dr. Lebby's report).  As to "(ii) the board limitation," Dr. Lebby's opinions on this issue were stricken.  Dkt. 272 at

9-10. Nichia addresses "(iii) the wavelength conversion member limitation" here and in its Motion. As to "(iv) the outer periphery limitation," this term is found only in claim 18 and thus irrelevant as Nichia is not moving on that claim.

### 6. The Claims Have Written Description Support

In its Motion, Nichia explained why there is written description support for the "center/end portions" and "first/second regions" terms (claim element 1.1). Dkt. 443 at 21-22. None of Feit's responses implicate relevant factual disputes.

Feit's opposition relies on the faulty premise that *in hac verba* written description is necessary under § 112. *See* Dkt 483 at 23-24. As explained below, Feit is wrong as a matter of law.

This claim element is shown by the rectangular board in the figures:



Dkt. 1-1, FIG. 15 (outline of board in red); *see also id.* at 6:58-61 (noting the profile of the board in Figure 1 is similar to the "rectangular-parallelepiped-shaped silicone resin" above it); Dkt. 443 at 22 (annotated with regions identified). This term was construed to mean "a board with a first region running lengthwise from one end of the board to the center of the board, and a second region running lengthwise from the other end of the board to the center of the board." Dkt. 90 at 9. *Feit does not rebut Nichia's argument that FIG. 15 shows a board, as construed* (*see* Dkt. 483 at 22-24), and no jury could find that the rectangular board shown above and in other figures does not have a center, ends, and first/second regions in between. At most, Feit disputes that the specific portion terms do not appear annotated in the original figures. Dkt. 483 at 24. But it is well settled they do not have to be. *Koito Mfg. Co. Ltd. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1154 (Fed. Cir. 2004).

Indeed, although Feit refers to the annotated figure as "attorney argument," Nichia's expert provided the annotated figure and explained that the annotations "would have been apparent to a person of ordinary skill in the art at the time of the invention based on the patent's disclosure." Dkt. 443-21 (Ex. 34), ¶ 365.

Feit raises two additional arguments, neither of which is relevant or correct. First, Feit argues that Nichia's witnesses "conceded that these terms serve no functional purpose." Dkt. 483 at 22-23. But "functional purpose" is not an element of written description. Moreover, it is untrue. *See* Dkt. 484 at 22. Second, Feit argues that the "specification provides no parameters for describing the boundaries or explaining how to define these claim terms over various types of filaments." Dkt. 483 at 23. This argument has no relevance to written description. Rather, it appears to be a statement regarding definiteness, which is a different area of the law. As addressed in § II(B)(4) above, the claims are definite.

Nichia is therefore entitled to summary judgment as a matter of law.

## C. Feit Cannot Show that the Alleged Non-Infringing Alternatives Were Both Acceptable and Available to Feit

Nichia moved for summary judgment of no non-infringing alternatives on two grounds: (1) as a matter of law, Accused Products cannot constitute non-infringing alternatives; and (2) for the alternatives that are not also Accused Products, Feit cannot meet its burden to show that these alleged designs would have been acceptable to customers and available for Feit to implement in September 2017. As explained below, Feit has not identified any law contrary to that on which Nichia relies, and it has not offered sufficient evidence to sustain its burdens.[11]

On the first point, Nichia argued it was entitled to summary judgment on all

---

[11] For the reasons explained in Nichia's motion *in limine*, Feit should be precluded from relying on alleged alternatives that were not specifically identified in its interrogatory responses. *See* Dkt. 445 at 8-12; *see also Droplets, Inc. v. Yahoo! Inc.*, No. 12-03733, 2021 WL 9038509, at *9 (N.D. Cal. Apr. 27, 2021) (striking opinions on alternatives not disclosed with particularity in interrogatory responses).

alleged non-infringing alternatives that are also Accused Products on grounds that an Accused Product must be assumed infringing for damages purposes. *See* Dkt. 443 at 24-25. Feit responds that "accused products found not to infringe may properly be considered non-infringing alternatives." Dkt. 483 at 26. Feit's argument misses the mark, as none of the Accused Products has been found non-infringing. Nonetheless, Nichia agrees that if this Court were to grant Feit's motion for summary judgment with respect to certain Accused Products, then those products could become alleged non-infringing alternatives if Feit disclosed them in its discovery responses.

On the second point, Nichia argued that Feit cannot meet its burden to show that each of the remaining alleged design-arounds (which were not on the market in September 2017) would have been available to Feit and acceptable to its customers. If the Court finds that Feit has insufficient support on either issue, then summary judgment should be granted. *E.g., Sherwin-Williams Co. v. PPG Indus., Inc.*, No. 17-01023, 2019 WL 7494202, *9 (W.D. Pa. Nov. 12, 2019), *adopted in relevant part*, 2020 WL 1283465 (W.D. Pa. Mar. 18, 2020). And as explained in Nichia's opening brief and below, Feit cannot meets its burden on either point.[12]

On availability, Feit (1) did not dispute Nichia's recitation of the legal standard, or (2) offer *any* evidence to show that *any* of Feit's suppliers had the equipment, know-how, or experience to make *any* of the alleged alternatives. Feit also admitted that Feit has never given its suppliers specific assembly instructions for filament-style LED lightbulbs (SF 68), that Feit and its suppliers have not

---

[12] Feit argues: "Having conceded that numerous designs do not infringe, any quibbles Nichia have [sic] based on their availability and acceptability raise a factual dispute the jury at best [sic]." Dkt. 483 at 27. Feit is wrong on the facts and the law. *First*, Nichia did not concede infringement on any alternatives. *Second*, a concession of infringement would not raise a factual dispute for the jury on availability and acceptability. Regardless of any concessions on infringement, if Feit is unable to sustain its burden of proof on availability or acceptability, then summary judgment is appropriate. *See Grain Processing Corp. v. Am. Maize-Products Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999); *Sherwin-Williams Co.*, 2019 WL 7494202 at *9.

communicated on the manufacture of any Non-Accused Alternatives (SF 70), and

that there is no evidence that Feit's suppliers have done any R&D on how to

implement the proposed Non-Accused Alternatives (SF 69). On these points alone,

Nichia's motion should be granted.

Having no legal or factual support, Feit hangs its hat on Dr. Lebby's labelling

of the redesigns as "simple," and pre-2017 disclosures of allegedly non-infringing

embodiments. Neither can defeat summary judgment. Dr. Lebby's "simple" opinion

does not address Feit's suppliers' capabilities, and the pre-2017 disclosure is

irrelevant to the "availability" question – that is, whether the products were on the

market in 2017, and if not, whether Feit's suppliers could have manufactured them.

*See Grain Processing Corp.*, 185 F.3d at 1353.

Feit likewise gives the acceptability issue short shrift. It alleges that Nichia

used the wrong legal standard and misstates the record, citing exclusively to its

*Daubert* motion directed to Dr. Allen. Dkt. 483 at 26. For the reasons explained in

Nichia's opposition to that motion, Feit is wrong. Dkt. 486 at 7-11. Nichia otherwise

rests on its opening brief on the acceptability issue.

## III.    CONCLUSION

Nichia respectfully requests that the Court grant its Motion, as set forth in the

accompanying proposed order.

Respectfully submitted,

DATED: August 31, 2022          ROTHWELL, FIGG, ERNST &MANBECK P.C.

By: */s/ Robert P. Parker*

ROBERT P. PARKER (*pro hac vice*)

LEWITT, HACKMAN, SHAPIRO, MARSHALL
& HARLAN

By: */s/ Jeffrey A. Kobulnick*

JEFFREY A. KOBULNICK
*Attorneys for Plaintiff Nichia Corporation*