UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-359-GW-Ex | Date | October 12, 2022 |
|---|---|---|---|
| Title | *Nichia Corporation v. Feit Electric Company, Inc.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

PROCEEDINGS:      **IN CHAMBERS - FINAL ORDER ON PLAINTIFF NICHIA CORPORATION'S MOTION TO PRECLUDE EXPERT TESTIMONY OF DR. MICHAEL LEBBY [410]; PLAINTIFF NICHIA CORPORATION'S MOTION TO PRECLUDE EXPERT TESTIMONY OF DAWN HALL [413]; PLAINTIFF NICHIA CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF INFRINGEMENT AND ON DEFENDANT'S AFFIRMATIVE DEFENSES OF INVALIDITY AND NON-INFRINGING ALTERNATIVES [416]; PLAINTIFF NICHIA CORPORATION'S MOTION TO PRECLUDE IMPROPER CLAIM CONSTRUCTIONS [420]; PLAINTIFF NICHIA CORPORATION'S MOTION IN LIMINE TO PRECLUDE FEIT FROM PRESENTING ANY EVIDENCE OR ARGUMENTS BASED ON INFORMATION WITHHELD DURING FACT DISCOVERY, UNTIMELY PRODUCED, OR CONTRARY TO COURT ORDER [425]; DEFENDANT FEIT ELECTRIC COMPANY, INC.'S DAUBERT MOTION TO EXCLUDE CERTAIN PORTIONS OF THE EXPERT OPINIONS OF MR. MICHAEL GERSHOWITZ [426]; DEFENDANT FEIT ELECTRIC COMPANY, INC.'S DAUBERT MOTION TO EXCLUDE CERTAIN PORTIONS OF THE EXPERT OPINIONS OF DR. GARY ALLEN [427]; DEFENDANT FEIT ELECTRIC COMPANY, INC.'S MOTION FOR SUMMARY JUDGMENT [433]**

Attached hereto is the Court's *redacted* Final Order on the above-entitled Motions.

Initials of Preparer      JG

***Nichia Corporation v. Feit Electric Company, Inc.,*** Case No. 2:20-cv-00359-GW-(Ex)
Final Order on Motions for Summary Judgment and Related Motions (redacted)[1]

## I. __INTRODUCTION__

In this patent infringement action, Plaintiff Nichia Corp. ("Plaintiff") accuses Defendant Feit Electric Company, Inc. ("Defendant") of infringing U.S. Patent No. 9,752,734 ("the '734 Patent"). Complaint, Docket No. 1. Before the Court are the parties' competing motions for summary judgment concerning infringement and validity, as well as a variety of related motions.[2]

For the reasons stated below, the Court rules on each motion as summarized in the following table.

| Motion | Opp | Reply | Ruling |
|---|---|---|---|
| Plaintiff's Motion to preclude Lebby's testimony ("Lebby Mot.") (Docket Nos. 410, 442) | Defendant's Opposition ("Lebby Opp.") (Docket Nos. 468, 481) | Plaintiff's Reply ("Lebby Reply") (Docket Nos. 498, 519) | GRANTED-IN-PART, DENIED-IN-PART |
| Plaintiff's Motion to preclude Hall's testimony ("Hall Mot.") (Docket Nos. 414, 441) | Defendant's Opposition ("Hall Opp.") (Docket Nos. 469, 482) | Plaintiff's Reply ("Hall Reply") (Docket Nos. 495, 517) | GRANTED-IN-PART, DENIED-IN-PART |
| Plaintiff's MSJ of infringement and on Defendant's affirmative defenses of invalidity and non-infringing alternatives ("P-MSJ") (Docket Nos. 416, 443) | Defendant's Opposition ("P-MSJ Opp.") (Docket Nos. 472, 483) | Plaintiff's Reply ("P-MSJ Reply") (Docket No. 501) | GRANTED-IN-PART, DENIED-IN-PART |
| Plaintiff's request for evidentiary ruling (Docket No. 505) | Defendant's Response (Docket No. 542) | Plaintiff's Reply (Docket No. 555) | SUSTAINED-IN-PART, OVERRULED-IN-PART |
| Plaintiff's MIL to preclude improper | Defendant's Opposition ("CC | Plaintiff's Reply ("CC Reply") | GRANTED-IN-PART, DENIED-IN-PART |

---

[1]      The Court has reviewed the parties' proposed redactions to the Tentative Order and hereby approves and incorporates them into the publicly filed version of the Final Order.

[2]      The Court advises the parties it will not consider 25-page motions in limine and responses for any motions in limine filed in advance of the final pretrial conference. The parties are ordered to review the Court's standing Final Pretrial Order and to be judicious with any future requests. Based on the current filings, the Court is considering imposing a page limit for trial MILs and responses (no replies).

| | | | |
|---|---|---|---|
| claim construction ("CC MIL") (Docket Nos. 420, 444) | Opp.") (Docket No. 488) | (Docket Nos. 523, 540) | |
| Plaintiff's MIL to preclude information withheld during fact discovery ("Discovery MIL") (Docket Nos. 425, 445) | Defendant's Opposition ("Discovery Opp.") (Docket Nos. 491, 511) | Plaintiff's Reply ("Discovery Reply") (Docket Nos. 526, 539) | GRANTED-IN-PART, DENIED-IN-PART |
| Defendant's Motion to exclude Gershowitz ("Gershowitz Mot.") (Docket No. 426) | Plaintiff's Opposition ("Gershowitz Opp.") (Docket Nos. 462, 485) | Defendant's Reply ("Gershowitz Reply") (Docket No. 506) | DENIED |
| Defendant's Motion to exclude Allen ("Allen Mot.") (Docket Nos. 427, 447) | Plaintiff's Opposition ("Allen Opp.") (Docket Nos. 465, 486) | Defendant's Reply ("Allen Reply") (Docket Nos. 509, 522) | DENIED |
| Defendant's MSJ of noninfringement and invalidity ("D-MSJ") (Docket No. 433) | Plaintiff's Opposition ("D-MSJ Opp.") (Docket Nos. 458, 484) | Defendant's Reply ("D-MSJ Reply") Docket No. 510 | DENIED |

## II.   <u>BACKGROUND</u>

The '734 Patent, which claims a "Light Emitting Device," was issued on September 5, 2017.  Plaintiff asserts twenty-one claims of the '734 Patent against Defendant's filament-style LED lightbulbs.  Complaint ¶¶ 5-6, 8, 11.  According to the Plaintiff, "[a] filament-style LED lightbulb is a lightbulb that is designed to resemble a traditional incandescent lightbulb with filaments for aesthetic or light distribution purposes, but it produces its light by LEDs [("Light Emitting Diodes")].  *Id.* ¶ 6. Claim 1 of the '734 Patent recites:

1.     A light emitting device comprising:
a board having end portions and a center portion therebetween in a
longitudinal direction, the board having a first surface on a first
surface side thereof and a second surface on a second surface
side thereof, the second surface being an opposite side to the
first surface, the first surface including a first region and a
second region, the first region extending from the center portion
of the board to one of the end portions, the second region
extending from the center portion of the board to the other of
the end portions;
a plurality of light emitting element chips mounted on the first surface

side of the board;

a wavelength conversion member formed unitarily with a transparent
member that seals the plurality of light emitting element chips;

a transparent bulb that encloses the board and the plurality of light
emitting element chips;

support leads that secure the plurality of light emitting element chips
inside the transparent bulb;

a support base that can be threadedly engaged with a conventional light
bulb socket along a socket axis; and

a pair of metal plates protruding at both ends of the wavelength
conversion member,

wherein the wavelength conversion member is provided on the first
surface side and the second surface side, the wavelength
conversion member is elongated in the longitudinal direction
when viewed in plan view of the first surface side of the board,
wherein a first set of the light emitting element chips are
mounted on the first region and arranged from the center portion
of the board to the one of the end portions,

wherein a second set of the light emitting element chips are mounted on
the second region and arranged from the center portion of the
board to the other one of the end portions, and

wherein the pair of metal plates are electrically connected with the
support base via the support leads.

'734 Patent, Claim 1.  The '734 Patent includes two other independent claims, Claims 26 and 27,
which contain limitations similar to those disclosed in Claim 1.  The remaining claims of the '734
Patent are dependent, and they depend directly or indirectly from Claim 1.

The Court issued its *Markman* Order on February 19, 2021.  Docket No. 90.  During the
*Markman* proceedings, Plaintiff explained that "the novelty [of the claimed invention] is in the
configuration [of] all the different components and how they interact together."  Docket No. 82 at
9:19-22; *see also id.* at 10:3-4 ("What is different about this invention is how those components
are configured and arranged and interact together."); Docket No. 87 (Supp. *Markman* Brief) at 2
(explaining the "novel 'packaged' design" is what sets the invention apart from prior art).

This case has now reached the summary judgment stage.

### III.   LEGAL STANDARD

1. *Daubert* Motions

Rule 702 allows expert testimony where "scientific, technical, or other specialized
knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."
Fed. R. Evid. 702(a).  A party who plans to rely on expert testimony must disclose it and comply

with the requirements of Rule 26(a)(2), including providing a written expert report.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93, 597 (1993), the Supreme Court explained that, in applying Rule 702, "the trial judge plays a 'gatekeeping role,' which 'entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1295 (Fed. Cir. 2015). "The Court emphasized that the focus 'must be solely on principles and methodology, not on the conclusions that they generate.'" *Id.* (quoting 509 U.S. at 595). "Under these rules, a district court may exclude evidence that is based upon unreliable principles or methods, legally insufficient facts and data, or where the reasoning or methodology is not sufficiently tied to the facts of the case." *Id.* at 1295.

### 2. Summary Judgment

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). A fact is material when, under the governing law, the resolution of that fact might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex*, 477 U.S. at 322–23, and the court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007).

To meet its burden, "[t]he moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). There is no genuine issue for trial where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party. *Id.* at 587.

4

IV.   **ANALYSIS**

Because the Court's rulings on the parties' various motions in limine and *Daubert* motions may impact its rulings on the competing motions for summary judgment, the Court considers the MILs and *Daubert* motions first, and the MSJs second.

    A.   Plaintiff's Motion to Preclude Lebby

        1.   Summary of Arguments

First, Plaintiff argues that Defendant's technical expert, Dr. Michael Lebby, should be precluded from testifying about how the accused products are made because the claims do not require a particular manufacturing process; therefore, this is irrelevant and speculative.  Lebby Mot. at 1-2.  Lebby opined that the accused products do not contain the claimed "wavelength conversion member formed unitarily with a transparent member" that is "provided on both the first side and second side" of the board to "seal[] the plurality of light emitting element chips."  *See* '734 Patent, Claims 1, 7, 27.  According to Lebby, the relevant component in the accused products "was manufactured by separately extruding the encapsulant on each side of the board," so it does not meet this limitation.  Lebby Mot. at 2.  Lebby reasons that the two-part encapsulant is not a single component.  *Id.* at 2-4.  But Plaintiff argues that, because Lebby does not know how the accused products are made, this opinion is speculative and should be excluded.  *Id.* at 4-5.

Second, Plaintiff argues that Lebby's opinions regarding non-infringing alternatives are not supported by any facts or data suggesting the proposed alternatives could be made, and he does not opine that any of the proposed alternatives are acceptable.  *Id.* at 2, 6-8.  Lebby never spoke to Defendant's suppliers regarding the possibility of producing the proposed alternatives, but instead surmises it would be "simple."  *Id.* at 8-9.  Further, as to proposed alternatives, Lebby does not opine that alternatives A, B, and E are acceptable; and as to the others, although he offers rebuttal testimony, he does not opine affirmatively that the alternatives are acceptable.  *Id.* at 12.  He also admits he did not examine why users would buy different types of bulbs, making it impossible for him to opine that any alternative would be acceptable to consumers.  *Id.* at 14.

Defendant responds that Plaintiff's challenges go to weigh, not admissibility, because they are disagreements with Lebby's overall opinions.  Defendant argues that Lebby conducted a thorough analysis to concluded that the wavelength conversion/transparent member is two components (one on each side of the board), not one.  *See* Lebby Opp. at 6.

Defendant argues that this is most readily observable in the products with an obvious gap or break "separating the top and bottom members," as shown below.  *Id.*



Defendant contends that Lebby arrived at his two-component conclusion after inspecting the products and did not need to consult with the manufacturers to understand what was in front of him.  *Id.* at 8-9.  Defendant maintains that Lebby may opine on the manufacturing process based on his four decades of experience in the lighting industry, during which he saw this process and its results "countless times."  *Id.* at 9.  Defendant also argues that Lebby's testimony regarding the extrusion method for forming two separate members is not irrelevant because it "explains the presence of two layers as well as, in some instances, the corresponding gap extending along the entire side of the board."  *Id.* at 13.  Because understanding this process relates to whether the accused products have a single component or two components, Defendant contends it is relevant. *Id.*

Regarding non-infringing alternatives, Defendant responds that Plaintiff's challenge is not credible where Plaintiff has already conceded that the novelty of the '734 Patent "'is in the configuration [of] all the different components and how they act together,'" *i.e.*, the invention did not disclose any new components, methods, or parts.  *Id.* at 16 (quoting Docket No. 90 at 9).  In fact, Defendant notes that Plaintiff admitted certain embodiments in the '734 Patent depict non-infringing alternatives.  *Id.* (citing Docket No. 82 at 20:6-10; Docket No. 76 at 40:10-12).  Defendant states that Lebby relied on design arounds that were available based on configurations in the prior art.  *Id.* at 17-18.  At most, Defendant argues that Plaintiff's "disagreement that such alternative designs utilizing already known components—indeed, the same components that Feit Electric's suppliers already utilize in existing products—are somehow not 'easy' or 'simple' to implement go to weight, not admissibility."  *Id.* at 20.  Finally, Defendant argues that Lebby provided proper rebuttal to Plaintiff's expert's testimony concerning acceptability of the non-infringing substitutes.  *Id.* at 21-22.  Defendant contends that any alleged shortcomings (*e.g.*, difference in cost appearance) are topics for cross-examination.  *Id.* at 22.

In reply, Plaintiff argues that Lebby may not rely on Defendant's unverified interrogatory response concerning how the encasement is made, especially because Defendant does not even

know how the lightbulbs are manufactured.  Lebby Reply at 3-4.  Plaintiff also rejects Defendant's arguments that Lebby's opinions on the availability of non-infringing alternatives may properly be based on "common sense."  *Id.* at 10.  With respect to acceptability, Plaintiff observes that Defendant did not respond to the argument that Lebby failed to address alternatives A, B, and E. *Id.* at 13.

2.  Analysis

*Manufacturing Process*.  The first dispute relates to the Court's claim construction for "a wavelength conversion member formed unitarily with a transparent member."  In the *Markman* Order, the Court construed this limitation as "a single component that both converts wavelength and allows light to pass through."  Docket No. 90 at 10.  In response to Plaintiff's infringement claims, Lebby opines that, *inter alia*, the accused products do not meet this limitation because they do not have a "single component," but rather two separate components, one on each side of the board.  *See* Docket No. 481-6 ("Lebby Supp. Report") ¶ 95.  Plaintiff challenges only those portions of Lebby's opinion relating to the purported "manufacturing process" for this feature. Lebby relies on a statement Defendant made in an unverified interrogatory response to observe that, the accused products "have 'an extruded resin mixture applied independently and separately on each side such that there are two separate units on opposing sides, not a single unit as claimed.'" *Id.* ¶ 96.  "[B]ased on this manufacturing process," Lebby concludes "that the two alleged members cannot ever be considered 'a single component' that is also provided on the 'first surface side and the second surface side of the board.'"  *Id.*; *see also id.* ¶ 97 (referencing video showing example of such an extrusion process).

Defendant's unverified interrogatory response provides an insufficient factual basis on which Lebby may rely to form an opinion concerning the specific manufacturing process of the accused products.  Although it is "[t]rue [that] an expert's opinion is not per se unreliable because it relies on some unverified or inaccurate information provided by the expert's client," it is "equally true" that "[a]ssumptions based on conclusory statements of the expert's client, rather than on the expert's independent evaluation are not reasonable."  *Grasshopper House, LLC v. Clean & Sober Media LLC*, No. 2:18-CV-00923-SVW-RAO, 2019 WL 12074086, at *3 (C.D. Cal. July 1, 2019) (citation and quotations omitted).

Nothing suggests that Lebby conducted an independent evaluation concerning the manufacturing process.  Rather, his report only incorporates the unverified interrogatory response.

But "[w]hen discovery responses are not verified or signed under oath courts have repeatedly determined the unverified discovery may not be considered by a court evaluating a motion for summary judgment." *Nash-Perry v. City of Bakersfield*, No. 1:18-CV-01512 JLT, 2021 WL 3883681, at *5 (E.D. Cal. Aug. 31, 2021) (collecting cases). Thus, Lebby may not rely on the unverified response to establish the specific manufacturing process and provide opinions on it by, *e.g.*, referring to a video demonstrating that type of process generally. Nesting the unverified response within the expert report does not make it fair game. *Cf. Howmedica Osteonics Corp. v. Tranquil Prospects, Ltd.*, No. 3:02–CV–321, 482 F. Supp. 2d 1045, 1057 (N.D. Ind. March 28, 2007) ("An unsworn and unverified expert report is not Rule 56 evidence that may be relied upon to overcome a motion for summary judgment.").[3] This ruling does not preclude Lebby from providing opinions regarding his own examination, *see, e.g.*, Lebby Supp. Report ¶¶ 106-107, so long as he does not state as fact that he understands that the accused products were manufactured as disclosed in the unverified response. Because Lebby's opinions concerning the purported manufacturing process are not "based on sufficient facts or data," they are inadmissible. Fed. R. Evid. 702. Lebby may testify about the other reasons he believes the accused products fail to meet this limitation. *See, e.g.*, Lebby Supp. Report ¶¶ 98-115. Accordingly, the motion is granted as to Lebby's manufacturing opinion.

*Availability and Acceptability*. The second dispute relates to Lebby's opinions concerning non-infringing alternatives. Non-infringing alternatives are typically most relevant to proving lost profits. *See Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1284 (Fed. Cir. 2017). Lost profits are not at issue in this case because Plaintiff does not sell any products embodying the invention; thus, Plaintiff seeks only a reasonable royalty. Unlike in the lost-profits context, a reasonable royalty may still be awarded where some non-infringing alternatives exist. Where "problems with a non-infringing alternative [may] limit its attractiveness to consumers," this "would simply reduce the profits associated with the alternative relative to the profits associated with the patented technology, and would end up being accounted for [by reducing] the reasonable royalty number itself." *Open Text S.A. v. Box, Inc.*, No. 13-CV-04910-JD, 2015 WL 393858, at *4 (N.D. Cal. Jan. 29, 2015). Whether a proposed alternative "was in fact 'available'" to the

---

[3] Although Lebby's background, which includes experience relating to LED manufacturing (*see* Lebby Supp. Report ¶¶ 9-10, may provide a basis for Lebby to surmise how the accused component were manufactured based on his own physical inspection, he does not offer this opinion. Rather, he recites the type of manufacturing process as a fact that was provided to him, and then offers opinions based on that unverified fact. This he may not do.

accused infringer during the relevant period of infringement, and whether "consumers would consider [it] an acceptable substitute" are questions of fact. *Grain Processing Corp. v. Am. Maize-Prod. Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999).

The Court finds Plaintiff's challenge concerning availability unpersuasive. Lebby opines that Dr. Allen, Plaintiff's expert, is wrong to claim that the proposed non-infringing alternative designs were "unavailable" to Defendant. Lebby Supp. Report. ¶ 160 ("I disagree with Dr. Allen's assertions that any of the proposed alternative designs were 'unavailable' to Feit Electric."). Suggesting this opinion is insufficient to offer an opinion on availability is a matter of semantics: by saying Allen is wrong to conclude the products are unavailable, Lebby is saying they *are* available. To reach this opinion, Lebby relies on the following facts: Defendant's business relationships with its contract manufacturers, the experience of those manufacturers in designing and manufacturing filament-style LED bulbs and components; evidence suggesting that Defendant "could easily work with its contract manufacturers to design and implement any one of the alternative designs discussed below" (such as the fact that Defendant had previously requested other design changes); the simplicity of the technology, with each individual component well known since at least 2005; and the fact that many of the redesigns constitute "minor modifications to existing commercial products." *Id.* ¶¶ 160, 165. Lebby then provides rebuttal opinions concerning each proposed redesign labeled A through L. *See id.* ¶¶ 166-187.

The Court finds Plaintiff's challenge concerning acceptability unpersuasive, except with respect to proposed designs A, B, and E. In his rebuttal report, when describing those three designs, Lebby does not comment on whether and to what degree they would be comparable to the claimed invention and therefore acceptable. *See* Lebby Supp. Report ¶¶ 166-167, 168, 174. To the extent Plaintiff disagrees with Lebby's conclusions that the other redesigns would achieve the same lighting effects, *i.e.*, be acceptable, *e.g.*, because they would require more boards, be more expensive, be unattractive, etc., these are matters that may be tested on cross-examination. *See, e.g.*, *id.* ¶ 164 (opining that such factors "are not materially affected by numerous variations to the claimed components"); *ActiveVideo v. Verizon Communs., Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012) (disagreement with underlying factual assumptions and conclusions reached by expert goes to weight, not admissibility).

Accordingly, the motion is **GRANTED** as to Lebby's manufacturing process opinions and **DENIED** as to Lebby's non-infringing alternatives opinions, except with respect to the

acceptability of alterntives A, B, and E.

      B.  <u>Plaintiff's Motion to Preclude Hall</u>

          1.  <u>Summary of Arguments</u>

      Plaintiff moves to exclude reasonable royalty and licensing-related opinions offered by Defendant's damages expert, Dawn Hall.  Plaintiff moves to exclude Hall's opinion that a minimal reasonable royalty applies since Defendant could have accessed a non-infringing alternative in as little as *three to six months*, arguing there is no evidence to support this timeframe.  Hall Mot. at 2, 6-8.  Plaintiff also argues that Hall's reasonable royalty analysis fails to account for the difference in market value between the accused products and proposed next-best alternative; fails to address transaction costs of switching; and erroneously treats some accused products as non-infringing alternatives.  *Id.* at 2, 9-13.  Additionally, Plaintiff argues that Hall's testimony regarding the technical comparability of licensing agreements should be excluded because she is not competent to provide these opinions.  *Id.* at 3, 13-18.

      Defendant responds that Hall properly analyzed non-infringing alternatives, but even if the Court strikes the two paragraphs containing Hall's conclusion that it would take 3-6 months for Defendant to switch to an alternative, her many other opinions should stand.  Hall Opp. at 4.  Substantively, Defendant argues that, to arrive at her conclusion, Hall relied on the alternative designs discussed in Lebby's rebuttal report.  *Id.* at 5, 11-12.  Hall also relied on conversations with Defendant's COO and in-house legal counsel responsible for licensing to help inform her opinions regarding the cost for non-infringing alternatives and time to market.  *Id.* at 5-6.  Further, Hall relied on Plaintiff's 30(b)(6) witness testimony confirming that certain variations (*e.g.*, Figure 14 of the '738 Patent) are non-infringing.  *Id.* at 6.  Defendant also contends that Hall's reliance on certain accused products as non-infringing alternatives goes to weight, not admissibility, because Plaintiff's list of accused products is overbroad and Defendant is entitled to prove that certain of those products are non-infringing.  *Id.* at 14-16.  Finally, Defendant argues that, in conducting her comparative licensing analysis, Hall did not engage in any comparative technical analysis of the '734 Patent or other licensed patents.  *Id.* at 19-20.  Defendant adds that, given Plaintiff's damages expert's reliance on the Nichia-GVL settlement agreement, it was proper for Hall to identify a flaw in that agreement, *i.e.*, Plaintiff's expert did not account for the fact that the agreement covered six patents whereas this suit involves only the '734 Patent.  *Id.* at 23.

      In reply, Plaintiff clarifies that it seeks to exclude only those opinions found in paragraphs

19, 140-146, 147 (bullet 8) (collectively, the "3-6 month" opinion), and 110 (apportionment examples), as well as opinions concerning the technical comparability of the ███ patents and treating any accused products as non-infringing alternatives. Hall Reply at 1. Plaintiff argues that these opinions by a damages expert fail where she did not rely on a technical expert to inform the bases of her opinions. *Id.* at 4. Regarding comparability of the ███ patents, Plaintiff argues that Hall could not have relied on Lebby to adopt this underlying proposition because Lebby did not take any positions regarding the ███ case; and in any event, Hall's report does not purport to have relied on Lebby for this. *Id.* at 7-8. Regarding the suitability of the alleged non-infringing alternatives, Plaintiff argues that Hall should not be able to rely on Lebby's rebuttal opinions because they do not affirmatively address suitability. *Id.* at 10. Because no technical witness provided such an opinion on which Hall could rely, Plaintiff argues her resulting damages analysis fails. *Id.* at 10-11. Plaintiff reiterates that Hall should not be able to provide speculative apportionment examples in support of her contention that Plaintiff's expert failed to apportion regarding the GVL settlement. *Id.* at 14. Finally, Plaintiff argues that Hall's opinions that are contrary to law, including that accused products can serve as non-infringing alternatives, should be excluded. *Id.* at 16-17.

### 2. Analysis

If a patentee proves infringement, it is entitled to damages of no less than "a reasonably royalty for the use made of the invention by the infringer." 35 U.S.C. § 284. A reasonable royalty is typically calculated based on a hypothetical negotiation between the parties at the time the infringement began. *See ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 868 (Fed. Cir. 2010). The *Georgia-Pacific* factors commonly guide this analysis to ensure that the damages inquiry "concentrate[s] on compensation for the economic harm caused by infringement of the claimed invention" only. *Id.* at 869 (citing *Georgia–Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)). One relevant factor is "[t]he utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results." *Id.* at 1120. This is important because an accused infringer "would have been in a stronger position to negotiate for a lower royalty rate knowing it had a competitive noninfringing device" at its disposal. *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1571–72 (Fed. Cir. 1996).

*3-6 Months Opinion.* Hall opines that the reasonable royalty should be minimal because non-infringing alternatives would have been available to Defendant in 3-6 months, so Defendant

would have been unwilling to pay a high royalty to Plaintiff. Although it is common for damages experts to rely on technical experts for the factual predicates that underly their economic analyses, *DataQuill Ltd. v. High Tech Computer Corp.*, 887 F. Supp. 2d 999, 1026 (S.D. Cal. 2011), the Court agrees with Plaintiff that Hall cites no underlying factual basis for arriving at her 3-6 month-to-production opinion. In her report, Hall notes that she "understand[s] from Dr. Lebby that there were multiple design-around alternatives available to [Defendant] at the time of the hypothetical negotiation," and Lebby opined each "would be simple and easy to implement," with no extra manufacturing costs. *See* Docket No. 441-1 ("Hall Report") ¶ 19. She then states, "*I understand* that it would take [Defendant's] contract manufacturers no more than three to six months to implement any of the multiple design-around alternatives." *Id.* (emphasis added); *see also id.* ¶¶ 145, 147 (bullet 8) (restating 3-6 months opinion).

The fact that Hall prefaces her "3-6 month" opinion with "I understand" suggests she is relying on someone with technical knowledge to arrive at this predicate fact, however no witness in this case, technical or otherwise, provided such testimony. Hall may properly understand the existence of proposed design arounds and that each was relatively simple from speaking with Lebby, but she may not opine that switching to any one of these alternatives could be accomplished in 3-6 months. Because Hall lacks the technical expertise to offer such an opinion, and no factual basis supports it, this opinion must be excluded under Rule 702.

To be clear, Hall may rely on what she learned from Lebby and Defendant to inform her opinion that Plaintiff's proposed reasonable royalty is overstated (*e.g.*, with the simple non-infringing alternatives available and no additional costs for simple design arounds, Defendant would have been in a relatively strong bargaining position and therefore would have rejected Plaintiff's proposed royalty rate), but she may not state as fact that this could have been accomplished in 3-6 months. Accordingly, the motion is granted as to the 3-6 months opinion (*i.e.*, ¶¶ 19, 145, and 147 (bullet 8)).

█████ *Agreements Comparability*. Hall opines that Plaintiff's damages expert "fails to properly establish the comparability and relevance of the two █████ agreements to the reasonable royalty" in this case. Hall Report ¶ 89. In support, under a heading titled "The █████ Agreements Do Not Cover Comparable Technology," Hall explains that she understands from Lebby that the '734 Patent "is in the same field" as the patents in the █████ agreements, but she believes Plaintiff's expert does not establish overlapping functionality, which is necessary to

compare the economic importance of the licensed patents with the asserted patent. *Id.* ¶ 100.  The Court will grant-in-part the motion on this ground because, admittedly, Hall is no technical expert. *See* Docket No. 441-2 (Hall Dep. Tr.) at 59:8-20 ("I'm not a technical expert.  We can get that out of the way.").

Specifically, Hall may not offer opinions such as, "the ███ agreements do not cover comparable technology."  Hall may, however, state her understanding that conducting an overlapping functionality analysis would be important to enable comparison of the relative economic importance of what technology was licensed versus what technology is subject to the hypothetical negotiation, and that she believes Plaintiff's expert did not gather this information before proposing a royalty rate.  But she may not conduct that functionality analysis herself, or intimate that anyone did so and explained it to her when there is nothing in the record to support this.  Although nothing necessarily prevents Hall from relying on Lebby's statements from another case about the ███ patents, Lebby's observation that the patents are from the same field does not provide a sufficient technical foundation to allow Hall to opine on the technical similarities and differences between the ███ patents and the '734 Patent. *See* Fed. R. Evid. 702(b).

*Acceptability of Alternatives.*  The Court's acceptability analysis concerning Lebby is relevant here and is incorporated by reference.  To the extent Hall relies on Lebby's opinions concerning acceptability, she may use his factual conclusions as a basis to form her rebuttal opinion that Plaintiff's reasonable royalty calculation is overstated.[4]  As stated, Hall may not provide her own independent technical analysis concerning the similarity between a given alternative and the device claimed in the '734 Patent.  Plaintiff's damages expert relies on Plaintiff's technical expert to distinguish the proposed alternatives, and in turn, Hall relies on Lebby's criticism of Plaintiff's technical expert to state that Plaintiff's damages expert's reliance on those views undermines the proposed reasonable royalty.  Questions relating to cost, quality, etc. are matters appropriate for cross-examination; however, in response to any such questions, Hall will have to reiterate that she is not a technical expert and cannot provide substantive analysis beyond relying on what Lebby explained.

*GVL Settlement Apportionment.*  Hall criticizes Plaintiff's damages expert for failing to "apportion the value among the various patents or patent families" asserted in the Nichia-GVL

---

[4] As stated with respect to Lebby, this ruling does not apply to Lebby's proposed designs A, B, and E, for which Lebby offered no opinion concerning acceptability.

litigation or explain why the royalty rate for six patents at issue there should result in the same royalty rate for one patent at issue here. Hall Report ¶ 110. To demonstrate the perceived problem with lack of apportionment, Hall provides two scenarios, one that assumes the '734 Patent accounted for half of the royalty rate in the GVL settlement agreement, and the other where it accounted for 20% of the royalty rate. *Id.* Although Defendant says Hall provides these scenarios as "illustrative," this is improper because they are speculative. *See* Fed. R. Evid. 702. Absent some foundation for providing these scenarios, such as a technical explanation from Lebby explaining the value of each patent in GVL, including the '734 Patent, this testimony runs the risk of confusing the jury that it is based on something. Although Hall may opine that Plaintiff's expert failed to apportion the GVL royalty rate among the six patents in *any* way, she may not provide speculative numbers to illustrate what reasonable royalty figures would result from random apportionment. Accordingly, the motion is granted as to the specific percentages and amounts Hall used to illustrate the problem with lack of apportionment; it is denied to the extent Hall will opine on the conceptual problem with Plaintiff's expert's analysis.

*Accused Products as Non-Infringing Alternatives*. The parties dispute whether Hall may opine that certain accused products are actually non-infringing alternatives, to support her reasonable royalty analysis. It is well settled that, to analyze the hypothetical negotiation at the time of infringement, "[t]he hypothetical negotiation [] assumes that the asserted patent claims are valid and infringed." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009). Although Hall assumes the '734 Patent is valid and infringed on some level, she seeks to carve out certain accused products as potential non-infringing substitutes.

Because this is a factual matter that must be decided by the jury, the Court concludes that Hall's opinion may be permissible with an appropriate disclaimer from her and/or a possible limiting instruction. For example, if Hall wants to testify, based on Lebby's analysis, that products with "gaps in the wavelength conversion member" provide a viable non-infringing alternative for purposes of reducing the reasonable royalty, it must be made clear to the jury that this opinion is helpful *only* if they first find such products non-infringing. For example, counsel could ask Hall, "I understand that you have included products accused of infringing as potential non-infringing alternatives; is it correct to say, that if the jury finds these products non-infringing, they factor into your reasonable royalty analysis? And if the jury finds them infringing, is it correct to say that such products cannot be considered non-infringing alternatives and thus would become irrelevant

to your analysis?"  This would strike a balance between Plaintiff's accusations and Defendant's ability to counter infringement at trial.  *See, e.g.*, *Icon Outdoors, LLC v. Core Res., Inc.*, No. CIV.A. RDB-11-2967, 2013 WL 2476392, at *19 (D. Md. June 7, 2013) ("the [purported non-infringing alternative] may not matter in determining lost profits damages, depending on whether a jury determines that [it] infringes the [asserted] Patent"); *cf. Dane Techs., Inc. v. Gatekeeper Sys., Inc.*, 135 F. Supp. 3d 970, 989 (D. Minn. 2015) (accused infringer "not entitled to summary judgment because it is unknown whether accused infringer's [purported] noninfringing alternatives are in fact noninfringing" until that matter is decided at trial).

Where "[i]t cannot be determined at this stage whether the [products] [the accused infringer] identifies as noninfringing are in fact noninfringing," then "this issue is properly left for the fact finder's resolution at trial." *Icon Outdoors*, 2013 WL 2476392 at *19.  The Court will not preclude Defendant from presenting an if-then argument concerning non-infringement and resulting non-infringing alternatives (*i.e.*, if you find no infringement as to these products, you can consider whether they are non-infringing alternatives).  Precluding Defendant from making this argument could prejudice Defendant if, for example, the jury finds non-infringement as to those accused products, but Defendant was precluded at trial from making any reasonable royalty-related arguments about the impact of those non-infringing products.  It could necessitate a new trial on damages, a result the Court and the parties should seek to avoid.

Accordingly, Plaintiff's Motion to exclude Hall is **GRANTED-IN-PART** and **DENIED-IN-PART**.  The parties shall meet and confer to discuss the proposed line of questioning and the specific accused products at issue in Hall's testimony, which may be considered to support her point only if Defendant defeat's Plaintiff's infringement claim.  To the extent agreement is not reached on how these questions may be appropriately limited and the if-then concept presented clearly to the jury, the parties may file a joint report when trial MILs are due setting forth their respective positions on any remaining dispute (*e.g.*, whether a limiting instruction is warranted).

C.  Plaintiff's MIL to Exclude Improper Claim Construction

Plaintiff moves in limine to exclude what it deems Defendant's untimely new claim constructions, or improper claim constructions that are contrary to the Court's *Markman* Order. *See generally* CC MIL; CC Opp.; CC Reply.  The Court rules on each challenge as follows. Where the challenge is denied, Lebby may testify as specified, but only to the extent he is not providing a new or conclusory opinion.  *See* Fed. R. Civ. P. 26(e); Fed. Rule Evid. 702.

| Limitation[5] | Defendant's Alleged New Construction | Plaintiff's Position | Court's Ruling |
|---|---|---|---|
| "a first/second set of the light emitting chips are mounted on the first/second region" | This limitation requires the wiring portions to be mounted to the board. | There is no mounting requirement for the wiring portions. | As stated in the *Markman* Order, plain and ordinary meaning applies, and the limitation does not impose wiring requirements. *See* Docket No. 90 at 15. GRANTED |
| "support leads that secure the plurality of light emitting element chips inside the transparent bulb" | This limitation requires direct and exclusive support. | There is no requirement concerning the degree of support. | This limitation was not raised during the *Markman* proceedings. "Given that the time for claim construction has passed [*see* Docket No. 90], all unconstrued claims shall have their plain and ordinary meanings." *Broadcom Corp. v. Emulex Corp.*, No. CV 10-03963 JVS ANx, 2011 WL 13130705, at *4 (C.D. Cal. Aug. 10, 2011). Lebby may not provide claim construction, but he may opine on whether this limitation is met.[6] GRANTED-IN-PART, DENIED-IN-PART |
| "the wavelength conversion member is provided on the first surface side and the second surface side" (1) | Meeting this limitation turns on the manufacturing process, *i.e.*, whether it produces a single member or two members. | The manufacturing process is irrelevant. | This limitation was not raised during the *Markman* proceedings. Accordingly, it shall have plain and ordinary meaning. The Court's ruling excluding Lebby's manufacturing process opinion precludes this testimony. GRANTED |
| "the wavelength conversion member | This limitation requires a physical | Under the doctrine of equivalents, | The parties dispute whether a wavelength |

---

[5]     The claim limitations in this table originate in Claim 1, except the last one, which derives from Claim 23.

[6]     *See, e.g.*, Lebby Supp. Report, Docket No. 481-6 ¶ 120 p. 53 ("an epoxy or similar bonding agent attaches the LEDs to the board inside the transparent bulb;" "[n]o other element is needed to *secure* them inside the bulb;" Plaintiff "has not demonstrated that the leads provide such a *support* function") (emphasis added).

| Limitation[5] | Defendant's Alleged New Construction | Plaintiff's Position | Court's Ruling |
|---|---|---|---|
| is provided on the first surface side and the second surface side" (2) | connection between the wavelength conversion member on each side. | physical connection is not required. | conversion member in separate segments can meet this limitation under the doctrine of equivalents. Lebby may not provide claim construction, but he may opine on whether this limitation is met.[7] DENIED |
| "a wavelength conversion member formed unitarily with a transparent member" | This limitation requires uniform distribution of phosphor. | Uniform distribution is not required. | As stated in the *Markman* Order, plain and ordinary meaning applies; there is no distribution restriction. *See* Docket No. 90 at 10; *see also* '734 Patent, Fig. 6. GRANTED |
| "longitudinal" | This limitation requires a straight or linear board. | This limitation does not require a straight or linear board. | The Court previously applied plain and ordinary meaning to this term, clarifying that longitudinal means "lengthwise." Docket No. 90 at 9. This construction does not expressly limit the shape of the board, but Lebby may opine on whether the limitation is met; he may not provide claim construction.[8] DENIED |
| "the support leads extend[ing] from the support base towards the pair of metal plates" | This limitation excludes a product in which one of the support leads goes past a metal plate. | The support leads may extend past a metal plate. | This limitation was not raised during the *Markman* proceedings. Accordingly, it shall have plain and |

---

[7]     *See, e.g.*, Docket No. 481-6 at ¶ 118 ("Even in the instances where a first alleged member on the top side of the board touches a[n] ~~separately extruded~~ alleged member on the bottom side of the board, such incidental contact does not transform two separate, contiguous components into a single component that performs the same function, in the same way, to achieve the same result.") ("separately extruded" is precluded for the reasons stated regarding manufacturing process).  As clarified at the hearing, based on Gershowitz's opinions, Plaintiff is not precluded from arguing literal infringement of single-segment wavelength conversion members.

[8]     *See, e.g.*, Docket No. 481-6 at ¶¶ 137, 140 ("In my opinion, this is because there is no way to depict the claimed [longitudinal] limitation, as the board of the Curved- Filament Products is curvilinear in its commercial configuration," so it does not have "end portions between a center portion in a longitudinal direction.").

| Limitation[5] | Defendant's Alleged New Construction | Plaintiff's Position | Court's Ruling |
|---|---|---|---|
| | | | ordinary meaning.[9]  Lebby may not provide claim construction, but he may opine on whether this limitation is met.  DENIED |

As summarized above, the Court declines to revisit claim construction at this late stage. Further, for the limitations already construed, there is no support for adding narrowing constructions.  Although Defendant argues that Lebby is simply *applying* plain and ordinary meaning to terms not construed at the *Markman* stage, as opposed to *providing* his own constructions, his opinions may not be advanced where they are contrary to the disclosures in the patent.  For example, by opining that the plain and ordinary meaning of, "a first/second set of the light emitting chips are mounted on the first/second region," denotes that *the wires connecting the chips must also be mounted*, Lebby provides additional, narrowing claim construction.  *See* Docket No. 481-6 ¶ 139 ("These claim limitations indicate that the wiring of the light emitting element chips is material to the infringement analysis as the plurality of light emitting element chips/first and second sets must be mounted to the board.").  He does not, as Defendant claims, merely explain how a POSA would understand this term.

By contrast, Lebby may testify about why he believes the accused products do not meet, *e.g.*, the support-and-secure limitation.  This is because, where "the court did not construe the term, it is given its 'plain and ordinary meaning' as understood by one skilled in the art.  [And] [i]t [i]s not improper for [Defendant] to offer its view of the plain and ordinary meaning to the jury." *Avid Tech., Inc. v. Harmonic Inc.*, No. CV 11-1040-GMS, 2014 WL 7206301, at *4 (D. Del. Dec. 17, 2014).  This is true so long as Lebby does not offer a legal interpretation, *i.e.*, claim construction. For example, Lebby may not opine that "support" *requires* direct support, but he may explain how a POSA would understand the term.  Thus, "[a]t trial, parties may introduc[e] evidence as to the plain and ordinary meaning of terms not construed by the Court to one skilled in the art, so long as the evidence does not amount to argu[ing] claim construction to the jury."  *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-CV-00630-LHK, 2014 WL 660857, at *3 (N.D. Cal. Feb. 20, 2014)

---

[9]        The parties agree this means in "the direction of."  *Compare* CC Reply at 23 *with* Lebby Dep. Tr. 187:9-11 ("[A]s indicated by claim 23, we're talking about the direction of that lead….").

(citations and quotations omitted).

For the reasons stated, Plaintiff's claim construction motion is **GRANTED-IN-PART** and **DENIED-IN-PART**.

D.   Plaintiff's MIL to Exclude Information Withheld During Fact Discovery

1.   Summary of Arguments

Plaintiff moves to preclude Defendant from relying on five categories of information it says Defendant withheld during fact discovery: (1) non-infringement opinions based on the identity of the filament manufacturer (relating to Interrogatory No. 6); (2) information deriving from John Mitchell, Feit's in-house counsel, and others relating to the ability of Defendant's manufacturers to provide non-infringing alternatives, a topic on which Defendant refused to provide a witness; (3) information relating to the cost and availability of non-infringing alternatives (including that Defendant could implement them at no cost in 3-6 months), and two undisclosed alternatives (relating to Interrogatory Nos. 11 and 16); (4) undisclosed bases for Defendant's non-infringement defense, including seven new opinions  (relating to Interrogatory Nos. 3, 9, and 15); and (5) opinions concerning the availability and acceptability of non-infringing alternatives that were not yet on the market as of the hypothetical negotiation date (Sept. 2017), a topic only addressed in Defendant's rebuttal report, but a topic for which Defendant bears the burden of proof. *See generally* Discovery MIL.

Defendant responds generally that Plaintiff's requests are improper summary judgment requests disguised as a motion in limine.  Discover Opp. at 2-3.  Defendant responds to each topic as follows: (1) Plaintiff's expert opened the door to rebuttal relating to the identity of the manufacturer at least where information was produced in discovery, and the rebuttal opinion does not violate the Court's prior order concerning representativeness because it does not "rely on 'the identity of the filament manufacturer(s) or filament model number(s);'" (2)  Hall's reliance on Mitchell is proper where the same information was otherwise produced and Plaintiff cross-examined Hall at her deposition; (3) Defendant provided sufficient information during discovery regarding design arounds; (4) Plaintiff engages in burden shifting by arguing that Defendant's rebuttal opinions on non-infringement should have been disclosed earlier, and the challenged opinions were disclosed and/or are proper rebuttal; and (5) Defendant timely disclosed the non-infringing alternatives during discovery, so Lebby properly addressed them in his rebuttal report. *See generally* Discovery Opp.

2.  <u>Analysis</u>

Under Rule 37, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

The Court rules on each dispute as follows.

| Issue | Ruling |
|---|---|
| Non-Infringement Opinion Relating to Filament Manufacturer | The prior dispute on this issue concerned "preventing Defendant from wielding its partial responses to Interrogatory No. 6 as both a shield to protect its manufacturer relationships and a sword to challenge representativeness based on filament Supplier." Docket No. 253 at 3. The Court ruled that "Defendant may not produce that information anew to challenge Plaintiff's representativeness positions that arise based on filament manufacturer." *Id.* But, Defendant may "otherwise challenge technical opinions by Plaintiff's expert that do not relate to the identity of the filament manufacturer undermining representativeness." *Id.* Thus, the Court treated as established: "Feit Electric shall not contest Nichia's showings of representativeness or allege noninfringement as it relates to an Accused Product model based on the identity of the filament manufacturer(s) or filament model number(s)." *Id.* The Order "would not apply where Feit had fully provided the corresponding filament information in discovery." *Id.* n.2. |
| | Based on the prior Order, Lebby may offer only a limited rebuttal to Gershowitz's specific conclusions regarding the cited ████ and ████ documents as they relate to the resin selected and transparency, but Lebby may not extend this opinion to other manufacturers' filaments for which no information was produced, or opine broadly that manufacturer identity is relevant to providing product-by-product infringement. *See* Supp. Lebby Report at ¶¶ 153-154 & n.7. GRANTED-IN-PART. |
| Undisclosed Information from Mitchell Relating to Non-Infringing Alternatives | Defendant does not contest the fact that it neither disclosed Mitchell nor designated another witness on non-infringing alternatives, including to disclose other instances where its manufacturers provided no-cost design-arounds. Defendant does not identify any already-produced information showing that it disclosed such information to Plaintiff during fact discovery. On this record, there is no factual basis to support Hall's rebuttal opinions that recite specific facts about Defendant's manufacturers.   Because Defendant has not shown these |

| | |
|---|---|
| | omissions were substantially justified or harmless, the information is excluded under Rule 37(c)(1).[10]  *See, e.g., Prism Techs., LLC v. T-Mobile USA Inc.*, No. 12-124, 2015 WL 5883764, *3 (D. Neb. Oct. 8, 2015) (excluding portions of expert reports relying on undisclosed information concerning non-infringing alternatives); *SynQor, Inc. v. Artesyn Tech., Inc.*, No. 07-497, 2011 WL 3625036, *11 (E.D. Tex. Aug. 17, 2011) (same).  GRANTED. |
| Cost and Availability of Non-Infringing Alternatives | The Court has provided sufficient rulings on the two central issues underlying this dispute, including by excluding Hall's 3-6 months opinion, and the ruling above excluding opinions relating to Defendant's manufactures' ability to provide no-cost design-arounds where that information was not produced during fact discovery.  The Court finds, however, that Plaintiff had sufficient notice of the two allegedly "new" design arounds, because they are either disclosed on the face of the patent or Plaintiff otherwise previously agreed they do not infringe.  GRANTED-IN-PART. |
| "New" Non-Infringement Opinions | Unless otherwise precluded by the Court's rulings on Plaintiff's motion to exclude certain Lebby opinions and/or the Claim Construction MIL, Defendant may present the remaining expert rebuttal opinions. DENIED.<br><br>Provided, however, because Defendant opted to disclose distilled non-infringement opinions in the Lebby Rebuttal Report, the Court hereby grants Plaintiff the opportunity to provide a Gershowitz Reply Report, within 21 days, addressing only these specific issues via sur-rebuttal argument only.  The Court provides this opportunity so Defendant's rebuttal discussion of these positions (in response to Plaintiff's infringement report) will not prevent Plaintiff from responding at trial (*i.e.*, the Reply Report will preclude Defendant from arguing that it is improper for Plaintiff to respond for the first time at trial).  The Reply Report may not include any new affirmative infringement positions. |
| Non-Market Non-Infringing Alternatives | The Court has provided sufficient rulings to resolve this dispute, including with respect to the motion to exclude certain of Lebby's opinions, and the above rulings regarding undisclosed |

---

[10]      If Defendant can demonstrate where in discovery it disclosed this information to Plaintiff such that the information relayed by Mitchell is essentially cumulative, the Court will revisit this in limine ruling.  For example, in its Daubert motion concerning Allen, Defendant summarizes its CEO's testimony concerning its manufacturers. *See* Allen Mot. at 12:8-13:3 (summarizing Aaron Feit's testimony concerning manufacturers' capabilities and past design-arounds).  Where such information was provided in discovery, some of Hall's general opinions, which in turn rely on Lebby's opinions based on what he learned from Defendant generally about the availability of manufacturing design arounds, may be proper.  If Defendant identifies such disclosures, it should meet and confer with Plaintiff to reach agreement on the scope of what may be considered cumulative.  If agreement cannot be reached, Defendant may bring a narrowly tailored MIL at the appropriate time (*e.g.*, MIL to Allow Opinions Based on Cumulatively Disclosed Manufacturer Information), and the Court will consider this narrow question at that time.

| | information on non-infringing alternatives and Lebby's rebuttal non-infringement positions.  GRANTED-IN-PART. |
|---|---|

For the reasons stated, Plaintiff's Discovery MIL is **GRANTED-IN-PART** and **DENIED-IN-PART**.

E. Defendant's Motion to Exclude Gershowitz

1. Summary of Arguments

Defendant moves to exclude certain opinions offered by Michael Gershowitz, Plaintiff's technical expert.  First, Defendant argues that Gershowitz did not test whether the accused products have the claimed "support leads."   Defendant contends this opinion is unreliable because Gershowitz did not distinguish between "support" and "leads," leading to different tests for infringement and invalidity.  Gershowitz Mot. at 3-6.  Second, Defendant argues that Gershowitz did not assess the impact of uncovered portions of the board with respect to the claimed wavelength conversion member, because he examined only photographs, which do not account for light direction and pass-through through the exposed portions of the board, and do not apply consistent methodology.  *See id.* at 6-12.  Third, Defendant argues that Gershowitz offers only conclusory opinions concerning Defendant's proposed non-infringing alternatives, including by offering subjective, non-scientific opinions that some of the proposed alternatives do infringe.  *Id.* at 12-14.  Finally, Defendant argues that Gershowitz's entire opinion should be excluded as unreliable. *Id.* at 14-16.

Plaintiff responds that the motion should be denied in its entirety because it challenges Gershowitz's factual conclusions, not his methods.  First, Plaintiff responds that Gershowtiz analyzed the support leads limitation, including with respect to relevant testing; Defendant simply disputes whether sufficient support is provided.  Gershowitz Opp. at 5-8.  Second, Plaintiff responds that Gershowitz measured light passing through the encapsulant, not at the sides of the board, a proposition with which Defendant's expert agrees.  *Id.* at 11-14.  Third, Plaintiff responds that Gershowitz provided detailed analysis concerning the non-infringing alternatives, and Defendant's claim to the contrary fails.  *Id.* at 19-21.  Further, Plaintiff argues any perceived inconsistencies between Gershowitz's analysis and Defendant's proposed alternatives arises because the proposed alternatives are incomplete and vague hypotheticals.  *Id.* at 21-22.  Finally, Plaintiff responds that because Gershowitz's methodology was reliable, Defendant's request to strike it wholesale should be rejected.  *Id.* at 23-24.

2.  Analysis

The Court denies the motion in its entirety because it challenges the factual bases for opinions, not the methodology, and it fails to support the request to exclude Gershowtiz entirely. Under the relevant standard, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking [even] shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

*Support Leads*.   The Court denies Defendant's challenge to Gershowitz's opinions concerning support leads because the challenge relates to Gershowitz's factual conclusions, not his methodology.  This is not a proper subject for a *Daubert* motion.  Whether an expert's opinion is factually correct "is generally a question for the fact finder, not the court."  *Summit 6*, 802 F.3d at 1296.  As explained above with respect to the Claim Construction MIL, the experts can provide their competing opinions regarding whether the accused products meet the "support leads" limitation.

*Light Passing*.   The Court denies Defendant's challenge to Gershowitz's opinions concerning light passing through the transparent member because the challenge relates to factual conclusions, not methodology.   Further, Defendant's challenges concerning the use of photographs, photography parameters, and specific testing equipment go to weight, not admissibility.

*Non-Infringing Alternatives*.   The Court denies Defendant's challenge to Gershowitz's opinions concerning Defendant's proposed non-infringing alternatives because it apparently ignores the analysis Gershowitz provided, and quibbles with his conclusions, not methodology. Further, throughout the motion, Defendant fails to distinguish its own expert's use of the same methodology.

Accordingly, the Court **DENIES** Defendant's Motion to exclude Gershowitz.

F.  Defendant's Motion to Exclude Allen

Defendant moves to exclude certain opinions offered by one of Plaintiff's experts, Gary R. Allen, regarding the acceptability and availability of non-infringing alternatives, and the alleged nexus between the commercial success of the accused products and the '734 Patent claims, arguing that these opinions are based on improper legal standards and exceed his qualifications.  The Court addresses each contention below.

23

1.   <u>Acceptable Alternatives</u>

Defendant contends that "Allen applied the more stringent non-infringing alternative standard under the *Panduit* factors applicable only to a lost profits analysis," rather than the more flexible standard deriving from *Georgia-Pacific* that applies in the reasonable royalty context. Allen Mot. at 3.   Rather than identifying the "next-best alternative," Allen opined that, to be "acceptable," an alternative must "provide all of the advantages and the performance" of the claimed invention.   *Id.* at 4 (citing Allen Report ¶ 66; Allen Dep. Tr. 95:21-96:6).   Thus, "[b]y applying the more stringent, but inapplicable standard, Allen improperly excluded acceptable options for alternatives and design-arounds that would otherwise be deemed acceptable under *Georgia-Pacific* factor 9 in the reasonable royalty context."   *Id.* at 5.

Defendant also argues that Allen's consumer acceptability opinion "is arbitrary and not based on any industry standards, market research, or analysis of costs," where "he did not conduct or review any focus groups or testing to learn about customer preferences specifically relating to the Accused Products."   *Id.* at 6.   Thus, Defendant concludes that "Allen's unsupported and speculative opinion about what would be acceptable to consumers does not satisfy the requirements for expert testimony."   *Id.* at 9.

Plaintiff responds that, in considering acceptability, Allen properly provided "(1) an assessment of any differences between the alleged alternative and the Accused Product, followed by (2) an assessment of how those differences (if any) would affect the royalty rate."   Allen Opp. at 2.   Plaintiff argues this stands in contrast to Defendant's expert, Hall, who assumed the products provide the same benefits without conducting any analysis.   *Id.*   Because Allen identifies "numerous deficiencies" in the proposed alternatives when compared with the accused products, Plaintiff argues he conducted the proper analysis.   *Id.*; *see also id.* at 9-10.   Further, Plaintiff argues that Allen's specific experience testing consumer preferences in the lighting industry equips him to testify about whether these alternatives would be acceptable to consumers.   *Id.* at 11-12

The Court finds that Allen applied the correct standard to a sufficient degree before analyzing whether the proposed alternatives would be acceptable to consumers, albeit concluding that only one extreme applies.   Specifically, although Allen stated that, to be acceptable, an alternative must share the same advantages and performance level as the accused product, he framed this in the context of whether the alternative would impact the market "such that the *demand of consumers would be satisfied* by the alternative."   Opening Allen Report, Docket No.

24

486-2, ¶ 66 (emphasis added).  In other words, to provide a perfect match that could cause a reasonable royalty rate to plummet near zero—because the alternative product is able to *satisfy* existing consumer demand for the accused product—that alternative must have all the same benefits.  If it doesn't, then it necessarily would not reduce the reasonable royalty rate by as much.  So long as Allen is not purporting to say that this is an all-or-nothing proposal (like it can be for a plaintiff trying to prove lost profits), his opinion is sufficiently reliable to say why, as a factual matter, the proposed alternatives would not affect demand for the accused products here.

To reach this conclusion, Allen considered factors such as light emission and power consumption, mechanical and thermal stresses, product reliability effects, operation, cost, and product appearance; he then opined that performance of the alternatives would suffer and the alternatives would have led to problems (*e.g.*, no longer appearing as a filament bulb, blocking light, or reduced performance).  *See Id.* ¶¶ 78, 81-83, 86-88, 92, 96-97, 100, 102, 104, 106-107, 109, 112, 114-116, 120-122, 123.  This analysis provides the required assessment of any differences with the accused products, which in turn informs whether these alternatives would satisfy demand and in turn affect the reasonable royalty rate.  *See Open Text S.A. v. Box, Inc.*, 2015 WL 393858, at *4.  Defendant may cross-examine Allen on how the perceived differences would impact consumer demand.  Notably, to the extent Allen is opining that the differences are so great it would result in *not a single consumer* buying the alternatives and thus have *no impact* on reasonable royalty rate, Defendant can vigorously attack this opinion on cross-examination.[11]  Moreover, the Court will instruct the jury on the correct legal standard to ensure that Allen's opinion is placed in its proper context, *i.e.*, it falls on one extreme end of that standard by concluding the differences are so great no consumer would buy the alternatives.  Accordingly, Defendant's challenge fails.

Further, Allen's knowledge of consumer preferences for LED lightbulbs and filament-style LED lightbulbs, based on his involvement in consumer studies and market analyses throughout his career, provides a sufficient basis for Allen to opine on how consumers would receive these proposed alternatives, including that consumer demand would not be satisfied by the proposed alternatives given the noted differences.  *See* Opening Allen Report ¶¶ 66, 88, 94, 105, 112.  For

---

[11]      As Defendant notes in its Reply, however, Allen may not introduce any *new* opinions following this clarification.  *See* Allen Reply at 4.  The same applies to Ms. Kindler, Plaintiff's damages expert, who incorporates Allen's opinion on this point.

example, Allen opines that, "Feit's proposed design-arounds would affect the underlying technical aspects of the bulb, such as light emission, thermal management, and reliability.  For the reasons explained below, none of Feit's proposed design-arounds accounts for all of these above factors in a way that makes it an acceptable alternative to the patented design."  *Id.* at ¶ 78; *see also id.* ¶¶ 80-125 (discussing Defendant's proposed alternatives A through P and explaining why, in his view, they are not acceptable to consumers and/or not available to Defendant).  Defendant's challenges to go weight not admissibility.  *See Daubert*, 509 U.S. at 596.  Accordingly, the Court denies Defendant's motion on this ground.

### 2.  Available Alternatives

Defendant argues that Allen's availability opinion must be excluded as based on speculation where he fails to consider non-infringing alternatives conceded by Plaintiff, and he further assumes without support that Defendant's manufacturers could not provide design arounds, relying only on design challenges faced by the industry generally.  Allen Mot. at 10-11.

Plaintiff responds that Allen's experience, "[meeting] face-to-face with the engineers, managers, manufacturing personnel, and quality control personnel from virtually, if not all, of what you would consider a list of major LED chip and package manufacturers" qualifies him to "opine on the design and manufacturing changes that would be needed to implement Feit's alleged alternatives."  Allen Opp. at 16.  Further, Plaintiff observes it is Defendant who failed to apply the correct legal standards for proposed alternatives that are not yet on the market; Defendant must show "(1) that it 'could readily obtain all of the materials needed,' (2) that the non-infringing alternative was 'well-known in the field at the time,' and (3) that it 'had all of the necessary equipment, know-how, and experience to use' the non-infringing alternative."  *Id.* (quoting *Grain Processing Corp.*, 185 F.3d at 1353-54).  Plaintiff argues that Allen properly concluded, based on the available evidence, that Defendant could not do the design-around work itself, or dictate the necessary requirements to its suppliers.  *Id.* at 18.

The Court finds that Allen is properly qualified to apply his industry experience to the hypothetical design arounds proposed in this case.  Whether the proposed design arounds will affect the reasonable royalty rate depends in-part on whether they were attainable to Defendant.  Since Defendant did not provide specific information from its manufacturers, both parties' experts rely on general industry experience to discuss the relative ease or difficulty each perceives would arise from switching to the proposed design arounds.  The parties' respective challenges to each

other's experts on this point amount to a disagreement with each's expert's conclusions, not the methodology. Therefore, resolving this dispute is a factual question for the jury. The parties may challenge each other's expert's respective conclusions via cross-examination. Accordingly, the Court denies Defendant's motion on this ground.

                3.   Commercial Success Opinion

Finally, Defendant argues that Allen should not be able to opine on the commercial success of the patent as a secondary consideration to rebut obviousness, because Plaintiff does not make or sell products embodying the '734 Patent or licensed the patent. Allen Mot. at 14-15. Further, Defendant contends that Allen's opinions are unreliable because they rely on commercial success of the entire filament-style LED products industry, not just commercial success attributable to the claimed invention. *Id.* at 15-17.

Plaintiff responds that Allen relies on his experience designing LED lighting products, including filament products, to explain consumer preferences for those products and conclude that four key claimed features drive the demand for the products, including: using LED filaments instead of large plastic or metal housings; addressing thermal stress without a large heat sink; enhancing light output by using an elongated LED filament; and simplifying the design to simplify the manufacturing process and lower price. Allen Opp. at 20-21. Further, Plaintiff argues that Defendant provides no support for the contention that, because Plaintiff does not itself make or sell the product there is a heightened proof requirement with respect to commercial success; but in any event, concerns about nexus go to weight and should be addressed on cross-examination. *Id.* at 23.

The Court concludes that Allen may opine on the secondary consideration of commercial success. Although Defendant argues that his opinions speak to LED products generally, his rebuttal report shows that he links the purported benefits to specific claim limitations. *See, e.g.*, Allen Rebuttal Report, Docket No. 486-5, at ¶ 345 (identifying "LED filament-style products claimed in the '734 Patent" and explaining these products have no need for a large heat sink and provide efficient mounting (linked to Claim 1, elements 1.5, 1.7, 1.11), and they do not require an extraneous housing and offer an elongated filament shape (linked to Claim 1, elements 1.1, 1.2, 1.3, 1.8, 1.9, 1.10)), ¶ 347 (further describing aesthetic benefits of products claimed in the '734 Patent), ¶ 349 ("The high efficiency, as well as the long life and high reliability are all directly attributable to the novel optical and thermal design breakthroughs enabled by the '734 Patent,

specifically the low operating current, cool operating temperature and unobstructed light output that are unique LED filament-style lightbulbs.").  Defendant may cross-examine Allen to the extent Defendant believes Allen is overstating the contribution of the invention claimed in the '734 Patent, or the differences from the prior art, but Defendant's challenges to go weight, not admissibility.

Although Allen may not opine on the economic effects of this commercial success, *i.e.*, the practical effect of the claimed commercial success as it relates to the secondary consideration of non-obviousness, he may opine, based on his industry experience, on what features claimed in the '734 Patent he believes contributed to this success.  He must, however, leave the economic portion of the analysis to Plaintiff's damages expert.  Defendant's challenge on this ground is denied.

Accordingly, for the reasons stated, the Court **DENIES** Defendant's Motion to exclude Allen.

G.   Evidentiary Objections

Plaintiff objects to Defendant's reliance on its unverified interrogatory responses.  *See* Docket No. 505 (objecting to Docket No. 472-3, Ex. B (responses to Interrogatory Nos. 9-11)).  Plaintiff argues the responses are inadmissible under Rule 33.  *See* Fed. R. Civ. P. 33(b)(3) ("Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."), (b)(5) ("The person who makes the answers must sign them, and the attorney who objects must sign any objections.").

Defendant responds that Plaintiff's challenge fails because: (1) it only relies on the responses to show background knowledge so they are not hearsay; (2) Plaintiff also affirmatively relies on these responses in support of its motion; and (3) Plaintiff never complained that the responses were unverified during discovery, so it has waived that challenge.  *See generally* Docket No. 542.

Plaintiff replies that Defendant's opposition to Plaintiff's MSJ substantively relies on the interrogatory responses to controvert the factual substance of six facts.  Docket No. 555 at 1-2 (citing Docket No. 483-1, SUF 13 (18:6-8), SUF 72 (80:18-20), SUF 73 (81:4-5), SUF 74 (81:20-21), SUF 75 (82:8-9), SUF 78 (82:28-83:5)).

To the extent Defendant purports to rely on the substance of the unverified interrogatory responses, the Court sustains Plaintiff's objection.  As stated, unverified interrogatory responses may not controvert a fact to avoid summary judgment.  *See Nash-Perry*, 2021 WL 3883681, at *5;

*see also* Fed. R. Civ. P. 33(b)(3).  To the extent Defendant references the unverified responses for a non-hearsay purpose (*e.g.*, to show that Plaintiff was on notice of a theory), Defendant may do so and the objection is overruled.  Plaintiff likewise may reference the responses only for background, it may not rely on them substantively.[12]

     Accordingly, the objection is **SUSTAINED-IN-PART** and **OVERRULED-IN-PART**.

     H.  <u>Plaintiff's Motion for Summary Judgment</u>

         1.  <u>Summary of Arguments</u>

     Plaintiff seeks summary judgment that Defendant's Model 72007 infringes Claims 1, 19, and 23 of the '734 Patent.  *See* P-MSJ at 3; *see also* Response to Statement of Genuine Disputes ("RSGD"), Docket No. 520, ¶ 10.  Model 72007 is a string of filament-style lightbulbs, depicted below left, with a single bulb from the string depicted below right.



     Defendant disputes whether the Model 72007 contains at least the following claim elements:

| Element | Limitation |
|---------|------------|
| 1.3 | "a wavelength conversion member formed unitarily with a transparent member that seals the plurality of light emitting element chips" |
| 1.5 | "support leads that secure the plurality of light emitting element chips inside the transparent bulb" |
| 1.8 | "the wavelength conversion member is provided on the first surface side and the second surface side, the wavelength conversion member is elongated in the |

---

[12]     No other evidentiary objections were filed pursuant to the Standing Order.  Thus, in ruling on the parties' MSJs, to the extent the Court relies on any other evidence to which a party believes it has objected, the Court overrules the objection for purposes of deciding the motions.  If any party believes that a specific ruling is warranted on an objection it believes was otherwise raised but not considered herein, that party may raise the issue at the hearing.

| | | longitudinal direction when viewed in plan view of the first surface side of the board" |
|---|---|---|
| | 1.9 [1.10] | "a first [second] set of the light emitting element chips are mounted on the first [second] region and arranged from the center portion of the board to the one [the other one] of the end portions." |

P-MSJ at 7-12.

Defendant responds that the motion should be denied because Plaintiff cannot establish the "support leads" limitation. P-MSJ Opp. at 3. Defendant argues that, when assessing the accused products, Plaintiff "failed to conduct adequate testing to distinguish a lead from a support lead and it further failed to consider and eliminate the impact of other incorporated support mechanisms." *Id.* at 5. Defendant contends that examining whether the board falls when the leads have been cut "cannot be the basis for assessing the presence of 'support lead[s]' in the accused products," especially where Plaintiff did not test each lead in isolation to determine whether each lead provides support, and did not test other support structures in the bulb. *Id.* at 6-7. Turning to the other disputed components, Defendant argues there are disputed issues of material fact regarding the "wavelength conversion member," which Defendant's expert explains is two components in the accused products, not one. *Id.* at 9-12; *see also id.* at 12-14 (elongated wavelength conversion member, center portion, support leads toward the base).

Plaintiff also seeks summary judgment that Defendant's invalidity defenses fail, and that Defendant failed to show any acceptable, non-infringing alternatives. P-MSJ at 3. Plaintiff argues that Claim 1 is not anticipated by Mano because Mano does not explicitly disclose "support leads," and its board extends into the support base. *Id.* at 13-14. Plaintiff argues that Claim 1 is not anticipated by Maxik and Ishibashi because those references do not have a wavelength conversion member on the backside of their respective boards. *Id.* at 14. Further, Plaintiff argues that Claim 19 would not be obvious in view of Maxik or Ishibashi because each of those references has curvilinear or radially arranged LEDs or curved boards, whereas Claim 19 requires the LED chips to be mounted along the board in a straight line. *Id.* at 15. Plaintiff also contends that Defendant has not introduced any new evidence that any claim limitation is indefinite, and thus the Court should reject Defendant's indefiniteness challenges as it did at claim construction. *Id.* at 16-20. Relatedly, Plaintiff argues the claims are enabled and have written description support. *Id.* at 20-22. Finally, Plaintiff argues that Defendant has failed to show any acceptable and available *non-infringing* products. *Id.* at 24-29.

Defendant responds that Plaintiff impermissibly seeks to apply different standards for

assessing infringement and validity, but "[e]ither there is a meaningful distinction for certain terms [like "support leads"], such that Nichia cannot establish infringement, or there is not, such that Nichia is not entitled to a finding of validity on summary judgment." P-MSJ Opp. at 15. Since Plaintiff previously did not distinguish between "leads" and "support leads," Defendant argues the "leads" in Mano remain relevant to anticipation. *Id.* At best, Defendant argues this presents a disputed issue of material fact. *Id.* at 16 (citing Lebby Supp. Report ¶¶ 79-142); *see also id.* at 16-18 (same test for infringement and invalidity should apply to, *e.g.*, wavelength conversion member, longitudinal requirement, which affects anticipation analysis for Maxik and Ishibashi). Further, Defendant contends that triable issues of material fact remain concerning indefiniteness (center/end portion), enablement (four separate grounds), and written description (center/end portions, first/second regions). *Id.* at 19-24. Lastly, Defendant argues that Plaintiff cannot obtain summary judgment concerning no non-infringing alternatives when Plaintiff itself identified several alternatives during this litigation. *Id.* at 24-27 (*e.g.*, Figs. 10 & 14 of the '734 Patent, alternative chip placements, separate wavelength conversion and transparent layers, board extending into support base, resin on one side of board, multiple resin structures that do not surround the board).

2. <u>Analysis</u>

i. <u>Infringement</u>

Determining patent infringement is a two-step process. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998). "First, the court determines the scope and meaning of the patent claims asserted, and then the properly construed claims are compared to the allegedly infringing device." *Id.* (citations omitted). "Whether an accused device or method infringes a claim either literally or under the doctrine of equivalents is a question of fact." *Schoell v. Regal Marine Indus., Inc.*, 247 F.3d 1202, 1207 (Fed. Cir. 2001). Because the ultimate burden of proving infringement rests with the patentee, an accused infringer may establish that summary judgment is proper "either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case." *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001). If the moving party meets this initial requirement, the burden shifts to the party asserting infringement to set forth, by declaration or as otherwise permitted under Fed. R. Civ. P. 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

31

The Court completed step one of the infringement analysis through lengthy Markman proceedings involving a technology tutorial, *Markman* hearing, and several rounds of briefing. *See generally* Docket No. 90.  Additionally, the Court has resolved Plaintiff's Claim Construction MIL in this order.  Turning to step two, for the reasons explained below, the Court finds disputed issues of material fact for certain claim limitations, which precludes summary judgment of infringement (or non-infringement as explained below for Defendant's motion).

*Support Leads*.  A disputed issue of material fact precludes summary judgment concerning whether the Model 72007 contains "support leads that secure the plurality of light emitting element chips inside the transparent bulb."  The Court discussed this limitation in the context of Plaintiff's Claim Construction MIL.  In short, the dispute over this limitation presents a classic "battle of the experts."  Although Lebby may not construe "support," he can offer his opinions regarding why he believes this limitation is not met.  *See* RSGD ¶ 33 (Gershowitz opines that the electrical leads provide support, at least indirectly, and Lebby opines that the electrical leads do not support the plurality of LED chips).  Defendant's challenges concerning whether Gershowitz properly tested the accused products for this limitation are topics for cross-examination, not summary judgment.[13]

*Wavelength Conversion Member*.  A disputed issue of material fact precludes summary judgment concerning whether the Model 72007 contains "a wavelength conversion *member* formed unitarily with a transparent member that seals the plurality of light emitting element chips," where "the wavelength conversion *member* is provided on the first surface side *and* the second surface side, the wavelength conversion member is *elongated in the longitudinal direction* when viewed in plan view of the first surface side of the board."  The Court discussed this limitation in the context of Plaintiff's Claim Construction MIL.  This dispute presents a battle of the experts.  Although Lebby may not provide claim construction, he can offer his opinions regarding why he believes this limitation is not met in several respects.  *See* RSGD ¶¶ 23-26, 39.  As relevant here, Defendant's position concerning all accused products, including the Model 72007, is that they comprise two encapsulants rather than one, so a single member is not present on each side of the board, two different members are.  *See* Lebby Supp. Report, Docket No. 481-6, ¶¶ 91-94 (but not the "extruded" manufacturing opinion), ¶¶ 98-102.  Plaintiff disagrees.  *See* Gershowitz Report,

---

[13]     Relatedly, for Claim 23, the experts present a genuine dispute of material fact concerning whether "the support leads extend from the support base towards the pair of metal plates."  *See* RSGD ¶ 51 (<u>compare</u> Gershowitz Opening Report ¶ 64 <u>with</u> Lebby Rebuttal Report ¶ 61).  As stated regarding the CC MIL, Lebby may not provide claim construction, but he may opine on whether the accused products meet this limitation as a factual matter.

Docket No. 448, ¶¶ 191-206.  This factual dispute cannot be resolved on summary judgment.

*Regions / Portions*.  Defendant argues the motion would be denied for the additional reason that Plaintiff cannot show these limitations are met because they are indefinite so an infringement analysis cannot be conducted.  P-MSJ Opp. at 12-13.  The Court addresses this dispute in the context of Defendant's indefiniteness defense, which is discussed below concerning invalidity.

Accordingly, for the reasons stated, the Court **DENIES** Plaintiff's motion for summary judgment of infringement.

ii.   <u>Invalidity</u>

a.   *Anticipation*

"A patent is invalid for anticipation if a single prior art reference discloses each and every limitation of the claimed invention."  *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003).  "[A] prior art reference may anticipate without disclosing a feature of the claimed invention if that missing characteristic is necessarily present, or inherent, in the single anticipating reference."  *Id.*  For prior art to anticipate a claim, "it must be sufficient to enable one with ordinary skill in the art to practice the invention."  *Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1301 (Fed. Cir. 2002).

*Mano*.  Plaintiff argues that Mano cannot anticipate Claim 1 because Mano lacks "support leads," and Mano's board extends into the support base of the bulb, so the board is not "enclosed" by the bulb.  Defendant opposes, citing Lebby's testimony that Mano "element 20 includes an elongated rectangular base 22 provided with an anode 23a at one end and a cathode 23b at the other end," and his testimony that other figures in Mano "also disclose this limitation."  Lebby identifies the "leads" in Mano that he believes provide support to the light emitting chips.  *See* Docket No. 250-2, Exhibit D, p. 516 ("Lebby Opening Report") ¶¶ 92-94, 108-110, 139-140.  Because "*support* leads" are not expressly claimed in Mano, Defendant must show they are "necessarily present."  *Schering Corp.*, 339 F.3d at 1377.   But in responding to Plaintiff's MSJ, Defendant has admitted that "[s]upport leads that secure the LED chips that are mounted on the board are not necessary for the device disclosed in Mano to function."  *See* RSGD ¶ 129.  Therefore, this element cannot be inherent in Mano and Mano cannot anticipate.

Lebby's testimony is also insufficient to create a genuine dispute of material fact concerning whether Mano has "a transparent bulb that *encloses the board* and the plurality of light emitting element chips."  Although Lebby identifies Figure 13 as depicting this limitation, *see id.*

¶ 91, that figure depicts the board as not fully enclosed by the bulb, but rather, extending outside of the bulb into the support base (shown in green below).



Mano cannot anticipate as a matter of law because it also lacks this element.  Indeed, Defendant appears to recognize as much by relying on a board extending into the support base as a proposed non-infringing design alternative.  *See* Lebby Supp. Report ¶ 166.  Accordingly, the Court grants Plaintiff's motion on this ground.

*Maxik and Ishibashi*.  Plaintiff argues that these references cannot anticipate Claim 1 because they lack a "wavelength conversion member [that] is provided on the first surface side and the second surface side" of the board.  As to Maxik, Lebby opines that, to achieve the desired omni-directionality, although not shown, this limitation is inherent because "Maxik would have included the fluorescent, transparent resin at both the top and bottom surfaces of the board 106 to achieve wavelength conversion in any direction of light emission."  Lebby Opening Report ¶ 164.  But during his deposition, while he acknowledged this was a possibility and would be "simple enough," he did not opine that it was necessary to have the wavelength conversion member on both sides.  *See* Lebby Dep. Tr., Docket No. 443-6, 233:25-25.  Accordingly, there is no evidence that this limitation was inherent in Maxik, so Maxik cannot anticipate.  The Court grants Plaintiff's motion on this ground.

As to Ishibashi, Lebby opines that, "to achieve an omni-directional, white light emitting device as discussed above, Ishibashi would have included a fluorescent, transparent resin of the light emitting element chip 6 package at both the top and bottom surfaces of the circuit board 5 to achieve wavelength conversion in any direction of light emission."  Lebby Opening Report ¶ 202.  But during his deposition, while again acknowledging that having the wavelength conversion member on both sides would be "simple" and more "efficient," it would not be necessary for the claimed invention to function.  *See* Docket No. 443-16 at 236:21-244:16.  Accordingly, there is no

evidence that this limitation was inherent in Ishibashi, so Ishibashi cannot anticipate. The Court grants Plaintiff's motion on this ground.

For the reasons stated, the Court **GRANTS** Plaintiff's motion concerning the three raised anticipation grounds.

### b. Obviousness

A patent is invalid for obviousness only "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). Whether a patent is invalid as obvious is a question of law based on underlying facts. *TriMed, Inc. v. Stryker Corp.*, 608 F.3d 1333, 1341 (Fed. Cir. 2010) (citations omitted).

Plaintiff argues that Claim 19, which requires "all light emitting element chips mounted on the first surface side of the board are aligned along a line," cannot be obvious as a matter of law in light of Maxik or Ishibashi, because those patents claim "fundamentally different" bulb structures. Although both parties agree that the scope of Claim 19 does not include products with curvilinear boards or radially arranged chips, Maxik and Ishibashi have curvilinear or radially arranged chips or curved boards, as shown below.



| Maxik | Ishibashi |
|---|---|

Defendant responds that Lebby identified disclosures in these patents identifying "a flat board with LEDs laid along a line." *See* Opening Lebby Report ¶ 357 (Maxik), ¶ 426 (Ishibashi).

But Lebby's report states only that each patent meets this limitation based on express disclosure, without explaining any necessary modifications relating to curvilinear boards or chip patterns. Instead, Lebby opines that any single line of chips in such a pattern could meet this

limitation.  *See, e.g.*, *id.* ¶ 426 ("the light emitting element chips 6 along any corresponding longitudinal belt-like branches 5a of the board 5 are aligned along a line commensurate with the length of the corresponding branches 5a").  But this opinion ignores that Claim 19 discloses "*all*" chips mounted "along *a* line." '734 Patent, Claim 19.

Defendant also argues that the claims in Maxik and Ishibashi disclose placing the chips in a line on a rectangular, non-flexible board, but does not identify where it finds this disclosure in the claims, or where a witness testified in support of this obviousness contention.  At the hearing, Defendant relied on dependent Claims 9 and 12 in Maxik to suggest that, because these claims add the elements a "finger-like extension" of the substrate, and a "flexible" substrate, these limitations are not required by Claim 1.  Setting aside the fact that Lebby did not offer this opinion, the Court agrees that, under the doctrine of claim differentiation, neither of the added limitations (finger-like and flexible) in Claims 9 and 12 is required by independent Claim 1.  But that does not address whether Claim 1 renders Claim 19 of the '734 Patent obvious.  This is because, unlike Claim 19 of the '734 Patent, Claim 1 of Maxik does not disclose "all chips mounted along a line."  Rather, it simply discloses "a plurality of light emitting devices located on said substrate in electrical connection with said substrate," with no reference to their arrangement or orientation.  *See* Docket No. 418-42 (Maxik), Claim 1.  Defendant's claim differentiation argument regarding Claim 2 of Ishibashi, which discloses "belt-like branches," suffers from the same problem.  Claim 1 discloses only "a plurality of LEDs which are disposed on the printed circuit board," without disclosing any specific requirements for the chip arrangement or orientation on the board.  *See* Docket No. 418-41 (Ishibashi), Claim 1.

Because Defendant relies on each reference standing alone to demonstrate obviousness, and because Defendant has not presented any evidence demonstrating that either Maxik or Ishibashi contains Claim 19's all-chips-in-a-line limitation, no reasonable juror could find that Defendant has shown obviousness by clear and convincing evidence for either reference.  Thus, the Court grants summary judgment on this ground.

### c.   Indefiniteness

A patent must "particularly point out and distinctly claim the invention."  35 U.S.C. § 112(b).  A patent may be invalid based on indefiniteness if an accused infringer can show, by clear and convincing evidence, that the claims "fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S.

898, 901 (2014).

At the *Markman* stage, Defendant argued that various claim limitations were indefinite, including a "wavelength conversion member formed unitarily with a transparent member," and the "end portion," "center portion," "first/second region," and "first/second set" terms.  The Court rejected Defendant's arguments.  *See* Docket No. 90.

In its motion, Plaintiff argues that, because Defendant has presented no new evidence in support of indefiniteness, summary judgment on this defense is appropriate.  Defendant responds that the "'center/end portion' claim terms remain indefinite based on Nichia's own repeated failures to provide consistent, objective boundaries as to those terms."  For example, Defendant notes that every witness for Plaintiff who was asked about these terms identified a different "center portion," "end portion," and corresponding regions.  To create a factual dispute, Defendant relies on Lebby's testimony.  *See* Opening Lebby Report ¶¶ 545-549.  But Lebby offers only a conclusory opinion on why a POSA could not understand these claim limitations with reasonable certainty: "As these terms relate to the 'center portion,' 'end portion,' and 'first /second region' limitations described above, which are themselves indefinite, a POSA is left to surmise as to which set is the 'first set' versus the 'second set' as well as the specific positioning of these sets along the board."  *Id.* ¶ 543.  This conclusory opinion cannot create a disputed issue of material fact.  *See Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 1001 (Fed. Cir. 2008) ("Conclusory expert assertions cannot raise triable issues of material fact on summary judgment.").  Neither Lebby nor Defendant has articulated why a reasonable juror could find this limitation indefinite by clear and convincing evidence.  Setting aside Lebby's conclusory testimony, Defendant does not explain how a reasonable juror could rely on what it views as inconsistent witness testimony to conclude by clear and convincing evidence that a POSA—as opposed to employees of Plaintiff, or Plaintiff's pre-Markman expert who did not have the benefit of claim construction—would be unable to understand the bounds of this limitation with reasonable certainty.

Further, in opposing Plaintiff's motion, Defendant failed to come forward with any argument or evidence concerning indefiniteness of the "wavelength conversion member formed unitarily with a transparent member."  Thus, there is no disputed issue of material fact concerning indefiniteness.[14]

---

[14]    This is especially true where Defendant's expert, Dr. Lebby, had no trouble understanding this term when offering infringement and invalidity opinions.

Accordingly, the Court **GRANTS** summary judgment of no indefiniteness regarding these two terms.

### d. Enablement

"Under the enablement requirement of 35 U.S.C. § 112, 'the specification must enable one of ordinary skill in the art to practice the claimed invention without undue experimentation.'" *Takeda Pharm. Co. v. Zydus Pharms. USA, Inc.*, 743 F.3d 1359, 1368-69 (Fed. Cir. 2014) (citation omitted).

Plaintiff seeks summary judgment that "a wavelength conversion member formed unitarily with a transparent member" is enabled by the '734 Patent because the description of Figure 6 explains mixing epoxy resin and phosphor to create the unitary wavelength conversion member. '738 Patent at 7:49-53 ("a phosphor 48 can be mixed into an epoxy resin"). Plaintiff argues that Lebby does not contend this would require undue experimentation. Defendant responds that Plaintiff ignores all the grounds on which Lebby finds lack of enablement, including: (i) the portions and regions limitations; (ii) the board limitation; (iii) the wavelength conversion member limitation; and (iv) the outer periphery limitation. Even focusing on the wavelength conversion member, Defendant argues that Plaintiff ignores Lebby's actual opinion, that "[t]he specification does not provide any specific combinations of a resin/phosphor mixture and a light emission wavelength that result in a desired, or even actual, wavelength conversion, let alone teach the difference between what it labels a 'wavelength conversion member' versus a 'wavelength conversion member formed unitarily with a transparent member.'" Lebby Opening Report ¶ 518. As to undue experimentation, Defendant argues that Plaintiff's argument, that Defendant's proposed non-infringing alternatives were "unavailable," supports that a POSA would not know how to do these things.

The Court grants summary judgment regarding enablement because Defendant has not presented any evidence that making the claimed invention would require undue experimentation. Pointing to Plaintiff's argument regarding the availability of non-infringing alternatives does not equate with raising admissible evidence such that a reasonable juror could find no enablement by clear and convincing evidence. In its response to Plaintiff's Statement of Undisputed Facts, Defendant avers that enablement is "Disputed," citing "Def.'s Opposition to Pl.'s Partial Mot. Summ. J at Section II(G)." RSGD ¶ 8. Citing an opposition brief as evidence is plainly insufficient to avoid summary judgment. Accordingly, the Court **GRANTS** Plaintiff's motion on this ground.

### e.  Written Description

A patent "specification shall contain a written description of the invention."  35 U.S.C. § 112.  To meet this requirement, the specification must "reasonably convey[] to those skilled in the art that the inventor ha[d] possession of the claimed subject matter as of the filing date."  *Synthes USA, LLC v. Spinal Kinetics, Inc.*, 734 F.3d 1332, 1341 (Fed. Cir. 2013).

Plaintiff argues that Defendant cannot carry its burden to show that Claim 1 lacks written description for "center/end portions" and "first/second regions."  Plaintiff argues that the specification provides ample detail concerning these aspects of the board.  *See* '734 Patent, 3:25-5:67, 14:9-32, FIGs.1-8, 10, 12-16.  Defendant argues that although the claims contain the "center/end portions" and "first/second regions" language, the specification does not describe the terms at all.  Lebby testified that the specification lacks such support.  Opening Lebby Report ¶¶ 507-509.

At the *Markman* stage, the Court construed this limitation as "a board with a first region running lengthwise from one end of the board to the center of the board, and a second region running lengthwise from the other end of the board to the center of the board."  Dkt. 90 at 9. Although Lebby concludes this limitation lacks written description, he offers only a conclusory opinion as to the relational terms center/end portions and first/second regions, which is insufficient to defeat summary judgment.  *Sitrick*, 516 F.3d at 1001.  In offering his conclusory opinion, Lebby does not describe why, without additional guidance in the specification (*e.g.*, Fig. 15), a POSA would have concluded that the inventor did not have a board that contained center/end portions and first/second regions at the time.  To the extent Lebby is saying that written description requires the specification to contain all terminology used in the claims, this is an incorrect statement of law. *See Koito Mfg. Co. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1154 (Fed. Cir. 2004) ("Terms need not be used *in haec verba*, however…. Instead, we have explained that the written description requirement can be satisfied by 'words, structures, figures, diagrams, formulas, etc.'") (citations omitted).  Because no reasonable juror could find that Defendant has come forward with evidence sufficient to show lack of written description by clear and convincing evidence, the Court will grant summary judgment on this ground.

### iii.  Available and Acceptable Non-Infringing Alternatives

Plaintiff argues that Defendant's proposed non-infringing alternatives fail as a matter of law because they are either accused products (including (1) products in which the filament has

"one or more lighting element chips in the center of the board," (2) products in which the encapsulant has "[m]ultiple resin structures," "a break or gap in the resin structure," or a "resin structure that does not surround the whole board," and (3) products with "non-traditionally shaped bulbs"); or, there is no evidence they were available to Defendant at the time infringement began. Further, Plaintiff argues that Defendant has not shown the purported alternatives would be acceptable to consumers because Lebby did not offer any explanation concerning how any particular product would compare to an accused product in terms of appearance, light output, and cost, and why any such differences would be acceptable to consumers.

Defendant responds that, at a minimum, summary judgment is precluded by Plaintiff's admissions throughout this case concerning non-infringing alternatives (*e.g.*, the designs disclosed in Figure 10 and 14 of the '734 Patent; a device with three LEDs or where a single LED chip is placed on one side of the geometric center; a wavelength conversion layer that is separate from a transparent layer; a wavelength conversion member is non-unitarily formed with a transparent member; a board extending into a support base; using resin on only one side of the board or using multiple resin structures that do not surround the board).

As stated, whether a proposed alternative "was in fact 'available'" to the accused infringer during the relevant period of infringement, and whether "consumers would consider [it] an acceptable substitute" are questions of fact. *Grain Processing Corp.*, 185 F.3d at 1353. Thus, summary judgment is not available unless the moving party can demonstrate no disputed issues of material fact concerning availability and acceptability. The Federal Circuit has not addressed whether a non-infringing alternative that is not on the market during the accounting period is relevant to the reasonable royalty analysis; but it has addressed this issue in the context of lost profit damages. "In *Grain Processing*, the Federal Circuit explained that, when an alleged alternative is not on the market during the accounting period, the court may reasonably infer that it was not available as a non-infringing alternative," and then the accused infringer "can rebut this presumption by showing that the substitute was in fact 'available' to the infringer." *Laser Dynamics, Inc. v. Quanta Computer, Inc.*, No. 06- 348, 2011 WL 197869, *2 (E.D. Tex. Jan. 20, 2011). To support availability, an accused infringer could demonstrate factors such as, whether "all of the material needed to implement the non-infringing alternative" were "readily obtain[able]," "the non-infringing alternative was well known in the field at the time of infringement, and the accused infringer "had all of the necessary equipment, know-how, and

40

experience to use the non-infringing alternative." *Id.* at *3 (citing *Grain Processing*, 185 F.3d at 1349). Speculation regarding availability is insufficient. *Id.* at *2.

The Court's ruling on Plaintiff's Motion to Exclude Lebby disposes of this issue. Because the Court did not exclude Lebby's opinions regarding availability and acceptability (except with respect to acceptability for alternatives A, B, and E), that testimony serves to create genuine issues of material fact on these points. For example, Lebby relied on facts concerning Defendant's business relationships with its contract manufacturers and the experience of those manufacturers in designing and manufacturing filament-style LED bulbs to opine that the proposed alternatives were available, and he discussed each proposed redesign labeled A through L. *See* Lebby Supp. Report ¶¶ 160, 164, 165, 166-187.

The Court's ruling on Plaintiff's Motion to Exclude Hall disposes of the issue with respect to accused products that Defendant aims to show are non-infringing and thus non-infringing alternatives. Where "[i]t cannot be determined at this stage whether the [products] [the accused infringer] identifies as noninfringing are in fact noninfringing," then "this issue is properly left for the fact finder's resolution at trial." *Icon Outdoors*, 2013 WL 2476392 at *19. Accordingly, the Court denies Plaintiff's MSJ on this ground.

For the reasons stated, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** Plaintiff's MSJ.

I.    Defendant's Motion for Summary Judgment

Defendant seeks summary judgment on several different grounds, each of which is discussed below.

     1.    "Support Leads" Limitation

Defendant argues that Plaintiff cannot establish the limitation "support leads that secure the plurality of light emitting element chips inside the transparent bulb," because Plaintiff did not conduct proper testing or present evidence that the leads in the accused products are "support leads." D-MSJ at 4-12.

Plaintiff responds that it has demonstrated "support leads" in the accused products and its positions have been consistent, but at a minimum this should be a question for the jury. D-MSJ Opp. at 5-15.

The Court's ruling on Plaintiff's MSJ concerning "support leads" in Model No. 72007

applies with equal force here.[15]  The disputed issues of material fact identified above preclude summary judgment of non-infringement for all accused products because the question presents a battle of the experts.  Each party may present its expert testimony on this point and the jury will decide whether this limitation is present.  Defendant's motion is denied on this ground.

2.  "Plan View" Limitation

Defendant argues that Plaintiff cannot establish that the accused products contain the limitation, "the wavelength conversion member is elongated in the longitudinal direction when viewed in plan view of the first surface side of the board."[16]  As to the curved filament products, Defendant argues this is because Plaintiff can show infringement only by "impermissibly destroy[ing] the bulb, remov[ing] the filament, stretch[ing] the filament, and then flatten[ing] the filament to artificially manufacture a straight configuration."  D-MSJ at 14.  Defendant contends "[t]here is no dispute that the curved products are not sold in a flattened and stretched out configuration, nor can they be manipulated as such in a working manner by the user."  *Id.* at 14-15.  Defendant illustrates the difference in the following photos.



*See id.* at 14.  When unmodified, Defendant explains "the wavelength conversion member is not 'elongated in the longitudinal direction,' from any angle, because the surface is curved."  *Id.* at 16.

---

[15]     Likewise, the Court's related rulings on the Claim Construction MIL, the Motion to Preclude Lebby, and the Motion to Preclude Gershowitz are relevant.

[16]     "Plan view" is viewed from the top down or viewed from above.

Rather, Defendant argues that following the curvilinear or u-shaped path as shown in the curved filament products as sold is not following a longitudinal (lengthwise) path.  *Id.*

Defendant also contends that Plaintiff "cannot apply this claim limitation to the accused Straight Filament Products having a straight configuration without first deconstructing the bulb and configuring the filament(s) on their own to apply the claim term."  *Id.* at 15.  This is because, Defendant contends, "[t]he filaments in the straight filament products have their filaments oriented substantially vertically in the bulb, rather than the longitudinally as in the traditional incandescent bulb sought to be emulated by the '734 patent."  *Id.* at 18.  Therefore, Defendant concludes that the bulbs must be subjectively modified by, *e.g.*, removing the encapsulant and laying it on its side to be viewed horizontally, as shown below.



*See id.* at 18-19.

Plaintiff responds that because Defendant has referred to the encapsulant as a "strip of material," this suggests an elongated shape.  D-MSJ Opp. at 15-16.  Plaintiff also argues that Defendant's interpretation of this limitation is incorrect because "longitudinal" means "lengthwise," but it does not imply a linear or horizontal direction.  *Id.* at 16.  "A lengthwise direction runs along an object's length, and is not restricted (as Feit argues) to only horizontal directions" or a straight path.  *Id.* at 16, 19-20.  Plaintiff argues that Gershowitz properly opined that, as to the curved filament products, the wavelength conversion member follows the curvilinear length of the board.  *Id.* at 20.  As to Defendant's manipulation argument, Plaintiff responds that Gershowitz analyzed the straight and curved filament products in their commercial configuration and found the limitation met without any manipulation; Plaintiff contends he does *not* assert infringement based on the deconstructed products.  *Id.* at 16, 18-19.  Plaintiff also argues that Defendant should be barred from raising this argument for the first time on summary judgment.  *Id.* at 18.  Further, Plaintiff argues that "plan view" refers to viewing the wavelength conversion member (not the bulb) from above.  *Id.* at 17.  Plaintiff observes that even Defendant's expert was able to apply this limitation to a vertically oriented board in Mano.

The Court will deny Defendant's motion on this ground with one clarification, as explained below. First, the Court's construction of longitudinal, which merely clarified that "longitudinal" means "lengthwise," forecloses Defendant's argument that the wavelength conversion member must be configured in a horizontal orientation to infringe. *See* Docket No. 90 at 10; *see also* Docket No. 82 at 33:17-19 (at the *Markman* hearing, Defendant agreed: "I believe longitudinal was referring to a lengthwise direction…."). Expanding on the ruling provided above for the Claim Construction MIL, Lebby may not opine that longitudinal means horizontal because of the preferred embodiments depicted in Figs. 8 & 10. As stated, Lebby may not offer claim construction, especially a construction that violates the cardinal rule that preferred embodiments may not be imported into the claims. *See, e.g.*, *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002) (considering whether district court committed "a 'cardinal sin' of claim construction by importing limitations from the written description into the claims").

Second, although Lebby may testify why he believes that curved filament products do not meet this limitation (*e.g.*, a POSA would discern no "lengthwise" on the curved transparent member), he may not say that, as a matter of claim construction, a curvilinear or u-shaped path cannot have a length. As discussed, this issue presents a classic battle of the experts regarding whether the limitation is met, but neither expert may alter or amend the claim construction of longitudinal in support of his respective position.

Third, the claim language forecloses Defendant's "plan view" argument because "plan view" modifies "the first surface side of the board," not the bulb. *See* '734 Patent, Claim 1 ("the wavelength conversion member is elongated in the longitudinal direction when viewed in plan view of the first surface side of the board"). That is, when looking at the first surface side of the board from above, the wavelength conversion member is elongated lengthwise. Because the claim language makes clear what "plan view" means in this context, there is nothing subjective about carrying out this limitation. Accordingly, the Court denies Defendant's motion on this ground.

The Court provides a cautionary clarification, however. Defendant is correct to observe that "a device does not infringe simply because it is possible to alter it in a way that would satisfy all the limitations of a patent claim." *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1555 (Fed. Cir. 1995). Relying on its Infringement Contention charts, Plaintiff avers that it properly alleges infringement by the curved filament bulbs *as sold* (not as modified by its experts for testing and photographing). *See* Docket No. 458-9 at p. 498 ("To be clear, this

product infringes based on its configuration in the bulb, as it is sold."). Gershowitz briefly referenced this distinction at his deposition. *See* Docket No. 458-10 at 236:18-238:13. To the extent no similar clarification readily appears in the body of the Gershowitz Report alongside images depicting various components of the deconstructed bulbs, this could cause confusion at trial. *Compare* Gershowitz Report. If either party plans to show photographs of the deconstructed bulbs, to ensure the jury is not confused concerning the relevance of the photographs, the Court orders the parties to meet and confer to discuss providing necessary disclaimers when eliciting testimony about any such photographs to support infringement (*e.g.*, "to be clear, you are not alleging that this limitation is met based on how the transparent member is modified in this photograph, that was done only for testing purposes, correct") and/or providing any necessary limiting instruction.

### 3. Chip at Center of Board

Defendant argues that any accused product with a chip mounted at the center of the board cannot infringe because it would not meet the limitation "a first/second set of the light emitting chips" that are "mounted on the first/second region and arranged from the center portion of the board to the one/other one of the end portions." D-MSJ at 19. This is because, Defendant contends, an LED chip at the center of the board "would destroy the set distinction because it would be in both the first and second set because if the 'center portion' is indeed the 'geometric center' as Gershowitz claims, the chip would be mounted on both the first and second region." *Id.* at 20. "Or, alternatively, the center LED creates a third region that is not contemplated by the claims." *Id.*

Plaintiff responds that Gershowitz explained why accused products with a chip at the center of the board infringe. D-MSJ Opp. at 21 (citing Gershowitz Report ¶¶ 186-188 (addressing non-infringement position relating to a chip at the center of the board)).

Claim 1 of the '734 Patent discloses a board with a "first surface including a first region and a second region, the first region extending from the center portion of the board to one of the end portions, the second region extending from the center portion of the board to the other of the end portions." '734 Patent, Claim 1. In the *Markman* order, the Court rejected Defendant's indefiniteness argument concerning this limitation. The Court explained that "the disputed limitations are not indefinite, because the 'end portions,' 'center portion,' 'first region,' and 'second region' are defined relative to each other and the 'first set' and 'second set' of chips."

45

Docket No. 90 at 9.  Thus, the Court "decline[d] to consider directional terms like 'end' and 'center' in isolation.  Rather, considering these terms in the context of the claims as a whole, Defendant [did] not clearly and convincingly prove[] that the relative descriptions provide insufficient teaching to one skilled in the art about the location of these components."  *Id.*  The Court concluded that "that plain and ordinary meaning applies, with 'longitudinal' meaning 'lengthwise,' 'end portions' meaning 'ends' and 'center portion' meaning 'center.'  Therefore, taken together, the Court construe[d] the disputed terms as 'a board with a first region running lengthwise from one end of the board to the center of the board, and a second region running lengthwise from the other end of the board to the center of the board.'"  *Id.*

This construction does not lead to a finding as a matter of law that an LED chip at the center of the board precludes infringement.  Defendant does not explain why a chip at the center of the board would be a chip that falls into *both* the left and right regions or provide evidence supporting this conclusion.  The Court did not construe the relevant claim limitations in this manner.  The patent discloses "a first region" and a "second region" of the board, and that the board has a "center portion."  *See* '734 Patent, Claim 1.  Nothing about these distinct terms or the plain and ordinary meaning that the Court clarified at the Markman stage suggests that the "center portion," *i.e.*, "center" falls into either the first or second region.  Rather, the center of the board delimits how to identify the first and second regions.

That the Court inquired about the possibility that a center chip could undermine infringement, requested supplemental briefing on it, and ultimately rejected Defendant's related indefiniteness argument does not establish no infringement as a matter of law.  As Plaintiff observes, additional, unclaimed elements do not defeat infringement.  *Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1371 (Fed. Cir. 2005) ("The addition of elements not recited in the claim cannot defeat infringement").  Plaintiff has presented expert testimony supporting its position that a chip at the center of the board does not defeat infringement, and thus at best this presents a controverted issue of material fact that must be resolved at trial.  Accordingly, Defendant's motion is denied on this ground.

### 4.   Conceded Non-Infringing Alternatives

Defendant argues it is entitled to summary judgment of non-infringement for any configurations Plaintiff has conceded are non-infringing.  D-MSJ at 21.  For example, Defendant argues this includes Figure 14 of the '738 Patent; a configuration with only three LED chips total;

a configuration with no LED chips or only one LED chip to one side of the geometric center of the board; a configuration with six chips to one side of the geometric center of the board and one chip on the other side; a configuration where a wavelength conversion member is not a wavelength conversion member formed unitarily with a transparent member, a wavelength conversion layer is separate from a transparent layer, or a wavelength conversion member is non-unitarily formed with a transparent member; a configuration with a phosphor layer applied to the inside of the bulb as a coating to convert wavelength; and a configuration where both the encapsulated light emitting device and the transparent bulb can have wavelength conversion members. *Id.* at 21-23.

Plaintiff responds that summary judgment that these proposed configurations are non-infringing alternatives is inappropriate because these configurations were not on the market and Defendant has not carried its burden to show they would have been available to Defendant and acceptable to consumers. D-MSJ Opp. at 24. Additionally, Plaintiff contends that Defendant should not be allowed to assert any alternatives it did not disclose during discovery. *Id.* Further, Plaintiff argues that Gershowitz properly opined that, for proposed alternatives that merely took a claim element and put the word "not" in front of it, they are unclear and incomplete hypothetical designs. *Id.*

The Court will deny Defendant's motion on this ground for the related reasons discussed throughout this order with respect to other motions. First, Defendant is not precluded from relying on proposed non-infringing alternatives that Plaintiff identified during this litigation where Plaintiff claims that Defendant did not disclose these options to Plaintiff. *See* Order Re Discovery MIL, *supra*. Second, myriad disputed issues of material fact remain with respect to availability and acceptability of the proposed non-infringing alternatives. *See* Order Re Lebby Motion, *supra*; Order Hall Motion, *supra*; Order Re Gershowitz Motion, *supra*; Order re Allen Motion, *supra*; Order re Plaintiff's MSJ, *supra*. The parties may address these points by presenting expert testimony as specified in the related orders.

To save time at trial, the Court orders the parties to meet and confer and discuss a possible limited stipulation whereby Plaintiff would agree that, based on representations already made to the Court, certain configurations do not infringe (*e.g.*, three chips two one side of center and one chip to the other side of center). This would avoid wasting the jury's time to impeach a witness on this point and allow the parties to focus on availability and acceptability.

### 5. Summary Judgment of Indefiniteness

Defendant argues that the asserted claims are clearly and convincingly indefinite as a matter of law.  Defendant renews the argument it made at the claim construction stage that the limitation—"a board having end portions and a center portion there between in a longitudinal direction, the board having … a first region and a second region, the first region extending from the center portion of the board to one of the end portions, the second region extending from the center portion of the board to the other of the end portions"—is indefinite.  D-MSJ at 23.  Defendant argues that none of Plaintiff's witnesses identified the "center portion" as a consistent area, and the relevant interrogatory response provided yet a different definition.  *Id.* at 24-27.  Thus, Defendant argues that a POSA could not discern the boundaries of "center portion" with reasonable certainty.  *Id.* at 27.

Plaintiff responds that Defendant cannot meet its burden to show indefiniteness of this limitation by clear and convincing evidence, especially where the Court already rejected the same argument at the claim construction stage.  D-MSJ Opp. at 26.  Plaintiff argues that it and its witnesses have "consistently explained that the significance of the 'end portions' and 'center portion' terms is their relative position or 'directionality,' not their size."  *Id.* Further, Plaintiff argues that Defendant fails to identify why the scope of the claim is indefinite in view of this term. *Id.*

The Court's ruling on indefiniteness in the context of granting Plaintiff's MSJ on this point forecloses a ruling in Defendant's favor on the same point.  As stated, the Court construed the relevant terms in the board limitation and concluded that those terms (*e.g.*, "end portions," "center portion," "first region," "second region") are defined relative to each other and the "first set" and "second" set of chips.  *See* Docket No. 90 at 9.  Because Defendant has not come forward with evidence that would allow a reasonable juror to find indefiniteness by clear and convincing evidence, the Court **DENIES** the motion on this ground.

Accordingly, for the reasons stated, the Court **DENIES** Defendant's MSJ.

## V. **CONCLUSION**

For the reasons stated herein, the Court rules as stated in the summary table on the first page of this order.

48