JEFFREY A. KOBULNICK (SBN 228299)
jkobulnick@lewitthackman.com
JESSICA W. ROSEN (SBN 294923)
jrosen@lewitthackman.com
LEWITT, HACKMAN, SHAPIRO, MARSHALL & HARLAN
16633 Ventura Boulevard Eleventh Floor
Encino, CA 91436
Telephone: (818) 990-2120
Facsimile: (818) 981-4764

ROBERT P. PARKER (*pro hac vice*)
rparker@rfem.com
MARTIN ZOLTICK (*pro hac vice*)
mzoltick@rfem.com
JENNY COLGATE (*pro hac vice*)
jcolgate@rfem.com
MICHAEL JONES (*pro hac vice*)
mjones@rfem.com
MARK RAWLS (*pro hac vice*)
mrawls@rfem.com
D. LAWSON ALLEN (*pro hac vice*)
lallen@rfem.com
NICOLE DEABRANTES (*pro hac vice*)
ndeabrantes@rfem.com
ROTHWELL, FIGG, ERNST & MANBECK P.C.
901 New York Avenue N.W.
Suite 900 East
Washington, DC 20001
Telephone: (202) 783-6040
Facsimile: (202) 783-6031

Attorneys for Plaintiff Nichia Corporation

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NICHIA CORPORATION,<br><br>Plaintiff<br><br>v.<br><br>FEIT ELECTRIC COMPANY, INC.,<br><br>Defendant. | Case No. 2:20-cv-00359-GW-E<br><br>Honorable George Wu, Ctrm. 9D<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW ON INFRINGEMENT AND REPRESENTATIVENESS, AND OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW REGARDING SAME [DKT 735]** |

Pursuant to the Court's oral instructions at trial, Plaintiff Nichia Corporation ("Nichia") respectfully submits this motion for judgment as a matter of law ("JMOL") on the issues of infringement and representativeness. As explained below, Nichia is entitled to judgment as a matter of law on infringement and representativeness. This pleading also constitutes Nichia's opposition to Feit Electric Co., Inc.'s ("Feit") JMOLs on the same issues (Dkt. 735).

As an initial matter, Feit never made its non-infringement position in discovery; Feit's expert, Dr. Lebby, never made this argument in his expert report; and despite making extensive arguments in summary judgment and *Daubert* motions related to testing and infringement, Feit never made this argument until now. Having lost every other attempt to dispute infringement, Feit makes one more half-hearted attack. But if its position had any merit, it would have made it well before now.

As to the second non-infringement position, based on representativeness, this Court has already held against Feit. Dkt. 59 at 7.

## I. Legal Principles on Infringement

Nichia does not contest the legal section in Feit's motions, but provides additional context below. Feit did not present a non-infringement defense at trial. Rather, Feit argues in its JMOL motion that Nichia's infringement evidence is deficient as a matter of law under the principles set out in *High Tech Medical Instr. Inc. v. New Image Indus., Inc.* 49 F.3d 1551, 1555 (Fed. Cir. 1995). Not so.

*High Tech* concerned a patent claim that included a limitation requiring "a camera body being *rotatably coupled* to said body member" (emphasis added). As designed and sold, the camera did not rotate, but did so only when two screws were loosened. *Id.*, 1555. The Federal Circuit held that "a device does not infringe simply because it is possible to alter it in a way that would satisfy all the limitations of a patent claim." *Id.* In this case, there is no suggestion that Nichia's infringement case is based on the operation of the accused products with any modification from their "as sold" condition. Rather, the evidence Feit points to for its motion is the exact

opposite – it reflects destructive testing and analysis of the components of the accused products precisely to demonstrate that they have all of the features of the asserted claims when the products are operated in their as-sold condition. Feit offers nothing to suggest that the law of infringement precludes evidence based on such testing, but that would be the extraordinary result if Feit's position held sway.

## II. Trial Evidence on Infringement

Mr. Gershowitz testified at trial that the accused products infringe. As part of his analysis, he considered 152 Technical Analysis Reports, Feit's product catalogues, technical supplier information, and Feit admissions, among other sources of information. 1/12/23 Tr. at 39:18-40:23, 41:5-45:12. For each of the three product categories, he explained how the accused products read on each element of the asserted claims. 1/12/23 Tr. at 48:21-82:8 (category 1), 82:12-95:23 (category 2), 96:1-110:3 (category 3). Feit offered no witness to dispute infringement, and now raises only a single issue related to the wavelength conversion member element. Feit's motion has no basis.

Feit focusses its entire attack on one piece of evidence Mr. Gershowitz considered. Feit faults the "Light Spectrum Analysis" measurement for not being conducted with the same current as would have been used by a consumer.[1] Mot at 7-8. But even if Feit's argument had merit, Mr. Gershowitz made clear that this was not the only test he relied on, and that other information available to him also confirmed the presence of the claim element. *E.g.*, 1/12/23 Tr. at 59:12-61:11 (relying on photographic evidence in addition to "Light Spectrum Analysis"); *id.*, 77:16-72:2 (relying on Feit's admissions in this case about the structure of the LED filament in all the accused products); *id.*, 78:7-18 (relying on scanning electron microscopy testing to conclude "[t]he types of structures that were present would

---

[1] Feit acknowledges that for dimmable products, there is no single current that would have been used by a consumer.

allow significant amount of blue light to pass through the areas where silicone was present and phosphor particles were not."); 1/13/23 Tr. at 126:10-127:3 (explaining other evidence relied on, including technical information from Feit's LED filament suppliers).

Moreover, Feit is wrong that the amount of current used in the testing has any bearing on whether the accused products have a wavelength conversion member in their as-sold state. Ample evidence shows that the accused products do have a wavelength conversion member in their as-sold state. *E.g.*, 1/12/23 Tr. at 77:16-72:2; 1/13/23 Tr. at 109:9-17. Mr. Gershowitz confirmed that the tear-down testing did not alter the underlying components. 1/12/23 Tr. at 26:9-16, 28:10-17, 50:8-23, 96:8-97:2, 107:2-19. Mr. Gershowitz was equally clear the accused products infringe as they are sold, in their "as sold" state. 1/12/23 Tr. at 50:8-23, 83:13-20, 97:13-20.

Mr. Gershowitz explained that neither the claim nor the Court's construction refers to the amount of current passing through the LED chips. 1/13/23 Tr. at 122:15-123:24. Mr. Gershowitz also explained – under extensive cross-examination – that the amount of current makes no difference, and regardless of the amount of current, the "Light Spectrum Analysis" test would generate the same curve, showing proportionally the same amount of blue and yellow light, and establishing that the wavelength conversion member both converts wavelength and allows light to pass through. 1/13/23 Tr. at 39:18-40:10, 41:17-42:9 (e.g., "So the testing of the component could be done either way and the results would be identical."), 56:20-57:2 (e.g., "the current would not be relevant" and "by normalizing it, I don't need to know the current"), 57:10-14, 57:17-24 (e.g., "He could test it at any current, and he would wind up with the same wave form, the same spectral power distribution."), 58:8-15, 59:16-9, 66:9-13 ("But to anyone knowledgeable in the industry -- and in my years of experience doing this testing -- if we wanted to get that level higher, we would have just turned the current up. I apologize we didn't. That wave form, that spectral distribution for the yellow would have been the same shape."), 73:14-74:7,

108:21-109:2 ("the current doesn't matter … [t]hat will just affect the scale factor of the data that is obtained"), 109:22-110:11, 113:8-25, 120:8-24, 124:15-125:12.

In other words, there is no basis for Feit's motion. Mr. Gershowitz established that the accused products infringe in their as-sold state. On this record, Nichia is entitled to JMOL on infringement. At the very least, there is enough evidence for the jury to decide the issue.

**III. Legal Principles on Representativeness**

As to representativeness: "Once Plaintiff provides evidence to support a reasonable inference that all accused products infringe, the burden then shifts to Defendant to show that there is some 'relevant distinction' among the accused products 'that would require separate analysis.'" Dkt. 59 at 7 (*citing TiVo, Inc. v. EchoStar Commc'ns Corp*., 516 F.3d 1290, 1308 (Fed. Cir. 2008)).

**IV. Trial Evidence on Representativeness**

Mr. Gershowitz testified at trial that he determined each of the 152 tested products infringe, with respect to three categories. 1/12/23 Tr. at 50:24-51:13, 76:9-25, 85:17-25, 95:12-16, 98:12-16. That analysis included reviewing, among other things, each of the 152 Technical Analysis Reports. *Id.* He also testified that he analyzed the untested accused products (for which no sample was provided by Feit or otherwise available), and considered numerous sources of technical information, including Feit's documents, Feit's suppliers' documents, Feit's admissions, and other evidence. 1/12/23 Tr. at 112:17-122:1 (concluding "[m]y opinion is that all of the accused products infringe, that the products that I tested or had tested and analyzed are representative of all of the products, even those products that were not available to me for testing."); *see also* 1/13/23 Tr. at 133:22-135:4 (e.g., "It is for all product[s] -- as I said in my previous statement, it tells me all product[s] that they make utilize these structures. And, therefore, even if those bulbs were not available for my testing, … it gives me enough confidence that I'm willing to state my opinion that these other products … also infringe."); *id.*, 135:19-136:12, 140:12-142:16.

Mr. Gershowitz illustrated exactly where each claim element is met in examples of the untested products, and described how that related to his previous analysis. *Id.* at 115:7-116:20. He also testified that all of the differences in the accused products (including those identified by Feit) did not affect his infringement analysis. *Id.* at 120:8-121:6. Mr. Gershowitz also explained that the products that were tested came from all of Feit's current suppliers, that they included the same models from the same factory and the same models from different factories, and that in each case there was no material difference. 1/12/23 Tr. at 127:7-128:5.

Finally, Mr. Gershowitz also explained that each of the untested products falls into one of the three categories he identified, and therefore each infringe for the same reasons he had already explained. 1/12/23 Tr. at 114:1-115:6. Indeed, he explained that the category was visually apparent in many of the photographs available. *Id.*

Feit alleges, "there is still no evidence that the products grouped in a given category all share the same critical features." That is not true. Mot. at 14. As outlined above, Mr. Gershowitz explained the relevant categories, and testified that for each category there was no material difference for any of the accused products. This motion is a re-hash of an earlier motion Feit filed, moving to strike Nichia's infringement contentions on the issue of representativeness.[2] It lost. Dkt. 59 at 7 ("Regarding Defendant's argument that Plaintiff's product groups draw arbitrary distinctions, the Court disagrees."); *id. citing TiVo, Inc. v. EchoStar Commc'ns Corp.*, 516 F.3d 1290, 1308 (Fed. Cir. 2008). Nothing has changed. Indeed, in *TiVo* patentee's expert testified that all of the accused products "operate similarly" and defendant's expert "made no relevant distinction among them." *Id.* Feit did not even present an expert on this issue.

---

[2] Indeed, most of the cases Feit cites to relate to notice with respect to infringement contentions, and are irrelevant at this stage of the case.

For the same reasons the Court disagreed with Feit initially, Feit is still wrong that the categories are "arbitrary." Mot. at 13. Earlier in this case, Feit presented separate arguments about straight-filament products without "gap," straight-filament products with a "gap," and out curved-filament products. Accordingly, Mr. Gershowitz separately addressed those categories, giving additional analysis regarding the doctrine of equivalents for straight-filament products with a "gap," and giving additional analysis regarding the flexible board for the curved-filament products.

Mr. Gershowitz established that the tested products are representative of the other accused products and each infringe for the same reasons he already analyzed. Feit did not respond. Nichia is entitled to JMOL on this issue. At the very least, there is enough evidence for the jury to decide the issue.

## V. Conclusion

For the foregoing reasons, Feit's motions for judgment as a matter of law on infringement and representativeness should be denied, and Nichia's motion for judgment as a matter of law on infringement and representativeness should be granted.

Dated: January 19, 2023

ROTHWELL, FIGG, ERNST & MANBECK P.C.

By: /s/ Mark T. Rawls
Mark Rawls

LEWITT HACKMAN SHAPIRO MARSHALL AND HARLAN

By: /s/ Jeffrey A. Kobulnick
Jeffrey A. Kobulnick

*Attorneys for Plaintiff Nichia Corporation*